ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

- v. -

JORGE NAVARRO,
ERICA GARCIA,
MARCOS ZULUETA,
MICHAEL TANNUZZO,
GREGORY SKELTON,
ROSS COHEN,
SETH FISHMAN,
LISA GIANNELLI,
JORDAN FISHMAN,
RICK DANE, JR.,
CHRISTOPHER OAKES,
JASON SERVIS,
KRISTIAN RHEIN,
MICHAEL KEGLEY, JR.,
ALEXANDER CHAN,
HENRY ARGUETA,
NICHOLAS SURICK,
REBECCA LINKE, and
CHRISTOPHER MARINO,

Defendants.

- - - - - - - - - - - - - - - - - - x

SEALED INDICTMENT

20 Cr.

20 CRIM 160

**BACKGROUND**

**I. Overview of the Charges**

1. Professional horse racing is a $100 billion global industry, which draws millions of fans each year in the United States and around the world. Racehorses may sell at auction for well more than $1,000,000 and compete for purses of several millions of dollars. In the United States, the horse racing industry is subject to an array of federal and state regulations

aimed at protecting participating horses and ensuring fair competition, among other things. These regulations include proscription of the use of performance-enhancing drugs ("PEDs") and testing regimes designed to ensure that racehorses are not under their influence.

2. The charges in this Indictment result from a widespread, corrupt scheme by racehorse trainers, veterinarians, PED distributors, and others to manufacture, distribute, and receive adulterated and misbranded PEDs and to secretly administer those PEDs to racehorses under scheme participants' control. By evading PED prohibitions and deceiving regulators and horse racing authorities, among others, participants sought to improve race performance and obtain prize money from racetracks throughout the United States and other countries, including in New York, New Jersey, Florida, Ohio, Kentucky, and the United Arab Emirates("UAE"), all to the detriment and risk of the health and well-being of the racehorses. Trainers who participated in the scheme stood to profit from the success of racehorses under their control by earning a share of their horses' winnings, and by improving their horses' racing records, thereby yielding higher trainer fees and increasing the number of racehorses under their control. Over the course of the scheme, participants manufactured, purchased, sold, shipped, delivered, received, and administered thousands of units of PEDs for use on racehorses.

3. To avoid detection of their administration of misbranded and adulterated PEDs to racehorses, also known as "doping," the scheme participants routinely defrauded and misled government agencies, including federal and state drug regulators, U.S. Customs and Border Protection, various state horse racing regulators, and the betting public. Among other deceptive means, the defendants relied, in part, on their distribution and administration of customized PEDs designed and intended to be difficult or impossible to detect in anti-PED tests performed by, among others, state racing regulators, and by creating fraudulent or misleading labels for those PEDs.

4. Federal statutes and regulations are designed, in part, to protect racehorses by ensuring that only drugs approved by the U.S. Food and Drug Administration ("FDA") and drugs administered pursuant to a valid prescription are administered to racehorses and other animals. By failing to abide by such proscriptions, racehorse trainers, veterinarians, and others imperil the health and well-being of racehorses by: (1) administering to racehorses unapproved drugs whose chemical composition is unknown; (2) enabling non-veterinarians, such as racehorse trainers, to administer drugs to racehorses using methods of administration that can injure and, in extreme cases, kill the horse; and (3) masking a horse's ability to feel pain, thereby causing the horse to overexert itself during periods of

intense exercise, which can lead to accidents, broken limbs, or death.

**The Defendants**

5. At all times relevant to this Indictment, JORGE NAVARRO, the defendant, was a racehorse trainer who orchestrated a widespread scheme of covertly obtaining and administering various adulterated and misbranded PEDs to the racehorses under his control. From 2018 to February 2020, NAVARRO entered horses in approximately 1,480 races. Throughout that time, NAVARRO and his co-conspirators concealed the purchase and administration of adulterated and misbranded PEDs from federal and state government agencies, racing officials, the betting public, and others. NAVARRO executed this scheme by using PEDs designed to evade drug tests, physically concealing containers of PEDs and drug paraphernalia from state regulators and racing officials, administering and directing others to covertly administer PEDs, and shipping certain products designed to mask the presence of PEDs through a straw purchaser. Several co-conspirators assisted NAVARRO in operating his illicit doping scheme (the "Navarro Doping Program"), in a variety of ways.

6. ERICA GARCIA, SETH FISHMAN, and GREGORY SKELTON, the defendants, are veterinarians who misbranded and adulterated PEDs by illegally manufacturing PEDs (FISHMAN and SKELTON) and illegally administering PEDs at NAVARRO's direction (GARCIA).

7. CHRISTOPHER OAKES, MARCOS ZULUETA, MICHAEL TANNUZZO, and NICHOLAS SURICK, the defendants, assisted NAVARRO by obtaining, shipping, and administering misbranded and adulterated PEDs for NAVARRO's benefit. ROSS COHEN, the defendant, and OAKES acted as distributors of misbranded and adulterated PEDs manufactured by, among others, SKELTON and FISHMAN.

8. In addition to his contribution to the Navarro Doping Program, since at least 2014, SETH FISHMAN, the defendant, has manufactured and shipped illegally misbranded and adulterated PEDs. At all times relevant to this Indictment, SETH FISHMAN manufactured adulterated and misbranded PEDs, developed in a facility that is not registered with the FDA to manufacture or compound new animal drugs, and marketed and distributed those PEDs to various racehorse trainers across the country and internationally. FISHMAN and his co-conspirators further concealed the true nature and purpose of those adulterated and misbranded PEDs in order to defraud and mislead, among others, federal and state government agencies and regulators. SETH FISHMAN was assisted in the illicit manufacture and distribution of PEDs by defendants JORDAN FISHMAN, who manufactured PEDs to SETH FISHMAN's specifications; LISA GIANNELLI, a distributor of SETH FISHMAN's PEDs operating primarily in and around New York State; and RICK DANE, JR., a trainer who both purchased and assisted in the distribution of SETH FISHMAN's PEDs.

