L83HRheP

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        20 Cr. 160 (MKV)

KRISTIAN RHEIN,

                                      Remote Plea
            Defendant.

------------------------------x

                                      New York, N.Y.
                                      August 3, 2021
                                      11:05 a.m.


Before:

                HON. MARY KAY VYSKOCIL,

                                      District Judge

                      APPEARANCES

AUDREY STRAUSS
     United States Attorney for the
     Southern District of New York
SARAH MORTAZAVI
     Assistant United States Attorney

STEPHEN P. SCARING
     Attorney for Defendant
```

L83HRheP

1                    (The Court and all parties present remotely)

2                    THE DEPUTY CLERK:  Good morning.  We're here in the

3          matter of 20 Cr. 160, United States of America v. Kristian

4          Rhein.

5                    Counsel, starting with the government, please state

6          your name for the record.

7                    MS. MORTAZAVI:  Good morning, your Honor.  This is

8          Sarah Mortazavi, for the government.

9                    THE COURT:  Good morning, Ms. Mortazavi.

10                   MR. SCARING:  Good morning, your Honor.  Stephen

11         Scaring, for the defendant.  The defendant is present next to

12         me.

13                   THE COURT:  All right.  That's Kristian Rhein?

14                   THE DEFENDANT:  Yes, your Honor.

15                   THE COURT:  All right.  Good morning.

16                   THE DEFENDANT:  Good morning.

17                   THE COURT:  All right.  We also have a court reporter

18         with us.  Ms. Robles, are you able to hear me and, more

19         importantly, counsel and the defendant clearly?

20                   THE REPORTER:  Yes, Judge, but Mr. Scaring is not on

21         my screen.

22                   THE COURT:  Yes, mine either, actually.

23                   It would be better, gentlemen, if you would move the

24         laptop or computer further away from you or if you move closer

25         together to each other.  I appreciate the COVID restrictions,

L83HRheP

1   but now I can't see the defendant.  He can move back a little

2   and over, too.  Thank you.

3          MR. SCARING:  How is that?

4          THE COURT:  We still can't see you, Mr. Scaring, but

5   that's all right.  When you speak at least, if you would lean

6   forward, that would be appreciated.

7          MR. SCARING:  I will do that.

8          THE COURT:  OK.  Thank you.

9          We're here this morning for a change of plea hearing

10   for Dr. Rhein.  The Court has been informed that the defendant

11   wishes to waive indictment and to plead guilty to a one-count

12   superseding information.

13          Is that correct, Ms. Mortazavi?

14          MS. MORTAZAVI:  That is correct, your Honor.

15          THE COURT:  All right.  Mr. Scaring?

16          MR. SCARING:  That is correct, your Honor.

17          THE COURT:  All right.  Before we go any further, it

18   is Dr. Rhein, right?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  All right.  Dr. Rhein, before we go any

21   further, do you speak and understand English clearly?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  You do not require the services of an

24   interpreter?

25          THE DEFENDANT:  No, Your Honor.

L83HRheP

1               THE COURT:  All right.  Thank you.

2               I'd note for the record that counsel and the defendant

3      are appearing before me by videoconference.  The defendant and

4      his lawyer, Mr. Scaring, are present together in the same room.

5               Let me just confirm with each participant that you can

6      all hear me clearly.

7               Ms. Mortazavi?

8               MS. MORTAZAVI:  Yes, I can hear and see you, your

9      Honor.

10               THE COURT:  And that includes the defendant and his

11      counsel as well, right?

12               MS. MORTAZAVI:  That's right.

13               THE COURT:  All right.  Thank you, Ms. Mortazavi.

14               Mr. Scaring, can you hear and see me and Ms. Mortazavi

15      clearly?

16               MR. SCARING:  Yes, I can, your Honor.

17               THE COURT:  All right.  Thank you.

18               And Dr. Rhein?

19               THE DEFENDANT:  Yes, I can, your Honor.

20               THE COURT:  All right.  Sir, you are most important of

21      all today, so if at any point, you cannot hear me or

22      Ms. Mortazavi, or you can't understand what I'm saying, it's

23      very important that you stop me and that we take care of any

24      technical difficulties.  All right?

25               THE DEFENDANT:  Yes, your Honor.

L83HRheP

1          THE COURT:  All right.  Thank you.

2          So, also, Dr. Rhein, if at any point you would like to

3     speak privately with your attorney, would you let me know that,

4     and we will make arrangements to mute the rest of us or the

5     rest of us will log off and come back on to give you privacy?

6          THE DEFENDANT:  Yes, your Honor.  Thank you.

7          THE COURT:  Thank you.

8          All right.  So, needless to say, we remain in the

9     midst of the COVID-19 pandemic, and as a result, I'm conducting

10    this proceeding remotely by videoconference pursuant to the

11    authority provided by Section 15002 of the CARES Act and

12    standing orders issued by our chief judges pursuant to that

13    act.

14         The CARES Act provides that a court may conduct a

15    felony plea proceeding by videoconference when (1) the chief

16    judge of the district orders that proceedings cannot be

17    conducted in person without seriously jeopardizing public

18    health and safety; and (2) when a district judge in a

19    particular case, in this case that is me, finds for specific

20    reasons that the plea in that case cannot be further delayed

21    without serious harm to the interest of justice.  By standing

22    order dated June 15, Chief Judge Laura Taylor Swain found that

23    felony pleas cannot be conducted in person without seriously

24    jeopardizing public health.

25         Before today's proceeding, I received from the

L83HRheP

1    government a proposed order and an affirmation which was filed

2    under seal.  That was sent to the Court by email requesting

3    that today's proceedings not be delayed.  Before I proceed with

4    the specific finding that I need to make, Ms. Mortazavi, why

5    does that affirmation need to be under seal?

6         MS. MORTAZAVI:  Your Honor, we made that request out

7    of an abundance of caution because it does, at least

8    glancingly, refer to the defendant and counsel's health

9    concerns.  If defense and counsel -- I'm sorry.  If defense

10   counsel and the defendant have no objection, we have no

11   objection to it being filed publicly.

12        THE COURT:  All right.  Mr. Scaring, I have to say

13   that, frankly, other than alluding to COVID-19, I do not really

14   see anything in this affirmation that required it to be under

15   seal, and that's not anything unique to Dr. Rhein.  That's a

16   public safety and health concern across the board.

17        Have you reviewed that affirmation, Mr. Scaring?

18        MR. SCARING:  I have, your Honor, and I would agree

19   with your Honor that it does not have to be filed under seal.

20        THE COURT:  All right.  Ms. Mortazavi, I would

21   request, then, that you please file it on the public docket.

22        MS. MORTAZAVI:  Certainly, your Honor.  We will do

23   that after this proceeding.

24        THE COURT:  All right.  Thank you very much.

25        So the affirmation that I received from the government

L83HRheP

| | |
|---|---|
| 1 | states that Dr. Rhein's interest in expeditiously resolving the |
| 2 | charges against him, as well as the escalated risk to him from |
| 3 | traveling to New York for this proceeding in light of the |
| 4 | COVID-19 pandemic constitutes specific reasons that this |
| 5 | proceeding should not be delayed. |
| 6 | Are there any additional reasons, Mr. Scaring, why |
| 7 | today's proceeding cannot be delayed without serious harm to |
| 8 | the interests of justice? |
| 9 | MR. SCARING:  No, your Honor.  We are ready to |
| 10 | proceed, and your Honor has outlined the reasons why it's been |
| 11 | requested that it be done by videoconference. |
| 12 | THE COURT:  All right.  In addition to the reasons |
| 13 | stated by the government, the Court does find for those reasons |
| 14 | and for the additional reason that it allows Dr. Rhein to |
| 15 | resolve a criminal case and end the difficult and stressful |
| 16 | situation of having an unresolved criminal proceeding pending |
| 17 | against him.  Moving forward also promotes judicial economy and |
| 18 | avoids adding to the inevitable backlog of cases in the federal |
| 19 | court system and the flood of requests for hearings that are |
| 20 | going to take place once we can all safely proceed in person |
| 21 | after the COVID-19 pandemic has abated.  And for those reasons, |
| 22 | I do find that this proceeding cannot be delayed without |
| 23 | serious harm to the interests of justice, and we will, |
| 24 | therefore, proceed today remotely. |
| 25 | Now, as I think you know, Dr. Rhein, you have a right |

1    to be present before me in open court in order to enter a plea

2    today.  I have received, in advance of today's conference, two

3    documents:  The first, a waiver of your right to be present at

4    a criminal proceeding, and the second, a consent to proceed by

5    videoconference.  One issue I need to raise first with your

6    lawyer -- two issues, actually.  Mr. Scaring, you do not seem

7    to have signed the waiver of right to be present at criminal

8    proceedings.

9              MR. SCARING:  I have -- I'm sorry, your Honor, I did

10   not.  It's copied on the back page, but I will sign it here.

11             THE COURT:  All right.  And then if you please scan

12   that and get it to Ms. Dempsey after today's proceeding.

13   Assuming everything is in order and I accept it, I will then

14   endorse it.

15             More importantly, though, with respect to the consent

16   to proceed by videoconference, it appears to be signed by

17   Dr. Rhein -- I'll confirm that in a moment -- and by you, but

18   you've checked the box that says "Arraignment."  We are not

19   here for an arraignment today; we're here for a plea.  Now, I

20   do acknowledge the final line says "Misdemeanor Plea," but you

21   need to cross that out and check "Felony Plea" if that, in

22   fact, is what is being consented to conduct by videoconference.

23             MR. SCARING:  Yes, your Honor.  The reason I put

24   arraignment is because on the information, he has not been

25   arraigned.

L83HRheP

1              THE COURT:  I see.  So we're doing both, technically.

2              MR. SCARING:  I will change that and forward it.

3              THE COURT:  Check both, then, sir.

4              MR. SCARING:  I did.

5              THE COURT:  You are correct, then, he is going to be

6      arraigned on the information and enter a plea of guilty,

7      correct?

8              MR. SCARING:  Yes, your Honor.

9              THE COURT:  That's what you intend to do today?

10              MR. SCARING:  I'm sorry, your Honor?

11              THE COURT:  That's what you're intending to do today?

12              MR. SCARING:  Yes, your Honor.

13              THE COURT:  All right.  Then change misdemeanor,

14      obviously, to felony, please.

15              MR. SCARING:  I've done that, and I'll forward it.

16              THE COURT:  All right.

17              Dr. Rhein, I want you to listen carefully to the

18      conversation I'd like to have with Mr. Scaring.

19              Mr. Scaring, I'd like you first to explain to me how

20      these documents were provided to Dr. Rhein, whether you've

21      explained to him that he has a right to appear before me in

22      open court pursuant to the Federal Rules of Criminal Procedure

23      in order to be arraigned on the information and to enter a

24      guilty plea.

25              Do you believe, based on the conversations you've had

1    with him, that Dr. Rhein understands those rights and is

2    willingly giving up his rights?

3              MR. SCARING:  Yes, your Honor, I'll do that.

4              The documents were emailed to me.  I had Dr. Rhein

5    come into my office.  I discussed both documents with him,

6    advised him what his rights were with regard to these waivers.

7    He said he understood it.  It was clear to me that he did

8    understand it.  I asked him if he had any questions.  He did

9    not have any questions.  He did not have any questions, and he

10   executed the documents in my presence in my office.

11             THE COURT:  All right.  Mr. Scaring, is that your

12   signature on the consent to proceed by videoconference?

13             MR. SCARING:  It is, your Honor.

14             THE COURT:  All right.  And you will affix your

15   signature to the waiver of the right to be present at a

16   criminal proceeding?

17             MR. SCARING:  I will do that, your Honor.

18             THE COURT:  All right.  Dr. Rhein, do you have copies

19   of these documents, or can you --

20             THE DEFENDANT:  Yes, your Honor, I do, in front of me.

21             THE COURT:  All right.  I wish to confirm, then, is

22   that your signature on the waiver of your right to be present

23   at criminal proceedings?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Do you understand that you have a right to

L83HRheP

1    appear before me in open court in order to be arraigned and to

2    enter a plea?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Do you consent, instead, to proceed today

5    by videoconference, both to be arraigned on the information and

6    to enter a plea?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  Did you discuss these forms with

9    Mr. Scaring before you signed them?

10       THE DEFENDANT:  Yes, your Honor, I did.

11       THE COURT:  Do you have any questions with respect to

12   your rights?

13       THE DEFENDANT:  No, Your Honor.

14       THE COURT:  All right.  Thank you.

15       All right.  I have one additional question for the

16   government before we move forward to the waiver of indictment

17   and arraignment and thereafter the plea.

18       The documents that I've received talk about a

