LAKVOAKP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 CR 160 (MKV)

5   CHRISTOPHER OAKES,

6              Defendant.                Videoconference Plea

7   ------------------------------x

8                                        New York, N.Y.
                                         October 20, 2021
9                                        2:05 p.m.

10

11  Before:

12              HON. MARY KAY VYSKOCIL,

                                         District Judge
13

14                   APPEARANCES

15

    DAMIAN WILLIAMS,
16       United States Attorney for the
         Southern District of New York
17  ANDREW C. ADAMS
         Assistant United States Attorney
18

    PAGE A. PATE
19       Attorney for Defendant

20

21

22

23

24

25

LAKVOAKP

1          (Videoconference via Teams)

2          THE COURT:  Good afternoon.

3          Would you call the case please.

4          (Case called)

5          THE DEPUTY CLERK:  Counsel, starting with the

6   government, please state your name for the record.

7          MR. ADAMS:  Good afternoon, your Honor.

8          Andrew Adams for the United States.

9          THE COURT:  Good afternoon, Mr. Adams.

10         MR. PATE:  Good afternoon, your Honor.

11         Page Pate on behalf of Mr. Oakes, who is with me

12  today.

13         THE COURT:  All right.  Mr. Pate, good afternoon.  I

14  am not able to see you.  I do see Mr. Oakes.  Good afternoon to

15  you, Mr. Oakes.  Can you gentlemen move back further from your

16  computer screen?  That's much better.  Or move your computer.

17  You don't have to be so far back if you just move your laptop.

18  It's not centered is the problem.

19         MR. PATE:  I'm sorry.  It's centered on our preview

20  screen.  We can certainly move that back.

21         THE COURT:  I can see you both now.  So if that works

22  for you, we're fine then.

23         MR. PATE:  Okay.  Thank you.

24         THE COURT:  All right.  And we have a court reporter

25  with us.  Ms. Martin, are you able to hear and see everyone, or

LAKVOAKP

1   at least hear everyone clearly?

2              THE COURT REPORTER:  Yes, your Honor.  Good afternoon.

3        I can hear everybody.

4              THE COURT:  Thank you very much.

5        We're here this afternoon for a change of plea hearing

6   for Mr. Oakes.  The Court is informed that Mr. Oakes wishes to

7   withdraw his plea of not guilty and to plead guilty pursuant to

8   a plea agreement with the government.

9              Before we proceed any further, Mr. Oakes, do you speak

10  and understand English clearly?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  You do not need the services of an

13  interpreter; correct?

14             THE DEFENDANT:  Correct.

15             THE COURT:  All right.

16        Counsel are appearing before me by videoconference.

17  The defendant is also appearing by videoconference; and he is

18  seated next to his counsel, Mr. Pate.

19        Let me, just for the record, make clear that each of

20  the participants can hear me clearly.

21             Mr. Adams?

22             MR. ADAMS:  I can, your Honor.  Thank you.

23             THE COURT:  Thank you.

24             Mr. Pate?

25             MR. PATE:  Yes, your Honor.

LAKVOAKP

```
1              THE COURT:  All right.

2              And Mr. Oakes, you're next to Mr. Pate.

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  You can see and hear clearly?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  All right.

7              So, Mr. Oakes, I understand that you traveled actually

8    to Georgia to be physically present with your attorney for this

9    proceeding; is that correct?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  All right.

12             If at any point during today's proceeding you would

13   like to speak privately with Mr. Pate, please let me know that

14   and we will give you time to do so.  Will you do that?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  All right.

17             We remain subject to restrictions as a result of

18   COVID-19, and that is why I am conducting this proceeding by

19   videoconference pursuant to the authority provided by Section

20   15002 of the CARES Act.  The CARES Act provides that a court

21   may conduct a felony plea proceeding by videoconference when,

22   one, the chief judge of the district orders that proceedings

23   cannot be conducted in person without seriously jeopardizing

24   public health and safety; and two, when the district judge in a

25   particular case finds for specific reasons that the plea in
```

LAKVOAKP

1    that case cannot be further delayed without serious harm to the

2    interests of justice.

3                    By standing order dated September 15th, 2021, Chief

4    Judge Laura Taylor Swain has found that felony pleas cannot be

5    conducted in person without seriously jeopardizing public

6    health.  Prior to today's proceeding, the government submitted

7    an affirmation and a proposed order requesting that today's

8    proceedings not be delayed any further.

9                    Mr. Adams, you requested that that be filed under

10   seal.  Do you maintain that request?

11                   MR. ADAMS:  Your Honor --

12                   THE COURT REPORTER:  There is an echo.

13                   THE COURT:  Would everybody who is not speaking please

14   mute their lines.  I think that does cause an echo problem.

15                   Mr. Adams, could you try again.  And Ms. Martin, let

16   us know if the problem is continuing.

17                   MR. ADAMS:  Thank you, your Honor.

18                   I have no objection to publicly posting the

19   application or the order.  The only reference that I would just

20   point defense counsel to specifically is a reference to

21   potential health issues with coming to New York for the

22   proceedings.  If there's no objection on defense counsel's

23   part, there's no objection on mine.

24                   THE COURT:  All right.

25                   Mr. Pate?

LAKVOAKP

1          MR. PATE:  No objection, your Honor.

2          I don't see that it needs to be maintained under seal.

3          THE COURT:  All right.

4          The Court concurs with that.  The only reference

5    really is that there is concern for the health of the defendant

6    if he were to travel, but we're all subject to that similar

7    concern from exposure to the COVID virus.  So the Court will

8    not maintain that under seal.

9          So, Mr. Adams, if you would just please strike the

10    word "sealed" and file your application on the docket.

11          Now, in that application, the government recites that

12    the specific reasons why the proceeding should not be delayed

13    are the interests of the defendant and resolving the charges

14    against him.  And the government says that constitutes a

15    specific reason why the proceedings should not be delayed.

16          Mr. Pate, do you wish to put anything further on the

17    record?

18          MR. PATE:  No, your Honor.  We reviewed the

19    affirmation and agree with all of those facts.

20          THE COURT:  Well, I would just say I find that

21    somewhat in grounds for me to make a specific finding why the

22    case should not be delayed.  I will add for the record that the

23    defendant in this case was charged, I believe, over 18 months

24    ago.  The defendant does have an interest, obviously, in having

25    the proceedings against him resolved and avoiding the stress

LAKVOAKP

1    and anxiety of having a criminal matter open.

