M4PKGIAC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        20 CR 160 (MKV)

5   LISA GIANNELLI,

6              Defendant.

7   ------------------------------x

8                                   New York, N.Y.
                                    April 25, 2022
9                                   4:00 p.m.

10  Before:

                    HON. MARY KAY VYSKOCIL,
11
                                         District Judge
12
                            APPEARANCES
13

14  DAMIAN WILLIAMS
         United States Attorney for the
15       Southern District of New York
    SARAH MORTAZAVI
16  BENJAMIN ANTHONY GIANFORTI
         Assistant United States Attorneys
17
    FASULO BRAVERMAN & DIMAGGIO
18       Attorneys for Defendant
    BY:  LOUIS V. FASULO
19       -AND-
    LAW OFFICES OF BOBBIE C. STERNHEIM
20  BY:  ALEX STEPHEN HUOT

21

22

23

24

25

M4PKGIAC

1          MS. MORTAZAVI:  Good afternoon, your Honor.  Sarah

2    Mortazavi, for the government.  I'm joined at counsel table by

3    Benjamin Gianforti.

4          THE COURT:  Good afternoon.

5          MR. GIANFORTI:  Good afternoon.

6          THE COURT:  And welcome to the team.

7          MR. GIANFORTI:  Thank you very much.

8          THE COURT:  All right.

9          MR. FASULO:  Good afternoon, your Honor.  It's Louis

10    Fasulo, Fasulo Braverman & Di Maggio, along with Alex Huot,

11    Lisa Giannelli, and Sean McCabe, our paralegal.

12          THE COURT:  Good afternoon to everybody.  You can all

13    be seated.

14          MR. FASULO:  Thank you, your Honor.

15          THE COURT:  So we're here for the final pretrial

16    conference in this matter, which is scheduled for trial to

17    commence with jury selection on Wednesday morning.  Let me just

18    update you about a couple of things in terms of COVID protocols

19    just to make sure everyone understands what the rules are these

20    days.

21          Counsel and witnesses who are speaking may remove

22    their masks.  We don't have the HEPA filters and all anymore.

23    Spacing restrictions are gone away.  So we will be trying the

24    case in this courtroom -- that's what I say — picking the jury

25    in this courtroom as well, back, in effect, to as things were

M4PKGIAC

before.  The only remnants that remain is while you're all
seated, everybody still needs to keep their masks on.  Only the
person speaking can remove their mask.  So at the lectern and
at the witness stand, we're trying to work on getting a
Plexiglas put in just as really a belts-and-suspenders, but
it's not happening in most courtrooms anyway.

      The only other restriction that remains — it doesn't
really impact us — is that we're still, through this quarter,
working on the master trial calendar, but the hope is that
starting in the third quarter of the year, we're back to judges
scheduling their own trials as well, which is a welcome.

      MR. FASULO:  Great news.

      THE COURT:  Very welcome change.

      So any questions from anyone about COVID protocols?

      MS. MORTAZAVI:  Not from the government.

      MR. FASULO:  Not from the defense.

      THE COURT:  All right.  If things occur as we're
talking through today, don't hesitate to ask me.

      So the next question I have is:  Do the parties have
an estimate about how long the trial is going to take?  Have
you talked to each other about this?

      MS. MORTAZAVI:  We have talked in general terms, your
Honor.  I think with respect to the government's case, it
should take about a week, and that's a week of full calendar
days, not business days.

M4PKGIAC

1              Then I understand the defense may have their own

2      case --

3              THE COURT:  What does that mean, "full calendar days,

4      not business days"?

5              MS. MORTAZAVI:  As in it won't be seven business days,

6      it will be seven calendar days.

7              THE COURT:  Oh.  I only have five business days, but,

8      okay.

9              MS. MORTAZAVI:  Fair enough, your Honor.

10             THE COURT:  I understand.

11             MS. MORTAZAVI:  I think we anticipate resting midweek

12     the following week, the first week of May.  And I understand

13     the defense might have their own case that they want to present

14     to the jury, and I defer to Mr. Fasulo on how long that may

15     take.

16             THE COURT:  Okay.

17             MR. FASULO:  Judge, we anticipate a day, maybe a day

18     and a half, max, for the defense case.

19             THE COURT:  Okay, perfect.  And then we'll have

20     summations and all.

21             So it sounds like you're both anticipating, though,

22     two weeks?

23             MR. FASULO:  For the jury purposes, you mean, or your

24     own calendaring purpose?

25             THE COURT:  Kind of for both.  I don't know how long a

M4PKGIAC

1  jury will be out.

2          MR. FASULO:  I'm just thinking in terms of the

3  evidentiary part of the case, Judge, it's my anticipation at

4  this point the trial is going to go very quickly, based on the

5  way the government is putting this case together different than

6  when we sat here originally and, also, in terms of our way that

7  we are going to interpose our questioning, et cetera.  So I

8  would say that that's an outside time frame, the two weeks.  I

9  would say that we could be done before that, but that's my

10 answer.

11         THE COURT:  For purposes of talking to the jurors,

12 then, it's my plan to tell them that we anticipate the trial

13 will be about two weeks?

14         MR. FASULO:  Yes, absolutely.

15         MS. MORTAZAVI:  That's right.

16         THE COURT:  Okay.

17         Now, the other thing I wanted to seek your input on is

18 the trial day.

