1    K796COHP

2    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
3    ------------------------------x

4    UNITED STATES OF AMERICA,

5         v.                    20 CR 160(MKV)

6    ROSS COHEN,
                              SEALED
7              Defendant.

8    ------------------------------x

9                               New York, N.Y.
                                July 9, 2020
10                              3:00 p.m.

11
     Before:
12
                              HON. MARY KAY VYSKOCIL,
13
                              District Judge
14
15                            APPEARANCES

16

17    AUDREY STRAUSS
           Acting United States Attorney for the
18         Southern District of New York
      ANDREW C. ADAMS
19    BENET J. KEARNEY
      SARAH MORTAZAVI
20         Assistant United States Attorneys

21    BARKET EPSTEIN KEARON ALDEA & LOTURCO, LLP
           Attorneys for Defendant
22    BRUCE A. BARKET
      AIDA FERRER LEISENRING

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

XK796COHP          S E A L E D

1          (Telephone conference)

2          THE COURT:    Ms. Dempsey, will you call the case,

3    please.

4          THE DEPUTY CLERK:    Yes, your Honor.

5          We're here in the matter of 20 CR 160, United States

6    of America v. Ross Cohen.

7          Counsel, starting with the government, please state

8    your name.

9          MR. ADAMS:    Good afternoon, your Honor.  You have

10   Andrew Adams for the government and with me is Benet Kearney

11   and Sarah Mortazavi.

12          THE COURT:    Good afternoon, counsel.  Nice to finally

13   meet you.

14          MR. ADAMS:    You as well.

15          THE COURT:    And for the defense?

16          MR. BARKET:    Good afternoon, your Honor.  Bruce Barket

17   and --

18          MS. LEISENRING:    Aida Leisenring.  Good afternoon,

19   your Honor.

20          THE COURT:    Good afternoon, counsel.  Nice to meet you

21   as well.

22          MS. LEISENRING:    Nice to meet you.

23          MR. BARKET:    I don't know if it has been resolved but

24   our client has had difficulty logging in.  We've been texting

25   him while we're here.

1          Oh, I see him.  He just popped up now.

2          THE COURT:    I don't see him.

3          THE DEFENDANT:    I have to turn the camera around.

4          THE COURT:    There you are, Mr. Cohen.

5          Well, you were on and then you disappeared.

6          THE DEFENDANT:    Am I back?  Oh, God.  Am I back?

7          THE COURT:    Not your video feed.

8          THE DEFENDANT:    Okay.

9          THE COURT:    Now you are, sir.

10          THE DEFENDANT:    Okay.  There you are.

11          THE COURT:    Good afternoon, Mr. Cohen.

12          THE DEFENDANT:    Good afternoon.  I am sorry about the

13  difficulties.

14          THE COURT:    That's all right.

15          Let me say good afternoon to, Ms. Thun, our court

16  reporter.  I just want to make sure you can hear us all.

17          REPORTER:    I can, your Honor.  Good afternoon.

18          THE COURT:    Let me just say the Court received an

19  application in advance of today to seal this proceeding and all

20  filings.

21          We have an echo, feedback.  Please mute your lines

22  unless and until you are speaking.  Thank you.

23          So as I said the Court received an application prior

24  to today to seal this proceeding and all filings related to it.

25  Any notifications and all matters frankly related to this

XK796COHP          S E A L E D

1    proceeding.

2                Does anybody wish to be heard with respect to that

3    application?

4                MR. ADAMS:    Your Honor, nothing further from the

5    government.

6                THE COURT:    Thank you.

7                Counsel for the defendant?

8                MR. BARKET:    None, your Honor.  As the application

9    indicates, we join in its request.

10               THE COURT:    So the Court has signed that order, and

11   pursuant to that order this proceeding itself is sealed now

12   from the public.

13               Now, I see that there are 12 participants on the line.

14               Ms. Dempsey, are you able to verify who each of those

15   people are?

16               THE DEPUTY CLERK:    Yes, I am.

17               THE COURT:    They are all counsel to either the

18   government or the defendant or court-related personnel?

19               THE DEPUTY CLERK:    Yes.

20               THE COURT:    I see a 781 number, 908 and a 954.  Those

21   are all okay?

22               THE DEPUTY CLERK:    Yes.

23               THE COURT:    All right.  I don't want to be overly

24   safe; but when we're doing things remotely; it is a little bit

25   hard to tell and I want to respect the order that I have now

XK796COHP          S E A L E D

1    entered on the joint application of both sides.  So we will

2    deliver to all parties a copy of that order so that you'll have

3    it for your records, but we did not post on ECF notice of

4    today's proceeding because I had received the joint application

5    and intended to grant this unless something happens today to

6    change that.  So we'll get that to you.

7              The next preliminary I wanted to take care of before I

8    get in any way into substance, Mr. Cohen, do you speak and

9    understand English?

10             THE DEFENDANT:    Yes, your Honor.

11             THE COURT:    You do not require any interpreter

12   services; correct?

13             THE DEFENDANT:    No, your Honor.

14             THE COURT:    Thank you.

15             So the next preliminary is I also have an application

16   that I have received to conduct today's proceedings remotely

17   under the authority of the Cares Act and the standing order of

18   this Court permitting proceedings to proceed remotely.

19             I understand that that was in fact a joint application

20   as well, is that correct, Mr. Adams?

21             MR. ADAMS:    That is correct, your Honor.

22             THE COURT:    Mr. Barket or Ms. Leisenring?

23             MS. LEISENRING:    That is correct.

24             THE COURT:    I am sorry.  Do you want to pronounce your

25   last name for me.

XK796COHP          S E A L E D

1              MS. LEISENRING:    Leisenring.

2              THE COURT:    Leisenring. I left out a syllable. Thank

3    you.

4              Let me just confirm with Mr. Cohen then.  Mr. Cohen,

5    you have a right as the defendant in a criminal matter to have

6    your plea taken at a proceeding in open court and for you to be

7    there and participate in that proceeding.

8              Do you understand that?

9              THE DEFENDANT:    Yes, your Honor, I do.

10             THE COURT:    And you are waiving your right to have

11   this proceeding happen in open court; correct?

12             THE DEFENDANT:    Yes, your Honor.

13             THE COURT:    All right.  So based on the application

14   that I have received and the defendant's consent to have this

15   proceeding conducted remotely via teleconference as we're doing

16   today, we will proceed on that basis.

17             I am informed that the defendant has an application to

18   withdraw his plea of not guilty, to thereafter waive indictment

19   and enter a plea of guilty to the one-count sealed information

20   that is labeled S1 in case 20 CR 160.

21             Is that correct, counsel to the defendant?

22             MR. BARKET:    Yes, your Honor, that is correct.

23             THE COURT:    I am sorry.

24             MR. BARKET:    We executed the waiver yesterday.  I was

25   not in the office, but Ms. Leisenring as counsel for Mr. Cohen.

1          THE COURT:    The waiver of indictment?

2          MR. BARKET:    Yes.

3          THE COURT:    I will get to that in one second.

4          The information, a copy of which has been provided --

5          You need to mute again.  We're getting a feedback.

6    Thank you.

7          That information, a copy of which has been provided to

8    me, charges Mr. Cohen with one count of drug adulteration and

9    misbranding conspiracy in violation of Title 18, United States

10   Code, Section 371.

11          Is that correct, Mr. Adams?

12          MR. ADAMS:    That is correct, your Honor.

13          THE COURT:    Counsel to the defendant, that is your

14   understanding as well?

