# EXHIBIT B



## UNITED STATES DISTRICT COURT IN AND FOR SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-mj-8437-DLB

Presidential Affairs Department:
Sector of Scientific Centers & Presidential Camel Department,
Dubai Equine, and Dubai Camel

Petitioners,

v.

United States of America,

Respondent.

_____/



### Rule 41(g) Motion For Return of Property

Under Federal Rule of Criminal Procedure 41(g), Presidential Affairs Department: Sector of Scientific Centers & Presidential Camel Department ("Presidential Affairs"), Dubai Equine, and Dubai Camel (collectively the "Petitioners") request the return of assets in Florida that the government illegally seized.

### Introduction

On October 28, 2019, the government executed a warrant at a warehouse located at 3500 NW Boca Raton Blvd., #723, Boca Raton, Florida 33431 ("the warehouse"). The government seized, among other things, animal drugs that were

purchased and meant for export to the United Arab Emirates (the "UAE") for the Petitioners. In doing so, the government relied on unconstitutional general warrants, thereby denying the Petitioners due process. Since then, months have passed and the animal drugs have not been returned to their rightful owner and the government has not even attempted to identify the rightful owner of the seized animal drugs. Petitioners cannot wait in the hopes that the government voluntarily remedies the due process and fundamental fairness issues caused by its actions in this case.

Petitioners need its unlawfully seized animal drugs returned immediately in order to care for its camels and horses. Without this Court's prompt intervention, the government's unlawful seizures will result in significant economic losses to Petitioners'. Given the unlawful seizure and the lack of another remedy, the Court should exercise jurisdiction over this Motion, schedule an expedited hearing on any factual issues in dispute concerning Petitioners right to the return of its property, and ultimately order the government to return the property[1].

### Factual Background

For the past eight years, veterinarian Seth Fishman, DVM, ("Dr. Fishman") has been working closely with Petitioners to care for their camels and horses, which are located in the UAE. *See* Correspondence from Bengawi Abdalgadir Abdalla,

---

[1] This matter has become even more urgent now with the spread of the COVID-19 pandemic. It will be very difficult to send the property back to UAE. Moreover, it will be close to impossible to reproduce the medicine.

2

Presidential Camels attached as Exhibit 1. Petitioners order and purchase custom animal drugs from Dr. Fishman for export to the UAE solely for Petitioners' use. Accordingly, the animal drugs are created under the strict governance and approval of the UAE. The animal drugs have been sourced specifically from Dr. Fishman and are not commercial products for sale in the United States or the UAE. In addition, the animal drugs are not dangerous and are not prohibited in the UAE. *See* Correspondence from the Presidential Camels and Camel Racing Affairs evidencing same attached hereto as Exhibit 2.

The animal drugs created for Petitioners are largely used for breeding purposes. Seth Fishmen overseas the breeding season, including traveling back and forth from the UAE to create animal medicine and spending time in the UAE caring for the animals. The horse and camel breeding "heat" season is from November to March. *See* http://www.veterinaryworld.org/Vol.2/February/Reproduction%20in%20Camel.pdf. The gestation of a horse is approximately 11 months and ideally equine breeders would like the foal to be born just after January 1. There is preparation of the horse for breeding that include a series of hormones, similar to a series of IVF treatments used for human conception, that is initiated in late January with conception ideally in mid to late February. Given the seizures here, Petitioners were unable to capitalize on the breeding season. This loss equates to millions of lost profits. *See* Letter from

Presidential Camels and Camel Racing Affairs Centre Sector of Scientific Centers and Presidential Camels dated March 22, 2020.