9. At all times relevant to this Indictment, JASON SERVIS, the defendant, was a racehorse trainer who orchestrated a widespread scheme of covertly obtaining and administering adulterated and misbranded PEDs, including a PED called SGF-1000, to virtually all of the racehorses under his control. From 2018 to February 2020, SERVIS entered horses in approximately 1,082 races. SERVIS and his co-conspirators concealed the administration of PEDs from federal and state government agencies, racing officials, and the betting public by, among other things, concealing and covertly transporting PEDs between barns where SERVIS' racehorses were stabled, falsifying veterinary bills to conceal the administration of SGF-1000, and using fake prescriptions. SERVIS was assisted by co-conspirators who participated in the conspiracy by creating, manufacturing, distributing, buying, selling, supplying, shipping, and receiving misbranded and adulterated PEDs and administering them to racehorses. SERVIS' co-conspirators included KRISTIAN RHEIN, the defendant, a veterinarian who obtained and administered misbranded and adulterated PEDs; MICHAEL KEGLEY, JR., the defendant, a sales representative for a firm dedicated to the production of misbranded and adulterated PEDs, including SGF-1000; ALEXANDER CHAN, the defendant, a veterinarian working at the direction of SERVIS and others to administer misbranded and adulterated PEDs, including SGF-1000 and prescription veterinary drugs, without a valid medical reason;

HENRY ARGUETA, the defendant, an assistant trainer who assisted SERVIS in obtaining and administering PEDs; and JORGE NAVARRO, discussed above, who provided SERVIS with PEDs at SERVIS' request.

10. In addition to his role in the Navarro Doping Program, at all times relevant to this Indictment, NICHOLAS SURICK, the defendant, was a racehorse trainer who orchestrated a widespread scheme of covertly obtaining and administering adulterated and misbranded PEDs to the racehorses under his control, including "red acid" among other substances (the "Surick Doping Program"). As explained below, "red acid" is a term used by the defendants to refer generally to customized PEDs designed, in part, to reduce inflammation in joints, thereby improving a racehorse's race performance. SURICK and his co-conspirators concealed the administration of such PEDs from federal and state government agencies, racing officials, and the betting public, by, among other things, administering PEDs in a covert manner, and physically concealing a doped racehorse to evade drug testing by a state racing commission. SURICK was assisted by several co-conspirators, including assistant trainer CHRISTOPHER MARINO, the defendant, who participated in the conspiracy by receiving and administering misbranded and adulterated PEDs, and REBECCA LINKE, the defendant, who supplied misbranded and adulterated PEDs to SURICK and, in at least certain instances, created false medical and pharmaceutical records to conceal SURICK's activities.

## II. Legal Framework

11. At all times relevant to the Indictment, the FDA was responsible for promoting and protecting public health, including the health of animals. The FDA enforces the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), which, among other things, governs the manufacture and distribution of drugs, including prescription drugs, for humans and animals.

12. Pursuant to the FDCA and related regulations, a drug may be deemed "misbranded" or "adulterated" for several reasons, including: (1) if a drug does not have requisite approvals from the FDA for use in an animal; (2) if a drug requiring a prescription is administered without a valid prescription, that is, not in the usual course of a veterinarian's professional practice, or not administered pursuant to any prescription at all; (3) if a drug's label is deficient in various specified respects, for example, if it is false or misleading or does not accurately list details regarding the manufacturer, packer, or distributor, the contents of the packaging, or directions for use; or (4) if the facility that manufactures the drug is not duly registered by the FDA.

## III. Relevant Adulterated and Misbranded PEDs

13. PEDs relevant to this Indictment include the

following:

a. Erythropoietin and analogues: Commonly referred to by participants in the racing industry, generally, by the brand name "Epogen," or by the shorthand "epo," erythropoietin is used to boost a racehorse's red blood cell count in order to stimulate endurance during a race and improve race recovery. Similar customized "blood building" substances are referred to by the defendants using various code names, including "BB3" and "Monkey." "Blood builders," when combined with intense physical exertion, thicken the horse's blood, thereby causing increased cardiac exertion and pressure, which can lead to cardiac issues or death.

b. "SGF-1000": SGF-1000 is a customized PED purportedly containing "growth factors," including fibroblast growth factor and hepatocyte growth factor, which are intended to promote tissue repair and increase a racehorse's stamina and endurance beyond its natural capability. SGF-1000 is compounded and manufactured in unregistered facilities. SGF-1000, like many other customized PEDs, may cause racehorses to perform beyond their natural abilities, thereby increasing the risk of possible injuries.

c. Customized Analgesics: Referred to by the defendants as "pain shots" or "joint blocks," customized analgesics contain various pain-relieving substances. Among other

things, customized analgesics mask physical injuries in a racehorse, which can cause a racehorse to overexert itself during periods of intense physical exercise, and thereby sustain a leg injury or break during a race. Oftentimes, racehorses that sustain leg injuries or breaks are euthanized.

d. "Red acid": "Red acid" is a term used by the defendants to refer generally to customized PEDs designed, in part, to reduce inflammation in joints, thereby improving a racehorse's race performance. Similar to customized analgesics, "red acid," among other things, is administered to mask physical injuries in racehorses, thereby increasing the risk of injury while racing.