19   preliminary order of forfeiture.  I do not have any such order.

20       MS. MORTAZAVI:  Mr. Scaring informed me just before

21   this proceeding that he had provided them to chambers, so I

22   apologize if the Court has not received them.  I did receive

23   them and can forward them now, unless Mr. Scaring wants to

24   clarify.  I don't mean to speak for him.

25       THE COURT:  Mr. Scaring?

L83HRheP

| | |
|---|---|
| 1 | MR. SCARING:  I'm not sure that I actually did forward |
| 2 | it to chambers, your Honor.  I have forwarded it to the |
| 3 | government.  My recollection is that I forwarded to the |
| 4 | government all the documents and requested that they would |
| 5 | review them and then forward them to the Court. |
| 6 | THE COURT:  All right.  Would someone please get them |
| 7 | to the Court?  I'll pause for a moment to -- Ms. Mortazavi, are |
| 8 | you doing that? |
| 9 | MS. MORTAZAVI:  (Nods head.) |
| 10 | THE COURT:  Yes, thank you. |
| 11 | MS. MORTAZAVI:  Sorry, your Honor.  I was just on |
| 12 | mute, but I am in the process of doing that now. |
| 13 | THE COURT:  Thank you. |
| 14 | I'm told by my clerk that he does now have it.  I |
| 15 | don't know where we got it from since you're both saying you |
| 16 | didn't send it. |
| 17 | MR. SCARING:  Actually, your Honor, I now recall that |
| 18 | I did send it, probably two or three days ago. |
| 19 | THE COURT:  OK. |
| 20 | MR. SCARING:  In any event -- |
| 21 | MS. MORTAZAVI:  Your Honor, I also just forwarded the |
| 22 | document, so it should be at the top of chambers' inbox, |
| 23 | hopefully. |
| 24 | THE COURT:  All right.  Thank you.  I do have it.  If |
| 25 | you'll just give me a moment, though, I have to try to print it |

L83HRheP

1    out.

2              As I think you know, I try to very carefully review

3    these things before the hearing.  So excuse me one moment.  I'm

4    going to just pause my video while I pick it up from my

5    printer.

6              MS. MORTAZAVI:  Certainly, your Honor.

7              THE COURT:  I'll be right back with you all.

8              (Pause)

9              THE COURT:  All right.  Thank you very much.  I have

10   received the preliminary order of forfeiture and reviewed it,

11   and I will enter that order as soon as we conclude today's

12   proceedings after I discuss it with Dr. Rhein.

13             So, Dr. Rhein, I'm informed that you have an

14   application to withdraw your plea of not guilty, and pursuant

15   to an agreement that you've entered into with the government,

16   waive indictment and enter a plea of guilty to a one-count

17   superseding information numbered S8 in Case 20 Cr. 160.  Is

18   that correct?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  Ms. Mortazavi, is that

21   consistent with the government's understanding?

22             MS. MORTAZAVI:  It is, your Honor.

23             THE COURT:  All right.  Thank you.

24             Dr. Rhein, Count One charges you with drug

25   adulteration and misbranding of drugs, in violation of

L83HRheP

1    21 U.S.C. Section 331 and 333(a)(2) and 18 United States Code,

2    Section 2.  In particular, the government alleges that you

3    marketed and distributed misbranded and adulterated drugs to

4    horse trainers and veterinarians of thoroughbred racehorses in

5    an effort to assist those people and to improve the performance

6    of the horses while avoiding detection of that misbranding and

7    adulteration scheme by drug regulators.

8            Is that accurate, Ms. Mortazavi?

9            MS. MORTAZAVI:  It is, your Honor.

10           THE COURT:  Mr. Scaring?

11           MR. SCARING:  It is, your Honor.

12           THE COURT:  All right.  Ms. Dempsey -- well,

13   Dr. Rhein, before I accept your plea of guilty, there are a

14   number of questions that I need to ask you, and I need for you

15   to be under oath while I ask you those questions.  The purpose

16   of the questions is to ensure that your plea is a valid one.  I

17   may at times cover a point more than once, and I may cover

18   matters that were addressed in various forms or agreements that

19   you've signed.  The reason I'm doing that is because it's very

20   important that you understand what's happening today.  If you

21   don't understand something, I ask you, please tell me that, and

22   I'll reword my question or I'll give you the opportunity to

23   talk with Mr. Scaring.

24           Will you do that, please?

25           THE DEFENDANT:  Yes, your Honor.

L83HRheP

1          THE COURT:  All right.  Thank you.

2          Ms. Dempsey, would you please administer the oath to

3     Dr. Rhein.

4          (Defendant sworn)

5          THE DEPUTY CLERK:  Thank you.  You can lower your

6     hand.

7          THE DEFENDANT:  Thank you.

8          THE COURT:  Dr. Rhein, do you understand that you have

9     now solemnly promised to tell the truth, and that if you answer

10    any of my questions falsely, your false or untrue answers may

11    later be used against you in another prosecution for perjury or

12    for making a false statement?

13          Do you understand that?

14          THE DEFENDANT:  I do, your Honor.

15          THE COURT:  All right.  Can you tell me, sir, how old

16    are you?

17          THE DEFENDANT:  I'm 49.

18          THE COURT:  And how far did you go in school?

19          THE DEFENDANT:  I graduated from veterinary school.

20          THE COURT:  All right.  That's post college?

21          THE DEFENDANT:  Yes, ma'am.  Yes, your Honor.

22          THE COURT:  How many years?

23          THE DEFENDANT:  Four years.

24          THE COURT:  Four years.

25          After you received a Bachelor's degree?

L83HRheP

1              THE DEFENDANT:  Yes.  Yes, your Honor.

2              THE COURT:  All right.  And you speak and understand

3     English well?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Are you a citizen of the United States?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Were you born here, or were you

8     naturalized as a United States citizen?

9              THE DEFENDANT:  I was born in the United States, your

10    Honor.

11             THE COURT:  All right.  Thank you.

12             Are you now, or have you recently been, under the care

13    of a medical doctor?

14             THE DEFENDANT:  Yes, your Honor, for cancer.  I had

15    testicular cancer that had metastasized in 2013, so I was

16    treated at Sloan Kettering Hospital for a year.

17             THE COURT:  When was that, sir?

18             THE DEFENDANT:  In 2013.

19             THE COURT:  Are you still under the care of a medical

20    doctor?

21             THE DEFENDANT:  Just for yearly checkups at this

22    point, your Honor.

23             THE COURT:  Thank you.

24             Are you now, or have you recently been, under the care

25    of any mental health professionals?

L83HRheP

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Have you ever been treated or hospitalized

3    for any mental illness?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Have you ever been treated or hospitalized

6    for any addiction, including drugs or alcohol?

7          THE DEFENDANT:  No, your Honor.

8          THE COURT:  Have you ever been addicted to drugs or to

9    alcohol?

10          THE DEFENDANT:  No, Your Honor.

11          THE COURT:  In the past 24 hours, have you taken any

12    drugs, any medication, any pills whatsoever?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  In the past 24 hours, have you had any

15    alcohol to drink?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Is your mind clear today, Dr. Rhein?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Are you feeling well physically?  Are you

20    healthy today?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Are you represented by counsel, sir?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Who's your counsel?

25          THE DEFENDANT:  Stephen Scaring.

L83HRheP

|       | |
|-------|---|
| 1 | THE COURT:  Are you satisfied with the representation |
| 2 | you've received from Mr. Scaring? |
| 3 | THE DEFENDANT:  Yes, your Honor. |
| 4 | THE COURT:  You've had an ample opportunity to consult |
| 5 | with him in advance of today's hearing? |
| 6 | THE DEFENDANT:  Yes, your Honor. |
| 7 | THE COURT:  Do you need any more time to talk to |
| 8 | Mr. Scaring before we proceed? |
| 9 | THE DEFENDANT:  No, your Honor. |
| 10 | THE COURT:  All right.  Do either counsel have any |
| 11 | doubt as to the defendant's competence to plead at this time? |
| 12 | Mr. Scaring? |
| 13 | MR. SCARING:  No, your Honor. |
| 14 | THE COURT:  Ms. Mortazavi? |
| 15 | MS. MORTAZAVI:  No, your Honor. |
| 16 | THE COURT:  All right.  Dr. Rhein, your attorney has |
| 17 | informed me that you wish to withdraw your plea of not guilty, |
| 18 | that you wish to waive indictment, and to enter a plea of |
| 19 | guilty to a superseding information.  Is that, in fact, what |
| 20 | you wish to do today? |
| 21 | THE DEFENDANT:  Yes, your Honor. |
| 22 | THE COURT:  Have you discussed your case fully with |
| 23 | your attorney, including the charges to which you intend to |
| 24 | plead guilty and any possible defenses to those charges? |
| 25 | THE DEFENDANT:  Yes, your Honor. |

L83HRheP

1           THE COURT:  Have you discussed with Mr. Scaring the

2     consequences of entering a plea of guilty?

3           THE DEFENDANT:  Yes, your Honor.

4           THE COURT:  Are you satisfied with Mr. Scaring's

5     advice to you in connection with these issues?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  All right.  On the basis of Dr. Rhein's

8     responses to my questions and my observation of his demeanor, I

9     do find that he's fully competent to enter an informed plea at

10    this time.

11          Now, Dr. Rhein, before we get to the plea itself, I

12    need to make sure that you understand the rights you're giving

13    up by waiving indictment in this case.  The document that

14    contains the charges to which you've indicated you wish to

15    plead guilty is called an information.  That document has been

16    issued by the United States Attorney for the Southern District

17    of New York.  You have, however, a constitutional right to be

18    charged by an indictment rather than an information, and an

19    indictment is a charge that would be issued by a grand jury.

20          Do you understand that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  I have before me a document labeled

23    "Waiver" -- it's not labeled, but a waiver of indictment.  I'm

24    going to mark that as Court Exhibit 1.

25          Mr. Scaring, do you have that document?

L83HRheP

1          MR. SCARING:  I do, your Honor, and I've handed it to
2     the defendant.
3          THE COURT:  All right.  Dr. Rhein, that document
4     appears to be signed by you.  Is that correct, is that your
5     signature on this document?
6          THE DEFENDANT:  Yes, your Honor.
7          THE COURT:  All right.  And that document is dated
8     July 28, 2021, correct?
9          THE DEFENDANT:  Yes, it is, your Honor.
10          THE COURT:  Did you read this document before you
11     signed it?
12          THE DEFENDANT:  Yes, your Honor, I did.
13          THE COURT:  Did you discuss it with Mr. Scaring?
14          THE DEFENDANT:  Yes, I did, your Honor.
15          THE COURT:  All right.  Mr. Scaring, is that your
16     signature on the document?
17          MR. SCARING:  It is, your Honor.
18          THE COURT:  All right.  I do have one -- no, I'm fine
19     with this.
20          All right.  Dr. Rhein, do you understand that if you
21     don't waive indictment, if the government wishes to prosecute
22     you on the facts and charges that are contained in the
23     information, it would have to present that case to a grand
24     jury, which might or might not indict you on the charge?
25          Do you understand that?

L83HRheP

1                THE DEFENDANT:  I do, your Honor.

2                THE COURT:  Do you understand that you're under no

3     obligation to waive indictment by a grand jury?

4                THE DEFENDANT:  I do, your Honor.

5                THE COURT:  Do you realize that by signing this waiver

6     of indictment, you're giving up your right to have your case

7     presented to a grand jury?

8                THE DEFENDANT:  Yes, I do, your Honor.

9                THE COURT:  Do you understand what a grand jury is,

10    Dr. Rhein?

11               THE DEFENDANT:  Yes, I do, your Honor.

12               THE COURT:  Have you been informed that a grand jury

13    consists of 23 people, of which at least 16 would have to be

14    present in order to conduct business, and you could not be

15    charged unless at least 12 of those people vote in favor of

16    indictment?

17               Do you understand all of that?

18               THE DEFENDANT:  I do, your Honor.

19               THE COURT:  All right.  Did anyone make any threats or

20    any promises to you in order to get you to waive indictment?

21               THE DEFENDANT:  No, your Honor, they did not.

22               THE COURT:  Has any coercion been applied in order to

23    get you to waive indictment?

24               THE DEFENDANT:  No, your Honor.

25               THE COURT:  Has anyone used force in order to get you

L83HRheP

1  to waive indictment?

2         THE DEFENDANT:  No, your Honor.

3         THE COURT:  All right.  Have you seen, Dr. Rhein, a

4  copy of the superseding information that contains the charge

5  against you?

6         THE DEFENDANT:  Yes, I have, your Honor.

7         THE COURT:  Have you read this document carefully?

8         THE DEFENDANT:  Yes, your Honor.

9         THE COURT:  Have you discussed it with your attorney?

10         THE DEFENDANT:  I have, your Honor.

11         THE COURT:  Do you understand the charges against you

12  that are laid out in this information?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  All right.  Dr. Rhein, I can read the

15  superseding information out loud now into the record if you

16  would like me to do so or you may waive public reading.  Do you

17  need me to read the information aloud or do you waive public

18  reading?

19         THE DEFENDANT:  I would waive the public reading, your

20  Honor.

21         THE COURT:  All right.  Thank you, Dr. Rhein.

22         I do find that Dr. Rhein has knowingly and voluntarily

23  waived indictment by a grand jury.  I accept and will so order

24  the waiver of indictment.

25         Now, Dr. Rhein, before I accept any plea from you, I

L83HRheP