2           The proceeding will also promote judicial economy by

3    avoiding adding to the backlog, the inevitable backlog that

4    we'll have once things ease after COVID.  So I do find for

5    these reasons the proceeding cannot be delayed without

6    substantial harm to the interests of justice.

7           Now, I also have two other documents that I've

8    received.  The first is a waiver of the defendant's right to

9    appear before me in open court in connection with entry of a

10   plea, and the second is a consent to proceed by

11   videoconference.

12          Before I ask about some specific questions about the

13   document, Mr. Pate, Mr. Oakes has checked every box on the

14   consent to proceed by videoconference.  On the waiver he

15   correctly checked entry of a plea of guilty.  In connection

16   with the consent to proceed by videoconference, the final box

17   that he's checked is a misdemeanor plea/trial/sentencing.

18   Obviously, this is not a misdemeanor charge.  I just want to

19   confirm that you've discussed that with Mr. Oakes and that he

20   understands that the charge to which he would be entering a

21   plea today is a felony charge.

22          MR. PATE:  Yes, your Honor, we have discussed it.

23          I think there was just some confusion about the way

24   the form was structured.  But he understands he's here today

25   for the entry of a felony plea.

LAKVOAKP

1          THE COURT:  All right.

2          Do you consent to my crossing out the word

3    "misdemeanor" and writing the word "felony" before I accept and

4    file this?

5          MR. PATE:  Yes, your Honor.

6          THE COURT:  All right.

7          Some additional questions I'd like to ask and then,

8    Mr. Oakes, I'm going to ask you to please confirm what your

9    counsel tells me specifically.

10          So, Mr. Pate, if you would please tell me how you

11   provided these documents to Mr. Oakes, whether you discussed

12   with him that he has a right to appear before me in open court

13   to enter a plea to a felony charge; whether, based on your

14   conversations, you believe he understood those rights and is

15   voluntarily and knowingly waiving those rights; and is this

16   your signature and his signature on each of these two

17   documents?

18          MR. PATE:  Yes, your Honor.  When we initially

19   received those documents, I provided them via email to

20   Mr. Oakes.  We then had a telephone conversation about the

21   documents, about his rights.  We went over those.  I answered

22   any questions that he had.  And then, since he has arrived here

23   in Atlanta earlier today, we went over those documents again,

24   and he is fully understanding and willing and anxious to go

25   forward with it today.

LAKVOAKP

1          THE COURT:  All right.

2          And is that your signature on the document, Mr. Pate?

3          MR. PATE:  Yes, your Honor, it's my signature on both

4     documents.

5          THE COURT:  All right.

6          Mr. Oakes, did you hear my conversation with your

7     lawyer with regard to these documents?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Is there anything you wish to add?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Is what he's told me true and accurate?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you understand that you are pleading

14     guilty to a felony charge, not to a misdemeanor?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Do you consent to my changing the consent

17     to videoconference form to strike the word "misdemeanor" and

18     write in "felony" before the word "plea"?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Is that your signature on each of these

21     two documents?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  All right.

24          Do you understand that you have a right to appear

25     before me in open court in the Southern District of New York to

LAKVOAKP

1    enter a plea to the charge against you?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you knowingly and voluntarily waive

4    that right?

5              THE DEFENDANT:  Yes, your Honor.

6              THE COURT:  Do you wish to proceed by videoconference?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT: All right.  I do find that the defendant

9    understands his right to appear in open court, and has

10   knowingly and voluntarily waived that right.

11             Now, as I say, I'm informed that defendant has an

12   application to withdraw his plea of not guilty and, pursuant to

13   an agreement with the government, waive indictment and enter a

14   plea of guilty to a one-count superseding information, number

15   S11 in case 20 CR 160.

16             Count One of the superseding information that has been

17   provided to the Court charges the defendant with drug

18   adulteration and misbranding, in violation of Title 21, United

19   States Code, Section 331 and 333(a)(2).

20             In particular, the government alleges that from at

21   least 2019, through at least March of 2020, Mr. Oakes misled

22   and deceived state and federal drug regulators with respect to

23   the distribution, purchase, and receipt of various misbranded

24   and adulterated performance-enhancing drugs, and the use of

25   such misbranded and adulterated drugs to improve the

LAKVOAKP

1   performance of thoroughbred racehorses under his care and

2   custody and under the care and custody of others.

3          Is that correct and accurate, Mr. Pate?

4          MR. PATE:  Yes, your Honor, it is.

5          THE COURT:  All right.

6          And there is a written agreement between the defendant

7   and the government that has been provided to the Court.  It is

8   on the letterhead of the United States Department of Justice,

9   the United States Attorney for the Southern District of New

10  York, dated October 4th, 2021, addressed to Page Pate.  That

11  letter is six pages long.  That letter agreement will be marked

12  as Government Exhibit 1, and we will discuss it in some detail

13  in a moment.

14         Now, before we proceed for Mr. Oakes to enter a plea

15  in this case, counsel, there's one further matter I just would

16  like you to address.  Mr. Oakes has filed a motion to suppress

17  certain evidence in this case.  That motion is pending at

18  docket entry 432 and 509.  In light of the intention of

19  Mr. Oakes to plead guilty today, is that motion withdrawn?

20         MR. PATE:  Yes, your Honor, it is.

21         THE COURT:  All right.  Thank you.

22         Now, Mr. Oakes, before I can accept your plea, there

23  are a number of questions that I need to ask you while you are

24  under oath.  I'm doing that to assure myself that your plea is

25  a valid plea.  I may at various points cover a particular point

1    more than once, and I may cover matters that are addressed in

2    various forms and agreements that you've signed.  If I do that,

3    it is because it's very important that you understand what's

4    happening today.

5            So I would remind you, if you need to speak with

6    Mr. Pate because you don't understand something or you have a

7    question, please let me know and we'll make arrangements.  If

8    you don't understand one of my questions, you can speak with

9    Mr. Pate or you can ask me to rephrase the question and I'll do

10   my best to do so.  Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  All right.

13           And you'll let me know if you need to speak with

14   counsel or if you need me to rephrase something; correct?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  All right.

17           Ms. Dempsey, would you please administer the oath to

18   Mr. Oakes.

19           THE DEPUTY CLERK:  Yes, your Honor.

20           (Defendant sworn)

21           THE DEPUTY CLERK:  Please state and spell your name

22   for the record.