19         Last time, and typically, I just do a normal trial

20 day, from 9:30 or 10 until about 4:30.  I do have a number of

21 other things.  I know that next Thursday, I have to deal with

22 another criminal matter at 8:30 in the morning that will take

23 about an hour.  So my suggestion would be that we start with

24 the jury at 10:00 each day, and that, if there are things we

25 need to talk about at the end of the day before, you let me

M4PKGIAC

1    know that, and we'll talk each day about what time I'll see you

2    all the following morning, but that we'll tell the jurors

3    10:00 o'clock start time every day.

4            I do plan to arrange for morning refreshments for the

5    jurors basically to encourage them to be here on time so that

6    they're ready to be in their seats and start with testimony at

7    10:00 o'clock, so that we can get this wrapped up in two weeks.

8            It may be that on a given day or on a given Friday, I

9    might have to adjourn a bit early to deal with other things,

10   but we'll just have to deal with that as it comes up.

11           MR. FASULO:  With that issue, I'm glad you brought

12   that up.  On this Friday, I have to be out in Long Island for a

13   wedding in the late afternoon or evening.

14           THE COURT:  On the 29th?

15           MR. FASULO:  Yes.  Obviously, the trial comes first.

16   I would love to be able to get out of here at a reasonable

17   hour.

18           THE COURT:  What does that mean?

19           MR. FASULO:  Whatever the Court can do.  I mean, the

20   wedding starts at 6:00, so I'm going to get there late anyway,

21   but whatever time I can get out of here, the better for me, but

22   I, obviously, want to respect the jurors' times and whenever I

23   get there, I get there.  But, obviously, it's Friday, and I'm

24   driving all the way out to North Fork.  So if the Court has

25   other things they wanted to accomplish, I would have loved if

M4PKGIAC

1    that can happen.  But, obviously, I respect the jurors' times

2    and the Court's time, so whatever happens, happens.

3               THE COURT:  At a minimum, why don't we plan Friday a

4    3:00 o'clock adjournment --

5               MR. FASULO:  That would be wonderful, Judge.

6               THE COURT:  -- because I actually do have something as

7    well.  So this Friday.

8               MR. FASULO:  I appreciate that.

9               THE COURT:  So this Friday, we'll adjourn at 3:00.

10              MR. FASULO:  That's perfect.

11              THE COURT:  And then, for the most part, every other

12   day, we'll go from 10:00 until 4:30 or 5:00, and if we have to

13   press on a little later on a given day in order to get us to

14   that two weeks, that will be what we will do.

15              Also, on May 6th, the following Friday, I have another

16   criminal matter on at 4:00 o'clock that I have to hear.

17              Now, also, the next thing, some of this logistical

18   stuff.  The Court is no longer providing lunch for the jurors.

19   I think they are during jury selection, if I remember -- no,

20   not even that?  Only deliberations.

21              So that creates an issue, frankly, in terms of how

22   long we have to break for lunch, because of people to leave, go

23   outside, get something to eat and come back.  I'm going to ask

24   the jurors if they can please try to bring lunch or go to the

25   cafeteria and get lunch, so I would really like to keep the

M4PKGIAC

1    lunch break to no more than an hour, and if we can keep it

2    less, I'd rather have it be 45 minutes or so.  But I'm just

3    telling you that now, and we'll see once we have a jury in

4    place.  Some jurors are more cooperative than others, as you

5    know.  But one hour, max, for lunch and, hopefully, 45 minutes.

6              We already talked about we're going to do jury

7    selection and the trial here in this courtroom.

8              So the next thing I want to talk you about is jury

9    selection.  Have you talked to each other about the number of

10   alternates?

11             MR. FASULO:  Yes, your Honor.  One of the things we

12   were thinking, because it's a short trial, we believe two

13   alternates is probably going to be sufficient.  So we would ask

14   the Court to consider two alternates.  We both have spoken

15   about it, and both have come to that agreement.

16             THE COURT:  That's acceptable, Ms. Mortazavi?

17             MS. MORTAZAVI:  That's right, your Honor.

18             THE COURT:  That was my inclination as well.  If you

19   recall, for the last trial, we had four alternates — we didn't

20   need any of them — and that trial was a bit longer than what

21   you're telling me you anticipate this one will be.  So let's

22   plan on two alternates, which means, then, that the government

23   gets seven challenges and the defense gets eleven, correct?

24             MR. FASULO:  That's correct, your Honor.

25             MS. MORTAZAVI:  Correct, your Honor.

M4PKGIAC

1          THE COURT:  I have your proposed voir dire.  I also

2     have the other materials you submitted to me, the requests to

3     charge and all.

4          On those documents, I just have to tell you, going

5     afford, if you're going to give me things that are color-coded,

6     we don't have a color printer at the courthouse, so I need you

7     to print them for me.  I printed the colored pages at my own

8     printer, and then I don't have the notes.

9          So you're going to correct me, please, if I'm wrong,

10     but my understanding is that there are disputes on the

11     following questions:  Question 19, Question 1(g) about the

12     juror background.  I think that's it.  I have a couple of

13     questions about a few other things.