15          MR. BARKET:    Yes, your Honor.

16          THE COURT:    Mr. Cohen, have you been provided with a

17   copy of that sealed information?

18          THE DEFENDANT:    Yes, I have, your Honor.

19          THE COURT:    I am also informed that Mr. Cohen, as Mr.

20   Barket just started to say, has signed a waiver of his right to

21   indictment.

22          That is correct, counsel?

23          MR. BARKET:    Yes, your Honor, he has.

24          THE COURT:    Okay.  That waiver will be entered in the

25   record, which will remain sealed for now as Court Exhibit 1.

XK796COHP          S E A L E D

1          Mr. Adams, are there any victims that need to be

2    notified at this stage?

3          MR. ADAMS:    Not at this stage, your Honor.  At the

4    sentencing stage, we would expect to notify the victims of the

5    proceeding.

6          THE COURT:    Thank you.

7          Mr. Cohen, before I accept your waiver of indictment

8    and your guilty plea, there are a number of questions that I

9    need to ask you.  I want to assure myself that the waiver is

10    valid and that your plea is knowingly and voluntarily entered

11    into and that you understand what you are doing when you enter

12    into that plea and that you understand what your rights are and

13    what rights you are giving up if you do in fact enter into the

14    plea of guilty.  I am going to ask you those questions, sir,

15    while you're under oath.

16          Okay?

17          THE DEFENDANT:    Yes.

18          THE COURT:    I may at times cover a point more than

19    once and I may cover matters that were addressed in the various

20    forms and agreements that you have seen and that you have

21    signed; but if I do, it's very important and the reason I am

22    doing that is that it is very important that we have a clear

23    record that you understand what is happening today and the

24    consequences of what you're doing.  So as I ask you questions

25    if you don't understand something that I ask you, sir, please

1    say so.  Let me know and I will either reword the question or

2    we'll figure a way for you to speak with your counsel.

3              All right, Mr. Cohen?

4              THE DEFENDANT:    Yes, your Honor.

5              MR. BARKET:    Your Honor, Mr. Cohen and our office have

6    a means to communicate via text as this proceeding is going on.

7              THE COURT:    Perfect.  Very good.

8              So, Mr. Cohen, if you need to communicate with

9    counsel, let me know.  We'll all pause and you can text back

10   and forth.  And then if you need to step out and make a phone

11   call or whatever, you can do that as well.

12             Okay?

13             THE DEFENDANT:    Thank you, your Honor.  Yes.

14             THE COURT:    So, Ms. Dempsey, will you please swear the

15   witness at this point.

16             THE DEPUTY CLERK:    Yes, your Honor.

17             THE COURT:    Mr. Cohen, raise your right hand, please.

18             (Defendant sworn)

19             THE DEFENDANT:    Yes, I do.

20             THE COURT:    Thank you, Ms. Dempsey.

21             Mr. Cohen, you understand now that you are obligated

22   to answer me truthfully and that if you answer any of my

23   questions falsely, your false or untrue answers may later be

24   used against you in another prosecution for perjury or for

25   making a false statement.

1    Do you understand that?

2    THE DEFENDANT:    Yes, I do, your Honor.

3    THE COURT:    So, Mr. Cohen, how old are you?

4    THE DEFENDANT:    49 years old.

5    THE COURT:    How far did you go in school, sir?

6    THE DEFENDANT:    I have a two-year associates in

7    applied science degree form State University of New York at

8    Morrisville.

9    THE COURT:    I already established to you that you are

10    able to speak and understand English perfectly well?

11    THE DEFENDANT:    Yes.

12    THE COURT:    That's your principal language?

13    THE DEFENDANT:    It's my primary language, yes.

14    THE COURT:    Sir, are you a United States citizen?

15    THE DEFENDANT:    Yes, I am.

16    THE COURT:    A naturalized citizen or by birth?

17    THE DEFENDANT:    By birth.

18    THE COURT:    Mr. Cohen, have you now or recently been

19    under the care of a doctor?

20    THE DEFENDANT:    I am being treated for high blood

21    pressure, cholesterol, Type II diabetes, neuropathy, a

22    pulmonologist for spots, and I see a therapist -- I speak to a

23    therapist once a week.

24    THE COURT:    And is the therapist a mental health

25    therapist, you mean?

XK796COHP          S E A L E D

1            THE DEFENDANT:    Yes.

2            THE COURT:    So have you ever been under the care of a

3    psychiatrist?

4            THE DEFENDANT:    No, I have not.

5            THE COURT:    You are not now and never have been?

6            THE DEFENDANT:    No, never have.

7            THE COURT:    All right.  Have you ever been treated or

8    hospitalized for any mental illness or for any type of

9    addiction, including drugs or alcohol addiction?

10            THE DEFENDANT:    My physician had -- when this first

11    happened wanted me to start taking medicine for antianxiety and

12    I took one day and didn't like how I felt so we stopped it; but

13    I haven't been in the hospital for any sort of drugs or any

14    sort of treatment for anything you 9have mentioned.

15            THE COURT:    You have never been addicted to drugs or

16    alcohol; is that correct?

17            THE DEFENDANT:    Correct.

18            THE COURT:    In the past 24 hours, have you taken any

19    drugs, medicines or any pills for any reason?

20            THE DEFENDANT:    I take my prescribed medications to

21    treat my conditions.

22            THE COURT:    The conditions that you previously

23    mentioned?

24            THE DEFENDANT:    Yes.

25            THE COURT:    Have you had any alcohol to drink in the

1    last 24 hours?

2                 THE DEFENDANT:    No.  Because of my diabetes, I don't

3    drink alcohol.

4                 THE COURT:    Is your mind clear today, sir?

5                 THE DEFENDANT:    Yes, it is.

6                 THE COURT:    Are you feeling well today other than the

7    circumstances?

8                 THE DEFENDANT:    Besides the stress, I am feeling fine,

9    yes.

10                THE COURT:    And you are represented by counsel today;

11   correct?

12                THE DEFENDANT:    Yes.

13                THE COURT:    Who is your counsel?

14                THE DEFENDANT:    Bruce Barket and Aida Leisenring.

15                THE COURT:    Are you satisfied with your attorneys and

16   their representation of you?

17                THE DEFENDANT:    Yes, I am.

18                THE COURT:    Does counsel have any doubt as to the

19   defendant's competence to waive indictment and to plead guilty

20   at today's proceeding?

21                MR. ADAMS:    No doubt from the government.

22                THE COURT:    Counsel for the defendant?

23                MR. BARKET:    No.

24                THE COURT:    Mr. Cohen, as I said your attorney has

25   informed me that you wish to waive indictment and enter a plea

1     of guilty to an information.

2                Do you in fact wish to waive indictment and enter a

3     plea of guilty at this time?

4                THE DEFENDANT:    Yes, I do, your Honor.

5                THE COURT:    Great.

6                Have you fully discussed your case with your attorney,

7     including the charge to which you intend to plead guilty and

8     any possible defenses to that charge?