On October 28, 2019, in the middle of the night, agents entered Dr. Fishman's warehouse and spent almost five hours searching for property vaguely described in "Attachment B" to the Search and Seizure Warrant issued in the Southern District of Florida in Case No. _____ (the "Warrant"), attached hereto as Exhibit 4. The apparent purpose of the Warrant was to seize unapproved or misbranded pharmaceuticals. However, the Warrant went much further, effectively allowing agents to seize everything in the warehouse, including the animal drugs that had already been purchased by, and belonging to, Petitioners, without regard to whether the products were related to any unlawful activity at all. Specifically, the warrant authorized agents to seize "**[a]ny** misbranded, adulterated or unapproved drugs, **drugs**, pharmaceutical ingredients and products. All labeling, packaging, literature, inserts, and other materials pertaining to sale, or distribution of misbranded drugs." (emphasis added). Unsurprisingly, the seizure of "any misbranded, adulterated, or unapproved drugs, drugs, pharmaceutical ingredients and products" meant that everything was seized from the warehouse, including the perfectly lawful animal drugs belonging to Petitioners and destined for the UAE. Moreover, even though the criminal investigation underlying this search warrant was specifically tied to horse racing, the agents sought all and any drugs, not limited to horses. *See* United

States v. Jorge Navarro, Case No. 20 cr 160 (S.D.N.Y.). The agents seized drugs specifically created for camels.

The breadth of the government's seizure was truly breathtaking, especially when considering that 90% of the business by Dr. Fishman is for export and had already been purchased by Petitioners.

Section 801(e)(1) of the FDA Export Reform and Enhancement Act makes clear that a food, drug, device or cosmetic intended for export shall not be deemed to be adulterated or misbranded if the article:

- Accords to the specifications of the foreign purchaser;

- Is not in conflict with the laws of the country to which it is intended for export;

- Is labeled on the outside of the shipping package that it is intended for export; and

- Is not sold or offered for sale in domestic concern.

There is no question that the animal drugs seized from Dr. Fishman's warehouse – that belonged to Petitioners – met this criterion. *See* Correspondence from the Presidential Camels and Camel Racing Affairs evidencing same attached hereto as Exhibit 2.

Moreover, the only animal drugs that cannot be exported under Section 801 of the Act are animal drugs that have been "banned in the United States." *See*

5

Section 801(e)(3). There is no question that the animal drugs at issue here are not banned in the United States.

### Argument

Federal Rule of Criminal Procedure 41(g) sets forth the procedure for the parties who are aggrieved by the government's unlawful or detrimental seizure of their property to seek the return of that property. It states, in full:

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

Fed. R. Crim. P. 41(g).

A district court has jurisdiction to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant. *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975). Although Rule 41(g) is silent on the issue, the caselaw makes clear that a Rule 41(g) motion is treated as a civil equitable proceeding. *See id*. Accordingly, a district court must first determine whether it should exercise equitable jurisdiction before reaching the merits of a Rule 41(g) motion. *See id*.

**I.   THE COURT SHOULD EXERCISE EQUITABLE JURISDICTION BECAUSE THE *RICHEY* FACTORS ALL WEIGH IN PETITIONERS' FAVOR.**

6

To determine whether to exercise equitable jurisdiction over a Rule 41(g) motion, courts must consider and balance the following four factors:

(1) Whether the Government displayed a callous disregard for the constitutional rights of the movant;

(2) Whether the movant has an individual interest in and need for the property he wants returned;

(3) Whether the movant would be irreparably injured by denying return of the property; and

(4) Whether the movant has an adequate remedy at law for redress of his grievance.

*Richey*, 515 F.2d at 1243-44. Eleventh Circuit courts use the analytical framework provided by the *Richey* opinion in deciding whether equity jurisdiction is warranted in a given case. *In re $67,470*, 901 F.2d 1540, 1545 (11th Cir. 1990) (listing *Richey* factors as "the considerations that should guide the discretion of the district court in exercising equitable jurisdiction."); *United States v. Quezada*, 439 F. App'x 824, 827 (11th Cir. 2011) (stating that the four factors are "[t]he considerations that should guide the district court's exercise of equitable jurisdictions"); *In re Southeastern Equipment Co. Search Warrant*, 746 F. Supp. 1563, 1572-73 (S.D. Ga. 1990) (analyzing the *Richey* factors to decide if exercising equitable jurisdiction was justified where petitioner's Rule 41(e) motion was made pre-indictment but pending a grand jury investigation); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir.1989) (stating that the Court's power to fashion an equitable remedy on a motion

for return of property arises from the court's "anomalous jurisdiction"); *Robinson v. United States*, 734 F.2d 735 (11th Cir.1984) (upholding order to return property seized during a subsequently dismissed criminal prosecution, citing inherent equitable authority and due process concerns).