14. In virtually all cases, customized PEDs created and manufactured by the defendants lacked requisite approvals from the FDA for use in an animal, were administered without a valid prescription, and/or contained deficient labeling. In many cases, the customized PEDs were not manufactured in facilities registered with the FDA. In many cases, the customized PEDs were designed to be untestable on drug tests, in order to defraud and mislead federal and state regulators, racing officials, and the betting public. In many cases, the customized PEDs contained false or misleading labeling containing, for example, the terms "for research purposes only," or "homeopathic," in order to defraud and mislead federal and state regulators into believing the products were not intended for the purpose of doping

racehorses.

**COUNT ONE**
**(Drug Adulteration and Misbranding Conspiracy: Navarro, Garcia, Zulueta, Tannuzzo, Skelton, Cohen, Seth Fishman, Oakes, and Surick)**

The Grand Jury charges:

15. The allegations set forth above in Paragraphs 1 through 7, and 11 through 14, are realleged and incorporated by reference as if set fully forth herein.

16. From at least in or about January 2017 through at least in or about January 2020, JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, and others known and unknown, engaged in a corrupt scheme to manufacture, create, purchase, distribute, transport, sell, and administer a wide variety of misbranded and adulterated PEDs, as well as substances designed to mask the presence of PEDs from drug testing by racing and state officials. The PEDs used by NAVARRO and others were manufactured or distributed by, among others, FISHMAN, SKELTON, OAKES, GARCIA, SURICK, ZULUETA, TANNUZZO, and COHEN. NAVARRO administered those drugs personally and in coordination with, among others, GARCIA, ZULUETA, TANNUZZO, and OAKES.

17. SETH FISHMAN, the defendant, supplied racehorse trainers, including, among others, JORGE NAVARRO, the defendant,

with PEDs, including a blood builder PED referred to as "BB3," a similar PED referred to as "ITP Plus" or "ITPP,"[1] an adulterated and misbranded PED designed to help a racehorse respire, referred to as "VO2 Max," and a customized analgesic PED, referred to as the "Frozen Pain" shot, among others. NAVARRO paid SETH FISHMAN tens of thousands of dollars from at least January 2017 through at least April 2019 to purchase PEDs.

18. GREGORY SKELTON, the defendant, similarly sold customized PEDs, including an analgesic and a "joint block," to racehorse trainers and others, including to NAVARRO and defendant CHRISTOPHER OAKES for use in doping racehorses.

15. JORGE NAVARRO, the defendant, has also acquired PEDs from other trainers. NICHOLAS SURICK, the defendant, has supplied NAVARRO with the customized PED "red acid" as well as a "shockwave" machine used to administer shockwaves to racehorses, purportedly to improve the racehorse's racing performance by blocking pain. CHRISTOPHER OAKES, the defendant, purchased SETH FISHMAN's products and resold SETH FISHMAN's products to other trainers, including to NAVARRO. OAKES also created and manufactured his own customized, misbranded, and adulterated PED,

[1] ITPP, a myo-inositol trispyrophosphate, is a particular type of custom-made PED capable of increasing the amount of oxygen in body tissues.

a performance-enhancing "drench"[2] designed to rapidly increase a racehorse's performance during a race and to be undetectable in drug tests, which OAKES supplied to NAVARRO. On or about March 14, 2019, law enforcement officers found multiple such adulterated and misbranded PEDs in OAKES' barn in Pennsylvania, including PEDs sourced from FISHMAN (including VO2 Max) and SKELTON (including "blood builder" PEDs), as well as pre-filled, unlabeled syringes. Photographs of some of the drugs seized from this search follow:





16. In addition to developing his doping program around PEDs that are, by design, difficult or impossible for state regulators and racing officials to detect, JORGE NAVARRO, the defendant, and others known and unknown, have tried to conceal the

[2] A "drench" refers to substances that are administered directly into the stomach of a horse via a tube inserted through the horse's nostril, past its larynx and esophagus, and ultimately into its stomach.

existence of the Navarro Doping Program. These efforts include the use of straw purchasers or false names to ship or receive PEDs, NAVARRO's and others' attempts to avoid interception of telephone conversations regarding the administration of PEDs, and the surreptitious disposal of the bodies of horses that have died on the property of NAVARRO or his co-conspirators. For example, on a February 1, 2019 intercepted call between SURICK and MICHAEL TANNUZZO, the defendant, discussing NAVARRO, SURICK stated, in part and among other things:

> You know how many fucking horses he [NAVARRO] fucking killed and broke down that I made [] disappear. . . . You know how much trouble he could get in . . . if they found out . . . the six horses we killed?