```
 1    need to ask you certain additional questions.  Those questions

 2    are intended to satisfy me that you are pleading guilty because

 3    you are, in fact, guilty and that you fully understand your

 4    rights and the consequences of your plea.  I'm now going to

 5    describe to you certain rights that you have under the

 6    Constitution and laws of the United States.  You will be giving

 7    up these rights if you enter a plea of guilty, so please listen

 8    very carefully.  If you don't understand something I'm saying,

 9    I remind you to please stop me, and either I or Mr. Scaring

10    will explain it to you more fully, and if you need to talk to

11    Mr. Scaring privately, we will make those arrangements.

12            Will you please let me know if you need either for me

13    to clarify or to speak with Mr. Scaring?

14            THE DEFENDANT:  I will, your Honor.  Thank you.

15            THE COURT:  All right.  Dr. Rhein, under the

16    Constitution and the laws of the United States, you have a

17    right to a speedy and a public trial by a jury on the charges

18    against you, which are contained in the superseding

19    information.

20            Do you understand that?

21            THE DEFENDANT:  I do, your Honor.

22            THE COURT:  Do you understand that you have the right

23    to plead not guilty and to continue to plead not guilty to that

24    charge?

25            THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  Do you understand that if there were a

2    trial, you would be presumed innocent and the government would

3    be required to prove you guilty by competent evidence and

4    beyond a reasonable doubt?  You would not have to prove at

5    trial that you were innocent.

6          Do you understand that?

7          THE DEFENDANT:  I do, your Honor.

8          THE COURT:  Do you further understand that if there

9    were a trial, the jury made up of 12 people selected from this

10   district, and that's the Southern District of New York, would

11   have to agree unanimously in order to find you guilty?

12         Do you understand that?

13         THE DEFENDANT:  I do, your Honor.

14         THE COURT:  Thank you.

15         If there were a trial, Dr. Rhein, you would have the

16   right to be represented by an attorney at trial and at all

17   other stages of the proceeding, and if you couldn't afford one,

18   an attorney would be provided to you free of cost.

19         Do you understand that?

20         THE DEFENDANT:  I do, your Honor.

21         THE COURT:  If there were a trial, you would have the

22   right to see and to hear all of the witnesses against you, your

23   attorney could cross-examine them, you would have the right to

24   have your attorney object to the government's evidence and to

25   offer evidence on your behalf if you so desired, you would have

L83HRheP

1  the right to have witnesses required to come to court to

2  testify in your defense, and you would have the right to

3  testify yourself, but you would not be required to testify.

4          Do you understand all of that?

5          THE DEFENDANT:  I do, your Honor.

6          THE COURT:  Do you understand that if there were a

7  trial and you decided not to testify, no adverse inference

8  could be drawn against you based on your decision not to

9  testify, and by that, I mean the jury would not be allowed to

10  assume that you didn't testify because you're hiding something?

11          Do you understand that?

12          THE DEFENDANT:  I do, your Honor.

13          THE COURT:  Do you understand that if you were

14  convicted at trial, you would have the right to appeal that

15  verdict?

16          THE DEFENDANT:  I do, your Honor.

17          THE COURT:  Do you understand each and every one of

18  these rights, sir?

19          THE DEFENDANT:  I do, your Honor.

20          THE COURT:  Do you have any questions about these

21  rights?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Do you wish to speak to Mr. Scaring at

24  this time?

25          THE DEFENDANT:  No, your Honor.

L83HRheP

1          THE COURT:  All right.  Do you understand that by

2     entering a plea of guilty today, you'll be giving up each and

3     every one of these rights?  You will be waiving these rights.

4     And do you understand that you'll be waiving any possible claim

5     that your constitutional rights may have been violated and you

6     will not have a trial?

7          Do you understand all of that?

8          THE DEFENDANT:  I do, your Honor.

9          THE COURT:  Do you further understand that by entering

10     a plea of guilty, you'll also have to give up the right not to

11     incriminate yourself, because in a few moments, I will ask you

12     questions about what you did in order to satisfy myself that

13     you are guilty as charged, and you'll have to admit and

14     acknowledge your guilt?

15          Do you understand that?

16          THE DEFENDANT:  I do, your Honor.

17          THE COURT:  Do you understand that you can change your

18     mind right now and refuse to enter a plea of guilty?  You do

19     not have to enter this plea if, for any reason, you do not want

20     to do so.

21          Do you understand that?

22          THE DEFENDANT:  I do, your Honor.

23          THE COURT:  All right.  Dr. Rhein, you've already told

24     me that you received a copy of the superseding information in

25     this case and that you've read it, correct?

L83HRheP

1          THE DEFENDANT:  That is correct, your Honor.

2          THE COURT:  Did Mr. Scaring discuss that information

3    with you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  All right.  As I've said, you're charged

6    in Count One of the superseding information with misbranding

7    and adulterating drugs for use in the covert doping of

8    thoroughbred racehorses.  Specifically, the information charges

9    you with marketing and distributing drugs to horse trainers and

10   veterinarians to assist those people to improve the performance

11   of thoroughbred racehorses and to avoid detection by drug

12   regulators.

13          Is that your understanding, sir?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Ms. Mortazavi, would you

16   please state for the record the elements of the offense with

17   which Dr. Rhein has been charged in Count One of the

18   superseding information.

19          MS. MORTAZAVI:  Yes, your Honor.

20          THE COURT:  Thank you.

21          MS. MORTAZAVI:  If this case were to proceed to trial,

22   the government would have to prove beyond a reasonable doubt

23   the following elements of the charged crime:  First, that the

24   defendant adulterated or misbranded a drug in at least one way

25   or caused another to adulterate or misbrand a drug;

L83HRheP

1          Second, that the drug was in interstate commerce or

2     was introduced into interstate commerce;

3          And, third, that the defendant had the intent to

4     defraud or mislead;

5          And, finally, the government would have to prove venue

6     by a preponderance of the evidence.