23           THE DEFENDANT:  Christopher Oakes;

24   C-H-R-I-S-T-O-P-H-E-R, O-A-K-E-S.

25           THE COURT:  All right.  Thank you, Ms. Dempsey.

1          Mr. Oakes, do you understand that you have now

2    solemnly promised to tell the truth; and that if you answer any

3    of my questions falsely, your false or untrue answers may later

4    be used against you in another prosecution for perjury or

5    making a false statement?  Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.

8          Would you tell me, sir, how old are you?

9          THE DEFENDANT:  I'm 57 years old.

10          THE COURT:  And how far did you go in school?

11          THE DEFENDANT:  12th grade.

12          THE COURT:  And you've told me that you do speak and

13    understand English perfectly well; correct?

14          THE DEFENDANT:  Correct.

15          THE COURT:  Are you a citizen of the United States?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Were you born here or are you a

18    naturalized citizen?

19          THE DEFENDANT:  I was born here.

20          THE COURT:  Are you now or have you recently been

21    under the care of a medical doctor?

22          THE DEFENDANT:  Just my regular doctor.  I visited her

23    last week.

24          THE COURT:  Was that just for routine care?

25          THE DEFENDANT:  Yes.

LAKVOAKP

1                    THE COURT:  Are you now or have you recently been

2          under the care of a mental health professional?

3                    THE DEFENDANT:  No, your Honor.

4                    THE COURT:  And by that I'm including psychiatrists,

5          psychologists, social workers, therapists.

6                    THE DEFENDANT:  No, your Honor.

7                    THE COURT:  All right.  Thank you.

8                    Have you ever been treated or hospitalized for any

9          mental illness?

10                   THE DEFENDANT:  No, your Honor.

11                   THE COURT:  Have you ever been treated or hospitalized

12         for any type of addiction, including addiction to drugs or to

13         alcohol?

14                   THE DEFENDANT:  No, your Honor.

15                   THE COURT:  Have you ever been addicted to drugs or to

16         alcohol?

17                   THE DEFENDANT:  No, your Honor.

18                   THE COURT:  In the past 24 hours, have you taken any

19         drugs, any medicine, any pills?

20                   THE DEFENDANT:  No, your Honor.

21                   THE COURT:  In the past 24 hours, have you had any

22         alcohol to drink?

23                   THE DEFENDANT:  No, your Honor.

24                   THE COURT:  Is your mind clear today?

25                   THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

1          THE COURT:  Are you feeling well physically?  By that
2    I mean are you healthy?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  Are you represented by counsel?
5          THE DEFENDANT:  Yes, your Honor.
6          THE COURT:  And who is your counsel?
7          THE DEFENDANT:  Page Pate.
8          THE COURT:  And are you satisfied with your counsel?
9          THE DEFENDANT:  Yes, your Honor.
10         THE COURT:  Do you either counsel have any doubt as to
11   the defendant's competence to plead at this time?
12         Mr. Adams?
13         MR. ADAMS:  No, your Honor.  Thank you.
14         THE COURT:  Mr. Pate?
15         MR. PATE:  No, your Honor.  Thank you.
16         THE COURT:  Mr. Oakes, your attorney has informed me
17   that you wish to withdraw your plea of not guilty and to enter
18   a plea of guilty to a superseding information to be filed in
19   this case.  Is that, in fact, your wish?
20         THE DEFENDANT:  Yes, your Honor.
21         THE COURT:  Have you fully discussed your case with
22   your attorney, including the charges to which you intend to
23   plead guilty and any possible defenses to those charges?
24         THE DEFENDANT:  Yes, your Honor.
25         THE COURT:  Have you discussed the consequences of

LAKVOAKP

1  entering a plea of guilty?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Are you satisfied with your attorney and

4  his representation of you in connection with today's proceeding

5  and understanding the charges against you?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Do you need any further time to consult

8  with Mr. Pate before we proceed?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  All right.  On the basis of Mr. Oakes'

11  responses to my questions and my observation of his personal

12  demeanor, I do find that he is fully competent to enter an

13  informed plea at this time.

14          Now, Mr. Oakes, before we get to the plea itself, I

15  want to make sure that you understand the rights you would be

16  giving up by first waiving indictment in this case.

17          So the document that contains the charge to which I'm

18  told you wish to plead guilty is called an information.  That

19  document, that charging document, has been issued by the United

20  States Attorney for the Southern District of New York.  You

21  have a constitutional right to be charged by indictment rather

22  than by information.  An indictment is a charge issued by a

23  grand jury.  Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And do you understand that if you do not

LAKVOAKP

1  waive indictment, if the government wants to prosecute you on

2  the facts and the charges that are in the information, it would

3  have to present its case to a grand jury which might or might

4  not indict you on the charges.  Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that you're under no

7  obligation to waive indictment?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Let me just ask, do we have a signed

10  waiver of indictment form?

11          MR. ADAMS:  Your Honor, this is Andrew Adams.

12          I believe so.  I'm just double-checking.  One moment.

13          THE COURT:  Thank you.

14          MR. PATE:  Your Honor, I'm looking at a document that

15  Mr. Oakes and I signed that waives both his prosecution by

16  indictment and consents that he proceed by information.  I do

17  believe that was provided to the Court.

18          THE COURT:  All right.  Let me just take a look.

19          Can you just give me one moment please?

20          MR. PATE:  Of course.

21          THE COURT:  I apologize.

22          My computer is just very slow.

23          MR. PATE:  That's fine, your Honor.

24          In an abundance of caution, we're going to go ahead

25  and email to Ms. Dempsey the copy that I had in front of me.

LAKVOAKP

1   That may just be easier.  So we're sending that now.

2          THE COURT:  That's not going to help my connectivity

3   issue.

4          MR. PATE:  I can't help with that.

5          THE COURT:  No.  Just bear with me.  I'm sorry.

6          THE DEPUTY CLERK:  Your Honor, I just received the

7   copy.  I'm going to forward it to you right now.  I did not

8   have that prior to now.

9          THE COURT:  Okay.  Thank you.

10          MR. ADAMS:  My apologies, your Honor.  I left that off

11   from the other group of documents that I did send.