14          MS. MORTAZAVI:  That's all I have, your Honor.

15          THE COURT:  Mr. Fasulo, is that correct?

16          MR. FASULO:  That's it, Judge.

17          THE COURT:  So on Question 19, "Have you followed any

18     criminal trials in the newspapers, magazines, on the internet,

19     or on TV," and, Mr. Fasulo, you want to add:  Do you have any

20     opinions or beliefs as a result of watching these trials which

21     would make it difficult for you to evaluate the evidence in

22     this case?

23          And then you go on to say:  As a result of your

24     exposure to the media described in 24, is there any reason why

25     you cannot be fair and impartial?  I don't know what this

M4PKGIAC

1    means, first of all.

2                MS. MORTAZAVI:  Your Honor, if I may, the first

3    statement was actually the version proposed by the government.

4    And Mr. Fasulo's second statement, which is the last one, is

5    the one that he proposed.  I think the numbering just was not

6    consistent on this one.  I think it was supposed to refer to

7    18 -- I'm sorry, to 19, which is --

8                THE COURT:  Wait a minute.  You're proposing just the

9    first sentence, have you followed any criminal trials, or the

10   next sentence, also, do you have any opinions or beliefs?

11               MS. MORTAZAVI:  The next sentence, also.  So the first

12   two sentences in 19, the third sentence is Mr. Fasulo's

13   proposal.

14               THE COURT:  Okay.  So only the third sentence, as a

15   result of your exposure, is your addition, Mr. Fasulo?

16               MR. FASULO:  Yes, Judge.

17               Can I just make a correction on that as well?

18               THE COURT:  Yes.

19               MR. FASULO:  After reading it again, I'm fine with 19.

20               THE COURT:  Okay.  I was going to say, it is a bit

21   redundant.

22               MR. FASULO:  I'm fine.  I read it over again, and we

23   were going back and forth, and the way it resolved in 24 --

24   it's fine.  So I'm happy with 19.

25               THE COURT:  Okay.

M4PKGIAC

1          So that leaves only 1(g), where you ask, Mr. Fasulo,

2    that we add -- you want to add whether these people are

3    salaried employees or work on commissions or both and whether

4    the commission is based on a percentage of sale or billing

5    collection, right?

6          MR. FASULO:  The main part of that question is

7    important, it's whether they are a salaried employee or

8    commissioned.

9          THE COURT:  Commissioned, yes.

10          MR. FASULO:  The second part, I'm okay with the Court

11    just asking the beginning question, which is:  Are you a

12    salaried employee, or do you work on commissions?

13          THE COURT:  So, in other words, I should strike "and

14    whether the commission is based on a percentage of sale or bill

15    collection"?

16          MR. FASULO:  Yes.

17          THE COURT:  So that's that.

18          So, Ms. Mortazavi, your position on adding "and

19    whether they are salaried employees or work on commission or

20    both"?

21          MS. MORTAZAVI:  That's fine, your Honor.  Now that

22    we've stricken the remaining language, I think it's appropriate

23    and acceptable and not overly invasive.

24          THE COURT:  Okay.  So it sounds like we have

25    agreement, then, on the voir dire that you've submitted, but

M4PKGIAC

1    now I have a couple of questions that I'd like to speak to you

2    all about.

3           Both of you sat through the last voir dire that we did

4    because the mistrial with respect to Ms. Giannelli came after

5    we had picked the jury.  I have to tell you that the questions

6    about people owning pets and going to the vet, as I was going

7    through it, I thought to myself, this is just getting silly

8    because I'm hearing from every person about owning a dog or a

9    cat or a fish.  Ms. Giannelli, unlike Dr. Fishman, is not a

10   vet, correct?

11          MR. FASULO:  That is correct, Judge.

12          THE COURT:  So why do we need these questions about,

13   have you ever gone to a vet?

14          MS. MORTAZAVI:  So, your Honor, that's going to be a

15   central feature of trial, which is Ms. Giannelli's interactions

16   with Seth Fishman, and the veterinarian client-patient

17   relationship, all the testimony that came in through our expert

18   witness at the last trial will be presented at this trial.  So

19   I do think there is some relevance to this with respect to the

20   evidence that we're going to hear.  But I agree with your Honor

21   that there were lengthy questions about the jurors' pets.  The

22   government has no objection to striking Number 21 and 22 --

23          THE COURT:  Can't we just ask somebody, maybe, about

24   equine or large animal?

25          MS. MORTAZAVI:  And Number 23, I think, covers that,

M4PKGIAC

1    your Honor.  So in light of that, the government --

2              MR. FASULO:  23?

3              MS. MORTAZAVI:  Have you ever owned a horse as a pet,

4    owned a horse for racing, or have you ever been a member of an

5    equestrian club, I think those questions -- given that those

6    questions will be posed, 21 and 22, the government has no

7    objection to removing.

8              THE COURT:  All right.  So the proposal, Mr. Fasulo,

9    is that we get rid of Number 21, which is, "Do you currently

10   have, or have you ever owned, any domestic pets, such as a cat

11   or a dog," and that we get rid of "Do you have any experience

12   attending a veterinarian's office with your or somebody else's

13   pet?"

14             MR. FASULO:  So Number 22, Judge, I agree that we can

15   get rid of 22 for sure.