9                THE DEFENDANT:    Yes, we have, your Honor.

10               THE COURT:    Have you thoroughly discussed with your

11    counsel the consequence of entering a plea of guilty?

12               THE DEFENDANT:    Yes, I have, your Honor.

13               THE COURT:    You are satisfied with the explanations

14    and the advice you have received from counsel; correct?

15               THE DEFENDANT:    Yes, I am, your Honor.

16               THE COURT:    On the basis of Mr. Cohen's responses to

17    my questions and my observation of his demeanor, I find that he

18    is fully competent to enter an informed plea at this time.

19               Now, Mr. Cohen, before I move on and accept any plea

20    from you, I want to ask you some additional questions.  My

21    questions are intended to satisfy myself that you wish to plead

22    guilty because you are in fact guilty and that you fully

23    understand what your rights are, what rights you're giving up,

24    and what the consequences of your plea are.

25               All right?

1         THE DEFENDANT:    Yes.

2         THE COURT:    Thank you, sir.

3         So I am going to describe to you first certain rights

4    that you have under the Constitution and the laws of the United

5    States.  You will be giving up these rights if you enter a plea

6    of guilty.  So please listen very carefully.  As I set at the

7    outset if you don't understand something I am saying or if you

8    don't understand what I am describing to you, please stop me

9    and either I or your attorneys can explain to you more fully

10   before you respond to my questions.

11         Okay?

12         THE DEFENDANT:    Yes, your Honor.

13         THE COURT:    Thank you.

14         So, first under the Constitution and the laws of the

15   United States, you have a right to a speedy and a public trial

16   by a jury on the charges against you contained in the

17   information.

18         Do you understand that?

19         THE DEFENDANT:    Yes, I do, your Honor.

20         THE COURT:    Do you understand that you have the right

21   to plead not guilty and to continue to plead not guilty?

22         THE DEFENDANT:    Yes, I do, your Honor.

23         THE COURT:    Do you understand that if there were a

24   trial, you would be presumed innocent and the government would

25   be required to prove your guilt by competent evidence and

1    beyond a reasonable doubt; do you understand that?

2                    THE DEFENDANT:    Yes, I do, your Honor.

3                    THE COURT:    And you understand that you would not have

4    to prove at trial that you were innocent; do you understand

5    that as well?

6                    THE DEFENDANT:    Yes, I do, your Honor.

7                    THE COURT:    If there were a trial, a jury composed of

8    12 people selected from this district would have to agree

9    unanimously in order to find you guilty.

10                   Do you understand that as well, sir?

11                   THE DEFENDANT:    Yes, I understand, your Honor.

12                   THE COURT:    Again, if there were a trial and at every

13   stage leading up to a trial if there were to be one, you would

14   have the right to be represented by an attorney.  And if you

15   could not afford one, an attorney would be provided to you free

16   of cost.

17                   Do you understand that as well?

18                   THE DEFENDANT:    Yes, I do, your Honor.

19                   THE COURT:    If there were a trial, you would have the

20   right to see and to hear all of the witnesses against you and

21   your attorney would have the right to cross-examine them.  You

22   would have the right to have your attorney object to the

23   government's evidence and offer evidence affirmatively on your

24   behalf if you so desired.  You would have the right to have

25   witnesses required to come into court to testify in your

1   defense and you would have the right to testify yourself, but

2   you would not be required to do so.

3               Do you understand all of that?

4               THE DEFENDANT:   Yes, I do, your Honor.

5               THE COURT:   Do you understand that if there were a

6   trial and you decided not to testify, no adverse inference

7   could be drawn against you based on your decisions not to

8   testify.

9               Do you understand that?

10              THE DEFENDANT:   Yes, I understand, your Honor.

11              THE COURT:   By that I mean that the jury would not be

12  allowed to assume that you didn't testify because you were

13  hiding something or because something you might say would hurt

14  your case.

15              Do you understand that, sir?

16              THE DEFENDANT:   Yes, I understand that.

17              THE COURT:   So that is what I mean by they could not

18  draw an adverse inference by your not testifying.

19              THE DEFENDANT:   Thank you for explaining that.

20              THE COURT:   I could tell from your expression --

21              THE DEFENDANT:   The confusion, yes.

22              THE COURT:   But you understand fully now?

23              THE DEFENDANT:   I understand fully now.

24              THE COURT:   Do you wish to talk to your lawyers about

25  that?

1        THE DEFENDANT:    No.  I am okay with it.

2        THE COURT:    You understand that if you were convicted

3   at trial, you would have a right to appeal that verdict that a

4   jury would return; right?

5        THE DEFENDANT:    Yes.

6        THE COURT:    And, Mr. Cohen, do you understand each and

7   every one of these rights that I have just outlined for you?

8        THE DEFENDANT:    Yes, I do.

9        THE COURT:    Do you have any questions about the rights

10  I have just outlined?

11       THE DEFENDANT:    No, your Honor.  I understand.

12       THE COURT:    Do you understand by entering a plea of

13  guilty today, you will be giving up each and every one of these

14  rights and that you will be waiving those rights?

15       THE DEFENDANT:    Yes, I understand, your Honor.

16       THE COURT:    Great.

17       Do you understand you'll be waiving any possible

18  claims that your constitutional rights were violated and that

19  you will have no trial?

20       THE DEFENDANT:    Correct.  Yes, your Honor.

21       THE COURT:    And do you understand by entering a plea

22  of guilty, you will also have to give up your right not to

23  incriminate yourself because in a few moments I will ask you

24  questions about what it is that you did in order to satisfy

25  myself that you are guilty as charged and you will have to

XK796COHP          S E A L E D

1   admit and acknowledge your guilt.

2              Do you understand that?

3              THE DEFENDANT:    I understand, your Honor, yes.

4              THE COURT:    Do you understand that you can change your

5   mind even right now and refuse to enter a plea of not guilty?

6              THE DEFENDANT:    I understand, your Honor.

7              THE COURT:    You do not have to enter this plea if for

8   any reason you do not want to.

9              Do you fully understand that?

10             THE DEFENDANT:    Yes, your Honor.

11             THE COURT:    And you still wish to proceed with today's

12   proceeding and to plead guilty?

13             THE DEFENDANT:    Yes, I do, your Honor.

14             THE COURT:    So I want to turn now to the waiver of

15   indictment that you signed.  The document that contains the

16   charges against you to which I am told you wish to plead guilty

17   is called an information.

18             Have you seen a copy of that, Mr. Cohen?

19             THE DEFENDANT:    Yes, I have.

20             THE COURT:    So that information has been issued by the

21   United States Attorney's Office for the Southern District of

22   New York.  You have a constitutional right to be charged by an

23   indictment rather than an information.  An indictment is a

24   charge issued from a grand jury as opposed to from the office

25   of the United States Attorney.

1          You understand that; right?

2          THE DEFENDANT:    Yes, I understand, your Honor.

3          THE COURT:    As I say I have before me a waiver of

4    indictment that you signed.  Let me just pull it out.  That is

5    signed by you and by Ms. Leisenring and dated July 9th.