### A.   Factor 1: The Government Demonstrated a Callous Disregard of Petitioners' Rights by Unlawfully Seizing its Lawful Property

To satisfy the callous disregard factor, a movant need only show that the government violated the movant's constitutional rights. *See Ramsden v. United States*, 2 F. 3d 322, 325 (9th Cir. 1993) (affirming the district court's finding of callous disregard where the government admitted violating Ramsden's Fourth Amendment rights). In this case, the government violated Petitioners' Fourth Amendment rights.

First, Petitioners' are the rightful owners of the property and the property was destined for the UAE. Petitioners' property has been restrained without any adequate explanation. The government has made no efforts to notify Petitioners of any intention to return the property or to bring its allegation against the property to court. Instead, the government seems intent on keeping Petitioners' property for as long as possible.

It is clear from the breadth of the property seized and the face of the Warrant that the Warrant was overly broad and generalized and permitted agents to seize items that were entirely lawful and unrelated to any criminal activity.

Even if the search warrants were constitutional, the government's continued seizure of Petitioners' property without notice and the significant passage of time constitutes "callous disregard" of Petitioners' rights. *See Mr. Lucky Messenger Service, Inc. v. United States*, 587 F2d 15, 17-18 (7th Cir. 1978) (rejecting the government's claim that since the property was seized pursuant to a valid search warrant it therefore was not made in callous disregard for movant's constitutional rights and stating instead that the government's withholding of $65,000 for seventeen months without bringing charges "may well involve callous disregard for constitutional rights"); *see also Shea v. Gabriel*, 520 F.2d 879, 882 (1st Cir. 1975) (holding that the government's retention of seized property without commencing some sort of proceeding would violate the Constitution if the delay took on "unreasonable proportions").

**B.    Factors 2 and 3: Petitioners Have Individual Interests in and a Need for Its Property and Will Suffer Irreparable Harm if It Is Not Returned.**

Factors 2 and 3 also favor accepting jurisdiction. Petitioners have an individual interest in, and a need for, the animal drugs seized by the government because Petitioners' own that property and use it to care for their horses and camels. The animal drugs seized were tailor-made to the specifications of Petitioners' animals and cannot be created or obtained elsewhere. Petitioners, and their animals, will suffer irreparable harm if the items seized are not returned to them immediately.

9

*Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983) ( "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies."); *see also Cunnigham v. Adams*, 808 F2d 815, 821 (11th Cir. 1987) (lost business is not an irreparable harm because it can be compensated through monetary damages). This is a harm that cannot be remedied in a monetary way as the animal drugs are customized and unique.

Moreover, the items seized are legitimate goods that are perishable and require special handling and maintenance under specific and appropriate temperatures and storage conditions. The government's continued possession of the property without following proper safety and care measures could destroy the animal drugs.

Finally, the seizure of Petitioners' property without due process safeguards and when there is no related indictment constitutes irreparable harm in and of itself. Where, as here, the government has deprived Petitioners of its property, it is the government's legal action that "supplies the necessary irreparable injury." *Cf. Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992) (citations omitted). That is, given that the government unlawfully seized Petitioners' assets and that Petitioners cannot seek compensation for those direct (and any indirect losses), Petitioners' only option for a legal remedy is to seek, through this motion, the return of Petitioners' property. *Cf. Ohio Oil Co. v. Conway*, 279 U.S. 813, 814 (1929) (holding that, when no state law remedy existed to refund payment of

unconstitutional taxes granting preliminary injunction would cause irreparable injury). Without a remedy from this Court, Petitioners' and its business will be irreparably harmed. Petitioners undeniably have a possessory interest in the property restrained by the Government because Petitioners had already purchased the animal drugs, and, therefore, are the owners of the property. The continued restraint of this property has caused significant hardship to Petitioners. Petitioners missed the early breeding season. If the product is returned to Petitioners soon, they can still capitalize on the tail end of the breeding season. If product is not returned to Petitioners, it will mean millions of dollars of lost profits for years to come.