**Doping XY Jet**

17. Among the most successful of the racehorses to which JORGE NAVARRO, the defendant, administered PEDs was the thoroughbred racehorse XY Jet. XY Jet was a racehorse trained throughout 2019, and until his death in or about January 2020, by NAVARRO. On February 13, 2019, XY Jet raced in the Allowance Optional Claiming race at Gulfstream Park, Florida, placing first and winning a purse of approximately $31,900. XY Jet's victory on February 13, 2019 preceded his entry in the Dubai Golden Shaheen race in the United Arab Emirates on March 30, 2019. At that race, which offered a purse of $2.5 million, XY Jet finished first,

winning $1.5 million. NAVARRO and others administered several adulterated and misbranded PEDs to XY Jet prior to both the February 13 race in Florida and the March 30 race in Dubai.

a. On or about February 9, 2019, NAVARRO and MARCOS ZULUETA, the defendant, had a telephone conversation in which they discussed NAVARRO's need for a particular customized analgesic PED, referred to as a "blocker." NAVARRO specified that the PED was for administration to XY Jet, and ZULUETA agreed to supply that PED via an overnight shipment.

b. NAVARRO further attempted to source additional PEDs for XY Jet from CHRISTOPHER OAKES and GREGORY SKELTON, the defendants, including additional doses of a "blocker" PED. On February 10, 2019, NAVARRO wrote to OAKES: "Do u have any of that new block that dr makes[?]," and in subsequent calls between NAVARRO and OAKES, OAKES agreed to procure and deliver the "blocker" PED to NAVARRO in advance of XY Jet's February 13 race.

c. On or about February 11, 2019, NAVARRO complained to ZULUETA about XY Jet's performance in a pre-competition run, and informed ZULUETA that NAVARRO had worked with OAKES to obtain the "blocker" PED for XY Jet. That day, NAVARRO and OAKES discussed a plan to secretly introduce a bottle of the "blocker" into the stable where XY Jet was being held prior to the February 13 race. OAKES confirmed that he would smuggle that PED into the racetrack and meet NAVARRO once inside.

d. On or about February 13, 2019, the day of the Florida race, NAVARRO instructed OAKES to visit XY Jet to administer the PED, and to lie to racing officials if necessary to access the racehorse: "Drive through. If anything, if they stop you. You are an owner and you come to Navarro's barn."

18. On or about March 22, 2019, while in the UAE with XY Jet, JORGE NAVARRO, the defendant, personally administered various adulterated and misbranded PEDs to XY Jet, including a substance NAVARRO referred to as "monkey." During an April 3, 2019, call between NAVARRO and MARCOS ZULUETA, the defendant, the two discussed, among other things, NAVARRO's administration of PEDs to XY Jet in the weeks leading up to, and on the day of, the race in Dubai, and NAVARRO explained: "I gave it to him through 50 injections. I gave it to him through the mouth."

19. Following XY Jet's victory in Dubai, SETH FISHMAN, the defendant, congratulated NAVARRO on the win via text message, and NAVARRO replied, in part and among other things, "Thank u boss u are a big part of it."

20. On or about January 8, 2020, JORGE NAVARRO, the defendant, publicly announced that XY Jet had died of an apparent heart attack.

**Statutory Allegations**

21. From at least in or about January 2017 through at least in or about January 2020, in the Southern District of New

York and elsewhere, JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

22. It was a part and an object of the conspiracy that JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

23. It was further a part and an object of the conspiracy that JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, willfully and knowingly would and did adulterate and misbrand drugs, and would and did cause the

adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

24. It was further a part and an object of the conspiracy that JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

**Overt Acts**

25. In furtherance of the conspiracy and to effect the illegal objects thereof, JORGE NAVARRO, ERICA GARCIA, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, CHRISTOPHER OAKES, and NICHOLAS SURICK, the defendants, and others known and unknown, committed the following overt acts,

among others, in the Southern District of New York and elsewhere:

a. On or about February 9, 2019, ZULUETA, located in Pennsylvania, shipped an adulterated and misbranded drug to NAVARRO, located in Florida, for administration to XY Jet.

b. On or about January 25, 2019, OAKES offered to supply NAVARRO a misbranded and adulterated PED created by OAKES and designed to evade anti-PED testing, stating "Zero chance you [NAVARRO] get caught." OAKES further agreed to deliver this PED to NAVARRO to administer to NAVARRO's racehorses in advance of upcoming races.

c. On or about February 11, 2019, OAKES provided to NAVARRO an adulterated and misbranded "blocker" PED to administer to XY Jet in advance of a race.

d. On or about February 11, 2019, SKELTON, located in Indiana, shipped an adulterated and misbranded drug to NAVARRO, in Florida, for administration to XY Jet.

e. On or about February 21, 2019, COHEN met with a confidential source in Bullville, New York to sell the confidential source adulterated and misbranded PEDs. Photographs of these substances, as sold and delivered to the confidential source by COHEN follow:




f. On or about February 13, 2019, GARCIA agreed, during a telephone conversation with NAVARRO, to administer an adulterated and misbranded blood builder PED, "monkey," to racehorses under NAVARRO's control.

g. On or about April 5, 2019, NAVARRO sent text messages to SETH FISHMAN, while SETH FISHMAN was located in the Southern District of New York, requesting "1000 pills asap."

h. On or about April 5, 2019, SETH FISHMAN, while located in the Southern District of New York, placed a phone call to initiate the processing of orders for misbranded and adulterated PEDs to be sent to OAKES in Pennsylvania and NAVARRO in Florida.

i. On or about April 16, 2019, COHEN met with a confidential source in Pine Bush, New York to sell the confidential source adulterated and misbranded PEDs. Photographs of these substances, as sold and delivered to the confidential source by COHEN follow:



j. On or about May 15, 2019, TANNUZZO arranged with NAVARRO to receive on NAVARRO's behalf a package of blood builder PEDs at NAVARRO's New Jersey residence, which TANNUZZO in fact received on NAVARRO's behalf.

k. On or about May 29, 2019, NAVARRO held a conference call with the operators of a racing stable in California, for whom NAVARRO is a trainer, during which they discussed a series of poor performances by "Nanoosh," a racehorse trained by NAVARRO. During the call, one of the operators questioned whether NAVARRO was "giving them [that operator's racehorses] all the shit," later asking, "Is this horse jacked out? Is he on fucking pills or what or are we just fucking –," to which NAVARRO responded, "Everything...he gets everything." Individual-1 then cut the discussion short, stating: "You don't have to tell me on the phone."

l. On or about December 11, 2018, NAVARRO

solicited a shipment of "red acid" from SURICK, which SURICK agreed to collect from Pennsylvania and ship "overnight" to NAVARRO.