7          THE COURT:  All right.  Dr. Rhein, do you understand

8     that the government would have to prove each and every one of

9     those elements or parts of the offense that Ms. Mortazavi just

10    laid out with respect to Count One beyond a reasonable doubt at

11    trial if you did not plead guilty?

12         THE DEFENDANT:  Yes, I do, your Honor.

13         THE COURT:  Do you understand the matters that the

14    government would have to prove if you didn't plead guilty?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  All right.  Dr. Rhein, do you understand

17    that the maximum possible term of imprisonment for the offense

18    alleged in Count One to which you're pleading guilty is a term

19    of imprisonment of up to three years?

20         THE DEFENDANT:  I do, your Honor.

21         THE COURT:  Do you understand that Count One can also

22    include a maximum term of supervised release after you're

23    released from prison of one year?

24         THE DEFENDANT:  Yes, your Honor, I do.

25         THE COURT:  In addition to these restrictions on your

L83HRheP

liberty, do you understand the maximum possible punishment for

Count One also includes certain financial penalties?  Do you

understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the maximum fine

allowed for the offense with which you're charged is $10,000 or

twice the gross pecuniary gain relating to the offense or twice

the loss to others other than yourself as a result of the

offense, whichever is greater?

THE DEFENDANT:  I do, your Honor.

THE COURT:  Do you understand that there's a mandatory

superseding indictment of $100 for each count to which you

plead guilty?

THE DEFENDANT:  I do, your Honor.

THE COURT:  Do you understand that as part of your

plea agreement, you've agreed to forfeit to the United States a

sum of money representing the proceeds traceable to the

commission of the offense in Count One to which you are

pleading guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  All right.  Specifically, and this is

related to the order that I asked for a copy of at the very

beginning of today's hearing, specifically you have agreed to

forfeit $1,021,800, representing the value of forfeitable

property you obtained as a result of the offense charged in

L83HRheP

1    Count One.

2            Is that your understanding, sir?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  All right.  Do you understand that

5    pursuant to the preliminary order of forfeiture to which you

6    have consented -- well, you have consented to that, correct?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  You had an opportunity to review that

9    preliminary order of forfeiture with your counsel?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  All right.  And pursuant to that

12    preliminary order of forfeiture, you must pay at least $671,800

13    of the forfeiture amount before I sentence you in this case.

14    Is that your understanding, sir?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  And the remaining $350,000 will be paid on

17    a schedule that's set out in the order of forfeiture.  Is that

18    your understanding?

19            THE DEFENDANT:  Yes, your Honor.

20            THE COURT:  All right.  Ms. Mortazavi, is there a

21    schedule set out in this preliminary consent order, or are you

22    contemplating a subsequent order of forfeiture at the time of

23    sentencing?

24            MS. MORTAZAVI:  There is, your Honor.  It is in

25    paragraph 2, which is on page 3 of the consent order of

L83HRheP

1    forfeiture.

2              THE COURT:  Yes.  And that specifies that the

3    remaining $350,000 will be paid within or by the expiration of

4    24 months following the latter of either the date of the

5    defendant's sentencing or his release from any term of

6    incarceration, correct?

7              MS. MORTAZAVI:  That's correct, your Honor.

8              THE COURT:  Is that your understanding, Dr. Rhein?

9              THE DEFENDANT:  It is, your Honor.

10             THE COURT:  All right.  Thank you.

11             The Court will enter the preliminary order of

12   forfeiture, if I have not already said that.

13             Do you understand, Dr. Rhein, that pursuant to that

14   preliminary order of forfeiture, a judgment will be entered

15   against you?

16             THE DEFENDANT:  Yes, your Honor, I do.

17             THE COURT:  Give me one moment.

18             And there will be a money judgment in the amount of

19   $1,021,800 in United States currency, representing the value of

20   forfeitable property that will be entered against you.  That is

21   your understanding, sir, correct?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  All right.  Do you understand, then, that

24   if you fail to make payments pursuant to this order on the

25   schedule that's laid out in the order, the government will be

L83HRheP

1    able to seek the entire forfeiture amount of $1,021,800

2    immediately?

3              THE DEFENDANT:  I do, your Honor.

4              THE COURT:  Do you further understand that that

5    forfeiture amount will not reduce the amount of any fine,

6    restitution, cost of imprisonment, the mandatory special

7    assessment, or any other penalty that the Court may impose?

8              THE DEFENDANT:  Yes, I understand, your Honor.

9              THE COURT:  All right.  Do you agree that you've

10   also -- I'm sorry.  Do you understand that you've also agreed

11   in your plea agreement to make restitution to others who are

12   not victims of the conduct charged in Count One in the amount

13   of $729,716?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  All right.  Do you understand that payment

16   of that restitution amount will be a condition of any period of

17   parole or supervised release that is imposed at the time of

18   sentencing?

19             THE DEFENDANT:  I do.  I do, your Honor, yes.

20             THE COURT:  All right.  Ms. Mortazavi, I'd like you to

21   explain two things to me.  One is:  Are you intending to

22   provide the Court a list or evidence of who those victims are

23   for purposes of the restitution payment?

24             MS. MORTAZAVI:  Your Honor, yes.  Typically, we

25   include a schedule of victims that we submit to the Court under

L83HRheP

1    seal, for obvious reasons, at the time of sentencing.

2             THE COURT:  All right.  You'll do that at the time of

3    sentencing.  In connection with your submission?

4             MS. MORTAZAVI:  In connection with our submission,

5    yes, your Honor, but, as I mentioned, it will be -- there will

6    be an application to file that under seal given the victim

7    information.

8             THE COURT:  Yes.  Yes, I understand that.

9             All right.  Now, the further question I have for you,

10   Ms. Mortazavi, first, I'd like you to explain on the record a

11   statement, which, frankly, I find a little bit ambiguous.  Let

12   me pull out the plea agreement so that I'm quoting it

13   precisely.  This is with respect to forfeiture.  Then I would

14   like to hear from Mr. Scaring and Dr. Rhein about their

15   understanding.

16            OK.  On page 2, the second full paragraph towards the

17   middle reads:  "The defendant's restitution obligation shall be

18   joint and several with any amount of restitution ordered by the

19   Court to be paid by any other defendant reflecting restitution

20   owed to victims of the offense conduct charged in Count Four,

21   the mail and wire fraud conspiracy of *U.S. v. Navarro, et al.*,

22   at 620 Cr. 160 (NKV) or in any superseding charging document

23   charging the same offense conduct."

24            Can you explain to me how that provision operates?

25            MS. MORTAZAVI:  Certainly, your Honor.  How this

L83HRheP

1    provision is intended to operate, and as we've explained to

2    defense counsel, if there are any defendants who are convicted

3    of the same offense conduct, they will, of course, have to pay

4    restitution as well.  That will be a fixed amount that will be

5    shared jointly and severally among the defendants.  This

6    provision is intended to make that explicit, that if anyone

7    else is convicted and has a restitution obligation, that it

8    will be joint and several, and it also allows for the

9    possibility, by referencing a superseding charging document, of

10   defendants pleading to a future information that would

11   encompass the same offense conduct, but under a new instrument.

12          THE COURT:  Other defendants?

13          MS. MORTAZAVI:  Correct.

14          So if --

15          THE COURT:  Does that have the potential to increase

16   the restitution amount?

17          MS. MORTAZAVI:  It likely does not.  If the

18   restitution amount were to change for some reason, what we

19   would do is apportion the amount that is specified here that

20   Dr. Rhein is responsible for as joint and several and the

21   remainder as solely the obligation of the defendant who has to

22   pay it who may plead in the future or be convicted in the

23   future.

24          THE COURT:  All right.  Mr. Scaring, have you

25   discussed this provision, in particular, with Dr. Rhein?

L83HRheP

1          MR. SCARING:  I have, your Honor.

2          THE COURT:  Dr. Rhein, let me ask you, is your

3    understanding of the restitution obligation, specifically the

4    joint and several liability aspect of it, consistent with what

5    Ms. Mortazavi has just outlined on the record?

6          THE DEFENDANT:  Yes, it is, your Honor.

7          THE COURT:  Do you have any questions about the

8    restitution obligation?

9          THE DEFENDANT:  No, your Honor.

10         THE COURT:  All right.  So let me ask you, then, do

11   you understand, Dr. Rhein, that your obligation to make

12   restitution is joint and several with any amount of restitution

13   I order to be paid by any other defendant in this case in

14   connection with conduct charged in Count Four of the

15   superseding indictment numbered S6 in this case or any

16   subsequent superseding indictment?

17         THE DEFENDANT:  Yes, I understand, your Honor.

18         THE COURT:  All right.  Do you understand that that

19   means the amount of your restitution payment may change, but

20   only lessen -- correct, Ms. Mortazavi -- based on what I order

21   other defendants to pay?

22         MS. MORTAZAVI:  That's correct, your Honor, that that

23   amount would be joint and several with any other defendant

24   ordered to pay the same amount.

25         THE COURT:  But the amount that Dr. Rhein is obligated

L83HRheP

1  to pay cannot increase, is what I'm getting at, from the amount

2  of $729,716; it may only potentially be lessened if other

3  jointly and severally liable defendants are ordered to pay

4  restitution, correct?

5          MS. MORTAZAVI:  Yes, that is correct, your Honor.

6          THE COURT:  Is that consistent with your

7  understanding, Dr. Rhein?

8          THE DEFENDANT:  Yes, it is, your Honor.

9          THE COURT:  All right.  Thank you.

10         All right.  Dr. Rhein, I want to give you some

11  information about the supervised release aspect of your

12  potential penalty.  Supervised release means that once you are

13  released from prison on any sentence that I might impose, you

14  will be subject to monitoring, and certain terms and conditions

15  will be imposed upon you.  If you violate any of those set

16  terms and conditions, you can be reimprisoned without a jury

17  trial.

18         Do you understand that?

19         THE DEFENDANT:  Yes, your Honor, I do.

20         THE COURT:  Do you understand that if you're on

21  supervised release and do not comply with any of the set terms

22  and conditions, you can be returned to prison for up to one

23  year and will be given no credit for the time you served in

24  prison as a result of your sentence and no credit for the time

25  that you spent on post-release supervision prior to any

L83HRheP

1   violation?