12          THE COURT:  All right.  Not a big deal.

13          If you'll just give us a minute.

14          All right.  Thank you very much.

15          I do now have in front of me a document -- all right.

16   I have in front of me a document that appears to be signed by

17   Mr. Oakes and by counsel.  The document reads that the

18   above-named defendant -- the above-named defendant is

19   Christopher Oakes, who is accused of one count of violating

20   Title 21, United States Code, Sections 331 and 333; and Title

21   18, United States Code, Section 2, being advised of the nature

22   of the charges and of his rights, hereby waives in open court

23   and via videoconference, prosecution by indictment and consents

24   that the proceeding may be by information instead of by

25   indictment.

LAKVOAKP

| | |
|---|---|
| 1 | Is that your signature on this document, Mr. Oakes? |
| 2 | THE DEFENDANT:  Yes, your Honor. |
| 3 | THE COURT:  All right. |
| 4 | And do you realize that by signing this waiver of |
| 5 | indictment, you are giving up your right to have your case |
| 6 | presented to a grand jury? |
| 7 | THE DEFENDANT:  Yes, your Honor. |
| 8 | THE COURT:  Did you discuss this -- your right and |
| 9 | waiver of that right with counsel before you signed this |
| 10 | document? |
| 11 | THE DEFENDANT:  Yes, your Honor. |
| 12 | THE COURT:  Do you understand what a grand jury is, |
| 13 | sir? |
| 14 | THE DEFENDANT:  Yes, your Honor. |
| 15 | THE COURT:  Do you understand that a grand jury |
| 16 | consists of 23 people, of whom at least 16 must be present to |
| 17 | conduct business, and that you cannot be charged unless at |
| 18 | least 12 of those people vote for indictment? |
| 19 | THE DEFENDANT:  Yes, your Honor. |
| 20 | THE COURT:  Did anyone make any threats or promises to |
| 21 | you in order to get you to waive indictment in this case? |
| 22 | THE DEFENDANT:  No, your Honor. |
| 23 | THE COURT:  Have you seen a copy of the superseding |
| 24 | information containing the charge against you? |
| 25 | THE DEFENDANT:  Yes, your Honor. |

LAKVOAKP

1          THE COURT:  Have you discussed that document with your

2     lawyer?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand the charge against

5     you -- the charges against you detailed in this document?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  I can read the superseding information

8     aloud to you if you would like me to do so, or you may waive

9     public reading.  Do you wish me to read the information aloud

10    or do you waive public reading?

11         THE DEFENDANT:  I waive public reading, your Honor.

12         THE COURT:  All right.

13         Is it your intent to enter a plea of guilty to the

14    charge in this information numbered S11 in this case?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  All right.

17         I do find that Mr. Oakes' waiver of indictment in this

18    case is knowing and voluntary.  I accept the waiver, and the

19    superseding information will be filed in this case.

20         Now, Mr. Oakes, before we proceed for me to accept

21    your plea, I want to talk to you about certain rights that you

22    have and certain other questions that I wish to ask you.  Those

23    questions are intended to satisfy me that you wish to plead

24    guilty because you are, in fact, guilty, and that you fully

25    understand your rights and the consequences of entering a plea

LAKVOAKP

1    of guilty.

2            So first, sir, I'm going to describe to you certain

3    rights that you have under the Constitution and laws of the

4    United States.  You will be giving up these rights if you enter

5    a plea of guilty.  Please listen very carefully.  And again, I

6    remind you, if you do not understand something I'm saying or

7    describing, please stop me, and either I or your attorney will

8    explain to you more fully what we're discussing.

9            Will you do that please?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  All right.

12            Sir, under the Constitution and laws of the United

13    States, you have a right to a speedy and a public trial by a

14    jury on the charges against you which are contained in the

15    information.  Do you understand that?

16            THE DEFENDANT:  Yes, your Honor.

17            THE COURT:  Do you understand that you have the right

18    to plead not guilty and to continue to plead not guilty to the

19    charge?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  If there were a trial, you would be

22    presumed innocent, and the government would be required to

23    prove you guilty by competent evidence and beyond a reasonable

24    doubt.  You would not have to prove that you were innocent at

25    trial.  Do you understand that?

LAKVOAKP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you understand that if there were a

3     trial, a jury made up of 12 people selected from this district

4     would have to agree unanimously in order to find you guilty?

5          Do you understand that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And do you understand that if there were a

8     trial, you would have the right to be represented by an

9     attorney at trial and at all other stages of the proceedings;

10    and if you couldn't afford one, an attorney would be provided

11    to you free of cost?  You understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  And do you understand that if there were a

14    trial, you would have the right to see and to hear all of the

15    witnesses against you, your attorney could cross-examine them,

16    you would have the right to have your attorney object to the

17    government's evidence, and to offer evidence on your behalf if

18    you so desired; you would have the right to have witnesses

19    required to come to court to testify in your defense; and you

20    would have the right to testify, but you would not be required

21    to do so.  Do you understand that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And do you understand that if there were a

24    trial and you decided not to testify, no adverse inference

25    could be drawn against you based on your decision not to

LAKVOAKP

1    testify.  And by that I mean the jury would be instructed that

2    it could not assume that you didn't testify because you were

3    guilty or because you had something to hide.

4            Do you understand that?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  Do you understand that if you were

7    convicted at trial, you would have the right to appeal that

8    verdict?

9            THE DEFENDANT:  Yes, your Honor.

10           THE COURT:  Do you understand each and every one of

11   these rights, Mr. Oakes?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  Do you understand that by entering a plea

14   of guilty today, you will be giving up each and every one of

15   these rights, you will be waiving these rights?  Do you

16   understand that?

17           THE DEFENDANT:  Yes, your Honor.

18           THE COURT:  And do you also understand that you will

19   be waiving any possible claims that your constitutional rights

20   may have been violated, and you will have no trial?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  Do you understand that by entering a plea

23   of guilty, you will also have to give up your right not to

24   incriminate yourself, because in a few moments I'm going to ask

25   you questions about what you did in order to satisfy myself

LAKVOAKP

1    that you are guilty as charged, and you will have to admit and

2    acknowledge your guilt.  Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Do you understand that you can change your

5    mind right now and refuse to enter a plea of guilty?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  You do not have to enter a plea if for any

8    reason you do not wish to do so.  Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  All right.

11             I want to talk to you, sir, specifically about the

12    charges against you and the consequences of those charges.

13             You're charged in Count One of the superseding

14    information with drug misbranding and adulteration, with intent

15    to defraud or deceive, in violation of Title 21, United States

16    Code, Section 331 and 333(a)(2).

17             You understand that, right, sir?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  All right.

20             Mr. Adams, would you please state the elements of the

21    offense with which Mr. Oakes has been charged in Count One.