16             THE COURT:  Okay.

17             MR. FASULO:  I would still request 21 -- people have

18   strong feelings about animals, and in terms of the jury taking

19   this case, this is a serious case, we're facing serious

20   repercussions in this case, so I think it's important that they

21   understand that pets -- in this world and in terms of

22   regulations, that it's important, and I don't want a juror to

23   be dismissive of it, and it just gives me a light into whether

24   or not they would be more receptive to sit here and take this

25   case in the seriousness that it is by the fact that they have a

M4PKGIAC

1    relationship with animals and --

2            THE COURT:  But this case is not about pets.  It's

3    about animals that were used for racing purposes, which we

4    cover in Number 23.

5            MR. FASULO:  One second?  Let me just talk with my

6    colleague.

7            (Counsel confer)

8            MR. FASULO:  Seeing if we don't get rid of 23, and we

9    keep 23, I'm fine with getting rid of the question, do you own

10   a pet.

11           THE COURT:  All right.  So number -- domestic pet,

12   we're going to get rid of?

13           MR. FASULO:  Right.

14           THE COURT:  21 and 22 are out, then.

15           MR. FASULO:  I'm fine with that, Judge.

16           THE COURT:  All right.  Thank you.

17           Then some of the following questions, to me, about the

18   interaction with law enforcement, there seemed to be an awful

19   lot of questions, Number 17, 28, 29, 31, 32, 33, 34, 36, 46,

20   and then there's a whole separate line that asks whether

21   there's any bias against law enforcement.  So do we really need

22   all of these questions?  Have you ever been questioned?  Have

23   you ever been charged?  Have you ever been the subject of an

24   investigation?  Can't some of these be consolidated?

25           MS. MORTAZAVI:  I'm sure we could, your Honor.  We can

M4PKGIAC

1    take a look at the questions that you've highlighted and

2    propose one or two global questions.

3          THE COURT:  All right.  So 34, 36, and 46, it seems to

4    me, you can consolidate.

5          And then I've given you the other numbers, 17, 28, 29,

6    31, 32 -- like 31 and 32 might be able to go together and 33.

7    So I'm going to leave that to you and Mr. Fasulo to discuss and

8    come back to me with a proposal for how to --

9          MS. MORTAZAVI:  Certainly, your Honor.

10         THE COURT:  -- combine some of these.

11         Now, Question No. 6 is about the COVID protocols.  I

12    guess we just need to double-check with the juror office that,

13    in fact, this is still accurate, that these are still the

14    questions that are being asked to people in their questionnaire

15    before they came to the courthouse, and that these are all

16    questions about COVID, and then we say are any of your answers

17    different now than when you filled out the questionnaire?  But

18    I'm honestly not sure.  So we'll try to find out about that,

19    and if need be, we'll have to tailor that one, too.

20         If we determine that it's inaccurate, and it needs to

21    be changed, we'll communicate with you by email tomorrow to let

22    you know, because I'd like to have a final printed version,

23    just like we did last time, that we give to the prospective

24    jurors just to try to move things along.

25         Question No. 40, Mr. Fasulo, we just ask if the

M4PKGIAC

1    prospective jurors' know you.  Is there anyone else from your

2    team that we ought to be including?

3            MR. FASULO:  Yes, Judge.  Because -- Alex Huot, from

4    my team, and Sean McCabe.

5            THE COURT:  Okay.

6            Now, questions 19 and 41 are about what the jurors

7    have read or may have read about the case.  I don't know how

8    specific we want to be here, but, as you all know, that

9    Washington Post article came out during Dr. Fishman's trial.  I

10   don't really want to specifically reference an article.  All

11   I'll do then is invite people to go look for it.  So if you

12   just please look at 19 and 41 --

13           MR. FASULO:  I do think, Judge, we need to cover that

14   area, seeing that there is going to be coverage here.  So if I

15   can work with the U.S. Attorney on this, and we can get it

16   resolved.

17           THE COURT:  Yes.  Because 41 asks about the

18   prosecutors, the lawyers, law enforcement, and the defendant.

19   Question 19, again, just asks about the prosecutors, lawyers --

20   so there's nothing asking have you read about this case, right,

21   or about alleged doping in the horseracing industry.

22           MR. FASULO:  We can get that to you today, Judge.

23   I'll go over that.

24           THE COURT:  All right.  Then the only other question I

25   have is on the individual question 1(d).  Why do we need to

M4PKGIAC

1   know if people own or rent their homes?  It just seems we're

2   getting a little bit personal here.  1(d), that is, on the

3   individual questions.

4           MS. MORTAZAVI:  So I think, your Honor, that gives

5   some level of insight into the defendants.  Similar to asking

6   them what periodicals or newspapers they read and what they do

7   for their occupation, buying a home is a significant decision,

8   and it indicates something about the relative place in their

9   lives that these particular jurors are and their ability to

10  make a serious decision.  So we would advocate to keep that in

11  just to give both sides an indication as to that particular

12  juror's comfort with making large decisions.

13          THE COURT:  This is on consent?

14          MR. FASULO:  Judge, I have no strong feelings on this.

15          THE COURT:  Let's just leave it.

16          Is there anything else that you've noticed on voir

17  dire?

18          MS. MORTAZAVI:  Nothing for the government.

19          THE COURT:  All right.

20          So when can you get me, after you talk to each other

21  about these various points that I have raised --

22          MR. FASULO:  I think we can talk after this hearing

23  right now and, hopefully, get something to you --

24          THE COURT:  By noon tomorrow?

25          MR. FASULO:  For sure.

M4PKGIAC

1      MS. MORTAZAVI:  Yes.

2      THE COURT:  Okay.

3      Let me just go through a couple of other things.  I

4   assume there are no new in limine motions, correct?