6          Correct?

7          THE DEFENDANT:    Yes.

8          THE COURT:    Do you have a copy, sir?

9          THE DEFENDANT:    Yes, I do.

10          THE COURT:    So is that your signature in fact that

11    appears on that document, sir?

12          THE DEFENDANT:    Yes, it is, your Honor.

13          THE COURT:    All right.  Right above the line that says

14    Ross Cohen, defendant; right?

15          THE DEFENDANT:    Yes.

16          THE COURT:    And did you read this document before you

17    signed it?

18          THE DEFENDANT:    Yes, your Honor, I did.

19          THE COURT:    And you discussed with your attorney what

20    the document's purpose was and what the consequences of it are;

21    correct?

22          THE DEFENDANT:    Yes, your Honor, I did.

23          THE COURT:    And do you understand that if you did not

24    waive indictment and if the government wants to prosecute you

25    on the particular charges that are in the information, it would

1    have to g9o ahead and present the charges to a grand jury,

2    which might or might not indictment you; do you understand

3    that?

4              THE DEFENDANT:    Yes, your Honor.

5              THE COURT:    And you understand you're not obligated to

6    waive indictment, right, that you are doing that voluntarily?

7              THE DEFENDANT:    Yes, your Honor.

8              THE COURT:    And you realize that by signing this

9    waiver of indictment, you have given up your right to have your

10   case presented to a grand jury; right?

11             THE DEFENDANT:    Yes, your Honor.

12             THE COURT:    Do you understand and did you discuss with

13   your counsel what a grand jury is?

14             THE DEFENDANT:    Yes.  We've had conversation.

15             THE COURT:    So you understand that a grand jury

16   consists of 23 people at least 16 of whom must be present to

17   conduct the business of the grand jury and that you can't be

18   charged unless 12 of those people voted to indict you; correct?

19             THE DEFENDANT:    Yes, your Honor.

20             THE COURT:    Did anyone make any threats or promises to

21   you in order to get you waive indictment?

22             THE DEFENDANT:    No, your Honor.

23             THE COURT:    And you told him you have read the

24   information; right?

25             THE DEFENDANT:    Yes, your Honor.

1          THE COURT:    You discussed it with your lawyers?

2          THE DEFENDANT:    Yes, your Honor.  I discussed with

3     both of them.

4          THE COURT:    Did you understand the charge against you

5     that is set forth in that information.

6          THE DEFENDANT:    Yes, your Honor.

7          THE COURT:    Mr. Cohen, you have a right to have me

8     read the information aloud in court if you need me to do so.

9     Would you like me to read the information aloud, or do you

10    waive the reading?

11         THE DEFENDANT:    I am waiving reading it.

12         THE COURT:    Thank you.

13         I do find that the waiver of prosecution by indictment

14    was knowingly and voluntarily made by the defendant.  It is

15    therefore accepted and I will so order it.  That information

16    will remain under seal.

17         Mr. Cohen, do you understand that Count One, the sole

18    count of the information, charges you with conspiracy to

19    misbrand, adulterate, and cause the misbranding and

20    adulteration of drugs in violation of Title 18, United States

21    Code, Section 371?

22         THE DEFENDANT:    Yes, I do, your Honor.

23         THE COURT:    At this time I am going to ask Mr. Adams

24    on behalf of the government to please state the elements of the

25    offense with which Mr. Cohen is charged.

1          MR. ADAMS:   Thank you, your Honor.

2          Mr. Cohen is charged with a violation of Title 371.

3    There are three elements of the conspiracy and then I will

4    describe the elements of the relevant objects.

5          The first element is the existence of an agreement

6    between or among two or more people to violate the law; second,

7    that Mr. Cohen knowingly joined in that agreement with

8    knowledge of its illegal object; and third, that at least one

9    co-conspirator committed at least one overt act in furtherance

10   of the crime.

11         With respect to today's proceedings, the objects that

12   there are relevant are both provided for under Title 21,

13   Sections 331 and 333 relating to the misbranding and

14   adulteration of drugs.  The elements as relevant for Mr.

15   Cohen's case are as follows:  First, that the defendant or a

16   co-conspirator introduced or delivered for introduction into

17   interstate commerce or caused to be introduced or delivered

18   into interstate commerce a product; second, that at that time

19   the product was a drug as defined under Title 21; and third,

20   that at that time the drug was misbranded in at least one way

21   under this section; and fourth, that the defendant and

22   coconspirators had the intent to either defraud or mislead in

23   conducting that activity.

24         Thank you, your Honor.

25         THE COURT:   Thank you.  One moment, please.

1          Mr. Cohen, did you hear Mr. Adams's articulation of

2    the elements of the offense against you and the objects of that

3    offense?

4          THE DEFENDANT:    Yes, I did, your Honor.

5          THE COURT:    Do you understand that the government

6    would have to prove each of those elements of the offense with

7    which you are charged if you were not to plead guilty?

8          THE DEFENDANT:    Yes, your Honor, I understand that.

9          THE COURT:    Now, I want to talk to you for a minute,

10   sir, about the maximum possible penalty that you could face for

11   the crime to which you will be pleading guilty.

12          You understand that the maximum means the most that

13   possibly could be imposed.  It doesn't mean that is what you

14   will necessarily receive; but you have to understand that by

15   pleading guilty, you are exposing yourself to the possibility

16   of receiving any combination of punishments up to the maximum

17   that I am about to describe to you.

18          Do you understand that?

19          THE DEFENDANT:    Yes, your Honor, I do.

20          THE COURT:    First, I am going to tell you about

21   possible restrictions on your liberty.  First, the maximum term

22   of imprisonment for the crime with which you are charged in

23   Count One of the indictment is five years of imprisonment,

24   which could be followed by up to three years of supervised

25   release.  I want to make sure you understand what we mean by

XK796COHP          S E A L E D

1    supervised release before I on to talk to you about the rest of

2    the penalty that you could face by pleading guilty here.

3                Supervised release means that after you serve whatever

4    prison term you may be sentenced to, you would be released from

5    prison but you would be subject to monitoring and certain terms

6    and conditions on your release would be imposed, certain rules

7    that you have to follow.  If I violate any of these set rules

8    or terms or conditions of your release, you could be

9    reimprisoned without a jury trial.  If you are on supervised

10   release and you do not comply with any of the set terms or

11   conditions, you could be returned to prison for the remainder

12   of the term of supervised release and you will be given no

13   credit for whatever time you might have served in prison or for

14   the time that you were on supervised release and behaving and

15   following the terms conditions.

16                Do you understand that?

17                THE DEFENDANT:    Yes, your Honor, I do.

18                THE COURT:    Now, I want to make sure that you also

19   understand that there is no parole in the federal system.  If

20   you are sentenced to prison time you will not be released early

21   on parole.  There is a limited opportunity to earn credit for

22   good behavior, but you would have to have served at least

23   85 percent of any time you were sentenced to.

24                Do you understand that as well?

25                THE DEFENDANT:    Yes, your Honor.

1              THE COURT:    Do you understand as well that if you

2     enter a plea of guilty, you will not be able to withdraw that

3     plea?  There will be no trial and the only remaining act in

4     terms of the Court's involvement will be to sentence you.