### C.  Factor 4: Petitioners Have No Adequate Remedy at Law for Redress of Its Grievances.

Factor 4 also favors Petitioners because there are no criminal proceedings against them. Rule 41(g) is the only avenue for Petitioners' property to be returned. Petitioners have been denied their property – property used to care for their animals – without any justification from the government. Simply put, no other means or procedures exist for Petitioners to have its property returned. That fact warrants this Court's exercise of equitable jurisdiction.

## II.  ON THE MERTIS, THE COURT SHOULD GRANT PETITIONERS' RELIEF AND ORDER THE RETURN OF ITS PROPERTY.

Rule 41(g) explicitly allows for a dual basis for seeking the return of property: "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). In this case, Petitioners have been aggrieved by an unlawful search and seizure of their property and by the deprivation of their property.

To the extent the government disputes any of the facts supporting the instant Motion, the Court "must receive evidence" on those factual issues that are "unnecessary to decide the motion." Rule 41(g); *see also United States v. Albinson*, 356 F. 3d 278, 282 (3d Cir. 2004) (explaining that the rule "requires the district court to hold an evidentiary hearing on 'any disputed issue of fact necessary to the resolution of the motion'" (citation omitted)). Given that Petitioners, have been without its property for over three months, they respectfully ask that the Court promptly hold a hearing on any issues that are in dispute.

### A. Petitioners' Property Must Be Returned Because It Was Unlawfully Seized.

In order to prevail under the first prong of Rule 41(g), Petitioners must show that it is entitled to lawful possession of the items seized and that it has clean hands. *See United States v. Garcon*, 406 Fed. Appx. 366, 370 (11th Cir. 2010). A Rule 41(g) motion may be denied if the items seized are contraband. *See United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007). Finally, the property should be returned if the seizure was unlawful. *United States v. Melquiades,* 394 Fed. Appx. 578, 580

(11th Cir. 2010); *see also United States v. Van Cauwenberghe*, 827 F.2d 424, 433 (9th Cir. 1987).

In this case, there is no dispute that Petitioners have clean hands and are the rightful owners of the seized property. *See* Exhibit 3. As to whether the items seized were contraband, it is well known and black letter law in the veterinary community that the export of unapproved new animal drugs to another country is lawful and proper as long as the drugs meet the foreign purchasers' specifications and the drug is not unlawful to possess or use in that country. *See* 21 U.S.C. 381(e). The property that Petitioners seek returned here was all meant for export and met the specifications of the UAE. *See* Exhibit 3. The seized property was simply not contraband. Accordingly, the first two tests are satisfied. The third test, that the seizures were unlawful, is satisfied for the reasons that follow.

1. **The Search Warrant's Description of the Property to be Seized Lacked the Requisite Particularity, and the Warrant is Therefore an Unconstitutional General Warrant**.

The Fourth Amendment prohibits general warrants, and instead requires warrants "particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. General warrants fail the purpose served by the Fourth Amendment's warrant requirement because they "create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure …." *United States v. Campbell*, 256 F.3d 381, 389 (6th Cir. 2001) (internal

citation omitted). The Constitution bars law enforcement officers – ministerial agents of the executive branch – from deciding for themselves what to seize in the execution of a warrant. That decision, but for certain exceptions not relevant here, is one reserved for "a neutral and detached judicial officer [who] is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer negated in the often competitive enterprise of ferreting out crime." *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326 (1979) (internal citation and quotation marks omitted).