(Title 18, United States Code, Section 371.)

**COUNT TWO**
**(Drug Adulteration and Misbranding Conspiracy: Seth Fishman, Lisa Giannelli, Jordan Fishman, and Rick Dane, Jr.)**

The Grand Jury further charges:

26. The allegations set forth above in Paragraphs 1 through 4, 8, and 11 through 14, are realleged and incorporated by reference as if set fully forth herein.

27. From at least in or about August 2013 through at least in or about October 2019, SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, and others known and unknown, engaged in a corrupt scheme to create, manufacture, and distribute adulterated and misbranded PEDs to racehorse trainers and others in a systematic effort to improve race performance of racehorses, and obtain prize money as a result.

28. SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, created, marketed, and distributed a variety of PEDs, which were manufactured in an unregistered facility, mislabeled, and/or administered with no valid prescription. Although a licensed veterinarian, SETH FISHMAN did not perform medical examinations, provide a diagnosis, or otherwise evaluate the medical necessity of providing PEDs in advance of selling PEDs. Indeed, the administration of those PEDs

was not intended to be therapeutic, but rather to increase the chances of winning horse races. SETH FISHMAN's products were created and labeled to evade detection by state racing regulators, including with labels that contained misleading statements designed to lower the likelihood of scrutiny by regulators. SETH FISHMAN also promoted his blood building PEDs as undetectable on drug tests administered by state regulators and racing officials.

29. JORDAN FISHMAN, the defendant, who is not a licensed veterinarian, manufactures PEDs at defendant SETH FISHMAN's direction, for the purpose of providing those substances to racehorse trainers and owners for administration to racehorses. JORDAN FISHMAN uses a facility that is not registered with the FDA for manufacturing animal drugs. LISA GIANNELLI and RICK DANE, JR, the defendants, have worked with FISHMAN to distribute adulterated and misbranded PEDs developed by SETH FISHMAN to racehorse trainers and others seeking to dope their racehorses, including by providing SETH FISHMAN's PEDs to racehorse trainers in and around New York state.

**Statutory Allegations**

30. From at least in or about August 2013 through at least in or about October 2019, in the Southern District of New York and elsewhere, SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, together with others known and unknown, willfully and knowingly did combine, conspire,

confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

31. It was a part and an object of the conspiracy that SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

32. It was further a part and an object of the conspiracy that SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs, in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

33. It was further a part and an object of the conspiracy that SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, together with others known and

unknown, with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

**Overt Acts**

34. In furtherance of the conspiracy and to effect the illegal objects thereof, SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, and RICK DANE, JR., the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. In or about February 2018, DANE caused SETH FISHMAN to provide misbranded and adulterated PEDs to DANE for administration to a racehorse under DANE's control, "Glass Prince."

b. On or about February 21, 2019, GIANNELLI assisted FISHMAN in processing a shipment for adulterated and misbranded drugs created by SETH FISHMAN to be shipped to an address in the Southern District of New York.

c. On or about March 7, 2019, SETH FISHMAN counseled a racehorse trainer, who is a co-conspirator not named herein, regarding the use of FISHMAN's customized and purportedly untestable blood building PEDs: "[T]hat's why we used the 'epo' mimetic. . . . they work like Epogen but they're not Epogen."

d. On or about April 3, 2019, JORDAN FISHMAN spoke by phone with SETH FISHMAN, who was located in the Southern District of New York, regarding the creation of a misbranded and adulterated PED.

e. On or about April 5, 2019, FISHMAN had a call with a prospective customer ("Individual-1") to discuss various misbranded and adulterated PEDs that FISHMAN manufactured and offered for sale. When questioned by Individual-1 on the propriety of administering the PEDs ("But it's not doping, yeah?"), FISHMAN responded: "[A]ny time you give something to a horse, that's doping. Whether or not they test for it is another story. . . . [D]on't kid yourself: if you're giving something to a horse to make it better, and you're not supposed to do that. . . That's doping. You know, whether or not it's testable, that's a different story."

f. On or about April 26, 2019, DANE sent GIANNELLI a text message regarding purchasing and delivering misbranded and adulterated drugs.

(Title 18, United States Code, Section 371.)

**COUNT THREE**

**(Drug Adulteration and Misbranding Conspiracy: Servis, Rhein, Kegley Jr., Chan, Argueta, and Navarro)**

The Grand Jury further charges:

35. The allegations set forth above in Paragraphs 1 through 5, 9, and 11 through 14, are realleged and incorporated by reference as if set fully forth herein.

36. Between at least in or about April 2019 to at least in or about September 2019, JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, engaged in a corrupt scheme to secretly procure and distribute adulterated and misbranded PEDs and administer them to racehorses in a systematic effort to improve race performance of racehorses under the defendants' and others' control, and obtain prize money as a result. Over the course of the scheme, SERVIS, RHEIN, KEGLEY, JR., CHAN, ARGUETA, and NAVARRO, and other co-conspirators not named herein, manufactured, purchased, sold, shipped, delivered, received, and administered PEDs for use on racehorses.