2           Do you understand that?

3           THE DEFENDANT:  Yes, your Honor, I do.

4           THE COURT:  All right.  You should understand,

5   Dr. Rhein, that there is no parole in the federal system.  If

6   you are sentenced to prison, you will not be released early on

7   parole, although there is a limited opportunity to earn credit

8   for good behavior, but you would have to serve at least

9   85 percent of the time to which you are sentenced.

10          Do you understand that?

11          THE DEFENDANT:  Yes, I do, your Honor.

12          THE COURT:  Do you understand that if I accept your

13  guilty plea and adjudge you guilty, that adjudication may

14  deprive you of certain valuable civil rights, such as the right

15  to vote, the right to hold public office, the right to serve on

16  a jury, the right to possess any kind of firearm, if you

17  currently have or could otherwise obtain such rights?

18          Do you understand that?

19          THE DEFENDANT:  Yes, your Honor, I do.

20          THE COURT:  All right.  Dr. Rhein, you have told me

21  that you are a United States citizen.  I accept your

22  representation, but, at the same time, I need to be clear on

23  the record that if that is not, in fact, the case, or if you

24  are a naturalized citizen, do you understand that as a result

25  of your plea, there could then be adverse effects on your

L83HRheP

immigration status, including deportation, following completion

of your sentence, removal or deportation from the United

States?

Do you understand that?

THE DEFENDANT:  Yes, your Honor, I do.

THE COURT:  Did you discuss your immigration situation

and possible consequences on your immigration status of your

plea with your attorney?

THE DEFENDANT:  Yes, your Honor, I did.

THE COURT:  All right.  Dr. Rhein, I now want to talk

to you about something called the sentencing guidelines.  Under

current law, there are sentencing guidelines that a judge must

consider in determining your sentence.

Have you spoken with Mr. Scaring about the sentencing

guidelines?

THE DEFENDANT:  Yes, your Honor, I have.

THE COURT:  Do you understand that in addition to

considering the sentencing guidelines, in imposing sentence, I

must consider certain additional factors that are set forth in

a statute known as Title 18, United States Code, Section 3553.

Do you understand that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Has Mr. Scaring explained to you those

3553 factors?

THE DEFENDANT:  Yes, he has, your Honor.

L83HRheP

1          THE COURT:  All right.  Do you understand that the

2     Court has discretion, while taking the sentencing guidelines

3     into account, to sentence you to any period of imprisonment up

4     to three years if you plead guilty to Count One?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that even though the

7     plea agreement includes a stipulated or agreed-to sentencing

8     guidelines calculation, the Court cannot determine your

9     sentence until after a presentence report has been completed by

10    the probation department and you and your lawyer and the

11    government each have a chance to review that report and to

12    challenge any of the facts that are reported in it by the

13    probation office?

14          Do you understand that?

15          THE DEFENDANT:  Yes, your Honor, I do.

16          THE COURT:  Do you understand that according to the

17    plea agreement, and specifically pages 2 and 3, you have agreed

18    with the government that the calculation of the guidelines

19    range in this case results in a sentence range of 135 to 168

20    months, but because the statutory maximum penalty for the crime

21    to which you tell me you wish to plead guilty is three years,

22    the range appropriate to the offense in Count One is 36 months?

23          Is that consistent with your understanding?

24          THE DEFENDANT:  Yes, it is, your Honor.

25          THE COURT:  In addition, the applicable fine range for

L83HRheP

1    the offense to which you are pleading guilty is $35,000 to

2    $350,000, but, again, there is a maximum fine of $10,000 or two

3    times the -- excuse me, let me just find my notes.

4           I'm sorry.  The maximum fine allowed is $10,000 or

5    twice the gross pecuniary gain relating to the offense or twice

6    the loss to persons other than yourself as a result of the

7    offense, notwithstanding that the guidelines calculation for

8    the fine range is 35,000 to 350,000.

9           Do you understand that?

10          THE DEFENDANT:  Yes, I think I do, your Honor.

11          THE COURT:  Do you need to speak with Mr. Scaring

12   about it?

13          THE DEFENDANT:  No.  No, your Honor.

14          THE COURT:  Did you have a question for me?  You say

15   you think you understand that?

16          THE DEFENDANT:  No, it was just -- I just took a

17   moment to hear it all and take it all in.  I do understand it.

18          THE COURT:  All right.  Thank you.

19          All right.  Do you understand that that stipulation

20   that you've entered into with the government does not bind the

21   Court or the probation department with respect to the facts on

22   which it's based, how to apply the guidelines to the facts, or

23   what will be an appropriate sentence in your case?

24          Do you understand that?

25          THE DEFENDANT:  Yes, your Honor, I do.

1          THE COURT:  All right.  Now, Dr. Rhein, as the Court

2     reads the plea agreement, you've agreed to a number of

3     enhancements that are applicable in this case, including the

4     following:  That the intended loss to victims of your conduct

5     was between 25 million and 65 million;

6          That you used sophisticated means to accomplish your

7     crime, which normally means operating across multiple

8     jurisdictions, hiding assets or transactions, or using

9     fictitious entities or offshore accounts;

10          Next, that you were an organizer or a leader of

11     criminal activity that involved five or more persons;

12          And, finally, that you abused a position of public

13     trust or used special skills to facilitate or conceal your

14     crime.

15          Is it consistent with your understanding that you are

16     stipulating to those enhancements?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  All right.  Do you understand that I may

19     decide to impose a sentence that is outside of the guidelines

20     range, Dr. Rhein?

21          THE DEFENDANT:  Yes, your Honor, I do.

22          THE COURT:  All right.  Do you understand that if your

23     lawyer or anyone else has attempted to estimate or to predict

24     for you what your sentence will be, their estimate or their

25     prediction could well be wrong?

L83HRheP

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor, I do.

3          THE COURT:  Do you understand that no one -- not even

4    your lawyer or the government -- can, nor should, give you any

5    assurance of what your sentence will be since that sentence

6    cannot be determined until after the probation department

7    report is completed and I have ruled on any challenges to the

8    report and I have determined what the appropriate sentence is?

9          Do you understand that?

10         THE DEFENDANT:  Yes, your Honor, I do.

11         THE COURT:  Do you understand that even if your

12   sentence is different from what your attorney or anyone else

13   suggested to you that it might be or if it's different from

14   what you expected or if you're surprised or disappointed by

15   your sentence, if you enter a plea of guilty today, you will be

16   bound to that guilty plea, and you will not be allowed to

17   withdraw your plea at the time of sentencing.

18         Do you understand that?

19         THE DEFENDANT:  Yes, I do, your Honor.

20         THE COURT:  All right.  Do you understand that even if

21   the government doesn't oppose or take a position on what your

22   attorney will ask me to impose as your sentence, I'm obligated

23   to impose the sentence that I believe is appropriate under the

24   circumstances and the applicable law, and you will have no

25   right to withdraw your plea of guilty after today?

L83HRheP

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor, I do.

3          THE COURT:  Do you understand that you have the right

4    to appeal your sentence under certain circumstances even if

5    your plea agreement provides that you're waiving your right to

6    appeal?

7          THE DEFENDANT:  Yes, your Honor, I understand.

8          THE COURT:  All right.  Dr. Rhein, are you serving any

9    state or federal sentence at this time?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Are you being prosecuted right now for any

12   other crime, state or federal?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  All right.  Let's talk, Dr. Rhein, about

15   the plea agreement in a little bit more detail.  I have been

16   given a copy of this agreement, which I believe we've marked as

17   Government Exhibit 1.  If not, I will do that now.

18          Did you -- this is a seven-page letter on the

19   letterhead of the United States Department of Justice for the

20   Southern District of New York, dated July 28, 2021, addressed

21   to Stephen P. Scaring, and it is signed by Andrew Adams and

22   approved by Alexander Wilson on behalf of the government.  It

23   indicates it's been agreed and consented to, it appears, by you

24   and by your lawyer.

25          Is that your signature, Dr. Rhein, on the last page of

L83HRheP

1    this document?

2              THE DEFENDANT:  Yes, it is, your Honor.

3              THE COURT:  Mr. Scaring, is that your signature

4    beneath Dr. Rhein's?

5              MR. SCARING:  It is, your Honor.

6              THE COURT:  All right.  Dr. Rhein, did you read this

7    letter agreement before you signed it?

8              THE DEFENDANT:  I did, your Honor.

9              THE COURT:  Did you discuss it fully with Mr. Scaring?

10             THE DEFENDANT:  I did, your Honor.

11             THE COURT:  Did he explain to you all of its terms and

12   conditions?

13             THE DEFENDANT:  Yes, your Honor, he did.

14             THE COURT:  Did you fully understand the agreement

15   before you signed it?

16             THE DEFENDANT:  Yes, your Honor, I did.

17             THE COURT:  Did you have ample opportunity to discuss

18   it with Mr. Scaring before you signed it?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you have any questions today about this

21   agreement?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Do you need to discuss it with Mr. Scaring

24   before we proceed?

25             THE DEFENDANT:  No.  No, your Honor.

L83HRheP

1          THE COURT:  All right.  Thank you.

2          Do you understand, Dr. Rhein, that your plea agreement

3  provides on pages 4 and 5 that you are giving up your right to

4  appeal or to seek habeas corpus relief or otherwise challenge

5  your sentence under the statute 28 United States Code,

6  Section 2255 and/or Section 2241 if I sentence you within or

7  below the guidelines range set forth in the plea agreement?

8          THE DEFENDANT:  Yes, I understand, your Honor.

9          THE COURT:  Do you understand that you're under no

10  obligation to waive your right to appeal or otherwise litigate

11  your sentence?

12          THE DEFENDANT:  Yes, your Honor, I understand.

13          THE COURT:  Do you understand that your plea agreement

14  provides on page 5 that you're waiving any right to appeal or

15  attack your conviction on the basis that the government didn't

16  provide discovery materials, exculpatory materials,

17  excepting -- I'm sorry, excepting information that would

18  establish factual innocence or any other material to impeach

19  government witnesses against you?

20          Do you understand that?

21          THE DEFENDANT:  I do, your Honor.

22          THE COURT:  Do you understand that, similarly, you are

23  under no obligation to waive those rights?

24          THE DEFENDANT:  Yes, your Honor, I understand.

25          THE COURT:  Do you understand that you have agreed in

L83HRheP

1  this plea agreement, on page 3, that you will not move for a

2  downward departure under the sentencing guidelines or seek any

3  adjustment under the guidelines that is not described in the

4  plea agreement, but you can make arguments for a lower sentence

5  under the general sentencing statute that I described to you,

6  Section 3553(a)?

7            Do you understand that?

8            THE DEFENDANT:  Yes.  Yes, your Honor, I do.

9            THE COURT:  And do you understand that you're under no

10  obligation to enter into any such agreement?