22             MR. ADAMS:  Yes, your Honor.

23             There are three elements to the offense.

24             The first is that the defendant introduced or

25    delivered for introduction into interstate commerce or caused

LAKVOAKP

to be introduced or delivered into interstate commerce a drug.

Second, at the time that the defendant introduced or delivered for introduction or caused either of those things, that the drug was misbranded in at least one way.  In this case, I expect the allocution and the evidence at trial would show that the misbranding and adulteration with respect to these drugs inheres in both the fact that the drug was manufactured in facilities not registered or licensed by the Food and Drug Administration, and that they were new animal drugs that were not approved for interstate sale.

The third element is the one that makes this a felony, and that is that the defendant had the intent to defraud or mislead.

And finally, although not an element, the government would prove by a preponderance venue in the Southern District of New York by means of some acts occurring in the district in furtherance of those elements.

THE COURT:  All right.  Thank you.

Mr. Oakes, do you understand that the government would have to prove each and every one of these elements or each part of the offense with which you've been charged as just laid out by Mr. Adams with respect to Count One; and they would have to prove that beyond a reasonable doubt at trial if you did not plead guilty?  That's with the exception of the venue portion.

THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

1          THE COURT:  Do you understand, sir, the matters the

2     government would have to prove if you did not plead guilty?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  And you've had the opportunity to discuss

5     that with your lawyer?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.

8          Mr. Oakes, do you understand that if you plead guilty,

9     the maximum possible term of imprisonment for the offense in

10    Count One is a term of imprisonment of three years?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you understand that Count One can

13    also include a maximum term of supervised release after you're

14    released from prison of up to one year?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  And do you understand that in addition to

17    these restrictions on your personal liberty, the maximum

18    possible punishment for Count One includes certain financial

19    penalties?  Do you understand that?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you understand that the maximum fine

22    allowed is $10,000 or twice the gross pecuniary gain relating

23    to the offense or twice the loss to persons other than yourself

24    as a result of the offense, whichever is greater?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  And do you understand that there is a

2     mandatory special assessment of $100 per count?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Do you understand that the superseding

5     information also contains forfeiture allegations and, as part

6     of your sentence, that if you plead guilty, you would be

7     required to forfeit to the United States any and all drugs that

8     were adulterated or misbranded as part of the crime to which

9     you're pleading guilty, or a sum of money representing the

10    value of such property?  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  All right.  I'd now like to give you some

13    information about the supervised release aspect of any

14    potential penalty and verify that you understand that aspect of

15    the penalty.

16         "Supervised release" means that you would be subject

17    to monitoring after you were released from prison.  Certain

18    terms and conditions will be imposed.  And if you violate any

19    of those set terms and conditions, you can be imprisoned

20    without a jury trial.  Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And do you understand that if you're on

23    supervised release and you don't comply with any of the set

24    terms and conditions, you could be returned to prison for up to

25    one year, and you will receive no credit for the time you

LAKVOAKP

1    served in prison as a result of your sentence or for any time

2    spent on post-release supervision before the violation was

3    committed?  Do you understand that?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  And do you understand that there is no

6    parole in the federal system; if you are sentenced to prison,

7    you will not be released early on parole.  There is a limited

8    opportunity to earn credit for good behavior, but you will have

9    to serve at least 85 percent of the time to which you're

10   sentenced.  Do you understand that?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And do you further understand that if I

13   accept your guilty plea and adjudge you guilty, that

14   adjudication can deprive you of certain valuable civil rights,

15   such as the right to vote, the right to hold public office, the

16   right to serve on a jury, and the right to possess any kind of

17   firearm if you currently have or could have obtained such

18   rights?  Do you understand that?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  Now, you've told me that you are a United

21   States citizen.  But so there is no misunderstanding, if that

22   turns out to be inaccurate, do you understand that as a result

23   of your plea, if I accept it and adjudge you guilty, there

24   could be adverse effects on your immigration status, including

25   further detention following completion of your sentence, and/or

LAKVOAKP

1   removal or deportation from the United States?

2          Did you, Mr. Oakes, discuss your immigration situation

3   and possible immigration consequences of your plea with your

4   attorney?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.

7          Under current law, Mr. Oakes, there are sentencing

8   guidelines that a judge must consider in determining your

9   sentence.  Have you spoken with your attorney about the

10  sentencing guidelines?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that in addition to the

13  sentencing guidelines, in imposing a sentence, I must consider

14  certain additional factors that are laid out in a statute

15  United States Code -- I'm sorry, Title 18, United States Code,

16  Section 3553(a)?  Do you understand that?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And have you discussed or has your

19  attorney discussed with you the factors that are contained in

20  Section 3553(a)?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you understand that the Court has

23  discretion, while taking the guidelines into account, to

24  sentence you to any period of imprisonment up to three years?

25         THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

1          THE COURT:  And do you understand that even though the

2     plea agreement includes a stipulated or agreed-upon sentencing

3     guideline calculation, I cannot determine your sentence until

4     after the probation office prepares a presentence report, which

5     you and your lawyer and the government's lawyer will have the

6     opportunity to review and to challenge any of the facts

7     reported by the probation office?  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Now, according to the plea agreement which

10    we've marked as Government Exhibit 1, you have agreed that the

11    applicable guidelines sentence for the offense in Count One to

12    which I'm told you wish to plead guilty is the statutory

13    maximum of 36 months in prison, and the applicable fine range

14    for your case is 20,000 to $200,000.

15         Is that your understanding?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  And do you understand that that

18    stipulation between you and the government does not bind the

19    Court or the probation department on the facts on which it is

20    based or to apply the guidelines to the facts or as to what

21    would be an appropriate sentence in your case?

22         Do you understand that?  Mr. Oakes?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  I didn't hear your answer.

25         Do you understand that the stipulation does not bind

LAKVOAKP

1   the Court or the probation department as to the facts on which

2   it is based, how to apply the guidelines to the facts, or what

3   will be an appropriate sentence in your case?

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Do you understand that I may decide to

7   impose a sentence that is outside of the guidelines range?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you understand that if your lawyer or

10  anyone else has attempted to estimate or predict for you what

11  your sentence will be, their estimate or prediction could well

12  be wrong?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you understand that no one, not even

15  your lawyer or the government, can or should give you any

16  assurance of what your sentence will be, since that sentence

17  cannot be determined, as I said, until after the probation

18  office report is completed and I rule on challenges to the

19  report and determine what the appropriate sentence is.