5      MS. MORTAZAVI:  That's correct, your Honor.

6      There will be potential issues, nothing that's ripe to

7   bring to the Court's attention, but Mr. Fasulo and I have

8   agreed that, as the trial progresses, we're going to consult on

9   issues, particularly issues relating to cross-examination of

10   potential witnesses, and, hopefully, try to reach an agreement.

11   If not, we will bring them to the Court's attention then.

12      THE COURT:  No new in limines from the defense?

13      MR. FASULO:  We've been currently working on one

14   stipulation the government had submitted regarding licensing

15   issues in terms of the vet and their authority to sell in other

16   states.  We're trying to work out that stipulation in some way.

17      THE COURT:  Okay.

18      MR. FASULO:  We believe, after our conversation, that

19   we're going to have a resolution, so we haven't brought that to

20   the Court's attention and, hopefully, to resolve it.  It's not

21   an early issue in the case, so we'll have time if we do need to

22   argue that or submit papers on that.

23      THE COURT:  All right, good.

24      So in terms of jury selection, I didn't -- I'm sorry,

25   did you have something else on motions?

M4PKGIAC

1          MS. MORTAZAVI:  I did have something that I wanted to

2     bring to the Court's attention.  It's not the subject of an

3     in limine motion because the parties are in agreement, and, in

4     fact, Mr. Fasulo just executed a stipulation to this effect,

5     but because it's slightly unusual, I do want to make sure the

6     Court is aware.

7          THE COURT:  Okay.

8          MS. MORTAZAVI:  If you recall, one of our witnesses

9     testified remotely previously —-

10          THE COURT:  That's one of my questions.

11          MS. MORTAZAVI:  Oh, all right.  We were on the same

12     page.

13          That witness still, for various reasons, is

14     unavailable to testify in person.  In light of her prior

15     testimony, the parties have agreed and stipulated to having the

16     transcript of her prior testimony admitted at this trial as an

17     exhibit.  The government intends to call a witness to read back

18     that transcript.

19          THE COURT:  So, in other words, put someone on the

20     stand as though they were that person?

21          MS. MORTAZAVI:  Exactly, but make clear they're

22     reading from the transcript.

23          THE COURT:  Yes.

24          MS. MORTAZAVI:  And we just want to raise that with

25     the Court so that the Court is aware we will not be having

M4PKGIAC

1    remote testimony.  We're, instead, going to go through this

2    process, which, hopefully, will be less cumbersome.

3            THE COURT:  All right.  Remind me --

4            MR. FASULO:  We have edited -- I'm sorry, Judge.

5            THE COURT:  Just remind me who that person is?

6            MR. FASULO:  Courtney Adams.

7            THE COURT:  Okay.  Right.  Thank you.

8            MR. FASULO:  Judge, we also have edited out the

9    cross-examination of Mr. Sercarz and just going with my

10   cross-examination of the witness, and we have consented to

11   that.  From the defendant's point of view, it covers what we

12   believe was relevant in this case --

13           THE COURT:  Okay.

14           MR. FASULO:  -- as it relates to Ms. Giannelli.

15           We have also examined the -- just for the record,

16   we've examined all the alternatives to deal with this witness,

17   and because of the nature of her likely being unavailable to

18   come to court and the other alternatives that are available, we

19   both feel, the government and ourselves, that this will best

20   serve the interests of justice and be the fairest and subject

21   to full cross-examination on her testimony, and we are willing

22   to submit it, per stipulation, in this way.

23           THE COURT:  All right.  Very good.  Look, I appreciate

24   that both of you are working with each other cooperatively on

25   these things as well.  So thank you.

1          I just was going to back up and say, with respect to

2     jury selection, other than the fact that we'll be here, and we

3     will be able to put people in the box, the first 14 people,

4     everything else will be the same.

5          I was just counting.  I saw you look over --

6          MR. FASULO:  Me, too.

7          THE COURT:  So we'll put the first 14 people -- they

8     will be sent up, Ms. Dempsey will pull the numbers from the

9     wheel, in the old-fashioned way, people will take the seats,

10    the first 14 people, and then I'll examine them just like we

11    did last time, where I had to do it one at a time, and just ask

12    people to raise their hand if they have a yes.  To the extent

13    we need to do sidebars, we'll do that.  I'm not going to excuse

14    anybody after individual questions, I'll put them back in the

15    box, we'll finish going through, and then, at the end, we'll

16    excuse whoever needs to be excused and refill those seats and

17    just ask the new people, do you have yesses to any of the

18    questions.

19         MR. FASULO:  You read my mind.  I was going to suggest

20    the same thing, that we don't excuse anybody immediately, no

21    matter what the reason, we put them back in the box, and then

22    let them go, because I saw the domino effect last time that

23    once it started, there was nothing we could do.

24         THE COURT:  It's one of the problems with having to do

25    it in the COVID era.

M4PKGIAC

1          MR. FASULO:  I'm not criticizing.

2          THE COURT:  Okay.  Your first witness?

3          MS. MORTAZAVI:  That would be Kaitlyn Bush.  She's an

4     FBI agent who conducted a search of the defendant's premises.

5          THE COURT:  Okay.

6          And then I assume that you and Mr. Fasulo have talked

7     about when you're going to notify him of the order of your

8     witnesses?