5              You understand that; right?

6              THE DEFENDANT:    Yes, your Honor.

7              THE COURT:    Now, in addition to the restrictions on

8     your liberty, the maximum possible punishment that you could

9     face for the charge against you in the information also

10     includes certain financial consequences.

11              Do you understand that?

12              THE DEFENDANT:    Yes, your Honor.

13              THE COURT:    So first there is a maximum allowable fine

14     which is $250,000 or twice the gross pecuniary gain derived

15     from the offense or twice the gross pecuniary loss to a person,

16     other than yourself, as a result of that offense.

17              Do you understand that?

18              THE DEFENDANT:    Yes, your Honor.

19              THE COURT:    In addition, I can order restitution to

20     any person or entity injured as a result of your criminal

21     conduct.

22              Do you understand that?

23              THE DEFENDANT:    Yes, your Honor.

24              THE COURT:    I can also order and it is my

25     understanding that the information includes a forfeiture

1  allegation in which the government alleges that you're required

2  to forfeit to the United States any and all drugs that were

3  adulterated or misbranded when introduced to or while in

4  interstate commerce or while held for sale after shipment in

5  interstate commerce, or a sum of money representing the value

6  of all such forfeitable property that you obtained as a result

7  of the offense charged in Count One.

8              Do you understand that?

9              THE DEFENDANT:   Yes, your Honor.

10             THE COURT:   You understand that any forfeiture

11  wouldn't be treated as satisfaction of any fine or restitution

12  or cost of imprisonment or any other penalties as the Court may

13  impose on you; correct?

14             THE DEFENDANT:   Yes, your Honor.

15             THE COURT:   And then finally do you understand that I

16  must also order a mandatory special assessment of $100 for each

17  count in the information?

18             THE DEFENDANT:   Yes, your Honor.

19             THE COURT:   Now, Mr. Cohen, do you also understand

20  that if I accept your guilty plea and adjudge you guilty that

21  that judgment of guilt may deprive you of certain valuable

22  civil rights such as the right to vote, the right to hold

23  public office, the right to serve on a jury, and the right to

24  possess any kind of firearm to the extent you currently have or

25  could otherwise attain those rights; do you understand that?

1              THE DEFENDANT:    Yes, I do, your Honor.

2              THE COURT:    Give me one moment, please.

3              (Pause)

4              THE COURT:    Mr. Cohen, you told me earlier that you

5    are a citizen of the United States; correct?

6              THE DEFENDANT:    Yes.

7              THE COURT:    So by law I must tell you that if in fact

8    you are not a United States citizen, the guilty plea means that

9    you may be removed from the United States and you may be denied

10   admission to the United States or citizenship in the future.

11             Do you understand that?

12             THE DEFENDANT:    Yes, I do.

13             THE COURT:    Did you discuss your immigration status

14   with your attorney and any potential impact of pleading guilty

15   on your immigration status?

16             THE DEFENDANT:    I am confused.  What do you mean my

17   immigration status?

18             THE COURT:    You are a United States citizen you are

19   telling me; but I just advised you that if that in fact turns

20   out to not be true, there would be potential consequences.

21             THE DEFENDANT:    I understand.  My attorney knows.  I

22   provided my birth certificate to the Pretrial counsel that I

23   talk to once a month.

24             THE COURT:    Okay.  Whom did you say?

25             THE DEFENDANT:    They have a Pretrial Office in -- yes,

1    Pretrial Services.

2                    THE COURT:    And you provided your birth certificate to

3    them you are telling me?

4                    THE DEFENDANT:    Yes, I have.

5                    THE COURT:    Thank you.

6                    Now, do you understand, Mr. Cohen, that there are what

7    are called sentencing guidelines that the Court would have to

8    consider in determining what your sentence will be if you

9    should plead guilty?

10                    THE DEFENDANT:    Yes, I understand that.

11                    THE COURT:    Has your attorney discussed the sentencing

12    guidelines with you?

13                    THE DEFENDANT:    Yes, we have.

14                    THE COURT:    Do you understand that the sentencing

15    guidelines are one piece of the factors that I need to evaluate

16    and consider in imposing sentence on you?

17                    THE DEFENDANT:    Yes, I understand, your Honor.

18                    THE COURT:    And you understand that there are other

19    factors set forth in a statute 3553 that I need to take into

20    account in determining what your sentence should be; right?

21                    THE DEFENDANT:    Yes, I understand that.

22                    THE COURT:    Do you also understand that either your

23    attorney or the government or anybody else has attempted to

24    estimate for you or predict to you what your sentence will be,

25    that that estimate or that prediction could be wrong; do you

1    understand that?

2                THE DEFENDANT:    I understand that, your Honor, yes.

3                THE COURT:    You also understand that if your sentence

4    is different from what your attorney or anybody else may have

5    told you it might be or if it is different from what you might

6    hope or expect it will be, you will still be bound by your

7    guilty plea and you will not be able to withdraw your guilty

8    plea at that point; do you understand that?

9                THE DEFENDANT:    I understand that, your Honor.

10               THE COURT:    And even if you are surprised or

11   disappointed by your sentence, you will still be bound by your

12   guilty plea.

13               You understand that; right?

14               THE DEFENDANT:    Yes, your Honor.

15               THE COURT:    You understand that the sentence to be

16   imposed will be determined solely by the Court, that is me, and

17   that I can only determine the sentence to be imposed -- sorry,

18   that I can only determine the appropriate sentence to be

19   imposed after the Probation Department prepares what is called

20   a presentence report; do you understand that?

21               THE DEFENDANT:    Yes, your Honor.

22               THE COURT:    Do you understand that the Court has

23   discretion while taking into account the specific provisions

24   and policy statements in the sentencing guidelines to sentence

25   you to any number of years of imprisonment between zero and the

XK796COHP          S E A L E D

1      statutory maximum that I just talked to you about of five

2      years; do you understand that?

3                    THE DEFENDANT:    Yes, your Honor, I do.

4                    THE COURT:    Let me ask you, Mr. Cohen, are you now

5      serving any state or federal sentence or post-sentence

6      supervision or are you being prosecuted now for any other

7      crimes besides the one that we're discussing today?

8                    THE DEFENDANT:    Nothing else, your Honor.  Just this.

9                    THE COURT:    Mr. Cohen, I have been given a copy of a

10     letter dated June 23rd.  It is addressed to Bruce Barket.  It

11     is on the letterhead of the United States Department of

12     Justice, the United States Attorney for the Southern District

13     of New York.  It is signed by Mr. Adams on behalf of Audrey

14     Strauss -- oh, we lost Mr. Cohen.

15

16                    Do you all want to check with your client?

17                    MR. BARKET:    Yes, your Honor.  I will text him right

18     now.

19                    THE COURT:    Do you have the ability to call him, Mr.

20     Barket or Ms. Leisenring?

21                    MR. BARKET:    Yes.

22                    THE COURT:    Thank you.

23                    I had just been thinking to myself how smooth the

24     remote proceeding had been going.

25                    (Pause)

XK796COHP          S E A L E D

1              THE COURT:    It looks like Mr. Cohen is back on, but he

2    will have to turn on the audio and screen.

3              I think we lost him again.  It looks like Mr. Cohen is

4    back but needs to activate the video.