It is well established that a warrant seeking all property of a certain category, rather than only property for which there is probable cause, violates the Fourth Amendment's particularity requirement and is essentially a general warrant. *See United States v. Cook*, 657 F.2d 730, 733-34 (5th Cir. 1981) (holding that "cassettes onto which ... copyrighted films ... have been electronically transferred" was insufficient where place to be searched had many other cassettes, and warrant "supplied searching agents with little guidance"); *United States v. Fuccillo*, 808 F.2d 173, 175-78 (1st Cir. 1987) (warrants to search distributor, warehouse, and retail clothing store for "cartons of women's clothing" had insufficient description, because there was no explanation for executing agents to differentiate stolen clothing from other goods).

The Warrant clearly runs afoul of these limits. The Warrant failed to provide any guidance whatsoever to the searching agents in determining what to seize, and failed to set forth with any specificity what records or products the government had probable cause to seize, on suspicion of being related to unapproved and/or misbranded drugs. *See Cook*, 657 F.2d at 733-34. The Warrant allowed the government to seize "any … drugs," a generalized description that encompassed all drugs, even those that are perfectly lawful. As such, the warrant on its face permitted the government to illegally seize everything at the warehouse, including items which were entirely lawful. And even when the warrant was more specific, it still called for the agents to seize "any misbranded, adulterated or unapproved drugs" or "any …pharmaceutical ingredients and products." These impermissible catch-all phrases allowed the agents unfettered discretion. *See e.g., United States v. Morris*, 977 F.2d 677, 682 (1st Cir. 1992) ("the catch-all phrase authorizing seizure of 'any other object in violation of the law' is impermissibly broad")

The Warrant's broad categories in effect improperly gave the agents "unlimited discretion in [their] determination of what is subject to seizure." *Campbell*, 256 F.3d at 389 (citations omitted). This resulted in the "exploratory rummaging" and unsupported seizure of property that the Constitution does not tolerate. *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1961) ("[T]he specific

15

evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings.

### B. Regardless of the Unlawfulness of the Government's Seizures, Petitioners' Property Should Be Returned to It Because It is Aggrieved by the Deprivation.

Although Rule 41(g) does not set forth a standard governing whether property should be returned to a person aggrieved by deprivation of the property, the Advisory Committee's Notes provides some guidance:

> [R]easonableness under all the circumstances must be the test when a person seeks to obtain the return of property. If the United States has a need for the property in an investigation or prosecution, its retention of the property generally is reasonable. But, if the United States' legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable.

Applying this general principle, the Court should grant Petitioners' Motion because the harm to Petitioners' from the continued possession by the government of the seized property outweighs any risk that the property will be lost if it is returned to Petitioners, especially given that the Court "may impose reasonable conditions to protect access to the property and its use in later proceedings," as specified in Fed. R. Crim. P. 41(g).

As discussed throughout this Motion, the continued seizure of Petitioners' property will irreparably harm its animals and Petitioners' have no way of replenishing its inventory of these specialized animal drugs because Dr. Fishman is no longer supplying the same.

In light of these consequences of the continued seizure, and the fact that the government has no need for continued possession of the legal property it seized, the Court should order the return of the property.

## CONCLUSION

For the foregoing reasons, the Court should exercise equitable jurisdiction over this Motion, schedule an expedited hearing on any factual issues in dispute, and order the government to return the property, with any conditions the Court deems necessary.

Dated: March 24, 2020

Respectfully submitted,

TACHE, BRONIS, CHRISTIANSON AND DESCALZO, P.A.
150 S.E. 2 Avenue, Suite 600
Miami, Florida 33131
Telephone: (305) 537-9565
Facsimile: (305) 537-9567

By: */s/ Marissel Descalzo*
    Marissel Descalzo, Esq.
    Florida Bar No. 669318
    mdescalzo@tachebronis.com
    service@tachebronis.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was filed with the Clerk of Courts and served on all counsel of record by U.S. Mail.

By: /s/ *Marissel Descalzo*
Marissel Descalzo, Esq.