37. JASON SERVIS, the defendant, was the trainer for a particularly successful racehorse, "Maximum Security," that briefly placed first at the Kentucky Derby on May 4, 2019, before racing officials disqualified the horse for interference. Following the Kentucky Derby, Maximum Security continued to compete in high-profile races, including in Oceanport, New Jersey.

SERVIS worked with KRISTIAN RHEIN, ALEXANDER CHAN, and HENRY ARGUETA, the defendants, among others, to procure and administer adulterated and misbranded PEDs, including the adulterated and misbranded PED SGF-1000, for the purpose of doping several racehorses under SERVIS' control, including Maximum Security. On a March 5, 2019 intercepted call between SERVIS and JORGE NAVARRO, the defendant, SERVIS recommended "SGF" to NAVARRO, stating, "I've been using it on everything almost." NAVARRO stated on that call that he "got more than 12 horses on" SGF-1000, and shortly after ended the call: "I don't want to talk about this shit on the phone ok."

38. On or about June 5, 2019, New Jersey racing regulators tested Maximum Security for PEDs a short time after Maximum Security had received a shot of SGF-1000. The testing occurred in advance of a race scheduled for June 16, 2019, in which Maximum Security competed and placed second. On an intercepted call between JASON SERVIS and KRISTIAN RHEIN, the defendants, after the drug test, RHEIN counseled SERVIS and reassured him that Maximum Security would not test positive: "[t]hey don't even have a test for it [SGF-1000] . . . There's no test for it in America." RHEIN further stated that the SGF-1000 may appear on a drug test as a false positive result for a different substance, "Dex." That same day, SERVIS discussed Maximum Security's drug test with another veterinarian, who agreed to falsify records to make it

appear as if the racehorse had received "Dex," rather than SGF-1000.

39. KRISTIAN RHEIN and ALEXANDER CHAN, the defendants, have also coordinated regarding the sourcing and administration of SGF-1000, and engaged in efforts to secretly distribute and administer adulterated and misbranded PEDs and to counsel racehorse trainers and/or owners on the use of such substances, including the covert administration of such substances to avoid detection by the FDA and state regulatory authorities. They did so in furtherance of SERVIS and other trainers' efforts to administer adulterated and misbranded PEDs, for the purpose of secretly enhancing race performance. In connection with that scheme, CHAN provided false billing records that did not reflect drugs CHAN had injected into racehorses under SERVIS' control, and falsified his own prescription records as to which of SERVIS' racehorses received a particular prescription drug, concealing from potential investigators the true nature and means of administration of the PEDs that CHAN provided and administered at SERVIS' direction.

40. MICHAEL KEGLEY, JR., the defendant, was a sales director for a Kentucky-based drug company ("Firm-1"), which develops, compounds, manufactures, sells, and ships interstate various adulterated and misbranded PEDs, including "SGF-1000." KEGLEY has marketed SGF-1000 for sale online and distributed SGF-

1000 directly and through distributors, including KRISTIAN RHEIN, the defendant, who also acted as a sales representative and consultant for Firm-1. SGF-1000 is compounded and manufactured in various unregistered facilities and has been introduced in interstate commerce by, among others, JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, as discussed above. Despite marketing, selling, and administering SGF-1000, RHEIN and KEGLEY, JR. have acknowledged in intercepted calls that they in fact do not know the precise contents of SGF-1000. In calls and meetings recorded by a confidential source at the direction of law enforcement, KEGLEY JR. acknowledged the illegal nature of his actions, explaining in one such recording that racehorse trainers racing in the United States could be charged with felonies for doping racehorses.

41. JASON SERVIS, KRISTIAN RHEIN, ALEXANDER CHAN, MICHAEL KEGLEY, JR., HENRY ARGUETA, and JORGE NAVARRO, the defendants, have variously discussed the need to covertly transport and administer adulterated and misbranded PEDs to racehorses, and to hide the shipment and administration of adulterated and misbranded PEDs from federal and state government agencies, racing officials, and the betting public. For example:

a. On or about February 18, 2019, SERVIS warned NAVARRO, via text message, of the presence of a racing official in

the barn area where SERVIS and NAVARRO stored and administered PEDs to their respective racehorses. On the same day, during an intercepted call between NAVARRO and MICHAEL TANNUZZO (a defendant charged in Count One of this Indictment), NAVARRO explained, in part, that he otherwise would have been caught doping: "[H]e would've caught our asses fucking pumping and pumping and fuming every fucking horse [that] runs today."

b. On or about May 8, 2019, SERVIS and ARGUETA discussed the concealment from racing officials of a PED that they intended to administer to racehorse "World of Trouble."

**Statutory Allegations**

42. From at least in or about February 2019 through at least in or about October 2019, in the Southern District of New York and elsewhere, JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

43. It was a part and an object of the conspiracy that JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, together with others known and unknown, with the intent to defraud and mislead,

would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

44. It was further a part and an object of the conspiracy that JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. § 331(b) and 333(a)(2).

45. It was further a part and an object of the conspiracy that JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§

351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof for pay and otherwise, in violation of 21 U.S.C. § 331(c) and 333(a)(2).