11            THE DEFENDANT:  Yes, your Honor, I understand.

12            THE COURT:  Do you understand that your plea agreement

13  provides that you're waiving any challenge to your plea and

14  your sentence based on any immigration consequences of your

15  plea regardless of any advice that you may have received

16  regarding immigration consequences?

17            THE DEFENDANT:  Yes, I understand, your Honor.

18            THE COURT:  Do you understand that you're under no

19  obligation to make this waiver?

20            THE DEFENDANT:  I do, your Honor.  I understand.

21            THE COURT:  All right.  Did you enter into this plea

22  agreement with the government freely, sir?

23            THE DEFENDANT:  Yes, I did, your Honor.

24            THE COURT:  Were there any threats, coercion, force

25  used in order to induce you to enter into this agreement?

L83HRheP

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Does the agreement accurately reflect your

3    complete and total understanding of the entire agreement

4    between the government, you, and your attorney?

5          THE DEFENDANT:  Yes, it does, your Honor.

6          THE COURT:  Is everything you understand about your

7    plea and your sentence to this point covered in this plea

8    agreement?

9          THE DEFENDANT:  Yes, your Honor, it is.

10          THE COURT:  Has anything been left out?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  All right.  Do you have any questions

13    about the plea agreement?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  All right.  Apart from what's contained in

16    this plea agreement, have any promises been made to you in

17    order to get you to plead guilty?

18          THE DEFENDANT:  No, your Honor.

19          THE COURT:  All right.  Knowing all of what we've just

20    discussed, Dr. Rhein, do you still wish to plead guilty

21    pursuant to this plea agreement?

22          THE DEFENDANT:  Yes, your Honor, I do.

23          THE COURT:  All right.  Mr. Scaring, do you know of

24    any valid reason why your client would prevail at trial or why

25    your client should not be permitted to plead guilty at this

L83HRheP

1    time?

2           MR. SCARING:  No, your Honor.

3           THE COURT:  All right.  Dr. Rhein, I would need for

4    you at this time to tell me, in your own words, what it is that

5    makes you guilty of the crime to which you are entering a plea.

6    I need you to tell me what you did, when you did it, with whom

7    you did it, why you did it.

8           THE DEFENDANT:  Yes, your Honor.  From at least in or

9    about December 2016 through at least in or about March 2020, in

10   the Southern District of New York and elsewhere, I marketed and

11   distributed in interstate commerce misbranded and adulterated

12   drugs to trainers and veterinarians of thoroughbred racehorses

13   in an effort to assist those trainers and veterinarians to

14   improve the performance of their racehorses through the

15   administration of such misbranded and adulterated drugs while

16   avoiding detection of that scheme by federal and state drug

17   regulators.

18          THE COURT:  All right.  Sir, I mentioned to you

19   earlier that you have agreed in your plea agreement to certain

20   enhancements in connection with the sentencing guidelines.  I'd

21   like you to talk to me about those, please.

22          And then, Ms. Mortazavi, I would like to hear from the

23   government, if there's anything additional you wish to say with

24   respect to these enhancements.

25          All right.  So the first is that the intended loss to

L83HRheP

1    victims of your conduct was between 25 million and 65 million.

2    Dr. Rhein --

3              MR. SCARING:  If I may respond first?

4              THE COURT:  Who is speaking, please?

5              MR. SCARING:  Stephen Scaring.

6              THE COURT:  All right.  Mr. Scaring, I can't see you.

7              MR. SCARING:  I'm sorry, your Honor.  Can you see me

8    now?

9              THE COURT:  Yes, half of you.

10              MR. SCARING:  All right.  Judge, I did not prepare him

11    for those questions that your Honor has now addressed to him.

12    I think it would be easier if -- and I have not discussed this

13    in any great detail with the government.  We've discussed it

14    generally, but I'd like to hear first what the government has

15    to say, and then I'd like a short recess to discuss it further

16    with the defendant.

17              THE COURT:  All right.  Ms. Mortazavi, any objection

18    to that?

19              MR. SCARING:  I didn't anticipate that your Honor

20    would --

21              THE COURT:  I'm sorry?  No, I didn't hear the end of

22    what Mr. Scaring said.

23              MR. SCARING:  I said I did not anticipate that your

24    Honor would ask those questions.

25              THE COURT:  All right.  Ms. Mortazavi, as you know,

1  there comes a point in time I ask you what evidence you have.

2  I do think it would be good, for the sake of good order, for

3  the government to talk to or address these four enhancements,

4  if you're able to do so.  I will then allow a recess for

5  Mr. Scaring to talk with Dr. Rhein, and I'd like Dr. Rhein to

6  acknowledge that the government's -- he does not disagree.

7        I mean, you've already agreed to these things in the

8  plea agreement, and I'm simply trying to confirm that, in fact,

9  that is the agreement.  You've already said it is.  But as with

10  the allocution to the offense, I would like to know from the

11  defendant that he is, in fact -- that these enhancements are,

12  in fact, true and accurate.

13        Ms. Mortazavi?

14        MS. MORTAZAVI:  Yes, your Honor.

15        THE COURT:  Do you need a break now?

16        MS. MORTAZAVI:  I do not, your Honor, and if it's more

17  efficient, I'm happy to speak to the evidence that the

18  government has and then also specifically address each

19  enhancement in the plea agreement.

20        THE COURT:  All right.  That would be fine.

21        Dr. Rhein, listen very carefully because I'm taking

22  this a little out of order.  At a later point in time, I would

23  ask the government to summarize its evidence against you after

24  I asked you a few additional questions, but let's let

25  Ms. Mortazavi do that now, and she will address these four

1   enhancements, and then after you speak with Mr. Scaring, I need

2   to know from you, in your own words, are these enhancements, in

3   fact, true and accurate and are you guilty of them.

4           Ms. Mortazavi.

5           MS. MORTAZAVI:  Thank you, your Honor.

6           Were this case to proceed to trial, the government

7   would present the following proof:

8           Wire intercepts of calls involving Kristian Rhein and

9   others promoting and discussing SGF-1000, including the fact

10  that that drug was untestable on drug tests, and including

11  discussions regarding relabeling the product once there was

12  increased law enforcement and regulatory scrutiny of the

13  legality of using SGF-1000, particularly on racehorses.

14          We would have evidence of controlled purchases of

15  SGF-1000 made before and after there was increased law

16  enforcement scrutiny of the drug in which the labeling of the

17  drug had been altered later so that the drug was described as

18  homeopathic in order, specifically, to avoid regulatory

19  detection.

20          Archived web pages advertising SGF-1000 on the website

21  of its manufacturer with promotional materials stating that

22  SGF-1000 contained, among other things, multiple growth factors

23  and that it operated as a vasodilator.  We would also have

24  evidence of later versions of these same web pages, again after

25  there was increased scrutiny of the drug, in which the

description was altered again to suggest that it was
homeopathic.

False veterinary bills issued by Dr. Rhein's
veterinary practice to racehorse owners in which charges for
SGF-1000 were hidden, as well as charges for the prescription
drug clenbuterol that was distributed to trainers without a
valid prescription and that was not specifically included on
those veterinary bills, but was, as with SGF-1000, hidden.

We would have proof of shipments of SGF-1000 into the
United States from overseas into MediVet distribution center in
Kentucky, MediVet being the distributing company.  And we would
also have shipping records showing that company's shipments of
SGF-1000 across the United States, including into the Southern
District of New York.

We would have lay and expert testimony that the drugs
Dr. Rhein promoted and sold were not approved by the FDA; that
they were mislabeled in multiple ways; that the drugs were
distributed without valid prescriptions; and that MediVet, the
manufacturer, was not registered to manufacture those drugs;
and that Dr. Rhein and others in his veterinary practice
distributed clenbuterol to trainers even though there was no
valid prescription for distributing clenbuterol or
administering clenbuterol to horses.

And, your Honor, to speak to the enhancements in the
plea agreement, specifically to the extent my general overview

L83HRheP

1    did not cover them, on page 2, under offense level paragraph 4,

2    which states that the loss amounts --

3            THE COURT:  You're talking about the plea agreement,

4    I'm sorry?

5            MS. MORTAZAVI:  Yes, your Honor.  Pardon me.

6            THE COURT:  Yes, thank you.

7            MS. MORTAZAVI:  Page 2 of the plea agreement,

8    paragraph 4 --

9            THE COURT:  Dr. Rhein, you may want to look at this.

10            Thank you, Ms. Mortazavi.  I'm sorry.

11            MS. MORTAZAVI:  That's all right.  I'm just waiting

12    for Dr. Rhein to pick up the document.  It seems he has it in

13    front of him.

14            THE COURT:  Yes.

15            MS. MORTAZAVI:  The offense level is increased by 22

16    levels because of the intended loss amount between $25 million,

17    but less than $65 million.  That represents the figure of first

18    winnings of trainers who the government could prove were using

19    SGF-1000 on their horses, and it is confined to the actual

20    purse winnings that those trainers got from the horses who

21    received SGF-1000.

22            The next enhancement is for sophisticated means, and

23    that is applied, as I described earlier, because of the ways in

24    which this drug was designed.  In order to avoid detection, it

25    was specifically --

L83HRheP

1              MR. SCARING:  I'm sorry, I'm not hearing.

2              MS. MORTAZAVI:  Mr. Scaring, can you hear me now?

3              MR. SCARING:  I can now.

4              MS. MORTAZAVI:  OK.

5              THE COURT:  When did you not --

6              MR. SCARING:  Please start over again.

7              THE COURT:  At what point, on sophisticated means or

8    the loss amount?

9              MR. SCARING:  No, sophisticated means.

10             THE COURT:  Yes.

11             MS. MORTAZAVI:  All right.  With respect to the

12   sophisticated means, that is specifically because this drug was

13   designed and at least advertised in a manner such that it could

14   not be detectable on drug tests.  That was something that

15   Dr. Rhein discussed with others, he discussed it in promoting

16   the drug, and, in fact, the drug operated in such a manner as

17   to be undetectable on drug tests, even as there was a hefty

18   charge for that drug of several hundred dollars for multiple

19   shots and even as it was continuously used by particular

20   trainers on their horses, and commentary was being made on the

21   effects of the drug on the horses, which, apparently, the

22   trainers could anecdotally see.

23             As well, the manufacturer itself was well established

24   in Kentucky, had a warehouse -- a fulfillment center and

25   distributed this drug across the United States and employed

Dr. Rhein as a consultant and as a representative and as

someone who promoted and sold the drug, as well, through his

veterinary practice.