20         Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you also fully understand that even if

23  your sentence is different from what your attorney or anyone

24  else told you it might be, or if it's different from what you

25  expect, what you hope it might be, if you're surprised or

LAKVOAKP

1    you're disappointed by your sentence, if I accept your plea of

2    guilty today, you will be bound to that plea and you will not

3    be allowed to withdraw your guilty plea?

4             Do you understand that?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Do you understand that even if the

7    government does not oppose or take a position on what your

8    attorney will ask me to impose as your sentence, I am obligated

9    to impose whatever sentence I believe is appropriate under the

10   circumstances and the applicable law, and you will have no

11   right to withdraw your plea at the time of sentencing?

12            Do you understand that?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  Do you understand that you may have the

15   right to appeal your sentence under certain circumstances, even

16   if your plea agreement provides that you're waiving your right

17   to appeal?  Do you understand that?

18            THE DEFENDANT:  Yes, your Honor.

19            THE COURT:  Can you tell me, Mr. Oakes, are you now

20   serving any state or federal sentence?

21            THE DEFENDANT:  No, your Honor.

22            THE COURT:  And are you being prosecuted at the

23   present time for any other crime?

24            THE DEFENDANT:  No, your Honor.

25            THE COURT:  All right.

LAKVOAKP

1          I have, as I said earlier, been provided with a copy

2    of the plea agreement that we've marked as Government Exhibit 1

3    dated October 4th.  The signature indicates agreed and

4    consented to, Christopher Oakes, dated October 8th, 2021.

5          Do you have a copy of that in front of you, Mr. Oakes?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Is that your signature on page 6 of the

8    document?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  And did you sign it on or about October

11   8th, 2021?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Did you read the agreement before you

14   signed it?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And did you discuss it fully with your

17   lawyer before you signed it?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Did your lawyer explain all of the terms

20   and conditions of this agreement?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Did you fully understand the agreement

23   before you signed it?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Do you understand that as part of that

LAKVOAKP

1    plea agreement, you have agreed to forfeit $62,821 to the

2    United States, representing the value of forfeitable property

3    that you obtained as a result of the offense to which you've

4    told me you intend to plead guilty?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  All right.

7            I have, in advance of today, received a copy of a

8    consent preliminary order of forfeiture/money judgment.

9            Mr. Pate, have you seen a copy of this document?

10           MR. PATE:  Yes, your Honor.

11           THE COURT:  All right.

12           Do you have that in the room with Mr. Oakes?

13           MR. PATE:  Yes, we do.

14           THE COURT:  All right.

15           Mr. Oakes, have you seen this document before today?

16           THE DEFENDANT:  I think yesterday.

17           THE COURT:  You have seen it?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  And have you reviewed it with your lawyer?

20           THE DEFENDANT:  Yes, your Honor.

21           THE COURT:  And he explained it to you?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And you understand what this document

24   provides?

25           THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

1          THE COURT:  Is that your signature on the last page of
2     the document?
3          THE DEFENDANT:  Yes, your Honor.
4          THE COURT:  And did you sign it on or about October 8,
5     2021?
6          THE DEFENDANT:  October 18th is what we have here.
7          THE COURT:  Not on my version.
8          MR. PATE:  Your Honor, Mr. Adams submitted an amended
9     consent preliminary order adding some additional language to
10    this on Monday.
11         THE COURT:  Okay.  And it's dated the 18th?
12         MR. PATE:  That's correct, your Honor, yes.
13         THE COURT:  All right.  Thank you.
14         But Mr. Oakes, that is your signature then on --
15         THE DEFENDANT:  Yes, your Honor.
16         THE COURT:  -- October.
17         All right.  And you discussed that amended consent
18    order with your counsel before you signed it?
19         THE DEFENDANT:  Yes, your Honor.
20         THE COURT:  All right.
21         Mr. Adams, the version I have is not signed by anybody
22    from your office, but it does appear over the signature of
23    Audrey Strauss.  Is the amended consent order that you
24    submitted simply to substitute the name of the new United
25    States Attorney?

LAKVOAKP

1          MR. ADAMS:  It's not, your Honor.  There is that

2     addition of Mr. Williams.  The other term has to do with the

3     application of seized funds.  Money is seized from the property

4     belonging to Mr. Oakes to the satisfaction of the forfeiture

5     amount.  And I believe that's what I did forward, but I will

6     confirm.

7          THE COURT:  In other words, the version I have

8     provides that a money judgment will be entered in the amount of

9     $62,821; and that will be final as of today, and it would be

10    deemed part of the sentence and included in the Judgment of

11    Conviction.  You're now recognizing that you have previously

12    seized some funds and that dollar amount should be reduced?

13         MR. ADAMS:  The dollar amount remains the same and the

14    money judgment remains the same.  We will take the funds that

15    were seized to satisfy that money judgment.

16         THE COURT:  All right.  I'm sorry.

17         Go ahead, Mr. Adams.  I'm sorry.

18         MR. ADAMS:  I was going to add that we do expect that

19    there is a balance of funds after the satisfaction of that

20    judgment.  And those funds will be returned to Mr. Oakes.

21         THE COURT:  So the money judgment would be paid in

22    full.

23         MR. ADAMS:  Correct.

24         THE COURT:  All right.

25         Mr. Pate, is that consistent with your understanding?

LAKVOAKP

1          MR. PATE:  Yes, your Honor, it is.

2          THE COURT:  All right.

3          And Mr. Oakes, did you discuss these changes with your

4    lawyer and are the edits outlined by Mr. Adams consistent with

5    your understanding?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  Thank you.

8          I'm not sure, Mr. Adams, if we have that revised

9    order.  If not, would you please get it to Ms. Dempsey and we

10   will get it entered after the conclusion of today's proceeding.

11         MR. ADAMS:  Yes, your Honor.

12         THE COURT:  All right.

13         Mr. Oakes, do you understand that your plea agreement

14   provides that you are giving up or waiving your right to

15   litigate, to appeal or to challenge your sentence under a

16   statute known as Title 28, United States Code, Section 2255

17   and/or 2241?

18         I should say you're giving up your right to appeal and

19   you're giving up your right to litigate or to challenge your

20   sentence under those statutes if I sentence you to or below the

21   stipulated guideline sentence set forth in the plea agreement.