9          MS. MORTAZAVI:  Yes.  Generally, what we did at the

10    last trial, which we intend to carry over here, is the day

11    before or the night before, we will let him know these are the

12    witnesses we expect to call.

13         MR. FASULO:  Yes.  And for the record, Judge, the

14    government's been very cooperative in terms of giving us an

15    idea of where they think and who they think they're going to

16    call in what order.  We respect the idea that this is still

17    strange times, and getting witnesses in the order that they

18    need to get them may be different.  We are ready.  I have to

19    tell you, it is a different case -- just for the record, so I

20    was assigned on this case.  It is a different case than we

21    originally had.  We've gotten a ton of different 3500 material,

22    additional 3500 material.  We are ready, but we are ready to

23    make the move.  We have all our binders ready.  So it shouldn't

24    prevent us from moving forward at a rapid pace unless there's

25    some sort of surprise witness that we didn't know about, but I

M4PKGIAC

1    don't anticipate that.

2              THE COURT:  Okay.

3              Are there any issues with respect to technology that

4    we should talk about?

5              MR. FASULO:  Not from the defense.

6              MS. MORTAZAVI:  Not from the government.  I'll note

7    that our paralegal is going to be meeting with Ms. Dempsey to

8    do a test of the technology tomorrow morning.

9              THE COURT:  Okay.

10             MR. FASULO:  If I can ask that Sean also attend that

11   meeting, just in case there's a -- is that okay with the

12   government?

13             MS. MORTAZAVI:  Of course.

14             THE DEPUTY CLERK:  I'm meeting with Ms. Young at

15   10:00 a.m.

16             MR. McCABE:  Great.

17             THE COURT:  Have you all talked about the verdict

18   form?

19             MS. MORTAZAVI:  We submitted a proposed verdict form.

20   I would defer to Mr. Fasulo if he has any amendments to it.  I

21   expect that that may change over the course of trial, but I

22   defer to him.

23             THE COURT:  Was that your proposal, though, or was

24   that a joint proposal that you gave me?

25             MS. MORTAZAVI:  It was a proposal that we had sent to

M4PKGIAC

1    Mr. Fasulo for his review.  We did not receive comments on it.

2    And we submitted it to the Court as is, absent any objection or

3    comment.

4                THE COURT:  I see.  Okay.

5                So the verdict form, Mr. Fasulo?

6                MR. FASULO:  So in terms of where we're at right now,

7    we have no objection to the verdict form.  However, we -- with

8    the idea that our anticipation is Ms. Giannelli is going to

9    testify in this case, and there may be an additional request

10   that we have on the verdict form in terms of the way the case

11   may play out in terms of charges, et cetera, and we will

12   address that at the time, but, at this point, it's premature

13   for me to kind of give you that until I see where the evidence

14   is from the defense.

15               THE COURT:  Fair enough.

16               Did you say your expectation is that Ms. Giannelli is

17   going to testify?

18               MR. FASULO:  Yes.  There's no -- I am a hundred

19   percent certain, other than a bomb hitting here, that

20   Ms. Giannelli is going to testify in this case.

21               THE COURT:  All right.  Well, hopefully, she's going

22   to be testifying.

23               MR. FASULO:  I never --

24               THE COURT:  For the reason that I hope there's no

25   bomb.  I'm not in any way pressuring you or suggesting that you

M4PKGIAC

1    need to testify.  You understand that, right?

2                    THE DEFENDANT:  Yes.

3                    THE COURT:  Okay.

4                    MR. FASULO:  Judge, I've never made that commitment,

5    but we know that that's going to happen in this case.

6                    THE COURT:  All right.

7            The jury instructions:  Is what you gave me, absent

8    the pages with the comments in red, on consent of both sides?

9                    MR. FASULO:  Yes, your Honor.

10                   THE COURT:  Okay.

11           Again, I don't think there's a whole lot of disputes.

12   As I saw it on -- I don't know if it's page 10 or charge 10,

13   there's the language about good faith; on page 41, there is a

14   comment about the prior trial; and on number 27, the defense

15   proposes to add what's set forth on, I think it's, pages 50 to

16   53.  Is that the universe of disputes?

17                   MS. MORTAZAVI:  That's correct, your Honor.

18                   THE COURT:  Okay.

19           So I'm not going to go through them today.  Part of

20   why I'm not is, I still believe these instructions are a bit

21   repetitive in places and a bit longer than they need to be.  So

22   I intend, over the next day or two, to go through them, to give

23   you a blackline of what I would propose to consolidate or

24   strike, because I think it's repetitive, and give you an

25   opportunity to be heard then.  And then we'll go through,

M4PKGIAC

1    before the actual charge, those three areas on which you

2    currently have disagreements.

3        MR. FASULO:  Judge, we heard that instruction from the

4    Court before, and I will tell you that we worked together on

5    trying to do that.  So we welcome the Court's incite into that,

6    and we will review it at that time again, but we have worked on

7    it --

8        THE COURT:  No, they're better than they were, but

9    they're still a bit repetitive.