5              Mr. Cohen, if you can hear us, you need to activate

6    your microphone and your video is not --

7              THE DEFENDANT:    Can you see me?

8              THE COURT:    I cannot yet.

9              It is turned on.

10             THE DEFENDANT:    I have a picture in the lower right.

11   It goes on and off.

12             THE COURT:    There you are.

13             THE DEFENDANT:    The picture froze on you when you were

14   talking before and then I had to shut it off and restart it.

15             THE COURT:    There we go.

16             Can you see me now, Mr. Cohen?

17             THE DEFENDANT:    Yes.

18             THE COURT:    You can hear me okay; correct?

19             THE DEFENDANT:    Yes.

20             THE COURT:    Counsel, just to make sure everybody is

21   able to hear and back on?

22             MR. ADAMS:    All good for the government.

23             MR. BARKET:    Yes.

24             THE COURT:    Thank you.

25             So, Mr. Cohen, I was just beginning to turn and talk

1  to you about the document that I have.  It is a letter dated

2  June 23rd on the letterhead of the United States Department of

3  Justice, the United States Attorney's Office for the Southern

4  District of New York.  It is addressed to Mr. Barket.  It is a

5  five-page document signed by Mr. Adams on behalf of Audrey

6  Strauss, who is the acting United States Attorney for the

7  Southern District of New York.  The document says below that

8  "agreed and consented to" and there is a signature over a line

9  along that says "Ross Cohen."

10          Do you have that document, sir?

11          THE DEFENDANT:    Yes, I do, your Honor.

12          THE COURT:    Is that in fact your signature?

13          THE DEFENDANT:    Yes, it is, your Honor.

14          THE COURT:    Did you read this document before you

15  signed it?

16          THE DEFENDANT:    Yes, I did, your Honor.

17          THE COURT:    Did you discuss it with your attorneys

18  before you signed it?

19          THE DEFENDANT:    Yes, your Honor, we did.

20          THE COURT:    Your counsel explained to you all of the

21  terms and conditions contained in this document?

22          THE DEFENDANT:    Yes, your Honor, they did.

23          THE COURT:    You had the opportunity to ask any

24  questions you might have had?

25          THE DEFENDANT:    Yes, your Honor, I did and I was

1    satisfied with what I was told.

2                  THE COURT:    And you fully understood it before you

3    signed this document; correct?

4                  THE DEFENDANT:    Yes, your Honor.

5                  THE COURT:    In this document there is what I call a

6    plea agreement for short; okay?

7                  THE DEFENDANT:    Yes, your Honor.

8                  THE COURT:    You nodded your head.

9                  So does this plea agreement accurately reflect your

10    complete and total understanding of the entire agreement

11    between the government and you and your counsel?

12                  THE DEFENDANT:    Yes, your Honor, it does.

13                  THE COURT:    Is everything you understand about your

14    plea, your cooperation, and whatever may have been agreed to

15    with respect to your sentence covered in this agreement?

16                  THE DEFENDANT:    Yes, your Honor.

17                  THE COURT:    Has anything been left out?

18                  THE DEFENDANT:    No, your Honor.

19                  THE COURT:    Has anyone made any promises to you other

20    than what is set forth in this plea agreement or threatened you

21    or forced you to plead guilty or to enter into this agreement

22    including the cooperation requirement that is part of the

23    agreement?

24                  THE DEFENDANT:    No, your Honor.  Nobody has.

25                  THE COURT:    And do you understand that even if the

1   government does not oppose or take a position on what your

2   attorneys will ultimately ask me to impose as your sentence,

3   that I am free to impose whatever sentence I believe is

4   appropriate under the circumstances and under the applicable

5   law and you will have no right to withdraw your plea?

6            THE DEFENDANT:   Yes, your Honor, I understand.

7            THE COURT:   You understand that the agreement provides

8   that you must cooperate fully with the Office of the United

9   States Attorney, the Federal Bureau of Investigation, and any

10  other law enforcement agency designated by the United States

11  Attorney; right?

12           THE DEFENDANT:   Yes, your Honor, I understand.

13           THE COURT:   Do you further understand that this

14  agreement does not bind any federal, state, or local

15  prosecuting authority other than the Office of the United

16  States Attorney?

17           THE DEFENDANT:   Yes, your Honor, I do.

18           THE COURT:   And just so we're very clear, the document

19  refers to "this office."  You understand that "this office"

20  means the United States Attorney for the Southern District of

21  New York; correct?

22           THE DEFENDANT:   Yes, your Honor, I understand that.

23           THE COURT:   Do you understand that the agreement

24  provides that if the United States Attorney determines that you

25  provided substantial assistance in an investigation or

1    prosecution and if you have fully complied with all of the

2    understandings set forth in this plea agreement, that the

3    United States Attorney will file a motion pursuant to Section

4    5k1.1 of the sentencing guidelines requesting that the Court

5    sentence you in light of the factors set forth in that Section

6    5k1.1(a), subsections 1-5.

7                    Do you understand that?

8                    THE DEFENDANT:    Yes, your Honor.

9                    THE COURT:    Has your attorney discussed with you

10   Section 5.1k?

11                   THE DEFENDANT:    Yes, we have had conversation.

12                   THE COURT:    Do you understand the factors that the

13   Court may consider under Section 5.1k?

14                   THE DEFENDANT:    Yes, your Honor, I do.

15                   THE COURT:    Do you understand that they include the

16   significance and the usefulness of your assistance in the

17   investigation or prosecution taking into consideration the

18   government's evaluation of the assistance that you render?

19                   THE DEFENDANT:    Yes, your Honor, I do.

20                   THE COURT:    And you understand that those factors

21   include the truthfulness, the completeness, the reliability of

22   any information or testimony you provide?

23                   THE DEFENDANT:    Yes, your Honor.

24                   THE COURT:    And you understand that among those

25   factors is also included the nature and extent of the

1    assistance you provide; right?

2              THE DEFENDANT:    Yes, your Honor.

3              THE COURT:    And do you understand that those factors

4    also include any injury suffered or any danger or risk of

5    injury to you or your family as a result of the assistance that

6    you will be providing?

7              THE DEFENDANT:    Yes, your Honor.

8              THE COURT:    Do you understand also among those factors

9    is the timeliness of your assistance?

10             THE DEFENDANT:    Yes, your Honor.

11             THE COURT:    Do you understand that even if the United

12   States Attorney files such a motion that the sentence

13   ultimately to be imposed on you remains within the sole

14   discretion of the Court?

15             THE DEFENDANT:    Yes, your Honor, I understand that.

16             THE COURT:    And you understand that even if I deny any

17   motion that the government might make under Section 5k1.1 with

18   respect to your cooperation, you are not entitled to withdraw

19   your plea of guilty; do you understand that?

20             THE DEFENDANT:    Yes, your Honor, I understand.

21             THE COURT:    And you further understand that if the

22   United States Attorney were to determine that you have not

23   provided substantial assistance in an investigation or

24   prosecution or that you violated any provision of the agreement

25   about which we have been speaking that the United States

1    Attorney is not obligated to file a motion under Section 5k1.1

2    of the Sentencing Guidelines; do you understand that?

3                THE DEFENDANT:    Yes, your Honor, I understand that.

4                THE COURT:    You understand you will not be entitled at

5    that point either to withdraw your guilty plea if the

6    government determines not to file a 5K1.1 motion?