**Overt Acts**

46. In furtherance of the conspiracy and to effect the illegal objects thereof, JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, and JORGE NAVARRO, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about March 5, 2019, SERVIS and NAVARRO coordinated regarding the procurement and administration of SGF-1000. During that call, SERVIS, stated: "I've been using it [SGF-1000] on everything almost," before NAVARRO stopped the conversation: "Jay we'll sit down and talk about this shit I don't want to talk about this shit on the phone, ok."

b. On or about May 8, 2019, SERVIS caused the transportation of a PED that had been concealed within other containers for use on a particular racehorse from New Jersey to Long Island, passing through the Southern District of New York.

c. On or about July 10, 2019, SERVIS and ARGUETA discussed the illegality, and planned the administration, of clenbuterol, a particular prescription drug that may be used as a PED, which CHAN administered to SERVIS' racehorses without a valid

prescription.

d. On or about July 24, 2019, KEGLEY JR. met with a confidential source in Kentucky and sold the confidential source SGF-1000.

e. On or about May 13, 2019, ARGUETA agreed to administer unprescribed clenbuterol to a racehorse trained by SERVIS that SERVIS expected to run at a racetrack on Long Island.

f. On or about July 16, 2019, RHEIN and KEGLEY, JR. discussed their sales of SGF-1000. KEGLEY, JR. noted that SERVIS and others working with SERVIS were "buying literally as much" SGF-1000 as RHEIN purchased from Firm-1. RHEIN bragged that he was selling "assloads" of SGF-1000. On that call, KEGLEY, JR. and RHEIN further discussed regulatory scrutiny of SGF-1000 and the benefits of re-labeling the packaging for SGF-1000 in order to avoid inquiries. KEGLEY, JR. stated, among other things: "[W]e can even put on the box, you know, 'dietary supplement for equine [horse].' That way it's not, no one even has to question if it's FDA approved or not - it's strictly a supplement. . . ."

g. On or about July 11, 2019, CHAN administered SGF-1000, to multiple racehorses, stating to RHEIN on an intercepted call that he had run out of the product because he "did like eight [horses] at, uh, SERVIS and six at" another stable that day.

(Title 18, United States Code, Section 371.)

**COUNT FOUR**

**(Drug Adulteration and Misbranding Conspiracy: Surick, Linke, Marino)**

The Grand Jury further charges:

47. The allegations set forth above in Paragraphs 1 through 4, and 10 through 14 are realleged and incorporated by reference as if set fully forth herein.

48. From at least in or about October 2017 to at least in or about February 2019, NICHOLAS SURICK, the defendant, has overseen the Surick Doping Program, described above. From 2018 to February 2020, SURICK entered horses in approximately 3,905 races.

49. In or about mid-2018, NICHOLAS SURICK, the defendant, began repeatedly purchasing Viagra pills, which are not approved for use in animals, to dope his racehorses.[3] SURICK also routinely administered a "bleeder" drug, which can be used as a PED to reduce bleeding in a horse's lungs during periods of exertion, to racehorses that have no medical need for the drug. NICHOLAS SURICK and REBECCA LINKE, the defendants, have also discussed LINKE ensuring that SURICK's veterinary bills are falsified to hide the purchase and administration of PEDs.

50. NICHOLAS SURICK, the defendant, undertook significant efforts to conceal his doping, as demonstrated by

[3] As a PED, Viagra, and its active ingredient, sildenafil, acts as a vasodilator, allowing greater blood flow within the body of the racehorse, and thereby improving muscle performance.

SURICK's and others' efforts to conceal a racehorse, "Northern Virgin," that SURICK had doped with Epogen, from state racing regulators who were conducting drug testing:

a. On or about December 17, 2018, NICHOLAS SURICK, the defendant, administered the misbranded PED Epogen to Northern Virgin without a valid prescription. Later that day, the New Jersey Racing Commission ("NJRC") attempted to conduct unannounced drug tests of SURICK's racehorses, including Northern Virgin. SURICK physically concealed Northern Virgin from the NJRC on that day.

b. On or about December 18, 2018, NJRC officials returned to SURICK's barn to conduct another unannounced test of SURICK's racehorses, including Northern Virgin. SURICK again coordinated with others, including CHRISTOPHER MARINO, the defendant, to conceal Northern Virgin from NJRC officials, and caused others to transport the racehorse to a different New Jersey farm. SURICK also enlisted others to lie to NJRC officials by claiming that Northern Virgin was never housed in SURICK's barn, had never been trained by SURICK, and in fact had been previously shipped to Ohio. SURICK in fact arranged to ship Northern Virgin to a trainer in Ohio on or about December 18, 2018.

c. The Federal Bureau of Investigation identified the barn at which SURICK had hidden Northern Virgin before it was shipped to Ohio, entered the barn, and collected a blood sample

from Northern Virgin. That sample later tested positive for the presence of erythropoietin.

d. SURICK, directly and through others involved in his cover-up, lied to NJRC authorities regarding the whereabouts and custody of Northern Virgin. The NJRC temporarily suspended SURICK for failing to produce Northern Virgin for drug testing, pending an investigation and hearing by the NJRC. Prior to the hearing, and during the course of the NJRC investigation, SURICK directed others to relate a cover story to the NJRC, and to destroy or falsify records to appear consistent with SURICK's false story. SURICK subsequently used, and directed others to use, an encrypted messaging service for the purpose of avoiding surveillance.

e. Following Northern Virgin's removal to Ohio, SURICK directed another trainer to administer blood-building PEDs to Northern Virgin in advance of the racehorse's return to the northeast. On or about February 26, 2019, Northern Virgin placed second at a race at a track located in the Southern District of New York.

## **Statutory Allegations**

51. From at least in or about October 2018 through at least in or about October 2019, in the Southern District of New York and elsewhere, NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO, the defendants, together with others known and unknown, willfully and knowingly did combine, conspire,

confederate, and agree together and with each other to commit offenses against the United States, to wit, violations of Title 21, United States Code, Sections 331 and 333(a)(2).