        The next enhancement is due to the defendant's

position as an organizer or leader of criminal activity that

involved five or more participants.  That is because he was the

head of his veterinary practice, which had five or more

employees, and multiple people within his veterinary practice

were privy to some of the conduct that I just described and

helped facilitate that conduct in various ways.

        And the next and final enhancement is that the

defendant abused a position of public or private trust or used

a special skill to facilitate the commission or concealment of

the offense, and that is due to the defendant's position as a

veterinarian, which is a skilled and licensed position.  It

allowed him to handle these drugs and store these drugs and

make it appear as if they were legitimate because they were

commingled with other drugs that he could lawfully have in his

possession, when, in fact, this drug, in particular, was

illegal because it was adulterated and misbranded.

        THE COURT:  All right.  Thank you.

        Mr. Scaring, you wanted an opportunity to talk with

Dr. Rhein, so we'll take a brief pause here.

        Let me just make sure, Ms. Robles, our court reporter,

are you OK with that?

L83HRheP

| | |
|---|---|
| 1 | THE REPORTER:  Yes, Judge.  No problem. |
| 2 | THE COURT:  Thank you very much. |
| 3 | We'll take a brief pause.  I'm going to turn off my |
| 4 | video.  Mr. Scaring, if you would please email my courtroom |
| 5 | deputy when you are ready to resume.  And you should mute your |
| 6 | line so that no one can hear your conversation with Dr. Rhein. |
| 7 | It is muted, I note for the record. |
| 8 | (Recess) |
| 9 | THE COURT:  All right.  Are we ready to proceed, |
| 10 | Ms. Dempsey? |
| 11 | THE DEPUTY CLERK:  Yes, your Honor. |
| 12 | THE COURT:  All right.  Ms. Robles, are you able to |
| 13 | hear me and -- |
| 14 | THE REPORTER:  Yes, Judge, I am. |
| 15 | THE COURT:  Let's just do an audio check. |
| 16 | Ms. Mortazavi, would you just weigh in so we can be |
| 17 | sure everyone can hear you? |
| 18 | MS. MORTAZAVI:  Certainly.  And I'll say for the |
| 19 | record that I can see and hear your Honor and defense counsel |
| 20 | and the defendant. |
| 21 | THE COURT:  Thank you, Ms. Mortazavi. |
| 22 | Mr. Scaring, can you hear me and Ms. Mortazavi? |
| 23 | MR. SCARING:  Yes, your Honor, I can hear you both and |
| 24 | I can see both of you.  Thank you. |
| 25 | THE COURT:  All right.  Dr. Rhein, are you able to see |

L83HRheP

1    and hear me and Ms. Mortazavi?

2                THE DEFENDANT:  Yes, your Honor, I am.

3                THE COURT:  All right.  Thank you.

4                Ms. Robles, did you note for the record the time at

5    which we took a break?

6                THE REPORTER:  I believe it was 12:20.

7                THE COURT:  So the Court has roughly the same

8    estimate, so the record should just reflect that counsel and

9    Dr. Rhein were afforded plenty of time, certainly more than

10   45 minutes, I think approaching more like an hour, to confer

11   with one another.

12               Are you prepared to proceed, Mr. Scaring?

13               MR. SCARING:  I am, your Honor.  Thank you.

14               THE COURT:  All right.  Dr. Rhein, are you still

15   wishing to proceed with entry of a plea of guilty?

16               THE DEFENDANT:  Yes, your Honor.

17               THE COURT:  All right.  I had asked you when we broke

18   to please provide me with details regarding the four

19   enhancements that are laid out in the plea agreement.  You

20   previously told me that you did agree to those four

21   enhancements, that you understood them, when I was talking with

22   you earlier.  You did not cover some of the specifics, although

23   others, like, for example, abusing a position of trust or

24   particular skill, obviously, you have told me that you are a

25   veterinarian, so, obviously, you do have particularized skill

L83HRheP

1    and training.  Nonetheless, Ms. Mortazavi laid out on the

2    record what the government believes it would be able to prove

3    with respect to the charges against you as well as, then, the

4    enhancements.  So you have heard the government's position.  I

5    would like to hear from you, in your own words, confirmation

6    that each of the four enhancements, which are relevant to

7    calculating what your sentence ought to be, are, in fact, true

8    and accurate and that you're agreeing to them because they are,

9    in fact, true.

10           So, Dr. Rhein?

11           THE DEFENDANT:  Yes, your Honor.  Thank you for your

12    patience in this matter.  It's greatly appreciated.

13           For the sentencing guidelines and the enhancements,

14    the first being intended loss --

15           THE COURT:  Yes.

16           THE DEFENDANT:  -- I was advised by my attorney that

17    the government's proof regarding the winnings of Jason Servis

18    amounted to this number.

19           MR. SCARING:  Give the number.

20           THE DEFENDANT:  The 26 million.  I am not -- I am not

21    a part of the winnings, so I was not privy to that number other

22    than what was provided to me.

23           THE COURT:  All right.  Mr. Scaring, you have the

24    information from the government, and you have confirmed these

25    details and spoken with Dr. Rhein, and, Dr. Rhein, you are

L83HRheP

1    freely and voluntarily agreeing that the intended loss amount

2    is greater than 25 million and less than 65 million?

3            THE DEFENDANT:  That is correct, your Honor.

4            THE COURT:  All right.  And that is predicated on

5    purses for races -- hold on.

6            MR. SCARING:  I spoke to --

7            THE COURT:  Hold on.

8            -- purses for races in which Jason Servis was the

9    trainer of the horses?

10           MR. SCARING:  Was that directed to me or to my client?

11           THE COURT:  Your client.

12           THE DEFENDANT:  Yes, that's what I was advised.

13           THE COURT:  All right.  But is it Jason Servis to whom

14    you provided --

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  -- the drugs?

17           THE DEFENDANT:  Yes.  Yes, your Honor.

18           THE COURT:  All right.  Thank you.

19           The second enhancement -- let me pause there.

20           Ms. Mortazavi, is there anything further that you

21    believe I need to ask Mr. Rhein with respect to the intended

22    loss amount?

23           MS. MORTAZAVI:  No, I do not, your Honor.  We have

24    discussed this at length with Mr. Scaring.

25           THE COURT:  All right.  With respect to the

L83HRheP

1    sophisticated means of committing the offense?

2              THE DEFENDANT:  Yes, your Honor.  Sophisticated means

3    that I, along with Jason Servis, concealed the administration

4    of SGF-1000 and clenbuterol from the owners by billing for

5    other services and dispensables to avoid scrutiny by the

6    owners, that is correct.

7              THE COURT:  And you did, in fact, do that, sir?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  Do you specifically design things so that

10   these drugs could not be detectable, correct?

11             MR. SCARING:  I'm sorry, your Honor, interrupting.

12   I'm not sure I understand that question.  He said that -- when

13   you say "designed these," I don't understand that.

14             MS. MORTAZAVI:  Your Honor --

15             THE COURT:  He designed his interactions with Jason

16   Servis and told the trainer, Mr. Servis, that the drugs would

17   not be detectable.  Is that accurate?

18             MR. SCARING:  Yes, it is, your Honor.  I didn't

19   understand how you used the word --

20             THE COURT:  Let me hear from the defendant.

21             Dr. Rhein, is that accurate?

22             THE DEFENDANT:  Yes.  Yes, your Honor, that is

23   correct.

24             THE COURT:  All right.  I'm sorry.  I'm sorry,

25   Dr. Rhein.  Go ahead.

1          THE DEFENDANT:  Go ahead.  You were going to say
2     something.  I don't want to speak out of turn.  I'm sorry.
3          THE COURT:  I wasn't.  I was going to ask
4     Ms. Mortazavi if she had anything further, but I interrupted
5     you when you said "Yes, that is correct."
6          THE DEFENDANT:  Yes, yes.  We were confused on design,
7     and I completely understand what you meant, so, yes.
8          THE COURT:  Is that accurate?
9          THE DEFENDANT:  Yes, your Honor, that was what I
10    informed -- I informed my client of that fact as it pertained
11    to the drug SGF-1000, that it would be not able to be detected,
12    because that was provided to me by a person who had tested the
13    drug, and I'm -- so that was 100 percent a correct statement.
14         That's it.  Sorry.
15         THE COURT:  And your client is Jason Servis?
16         THE DEFENDANT:  Yes.  Yes, your Honor.
17         THE COURT:  Ms. Mortazavi, anything further that I
18    need to ask Dr. Rhein in connection with the second
19    enhancement?
20         MS. MORTAZAVI:  No, your Honor.  And I believe he's
21    clarified, and it is the government's understanding he did not
22    personally create the drug, so he did not design it, but the
23    scheme was designed in such a way, that he took advantage of
24    that fact, yes.
25         THE COURT:  All right.  With respect to the

L83HRheP

1    enhancement involving you being an organizer or a leader of

2    criminal activity involving five or more participants,

3    Dr. Rhein, would you please tell me, in your own words, the

4    facts that support that enhancement?

5         THE DEFENDANT:  Yes.  That I, along with Jason Servis,

6    were leaders and organizers of the five people, which included

7    my associate, Dr. Alexander Chan, Jason's assistant, Henry

8    Argueta, my other associate, Juliana Suarez, and Michael

9    Keckley.

10         THE COURT:  All right.  And with regard to the fourth

11    enhancement, that you abused a position of public or private

12    trust or used a special skill in a manner that facilitated the

13    commission or concealment of your offense?

14         THE DEFENDANT:  Yes, your Honor, because I was a

15    veterinarian, I am held to a much higher standard as a

16    professional, and I betrayed that trust to the people that I

17    was -- not only the horses I was taking care of, but also to

18    all the people that listened to me and know me and trust in my

19    professional opinion.

20         THE COURT:  All right.  And you are licensed as a

21    veterinarian, correct?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  All right.  Anything further,

24    Ms. Mortazavi, that you wish me to address in connection with

25    defendant's plea allocution?