22         Is that your understanding, sir?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  All right.

25         And do you understand that you're under no obligation

LAKVOAKP

1    to waive your right to appeal or otherwise litigate the

2    sentence?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Do you understand that the agreement

5    provides that you are waiving any right to appeal or attack

6    your conviction on the basis that the government didn't provide

7    you with discovery materials, exculpatory material, except

8    information establishing factual innocence or any material to

9    impeach the government's witnesses against you?

10           Is that your understanding?

11           THE DEFENDANT:  Yes, your Honor.

12           THE COURT:  And do you understand that you're under no

13   obligation to waive those rights?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Do you understand that the agreement

16   provides that you will not move for a downward departure under

17   the sentencing guidelines or seek any adjustment under the

18   guidelines that's not described in the plea agreement, but that

19   you can make an argument for a lower sentence under the general

20   sentencing statute that I referenced earlier known as Section

21   3553(a)?  Is that consistent with your understanding?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  And do you understand that you're under no

24   obligation to enter into such an agreement?

25           THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

1      THE COURT:  And do you understand that your plea

2  agreement provides that you're waiving any challenge to your

3  guilty plea, your conviction, and your sentence based on any

4  immigration consequences of your plea, regardless of any advice

5  that you may have received regarding such immigration

6  consequences?

7      THE DEFENDANT:  Yes, your Honor.

8      THE COURT:  And do you understand you're under no

9  obligation to make this waiver?

10      THE DEFENDANT:  Yes, your Honor.

11      THE COURT:  Does this written agreement accurately

12  reflect your complete and total understanding of the entire

13  agreement between you and your lawyer and the government?

14      THE DEFENDANT:  Yes, your Honor.

15      THE COURT:  Is everything you understand about your

16  plea and your sentence to this point covered in that plea

17  agreement?

18      THE DEFENDANT:  Yes, your Honor.

19      THE COURT:  Has anything been left out?

20      THE DEFENDANT:  No, your Honor.

21      THE COURT:  Apart from what's contained in the plea

22  agreement, have any promises been made to you in order to get

23  you to plead guilty?

24      THE DEFENDANT:  No, your Honor.

25      THE COURT:  Have any threats been made against you to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LAKVOAKP

1    get you to plead guilty?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Was any coercion or force used to induce

4    you to plead guilty?

5              THE DEFENDANT:  No, your Honor.

6              THE COURT:  Knowing all of what we've just discussed,

7    is it still your wish, Mr. Oakes, to plead guilty pursuant to

8    the plea agreement?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  All right.

11             Mr. Pate, do you know of any valid reason why your

12   client would prevail at trial or why he should not be permitted

13   to plead guilty?

14             MR. PATE:  No, your Honor.

15             THE COURT:  All right.

16             Mr. Oakes, at this point, would you please tell me in

17   your own words what it is that you did that makes you guilty of

18   the crime to which you are entering a plea of guilty.  I need

19   you to tell me what you did, with whom you did it, where you

20   did it, when you did it, what actions you took.

21             THE DEFENDANT:  Well, your Honor, I purchased

22   medications from Dr. Seth Fishman, Dr. Gregory Skelton, and his

23   assistant, Ross Cohen, and administered the medications to my

24   horses in my care to try to gain an unfair advantage.

25             THE COURT:  You're a horse trainer, sir?

LAKVOAKP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Where do you race your horses?

3          THE DEFENDANT:  Mostly in Pennsylvania.

4          THE COURT:  Do you race at all in New York?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Are you only a thoroughbred horse trainer?

7          THE DEFENDANT:  Standardbred horse trainer.

8          THE COURT:  Standardbred.  So do you race in Yonkers?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  In Yonkers.

11         And did you administer the drugs to any horses that

12    were racing at Yonkers?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Do you also race in -- is there still a

15    standardbred track in Goshen?

16         THE DEFENDANT:  I'm not sure, your Honor.

17         THE COURT:  But you don't race there though?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  All right.

20         At the time you administered these drugs to your

21    horses, why did you do that?

22         THE DEFENDANT:  To try to get an advantage, and

23    hopefully things would be -- you know, do better.

24         THE COURT:  So to enhance their performance?

25         THE DEFENDANT:  Yes, your Honor.

LAKVOAKP

|  |  |
|---|---|
| 1 | THE COURT:  And at the time you did that, was it your |
| 2 | intent to mislead or deceive either drug regulators or horse |
| 3 | racing officials or both? |
| 4 | THE DEFENDANT:  Yes, your Honor. |
| 5 | THE COURT:  Were those drugs that were manufactured |
| 6 | somewhere other than in licensed or regulated FDA facilities? |
| 7 | THE DEFENDANT:  I got them from Dr. Fishman and Dr. |
| 8 | Skelton, so wherever they got them. |
| 9 | THE COURT:  Okay.  And at the time you did what -- |
| 10 | first of all, when did you do what you just described to me? |
| 11 | THE DEFENDANT:  I'm not exactly sure, but around the |
| 12 | first part of 2019 to maybe March of '20 -- 2021, rather -- no, |
| 13 | '20. |
| 14 | THE COURT:  At the time of your -- |
| 15 | THE DEFENDANT:  Yes, your Honor. |
| 16 | THE COURT:  Okay.  And when you did all of what you've |
| 17 | just described to me, did you know that what you were doing was |
| 18 | wrong and illegal? |
| 19 | THE DEFENDANT:  I knew it was wrong, your Honor, yes. |
| 20 | THE COURT:  All right. |
| 21 | Mr. Adams, is there anything further in terms of |
| 22 | factual matter that you wish me to address with Mr. Oakes in |
| 23 | connection with his allocution? |
| 24 | MR. ADAMS:  No, your Honor.  The allocution was |
| 25 | sufficient.  Thank you. |

LAKVOAKP

```
 1              THE COURT:  All right.
 2              Anything further, Mr. Pate, that you believe I should
 3     address with Mr. Oakes at this time?
 4              MR. PATE:  No, your Honor.  Thank you.
 5              THE COURT:  All right.
 6              Mr. Adams, would you please summarize the evidence
 7     that you would be introducing against Mr. Oakes if the case
 8     were to go to trial.
 9              MR. ADAMS:  Yes, your Honor.
10              Were we to proceed to trial, the evidence would come
11     in a number of different forms and categories.  I'll summarize
12     those to you here.
13              First would be Title III intercepts, communications,
14     both oral and electronic communications, between Mr. Oakes and
15     others, principally including Jorge Navarro, regarding the
16     distribution and use of misbranded performance-enhancing drugs,
17     and the provision of those drugs to Mr. Navarro.
18              Search warrant results from the physical search of the
19     barn that's associated with Mr. Oakes, that occurred on two
20     different occasions through the course of the investigation.
21     One was a covert search, and we would introduce photographs of,
22     among other things, materials for preparing and administering
23     misbranded drugs; and subpoena records from, among other
24     places, Seth Fishman's company, Equestology; as well as racing
25     records and records of historical races at, among other places,
```

LAKVOAKP

 1    Yonkers Racetrack.

 2              THE COURT:  All right.  Thank you.

 3              All right.  Mr. Oakes, now that we've talked about

 4    your plea agreement and the possible penalties of the crime to

 5    which I'm told you wish to plead guilty, we can turn to

 6    entering a plea at this time.