10        Look, I try to look at this from the standpoint, too,

11    of the jurors.  They're sitting here and trying to absorb two

12    hours or two and a half hours of my instructing them on the

13    law.  To the extent we can make things tighter and easier to

14    understand for jurors, I just think that serves everybody's

15    interests.  So I will give you my proposed revisions, and you

16    will have an opportunity to weigh in on them.  Worst case, we

17    go back to where we are now, and I will rule on the three areas

18    of disagreement, because I also don't want to create lots of

19    issues.  So if my proposed edits raise problems, we'll take it

20    from there.  Okay?

21        And we'll do the charging conference as we're a little

22    bit more into the trial itself, because I suspect, as I think

23    you were alluding to, Mr. Fasulo, you may have additional

24    comments or requests based on how the evidence comes in.

25        MR. FASULO:  Yes, your Honor, but not -- we understand

M4PKGIAC

1    the context of the jury charge, and we've reviewed it.  So

2    based on your edits, it's not going to be a major change, but

3    there may be some issues.

4                    THE COURT:  Okay.

5                    So, Ms. Dempsey, what time are the jurors available to

6    us on Wednesday?  Do we know?

7                    THE DEPUTY CLERK:  I don't know yet.

8                    THE COURT:  Okay.  Why don't we say we'll resume -- is

9    there anything else that either of you have that we should talk

10   about today?

11                   MS. MORTAZAVI:  Just a request, your Honor.

12   Mr. Fasulo had previewed, as he did at the last trial, that

13   Ms. Giannelli is almost certainly going to testify, though

14   there are no guarantees, the government understands that.

15                   THE COURT:  Right, and no commitment.

16                   MS. MORTAZAVI:  And no commitment whatsoever.

17                   We have asked Mr. Fasulo to preview for us any defense

18   witnesses that he intends to call.  The last time we heard from

19   him, he suggested that he was disinclined to call any other

20   witnesses, but we would request that those witnesses be

21   identified and 3500 be produced by the start of the

22   government's case so that we have time to conduct our own

23   investigation, if necessary.

24                   THE COURT:  Mr. Fasulo?

25                   MR. FASULO:  In the interest of moving the case

M4PKGIAC

1    forward, we obviously will cooperate with the government.  I

2    can't make a commitment like that, nor do I think the law

3    requires me to make such a commitment, but I understand the

4    government's concern, and I will work closely with the

5    government to avoid any possible momentary delay or any delay

6    in this case.

7             THE COURT:  All right.  I do think, Ms. Mortazavi, the

8    defense has a right to hear your case as it comes in before it

9    decides what its case is going to look like.  It could well be

10   they have no case.

11            MS. MORTAZAVI:  Certainly, your Honor.  And if it

12   cannot come by the start of trial, it was merely a request from

13   the government, but I do want to ensure that there isn't

14   unnecessary delay with surprise witnesses that are only

15   disclosed to the government the morning they testify.

16            THE COURT:  Yes, I understand.

17            MR. FASULO:  That won't happen.

18            THE COURT:  In my experience, I don't think we have to

19   worry about that with Mr. Fasulo.  I'm going to take you at

20   your word, Mr. Fasulo.

21            MR. FASULO:  Judge, when I know, if I know, I will let

22   the Court know, and it will not be the day of any testimony or

23   once the defense case started.  It will be before the defense

24   case starts, for sure.

25            THE COURT:  Yes, at a minimum, the evening before you

M4PKGIAC

1    put a witness on the stand.

2           MR. FASULO:  Oh, before, sure, Judge.  That's not even

3    a question.

4           MS. MORTAZAVI:  That's appreciated.  Thank you.

5           MR. FASULO:  Yes, that's not going to happen.

6           THE COURT:  Anything else from either side?

7           MS. MORTAZAVI:  Nothing from the government.

8           MR. FASULO:  Nothing from the defense.  I just want to

9    give them stipulations we have worked on.

10          MS. MORTAZAVI:  Thank you.

11          THE COURT:  All right.

12          Then jury selection begins Wednesday morning as soon

13   as jurors are available to us, so why don't we plan that we

14   will meet here at about 9:45.  I can't guarantee what time the

15   jurors will be ready to be called up, but I expect it will be

16   somewhere around 10:00, right?

17          THE DEPUTY CLERK:  Yes.

18          THE COURT:  I'm saying 9:45 in case you have -- why

19   don't we say 10:00 o'clock, and if there's anything that you

20   need to speak to me about earlier, you can submit or be in

21   touch with Ms. Dempsey and let us know that.

22          MR. FASULO:  Judge, are we working on the same

23   schedule, like we were showing up a half hour before the jury?

24   We will anyway.  I just wanted to have the protocols of what

25   the Court expects.

M4PKGIAC

 1          THE COURT:  Yes, generally speaking, but, as I said,

 2     what I'd like to try to do is when we conclude for a day, I

 3     would say is there anything we need to talk about before we

 4     have the witness take the stand again tomorrow morning, and if

 5     the answer is yes, then we'll agree how long do we need, and if

 6     the answer is no, then we'll meet a few minutes before

 7     10:00 because I want to start at 10:00 o'clock each day.

 8          MR. FASULO:  The only issue that came up in our

 9     conference today that I think I just wanted to address is

10     the -- we are remaining in the building because we want to make

11     sure that we move quickly.  We don't want to be outside, we're

12     going to have lunch in the cafeteria.  Ms. Giannelli is here,

13     her husband is here; they're going to remain with us.  So, in

14     fact, it gets awkward if the jurors are using the cafeteria as

15     well.  I don't know how that works, so I don't know --

16          THE COURT:  It used to work that they would have to go

17     to the other courthouse, but I don't think that there's service

18     at 40 Foley yet.