7                THE DEFENDANT:    Yes, I understand.

8                THE COURT:    And do you understand that your plea

9    agreement provides that if you commit any further crimes or if

10   it is determined that you gave false or incomplete or

11   misleading testimony or information or have otherwise violated

12   any provision of that agreement, you'll be subject to

13   prosecution for any federal violations the United States

14   Attorney has knowledge of, including potentially perjury or

15   obstruction of justice; do you understand that?

16               THE DEFENDANT:    Yes, I understand, your Honor.

17               THE COURT:    And do you understand that your agreement

18   provides that if you commit any further crimes or if it is

19   determined that you gave false incomplete or misleading

20   testimony or information or have otherwise violated any

21   provision of your cooperation agreement or the plea agreement,

22   that all statements that you make to the United States Attorney

23   or any other designated law enforcement agent or any testimony

24   given by you before a grand jury or any other tribunal may be

25   admissible as evidence in any criminal proceedings that may be

1    brought against you?

2                    THE DEFENDANT:    I understand, your Honor.

3                    THE COURT:    And do you further understand that your

4    agreement also provides that you may not assert a claim that

5    those statements that you make to the government or in any of

6    the types of proceedings that I have just mentioned should be

7    suppressed and that you have waived your right to claim that

8    those statements should be suppressed; do you understand that?

9                    THE DEFENDANT:    Yes, your Honor, I understand.

10                   THE COURT:    Apart from what is contained in this

11   letter, have any promises been made to you in order to induce

12   you or coerce you in any way to plead guilty?

13                   THE DEFENDANT:    No, your Honor.

14                   THE COURT:    Knowing all of what I have just discussed

15   with you so far this afternoon, Mr. Cohen, do you still wish to

16   plead guilty pursuant to the plea agreement and to the charges

17   set forth in the information?

18                   THE DEFENDANT:    Yes, I do, your Honor.

19                   THE COURT:    So, Mr. Barket or Ms. Leisenring, do you

20   know of any valid reason why your client would prevail at trial

21   or do you know of any reason why your client should not be

22   permitted to plead guilty?

23                   MR. BARKET:    I don't know of any reason why he should

24   not be permitted to plead guilty.

25                   THE COURT:    Do you know of any reason why your client

1    would prevail at trial?

2            MR. BARKET:    I don't expect he would, but trials are

3    funny things.  And have seen odd occurrences over 35 years, but

4    I don't expect he would and I think he is doing the right thing

5    by pleading guilty.

6            THE COURT:    All right.  Do you want to mute your line

7    again?  Mr. Barket, it seems to be your causing a feedback.  I

8    don't know why.  Thank you.

9            Mr. Cohen, can you please tell me in your own words

10    what you did that makes you guilty of the crimes to which you

11    are about to enter a plea.  Keeping in mind you have heard Mr.

12    Adams outline for you the elements of the offense with which

13    you are charged.  So I need you to tell me what you did, when

14    you did it, where you did it, what acts you took in connection

15    with the charges against you.

16            I assume you had a chance to consult with your counsel

17    about this; right?

18            THE DEFENDANT:    Yes, your Honor, I have.

19            THE COURT:    All right, sir.

20            THE DEFENDANT:    Between 2001 and 2020 I obtained and

21    sold and mailed and delivered drugs and other substances that

22    were not approved by the FDA or other governmental or

23    regulatory committees to people who owned horses.  These

24    substances were intended to have an effect on the horses so

25    that they would perform better in races and withstand more

1   races.  I also injected these substances myself.

2                THE COURT:   I am sorry.  Can I interrupt you?  I

3   didn't hear what you just said.  They were intended to do what?

4                THE DEFENDANT:   To have an effect on the horses so

5   they would perform better --

6                THE COURT:   Thank you.

7                THE DEFENDANT:   -- in races and withstand more races.

8                I also injected these substances myself into horses.

9   The drugs were administered by me and others to the horses in

10  order to affect how their bodies functioned and performed.  I

11  caused these drugs to be delivered into different states such

12  as Florida, Kentucky, New Jersey, California, Maine,

13  Pennsylvania, Massachusetts, Maryland, Delaware, New York,

14  Iowa, Ohio.  These drugs were misbranded and did not contain

15  the information for use on the bottles.  These drugs were not

16  produced at a legitimate lab.  I intended to mislead or defraud

17  regulatory authorities and did so in a manner to avoid

18  detection by horseracing authorities.  I know I distributed

19  these drugs to multiple horse owners and people that worked

20  with horse owners.  And I d9id business with a doctor who

21  provided the drugs to me.

22                That's it, your Honor.

23                THE COURT:   All right.  What regulatory authorities

24  are you referring to in the statement you just made?

25                THE DEFENDANT:   Each state has a commission that

XK796COHP          S E A L E D

1  regulates racing in that state.

2                    THE COURT:    And that's the authority you were

3  referring to?

4                    THE DEFENDANT:    Yes, your Honor.

5                    THE COURT:    When you did these acts that you just

6  outlined for me, did you know that what you were doing was

7  wrong and illegal?

8                    THE DEFENDANT:    Yes, your Honor.

9                    THE COURT:    Did you in fact intend to defraud when you

10  took those acts?

11                    THE DEFENDANT:    Yes, your Honor.

12                    THE COURT:    The time frame that you told me when you

13  committed these acts, can you repeat that for me?

14                    THE DEFENDANT:    Between 2001 and 2020.

15                    THE COURT:    Thank you.

16                    Mr. Adams, does the government wish any further

17  factual matters to be addressed in the defendant's plea

18  allocution?

19                    MR. ADAMS:    No, your Honor.  That was sufficient.

20                    THE COURT:    Can I ask, Mr. Adams, would you summarize

21  for the Court the government's evidence against Mr. Cohen.

22                    MR. ADAMS:    Certainly, your Honor.

23                    It comes in a number of forms.  Primarily and

24  principally there would be testimony regarding a controlled

25  purchase of drugs from Mr. Cohen, including drugs that did in

1    fact move in foreign and interstate commerce.  In this case a

2    Chinese manufactured version of a blood building substance

3    sometimes referred to as Epogen.

4                THE COURT:    We los Mr. Cohen again.

5                MS. LEISENRING:    We have communicated with Mr. Cohen.

6    He is trying to get back on.  He should be on shortly.

7                THE COURT:    My screen is indicating Mr. Cohen is back

8    but he is still muted and there is no picture.

9                Mr. Cohen, if you can hear me, please activate your

10   video and audio.

11               Oh, we lost him again.

12               Mr. Cohen, you need to activate your video.

13               THE DEFENDANT:    Yes, I pushed the button.  Technology

14   isn't as good as people think it is.

15               Can you see me?

16               THE COURT:    Not yet.

17               THE DEFENDANT:    Let me hit the button again.

18               THE COURT:    Mr. Adams was in the process of outlining

19   the evidence against you.  Mr. Cohen, it is very important that

20   you listen very carefully at this point because we're

21   approaching the point where I am going to ask you to actually

22   enter your plea.