52. It was a part and an object of the conspiracy that NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO, the defendants, together with others known and unknown, with the intent to defraud and mislead, would and did introduce and deliver for introduction, and would and did cause the introduction and delivery for introduction, into interstate commerce, adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).

53. It was further a part and an object of the conspiracy that NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO, the defendants, together with others known and unknown, with the intent to defraud and mislead, in interstate commerce, would and did adulterate and misbrand drugs, and would and did cause the adulteration and misbranding of drugs in interstate commerce, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, in violation of 21 U.S.C. §§ 331(b) and 333(a)(2).

54. It was further a part and an object of the conspiracy that NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO, the defendants, together with others known and unknown,

with the intent to defraud and mislead, would and did receive in interstate commerce adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and deliver and proffer delivery thereof for pay and otherwise, and would and did cause the receipt in interstate commerce of adulterated and misbranded drugs, as defined by 21 U.S.C. §§ 351(a)(5), 352(a), 352(b), 352(f), 352(o), 353(f), and 360b, and cause the delivery and proffered delivery thereof and pay and otherwise, in violation of 21 U.S.C. §§ 331(c) and 333(a)(2).

**Overt Acts**

55. In furtherance of the conspiracy and to effect the illegal objects thereof, NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO, the defendants, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a. On or about January 2, 2019, SURICK directed a racehorse trainer in Ohio to continue administering blood-building PEDs to Northern Virgin in advance of a horse race scheduled at a racetrack in the Southern District of New York, stating: "whatever you have got to do . . . just make sure you keep his blood up."

b. On or about December 7, 2018, LINKE agreed to provide a racehorse trained by SURICK, "Control Tower," a PED the

day before Control Tower's December 8, 2018 race at a racetrack located in the Southern District of New York.

c. On or about January 14, 2019, SURICK, while located in the Southern District of New York, placed a call to another individual to discuss the ongoing investigation into SURICK's doping, during which SURICK indicated he would, in the future, communicate on that topic using an encrypted communication application.

d. On or about February 1, 2019, MARINO agreed to administer the prescription drug "clenbuterol" to a racehorse trained by SURICK, "Rock Icon," four days before Rock Icon's February 5, 2019 race at a racetrack located in the Southern District of New York.

(Title 18, United States Code, Section 371.)

**COUNT FIVE**
**(Obstruction: Surick)**

The Grand Jury further charges:

56. The allegations set forth above in Paragraphs 1 through 4, and 10 through 14, 48 through 50, and 55, are realleged and incorporated by reference as if set fully forth herein.

57. From at least on or about December 17, 2018, through at least in or about February 2019, in the Southern District of New York and elsewhere, NICHOLAS SURICK, the defendant, corruptly persuaded another person, and attempted to do so, and engaged in

misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a law enforcement officer and judge of the United States of information relating to the commission and possible commission of a Federal offense, to wit, SURICK instructed others to make false statements, and to falsify documents, relating to the whereabouts of the racehorse "Northern Virgin," which SURICK understood to be the subject of an investigation by state and federal authorities relating to the illegal administration of performance-enhancing drugs, and which was in fact the subject of a federal investigation in the Southern District of New York.

(Title 18, United States Code, Sections 1512(b)(3) & 2.)

**COUNT SIX**
**(Obstruction: Surick)**

58. The allegations set forth above in Paragraphs 1 through 4, and 10 through 14, 48 through 50, and 55, are realleged and incorporated by reference as if set fully forth herein.

59. From at least on or about December 17, 2018, through at least in or about February 2019, in the Southern District of New York and elsewhere, NICHOLAS SURICK, the defendant, corruptly altered, destroyed, mutilated, and concealed a record, document, and other object, and attempted to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, and otherwise obstructed, influenced, and impeded an

official proceeding, and attempted to do so, to wit, SURICK instructed others to falsify and/or destroy veterinary bills and other records, and to hide and remove the racehorse "Northern Virgin," in order to impair and impede an investigation which SURICK understood was ongoing by state and federal authorities relating to the illegal administration of performance-enhancing drugs, and which was in fact the subject of a federal investigation in the Southern District of New York.

(Title 18, United States Code, Sections 1512(c) & 2.)

**FORFEITURE ALLEGATIONS**

60. As a result of committing the offenses charged in Counts Five and Six of the Indictment, NICHOLAS SURICK, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

**Substitute Asset Provision**

61. If any of the above described forfeitable property, as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred or sold to, or deposited with, a third person;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value; or

e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

(Title 18, United States Code, Sections 981(a)(1)(C), Title 21, United States Code, Section 853, and Title 28, United States Code, Section 2461.)

FOREPERSON

GEOFFREY S. BERMAN
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

JORGE NAVARRO, ERICA GARCIA, CHRISTOPHER OAKES, MARCOS ZULUETA, MICHAEL TANNUZZO, GREGORY SKELTON, ROSS COHEN, SETH FISHMAN, LISA GIANNELLI, JORDAN FISHMAN, RICK DANE, JR., JASON SERVIS, KRISTIAN RHEIN, MICHAEL KEGLEY, JR., ALEXANDER CHAN, HENRY ARGUETA, NICHOLAS SURICK, REBECCA LINKE, and CHRISTOPHER MARINO

Defendants.

**SEALED INDICTMENT**

20 Cr.

(18 U.S.C. §§ 371, 1512 & 2)

GEOFFREY S. BERMAN

United States Attorney.

A TRUE BILL

Foreperson.

2/26/2020
NE

Sealed Indictment Filed
Arrest Warrant Included.

Sarah L. Cave
USMJ.