L83HRheP

<table>
<tbody>
<tr><td>1</td><td>MS. MORTAZAVI:  No, your Honor.</td></tr>
<tr><td>2</td><td>THE COURT:  All right.  Dr. Rhein, the only question</td></tr>
<tr><td>3</td><td>I'd like to ask you additionally is when you did all of what</td></tr>
<tr><td>4</td><td>you've described to me, both before or after the break, did you</td></tr>
<tr><td>5</td><td>know that what you were doing was wrong?</td></tr>
<tr><td>6</td><td>THE DEFENDANT:  Yes, your Honor, I see --</td></tr>
<tr><td>7</td><td>THE COURT:  I'm sorry.</td></tr>
<tr><td>8</td><td>THE DEFENDANT:  Go ahead.</td></tr>
<tr><td>9</td><td>THE COURT:  No, you said -- did you know it was wrong?</td></tr>
<tr><td>10</td><td>THE DEFENDANT:  Yes, your Honor.</td></tr>
<tr><td>11</td><td>THE COURT:  And you were going to continue.</td></tr>
<tr><td>12</td><td>THE DEFENDANT:  I was going to say that it was not --</td></tr>
<tr><td>13</td><td>it's OK.  I'm sorry, I just have a lot on my mind.</td></tr>
<tr><td>14</td><td>THE COURT:  All right.  Did you know at the time you</td></tr>
<tr><td>15</td><td>did what you did, that what you were doing was illegal?</td></tr>
<tr><td>16</td><td>THE DEFENDANT:  I'm under oath, your Honor.</td></tr>
<tr><td>17</td><td>MR. SCARING:  May I have a word with my client, your</td></tr>
<tr><td>18</td><td>Honor?</td></tr>
<tr><td>19</td><td>THE COURT:  Yes.</td></tr>
<tr><td>20</td><td>MR. SCARING:  We'll just step out.</td></tr>
<tr><td>21</td><td>(Counsel conferred with defendant)</td></tr>
<tr><td>22</td><td>THE COURT:  All right.  Are you ready to proceed,</td></tr>
<tr><td>23</td><td>Dr. Rhein?</td></tr>
<tr><td>24</td><td>You're muted on your end, Mr. Scaring.</td></tr>
<tr><td>25</td><td>Yes, Dr. Rhein, are you ready to proceed?</td></tr>
</tbody>
</table>

L83HRheP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  I posed the question to you,

3     at the time that you did what you told me you did, did you know

4     that it was wrong and illegal?

5          THE DEFENDANT:  Yes, your Honor, I did.

6          THE COURT:  All right.  Ms. Mortazavi, is there

7     anything further at this point that the government wishes me to

8     address with Dr. Rhein?

9          MS. MORTAZAVI:  No, your Honor.  I believe the Court

10    has asked all the questions necessary in order to accept his

11    plea.

12         THE COURT:  All right.  Anything further from you,

13    Mr. Scaring?

14         MR. SCARING:  No, Your Honor.  Thank you.

15         THE COURT:  All right.  Ms. Mortazavi, you have fully

16    outlined on the record previously the evidence that the

17    government would intend to introduce, correct?

18         MS. MORTAZAVI:  That's correct, your Honor.

19         THE COURT:  All right.  Dr. Rhein, having had the

20    conversation we've had about your plea agreement and the

21    possible penalties of the crime to which you are pleading, the

22    Court is prepared to turn at this time to entry of your plea.

23         Are you prepared to proceed?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  All right.  Dr. Rhein, how do you plead to

L83HRheP

1   Count One of the superseding information charging you with drug

2   adulteration and misbranding with the intent to mislead

3   regulators?

4            THE DEFENDANT:  Guilty.

5            THE COURT:  Are you pleading guilty, Dr. Rhein,

6   because you are, in fact, guilty?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Are you pleading guilty voluntarily?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  And are you doing so of your own free

11   will?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Has anyone threatened you, coerced you,

14   made promises to you, or used violence in any way to induce you

15   to plead guilty?

16           THE DEFENDANT:  No, your Honor.

17           THE COURT:  All right.  Mr. Scaring, are there any

18   other questions you believe I should ask Mr. Rhein -- I'm

19   sorry, ask Dr. Rhein at this point?

20           MR. SCARING:  No, your Honor.  Thank you.

21           THE COURT:  Ms. Mortazavi, are there any other

22   questions you believe I need to ask Dr. Rhein in connection

23   with his plea?

24           MS. MORTAZAVI:  No, your Honor.

25           THE COURT:  All right.  Dr. Rhein, you have

acknowledged that you are, in fact, guilty as charged in Count

One of the superseding information.  Because I am satisfied

that you know your rights, including your right to go to trial,

and that you are waiving those rights voluntarily, and you're

aware of the consequences of your plea, including the sentence

that may be imposed, I find that your plea is entered knowingly

and voluntarily and is supported by an independent basis in

fact containing each of the essential elements of the offense.

I accept your guilty plea, and I now enter a judgment of guilty

on Count One of the superseding information charging you with

drug adulteration and misbranding with the intent to defraud or

mislead.

          Now, Dr. Rhein, the next step in the process -- I

alluded to this earlier -- is that the probation department,

probation officer, will prepare a presentence report to assist

me in determining the appropriate sentence in this case.

You'll be interviewed by the probation office.  It's very

important that the information you give the probation officer

be truthful and it be accurate.  That report is very important

to me and my decision about what an appropriate sentence will

be.  You and your lawyer have a right and an opportunity, as I

said before, to examine that report once a draft is prepared,

as will Ms. Mortazavi and the other government lawyers, you'll

have the right to challenge it, to comment on that report,

before it is finalized.  At the time of your sentencing, you

L83HRheP

1    will have the opportunity to speak on your own behalf.

2              Is there any reason, in the opinion of counsel, why I

3    should not direct a presentencing report to be prepared?

4              MR. SCARING:  No, your Honor.

5              THE COURT:  Mr. Scaring?

6              MR. SCARING:  No, your Honor.

7              THE COURT:  Ms. Mortazavi?

8              MS. MORTAZAVI:  No, your Honor.

9              THE COURT:  All right.  Mr. Scaring, do you wish to be

10   present for any interview in connection with that report?

11             MR. SCARING:  Yes, your Honor.

12             THE COURT:  All right.  I direct that there be no

13   interview unless counsel is present.

14             Mr. Scaring and Dr. Rhein, are you available to meet

15   with probation over the next two weeks?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Mr. Scaring?

18             MR. SCARING:  Yes, your Honor.

19             THE COURT:  All right.  Ms. Mortazavi, I'd remind you,

20   too, that the government is obligated over the next two weeks

21   or within the next two weeks to provide to the probation

22   department the statement of relevant facts.

23             And, Mr. Scaring, I am directing you, please, to reach

24   out to the probation department to arrange the interview to be

25   scheduled within the next 14 days.

L83HRheP

1          Sentencing in this case -- let me just pull my

2    calendar.  Do you all have your calendars available?

3               MS. MORTAZAVI:  Yes, your Honor.

4               THE COURT:  Mr. Scaring?

5               MR. SCARING:  I do, your Honor.

6               THE COURT:  All right.  Ms. Dempsey, what do we look

7    like the week of November 29?

8               Ms. Dempsey, are you with us?

9               THE DEPUTY CLERK:  I apologize, your Honor.  I had to

10   pick up a phone call.

11              THE COURT:  Not a problem.

12              THE DEPUTY CLERK:  Sorry.

13              THE COURT:  I don't know if you heard.  I asked you,

14   do we have availability the week of November 29, like the 30th

15   or December 1st or 2nd?

16              THE DEPUTY CLERK:  We do.  December 2nd --

17              THE COURT:  All right.

18              THE DEPUTY CLERK:  -- we have availability.

19              THE COURT:  Does that present a problem for you,

20   Mr. Scaring or Dr. Rhein?

21              MR. SCARING:  No, your Honor, not for me.

22              For Dr. Rhein?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  All right.  Ms. Mortazavi, does that work

25   for the government?

L83HRheP

1          MS. MORTAZAVI:  Yes, the government is available then.

2          THE COURT:  All right.  We will set sentencing, then,

3     for December 2.  I would just remind counsel, then, that

4     pursuant to my individual practice rules, courtesy copies of

5     the probation report are to be provided to chambers.  Defense

6     submissions are due two weeks prior to the sentencing date, so

7     that would be November 18.  The only problem I see with this,

8     that would make the government submissions due on Thanksgiving.

9          MS. MORTAZAVI:  If it's all right with the Court, we

10    would ask that our sentencing letter or submission be due on

11    the 24th, the day before Thanksgiving.

12         THE COURT:  Is that workable for you?  I am shortening

13    you by one day then.

14         MS. MORTAZAVI:  That's all right, your Honor.

15         THE COURT:  All right.  November 24, then, will be the

16    government's submission, and, as I say, the defense submissions

17    are due, then, two weeks before, on the 18th of November.

18         MR. SCARING:  Just to clarify, your Honor --

19         THE COURT:  Yes.

20         MR. SCARING:  -- our defense submissions are due

21    November 18?

22         THE COURT:  Yes.

23         MR. SCARING:  Yes.  OK.  I just wanted to clarify.

24         THE COURT:  Is that the question?

25         MR. SCARING:  Yes.

L83HRheP

1          THE COURT:  Yes, November 18, two weeks prior to the

2     sentencing date, which is set for December 2.

3          MR. SCARING:  Thank you, your Honor.

4          THE COURT:  All right.  Dr. Rhein, I would just remind

5     you, I told you that you will be interviewed by the probation

6     office.  I just remind you that failure to be truthful with the

7     probation office and obviously with the Court could have

8     adverse effects on your sentence, could subject you to further

9     prosecution.  In addition, I reserve the right to deny you the

10    two-level reduction for acceptance of responsibility under the

11    sentencing guidelines which the government has stipulated to

12    with you, and, obviously, the government may not make the

13    motion for a further reduction if you do not cooperate fully in

14    connection with the presentence report or I may deny that

15    motion.  All right?

16          Is there --

17          THE DEFENDANT:  Yes.

18          THE COURT:  Is there anything further, Mr. Scaring?

19          MR. SCARING:  Nothing further, your Honor.

20          THE COURT:  Anything further, Ms. Mortazavi?

21          MS. MORTAZAVI:  Just a question, your Honor, as to

22    whether I missed the time of the sentencing on December 2?

23          THE COURT:  No, you didn't miss it.

24          Ms. Dempsey, what time?

25          THE DEPUTY CLERK:  Is 10 a.m. workable for everyone?

L83HRheP

1          MS. MORTAZAVI:  The government is available.

2          MR. SCARING:  Yes, for the defendant.

3          THE COURT:  Thank you.

4          Mr. Scaring, that's good for you?

5          Mr. Scaring, I want the record clear.  Is that good

6     for you, 10 a.m.?

7          MR. SCARING:  Your Honor, thank you.

8          THE COURT:  Is that yes?

9          MR. SCARING:  Yes.

10          THE COURT:  All right.  Thank you.

11          All right.  So 10 a.m. on December 2.  There being no

12     further business before the Court, then, I just thank very much

13     our court reporter, Ms. Robles, for being with us today and

14     most particularly for your patience during the long break that

15     we took.

16          All right.  We will stand adjourned.  I wish everyone

17     a good rest of the day.

18          (Adjourned)

19

20

21

22

23

24

25