 7              Are you prepared to proceed?

 8              THE DEFENDANT:  Yes, your Honor.

 9              THE COURT:  All right.

10              Mr. Oakes, how do you plead to Count One of the

11    superseding information charging you with drug misbranding and

12    adulteration with the intent to defraud or mislead?

13              THE DEFENDANT:  I plead guilty, your Honor.

14              THE COURT:  And are you pleading guilty because you

15    are, in fact, guilty?

16              THE DEFENDANT:  Yes, your Honor.

17              THE COURT:  Are you pleading guilty voluntarily?

18              THE DEFENDANT:  Yes, your Honor.

19              THE COURT:  Are you doing so of your own free will?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  Has anyone threatened you, made a promise

22    to you, coerced you in any way to induce you to plead guilty?

23              THE DEFENDANT:  No, your Honor.

24              THE COURT:  All right.

25              Mr. Pate, are there any other questions that you

LAKVOAKP

1   believe I should ask Mr. Oakes in connection with his plea?

2            MR. PATE:  No, your Honor.  Thank you.

3            THE COURT:  Mr. Adams?

4            MR. ADAMS:  No, your Honor.  Thank you.

5            THE COURT:  All right.

6            Mr. Oakes, you have acknowledged that you are, in

7   fact, guilty as charged in Count One of the superseding

8   information.  Because I am satisfied that you know your rights,

9   including your right to go to trial, and that you are waiving

10  them voluntarily and freely and knowingly, and that you are

11  aware of the consequences of your plea, including the sentence

12  that may be imposed, I find that your plea is entered knowingly

13  and voluntarily and is supported by an independent

14  basis-in-fact containing each of the essential elements of the

15  offense.  I accept your guilty plea and I enter a judgment of

16  guilty on Count One of the superseding information charging you

17  with drug adulteration and misbranding with intent to defraud

18  or mislead.

19           Now, sir, I want to talk to you about the process from

20  this point going forward.  The next step is, as I said to you

21  earlier, the probation office needs to prepare a presentence

22  report that will assist me in determining what the appropriate

23  sentence is in your case.  In order to prepare that report, the

24  probation office needs to interview you.  It is very important

25  that any information that you give to the probation officer be

1    truthful and it be accurate.  As I say, that report is

2    important to my decision as to what your sentence will be.

3            You and your lawyer will have an opportunity, once

4    that report is prepared in draft form, to review the report, to

5    challenge it, to comment on it, provide those comments to the

6    probation office, which may amend the report to reflect your

7    comments; if not, it will certainly note your objection.

8            Before I impose sentence, both your lawyer and the

9    government's lawyer have an opportunity to make a written

10   submission to me.  And you, of course, will have the

11   opportunity to address the Court before sentence is imposed.

12           Is there any reason in the opinion of counsel why a

13   presentence report should not be prepared at this time?

14           Mr. Adams?

15           MR. ADAMS:  No reason here, your Honor.

16           THE COURT:  Mr. Pate?

17           MR. PATE:  No, your Honor.

18           THE COURT:  All right.  Does defense counsel wish to

19   be present for any interview of Mr. Oakes in connection with

20   that report?

21           MR. PATE:  Absolutely, your Honor.  Yes.

22           THE COURT:  All right.  I hereby order that there be

23   no interview unless counsel is present.

24           Mr. Pate, I would ask you please to reach out to the

25   probation office and make arrangements for that interview to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LAKVOAKP

1  happen within the next 14 days.  I remind the government to --

2  Mr. Adams, obviously please reach out to the probation officer

3  and provide the statement of facts within the same 14-day time

4  period.

5          MR. ADAMS:  Yes, your Honor.

6          THE COURT:  There is a draft report.  It's very

7  important that counsel timely provide comments or objections to

8  the probation office.  Once there is a final report, courtesy

9  copies will be provided to chambers.

10          Let's look at calendars and talk about a date for

11  sentencing.  If you could just give me a moment please.

12          All right.  It looks like we would be talking about

13  the latter half of February.  February 17, is that correct,

14  Ms. Dempsey, appears to be available?

15          THE DEPUTY CLERK:  Yes, your Honor.

16          THE COURT:  Does that work for everybody?

17          Mr. Pate?

18          MR. PATE:  Yes, your Honor.

19          THE COURT:  Mr. Adams?

20          MR. ADAMS:  It does, your Honor.  Thank you.

21          THE COURT:  All right.

22          So let's set February 17th.

23          What time, Ms. Dempsey?

24          THE DEPUTY CLERK:  10 a.m.

25          THE COURT:  All right.  10 a.m. on the 17th.

LAKVOAKP

1          So, again, I just remind you, Mr. Pate, of the need to

2     reach out to probation to begin the process of getting the

3     report done.

4          Mr. Oakes, I just remind you again in closing that

5     it's very important that you be truthful and cooperative with

6     the probation office.  Failure to be truthful with probation or

7     with the Court obviously could have an adverse effect on your

8     sentence and it may subject you to further separate

9     prosecution.

10          I also reserve the right to deny you the two-level

11     reduction of the sentencing guidelines calculation for

12     acceptance of responsibility if you do not cooperate fully with

13     the probation office, all right, sir?

14          Is there anything further from you, Mr. Pate?

15          MR. PATE:  No, your Honor.  Thank you.

16          THE COURT:  Mr. Adams?

17          MR. ADAMS:  Nothing here, your Honor.

18          THE DEFENDANT:  Thank you.

19          THE COURT:  All right.  Thank you very much then.

20          I thank our court reporter, Ms. Martin, for being with

21     us.  And we are adjourned.  Thank you.

22                         *    *    *

23

24

25