19          MR. HUOT:  Your Honor, as far as I know, there is.  I

20     had a trial there last month, and they had service there every

21     day at 40.

22          THE COURT:  Okay.  But that still requires all the

23     jurors to go through security over there, get their food, come

24     back here, and go through security again.  So I hate to say it,

25     but it's better if you go next-door.

M4PKGIAC

1           MR. FASULO:  That's a possibility.  If the jurors are

2     going to access the cafeteria, that's something we can look

3     into, and just me and Ms. Giannelli getting into the

4     courthouse, but we have no objection to going next-door.

5           (Pause)

6           THE COURT:  Why don't we see when the jurors get here

7     and --

8           MR. FASULO:  I just wanted to put that on the record.

9     It's a concern.  Obviously, we want to stay distanced from the

10    jurors.  I don't even want the appearance that we're in the

11    same line or something, and -- we can kind of guide that

12    after -- during the first day.

13          THE COURT:  I assume you have a secure pass,

14    Mr. Fasulo?

15          MR. FASULO:  I do.  They don't.

16          MR. HUOT:  None of us do, your Honor.

17          THE COURT:  I know Ms. Giannelli doesn't.  You do, I

18    assume?

19          MS. MORTAZAVI:  We use our government IDs.

20          THE COURT:  Yes.  I wonder if it's a possibility if we

21    can give you the card we give to the jurors, which lets you cut

22    to the front of the line.

23          MR. FASULO:  It's actually easier for the jurors --

24          THE COURT:  That's why I'm saying, if we give you the

25    card, but I'll have to explore whether that's something I'm

1   allowed to do.  I don't think I am.

2            MR. FASULO:  I do understand limitations, but I do

3   think it was important enough to bring up.

4            THE COURT:  No, I appreciate that.  We'll try to work

5   through the logistics before we meet on Wednesday.

6            MR. FASULO:  We'll do whatever --

7            THE COURT:  Wednesday, unfortunately, I think because

8   it will be the jurors' first day, and they won't know to have

9   brought lunch and all that sort of thing, we might have to take

10  a little bit of a longer break, but we'll see how things

11  unfold.  All right?

12           MR. FASULO:  In terms of counsel table — this could

13  help us as well — as long as I'm here, I'm the lead counsel,

14  and -- as long as I'm here and Mr. Huot is here, if Mr. McCabe

15  is in and out of the courtroom, is that okay?

16           THE COURT:  That's fine with me.

17           MR. FASULO:  We can also send him out to help us get

18  food and find a place to eat.

19           THE COURT:  That's fine with me.

20           MR. FASULO:  So we can work out logistics as long as

21  it's okay with the Court.  I know sometimes it's disruptive,

22  but he's capable of making it not disruptive.

23           THE COURT:  That's fine with me.  The only thing I

24  would ask is while we have the venire in the back of the

25  courtroom, obviously, don't be in and out.

M4PKGIAC

1              MR. FASULO:  I'm talking for the lunchtime.

2              THE COURT:  That's not a problem.

3              You're all comfortable with how and where you're

4    seated?

5              MR. FASULO:  Yes.

6              THE COURT:  I'm talking about in terms of distancing

7    and masking and that sort of thing.

8              Okay.

9              All right.

10             MR. FASULO:  Let me -- let me speak.

11             (Counsel confer)

12             MR. FASULO:  We are fine from the defense.

13             MS. MORTAZAVI:  Fine from the government's

14   perspective.

15             THE COURT:  All right.

16             All right.  Then I thank you all.

17             We have asked the court personnel to put the Plexiglas

18   here, as I said.  I'm not sure if they're going to put one — I

19   think they are, but I'm not sure — at the front of the -- no?

20             MR. FASULO:  Judge, there is a question, though.  When

21   we approach sidebar, because there will be sidebars, what is

22   the Court's preference in terms of masking at sidebar?

23             THE COURT:  You need to mask.

24             MR. FASULO:  Okay.  I just wanted to know.

25             THE COURT:  Thank you.  No, I appreciate you raising

M4PKGIAC

1    that.  That's a good question.  You do need to mask when you

2    come up here.

3            MR. FASULO:  Very well.

4            THE COURT:  Anything else, then?

5            MS. MORTAZAVI:  Nothing from the government.

6            MR. FASULO:  Nothing from the defense.

7            THE DEPUTY CLERK:  If you're going to send me a

8    request to bring laptops or whatever into the courthouse --

9            MR. FASULO:  It should be -- she's doing it right now.

10           THE DEPUTY CLERK:  -- please get them to me by

11   tomorrow.  It's a different system now, it may take a little

12   bit longer to get passwords and everything, so I want to make

13   sure I have them ahead of time.

14           MR. FASULO:  She'll have it.

15           THE DEPUTY CLERK:  Thank you.

16           THE COURT:  Thank you, everybody.  I'll see you on

17   Wednesday morning slightly before 10:00 o'clock.

18           MR. FASULO:  Thank you, your Honor.

19           THE COURT:  Thank you.  Have a good afternoon.

20           Thank you to our court reporter.

21                              *  *  *

22

23

24

25