23               Okay?

24               THE DEFENDANT:    Okay.  Yes.

25               THE COURT:    Mr. Adams.  Thank you.

1              MR. ADAMS:    Thank you, your Honor.  Because I didn't

2    know the exact moment that Mr. Cohen dropped off, I will

3    restart.

4              THE DEFENDANT:    You were spelling Epogen and then your

5    screen froze.

6              MR. ADAMS:    I will pick up where I left off.

7              In addition to that purchase, there were a handful of

8    additional in-person purchases of --

9              THE COURT:    Mr. Adams, hold on one second.  After you

10   were spelling Epogen, you were saying it was in fact misbranded

11   I believe.  Why don't you pick up there.

12             MR. ADAMS:    It was in fact misbranded in a number of

13   ways, including the fact that it contains no directions for use

14   and was manufactured and not registered with the FDA.

15             In addition to that the same confidential source would

16   testify regarding additional purchases of different drugs from

17   Mr. Cohen, including a number of drugs that were manufactured

18   by Dr. Skelton, who is a co-defendant in the case.  The

19   evidence would include Title III wiretap interceptions

20   including Mr. Cohen discussing his position effectively as a

21   sales representative for Dr. Skelton.  That would be the

22   predominate evidence that we would offer at trial against Mr.

23   Cohen.

24             THE COURT:    Thank you.

25             Mr. Cohen, having heard the government's evidence

XK796COHP         S E A L E D

1   against you, having had the opportunity to talk with your

2   lawyers and having heard all of what I have explained to you

3   earlier today about the consequences of entering a plea of

4   guilty, how do you now plead to the charge in count one of the

5   information, guilty or not guilty?

6               THE DEFENDANT:    Guilty, your Honor.

7               THE COURT:    Are you pleading guilty because you are in

8   fact guilty, Mr. Cohen?

9               THE DEFENDANT:    Yes, your Honor.

10              THE COURT:    Are you pleading guilty voluntarily?

11              THE DEFENDANT:    Yes, your Honor.

12              THE COURT:    And of your own free will, sir?

13              THE DEFENDANT:    Yes, your Honor.

14              THE COURT:    To Ms. Leisenring or Mr. Barket, are there

15  any other questions that you believe I should ask Mr. Cohen in

16  connection with his plea?

17              MR. BARKET:    No, your Honor.  Thank you.

18              THE COURT:    Mr. Adams, are there any other questions

19  you believe I should ask Mr. Cohen in connection with his plea?

20              MR. ADAMS:    No, your Honor.  Thank you.

21              THE COURT:    So, Mr. Cohen, because you have

22  acknowledged that you are guilty in fact as charged in the

23  information and because I am satisfied that you understand your

24  rights, including your right to go to trial and that you are

25  waiving those rights voluntarily and that you're aware of the

XK796COHP          S E A L E D

1    consequences of your plea, including the sentence which may be

2    imposed upon you, I find that your plea is entered knowingly

3    and voluntarily and is supported by an independent basis in

4    fact containing each of the essential elements of the offense

5    and I accept your guilty plea and adjudge you guilty of the

6    offense charged in Count One of the information to which you

7    have pleaded.

8              So as I said earlier that leaves as the sole

9    involvement of the Court going forward in connection with the

10   case against you sentencing.

11             Mr. Adams, do you wish to be heard with respect to

12   that?

13             MR. ADAMS:    Yes, your Honor.  With keeping in mind the

14   schedule in the broader case, at this point it is the

15   government's request to ask for a sentencing control date of at

16   least six months out and to not at this point order the

17   production of a PSR but to revisit in approximately 60 months.

18             THE COURT:    How do you propose that we would revisit?

19             MR. ADAMS:    Your Honor, in six months with additional

20   clarity about the timing of the potential trials and hearings

21   at which Mr. Cohen may be called, I think we will have a better

22   sense of whether at that point it would be appropriate to set

23   an actual sentencing date.  It may not be at that point, but

24   when we get to the point of setting an actual sentencing date,

25   we would ask for the production of the PSR.

1          THE COURT:    Ms. Leisenring or Mr. Barket, do you wish

2   to be heard with respect to that request?

3          MR. BARKET:    No.

4          MS. LEISENRING:    We agree with Mr. Adams in this

5   regard.

6          THE COURT:    A control date roughly six months out?

7          MS. LEISENRING:    Yes.

8          THE COURT:    And that sentencing be deferred?

9          MS. LEISENRING:    Yes, your Honor.

10         THE COURT:    Let me take a look.  I think six months

11  out brings us to January.  Is that what we're talking about

12  here?

13         MR. ADAMS:    Yes, your Honor.  The government would

14  propose at that point to put in a sealed letter to the Court

15  advising your Honor of the status and either asking for an

16  additional control date or to set a sentencing date.

17         THE COURT:    Why don't we set as a control date

18  January -- I just lost my calendar.  Give me another moment to

19  find the January calendar.

20         January 12, 2021, will be our control date.

21         Mr. Adams, I will hear from you in advance of that is

22  what you are contemplating?

23         MR. ADAMS:    By that date, your Honor, yes, I will put

24  in a letter.

25         THE COURT:    A sealed letter.  You can send it to the

1    Court's email and we will keep it with the other files relating

2    to this proceeding under seal.

3              MR. ADAMS:    Thank you, your Honor.

4              THE COURT:    Is there anything else that we should talk

5    about before we adjourn today?  Any other matters that the

6    parties would like to address?

7              Oh, I am sorry.  Mr. Adams, what is the current bail

8    status of the defendant and is there any objection to

9    continuing that until the day of sentencing?

10             MR. ADAMS:    Mr. Cohen is subject to supervised release

11   now and there is no application to modify that.  I do believe

12   that defense counsel may have a request for expansion for

13   travel purposes, which I will leave to Mr. Barket.  The

14   government has no objection to that request.

15             THE COURT:    Mr. Barket, do you wish to be heard with

16   respect to any application relating to bail conditions?

17             MR. BARKET:    Yes, your Honor.  We ask he be allowed to

18   travel to New Jersey.  He has a relative in New Jersey that he

19   typically visits with over the course of the summer.

20             THE COURT:    And that relative is not in any way

21   involved in the horse business, I assume?

22             MR. BARKET:    It's his sister.  I didn't ask that

23   question of him, but I don't believe so.

24             THE DEFENDANT:    She has no connection to any

25   horseracing.

XK796COHP          S E A L E D

1           THE COURT:    There is no objection by the government to

2    expanding the scope of travel permitted under the conditions?

3           MR. ADAMS:    No objections, your Honor.

4           THE COURT:    I would subject, Mr. Barket, why don't you

5    submit to chambers -- you can file this on ECF I would think --

6    a request to modify the bail conditions to permit Mr. Cohen to

7    travel to New Jersey.  I can just endorse that and I will enter

8    an order to that effect.

9           MR. BARKET:    Yes, your Honor.

10           THE COURT:    Anything else the parties would like to

11    address?

12           MR. ADAMS:    Nothing from the government, your Honor.

13           THE COURT:    Mr. Barket or Ms. Leisenring?

14           MS. LEISENRING:    Nothing further, your Honor.

15           THE COURT:    Thank you, all.

16           Mr. Cohen, good luck to you, sir.

17           We stand adjourned.

18                                  o0o

19

20

21

22

23

24

25