M2IsDANp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4               v.                           20 CR 160 (MKV)

5   RICK DANE, JR.,

6               Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            February 18, 2022
9                                           1:00 p.m.

10

    Before:
11
                        HON. MARY KAY VYSKOCIL,
12
                                            District Judge
13

14                          APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ANDEN CHOW
17       Assistant United States Attorney

18  CALVIN H. SCHOLAR
         Attorney for Defendant
19

20

21

22

23

24

25

M2IsDANp

| 1 | (Case called) |

THE DEPUTY CLERK:  Counsel starting with the government, please state your name for the record.

MR. CHOW:  Anden Chow for the government.

Good afternoon, your Honor.

THE COURT:  Good afternoon, Mr. Chow.

MR. SCHOLAR:  Good afternoon, your Honor.  Calvin Scholar for Mr. Dane.  Mr. Dane is seated next to me.

THE COURT:  Good afternoon, Mr. Scholar, and good afternoon, Mr. Dane.

Good afternoon to our court reporter.

We're here, as I understand it, for a change of plea hearing for Mr. Dane.  The court has been informed that the defendant wishes to plead guilty, is that correct?

MR. SCHOLAR:  That is correct, your Honor.

THE COURT:  All right.  Thank you.

By the way, everyone can remain seated just because it is easier to pick up with the microphones.  All right.

MR. SCHOLAR:  Thank you, your Honor.

THE COURT:  All right.  Before we go any further, Mr. Dane, are you able to speak and understand English clearly?

THE DEFENDANT:  Yes.

THE COURT:  You do not need the services of an interpreter?

THE DEFENDANT:  No.

M2IsDANp

| | |
|---|---|
| 1 | THE COURT:  All right.  Mr. Scholar, why don't you |
| 2 | keep that microphone. |
| 3 | Mr. Dane, can you pull that microphone over in front |
| 4 | of you. |
| 5 | All right.  Thank you. |
| 6 | Mr. Dane, if at any point you don't hear what I'm |
| 7 | saying to you or what the government might be saying or if you |
| 8 | don't understand something that I ask or that I say to you, |
| 9 | please let me know that.  And if at any point you would like to |
| 10 | speak privately with Mr. Scholar, please let me know that, and |
| 11 | I will give you an opportunity to do so. |
| 12 | Have you had ample opportunity to talk with counsel |
| 13 | prior to today's hearing? |
| 14 | THE DEFENDANT:  Yes. |
| 15 | THE COURT:  And you are ready to proceed? |
| 16 | THE DEFENDANT:  Yes. |
| 17 | THE COURT:  All right.  I am informed that Mr. Dane |
| 18 | has an application to withdraw his plea of not guilty and |
| 19 | pursuant to an agreement with the government, waive indictment, |
| 20 | and enter a plea of guilty to a one-count superseding |
| 21 | information which will be numbered S-12.  I've been provided |
| 22 | with a copy of that superseding information. |
| 23 | Count One charges the defendant with drug adulteration |
| 24 | and misbranding, in violation of Title 21, United States Code, |
| 25 | Sections 331 and 333(a)(2).  Specifically, the government |

M2IsDANp

alleges that from at least in or about 2017 through at least in

or about March of 2020, Mr. Dane, with the intent to defraud

and mislead, in interstate commerce, adulterated and misbranded

drugs and caused the adulteration and misbranding of drugs in

interstate commerce.

The government alleges that Mr. Dane misled and

deceived state and federal drug regulators with respect to the

distribution, purchase, receipt of various misbranded and

adulterated performance-enhancing drugs, and the use of such

misbranded and adulterated drugs to improve the performance of

race horses under Mr. Dane's care and custody.

Is that accurate, Mr. Scholar?

MR. SCHOLAR:  That is accurate, Judge.

THE COURT:  All right.  I have a copy of the plea

agreement between the parties.  That will be entered into the

record as Government Exhibit 1.

Mr. Dane, before I accept your plea of guilty, there

are a number of questions I need to ask you under oath.  I'm

doing that in order to assure myself that any plea you might

enter is a valid plea.

I may at various points cover a topic more than once

or I may cover topics that were addressed in other forms or

agreements that you have signed.  If I do that, I'm doing so

because it's very important that you understand what's

happening here today.

M2IsDANp

1            In that regard, I remind you if you don't understand

2    something that I ask, please say so, and I'll try to reword the

3    question, answer whatever question you may have, or give you

4    the opportunity to speak with your lawyer.

5            Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  All right.  You will let me know, sir, if

8    you do not understand?

9            THE DEFENDANT:  Yes.

10            THE COURT:  All right.  Ms. Dempsey, would you please

11    administer the oath to Mr. Dane.

12            (Defendant sworn)

13            THE DEPUTY CLERK:  Can you state and spell your name

14    for the record.

15            THE DEFENDANT:  It's Rick Dane, R-i-c-k, D-a-n-e.

16            THE DEPUTY CLERK:  Thank you.

17            THE COURT:  You may be seated.

18            All right.  Mr. Dane, do you understand that you have

19    just solemnly promised to tell the truth and that if you answer

20    any of my questions falsely, your false or untrue answers may

21    later be used against you in another prosecution for perjury or

22    making a false statement?

23            Do you understand that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  Can you tell me, sir, how old are you?

1              THE DEFENDANT:  50.

2              THE COURT:  How far did you go in school?

3              THE DEFENDANT:  Eleventh grade.

4              THE COURT:  And you've told me you are able to speak

5    and understand English perfectly well?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Is English your native language?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Are you a citizen of the United States?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Were you born here?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Are you now or have you recently been

14   under the care of a doctor?

15             THE DEFENDANT:  No.

16             THE COURT:  Are you now or have you recently been

17   under the care of a mental health professional?

18             THE DEFENDANT:  No.

19             THE COURT:  Have you ever been treated or hospitalized

20   for any mental illness or any type of addiction, including

21   either drugs or alcohol?

22             THE DEFENDANT:  No.

23             THE COURT:  Have you ever been addicted to drugs or

24   alcohol?

25             THE DEFENDANT:  No.

M2IsDANp

1           THE COURT:  In the past 24 hours, have you taken any

2    drugs, including any medication or other pills?

3           THE DEFENDANT:  No.

4           THE COURT:  Have you had any alcohol to drink in the

5    past 24 hours?

6           THE DEFENDANT:  No.

7           THE COURT:  Is your mind clear today?

8           THE DEFENDANT:  Yes.

9           THE COURT:  You understand what we're doing?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Are you feeling physically well, are you

12   healthy?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Are you represented by counsel?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Who is your counsel?

17          THE DEFENDANT:  Mr. Calvin Scholar.

18          THE COURT:  Are you satisfied with Mr. Scholar?

19          THE DEFENDANT:  Yes.

20          THE COURT:  All right.  Does counsel for either side

21   have any doubt as to Mr. Dane's competence to plead at this

22   time, Mr. Scholar?

23          MR. SCHOLAR:  No, your Honor.

24          MR. CHOW:  No, your Honor.

25          THE COURT:  All right.  Mr. Dane, your lawyer has told

M2IsDANp

```
 1   me that you wish to withdraw your plea of not guilty and to
 2   enter a plea of guilty to a superseding information to be filed
 3   in this case.
 4          Is that what you wish to do?
 5          THE DEFENDANT:  Yes.
 6          THE COURT:  Have you fully discussed your case with
 7   Mr. Scholar, including the charge to which you intend to plead
 8   guilty and any possible defenses to that charge?
 9          THE DEFENDANT:  Yes.
10          THE COURT:  Have you discussed the consequences of
11   entering a plea of guilty with your lawyer?
12          THE DEFENDANT:  Yes.
13          THE COURT:  Are you satisfied with your attorney,
14   Mr. Scholar, and his representation of you?
15          THE DEFENDANT:  Yes.
16          THE COURT:  Do you need further opportunity to talk
17   with Mr. Scholar before we proceed?
18          THE DEFENDANT:  No.
19          THE COURT:  All right.  On the basis of Mr. Dane's
20   responses to my questions and my observations of his demeanor,
21   I find that he is fully competent to enter an informed plea at
22   this time.
23          Now, Mr. Dane, before we turn to the plea itself, I
24   must be certain that you understand the rights that you'll be
25   giving up by waiving indictment in this case.  The document
```

M2IsDANp

1    that contains the charges to which you have indicated you wish

2    to plead guilty is called an information.  That document is

3    issued by the United States Attorney for the Southern District

4    of New York.  You have a constitutional right to be charged by

5    an indictment rather than an information.  An indictment would

6    be a charge issued by a grand jury.

7              Do you understand that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand that if you do not waive

10   indictment, if the government wants to prosecute you on the

11   facts and the charges that are laid out in the information, it

12   would have to present this case to a grand jury, which might or

13   might not indict you on the charges?

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that you're under no

17   obligation to waive indictment?

18             THE DEFENDANT:  Yes.

19             THE COURT:  I've been given a copy of a waiver of

20   indictment.  Do you have that in front of you?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is that your signature on this document?

23             THE DEFENDANT:  Yes.

24             THE COURT:  The version I have has no date on it.

25   Have you all dated your copies?

M2IsDANp

1           When was this document signed by you, Mr. Dane?

2           THE DEFENDANT:  Today.

3           THE COURT:  All right.  Is there any objection,

4   Mr. Scholar and Mr. Chow, to my dating this February 18?

5           MR. CHOW:  No, your Honor.

6           MR. SCHOLAR:  No, your Honor.  Thank you.

7           THE COURT:  All right.  I'm sorry, sir.

8           Mr. Dane, that is your signature above the line that

9   says Rick Dane, Jr.?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you realize that by signing this

12  document, this waiver of indictment, you have given up your

13  right to have your case, this case against you presented to a

14  grand jury?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand what a grand jury is?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that a grand jury

19  consists of 23 people of which at least 16 must be present to

20  conduct business and that you cannot be charged unless at least

21  12 of those people vote for indictment?

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did anyone make any threats or promises to

25  you in order to get you to waive indictment?

M2IsDANp

1            THE DEFENDANT:  No.

2            THE COURT:  Have you seen a copy of the superseding

3    information?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Have you read that document?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Have you discussed it with your lawyer?

8            THE DEFENDANT:  Yes.

9            THE COURT:  Do you understand the charges against you

10   laid out in that information?

11           THE DEFENDANT:  Yes.

12           THE COURT:  I can read the superseding information out

13   loud now, if you would like me to do so, or you may waive

14   public reading.

15           Would you like me to read the information or do you

16   waive public reading?

17           THE DEFENDANT:  I'll waive it.

18           THE COURT:  All right.  I do find that Mr. Dane's

19   waiver of indictment in this case is knowing and voluntary.  It

20   is accepted and the superseding information should be filed in

21   this case along with the waiver of indictment.  Counsel will

22   please ensure that that takes place.

23           All right.  Mr. Dane, then before I accept your plea,

24   I need to ask you certain additional questions.  Those are

25   intended to satisfy me that you wish to plead guilty because

M2IsDANp

1  you are, in fact, guilty and that you fully understand your

2  rights and the consequences of pleading guilty.

3          I want to begin by explaining or describing to you

4  certain rights that you have under the Constitution and laws of

5  the United States.  You will be giving up these rights if you

6  enter a plea of guilty.  Please listen very carefully.  And I

7  will remind you again, if you do not understand something I'm

8  saying or describing, please stop me and either I or

9  Mr. Scholar will explain to you more fully.

10          Will you do that?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  Under the Constitution and

13  laws of the United States, you have a right to a speedy and a

14  public trial by a jury on the charges against you which are

15  contained in the information.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that you have the right

19  to plead not guilty and to continue to plead not guilty to the

20  charge?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if there were a

23  trial, you would be presumed innocent and the government would

24  be required to prove you guilty by competent evidence and

25  beyond a reasonable doubt?

M2IsDANp

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that you would not have

5    to prove at trial that you are innocent?

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that if there were a

9    trial, a jury made up of 12 people selected from this district

10   would have to agree unanimously in order to find you guilty?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that if there were a

13   trial, you would have the right to be represented by an

14   attorney at trial and at all stages of the proceeding, and if

15   you couldn't afford one, an attorney would be provided to you

16   free of cost?

17             Do you understand that?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Do you understand that if there were a

20   trial, you would have the right to see and to hear all of the

21   witnesses against you and your attorney could cross-examine

22   them?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You would have the right to have your

25   attorney object to the government's evidence and to offer

M2IsDANp

1    evidence on your behalf if you so desired.  You would have the

2    right to have witnesses required to come to court to testify in

3    your defense and you would have the right to testify, but you

4    would not be required to testify.

5            Do you understand all of that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you understand that if there were a

8    trial and you decided not to testify, no adverse inference

9    could be drawn against you based on your decision not to

10   testify.  And by that, I mean the jury would be instructed that

11   it is not allowed to assume that you didn't testify because you

12   were hiding something or because you were guilty.

13           Do you understand that?

14           THE DEFENDANT:  Yes.

15           THE COURT:  Do you understand that if you were

16   convicted at trial, you would have the right to appeal the

17   jury's verdict?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Do you understand each and every one of

20   these rights that I just outlined for you?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Do you have any questions about these

23   rights?

24           THE DEFENDANT:  No.

25           THE COURT:  Do you understand that by entering a plea

1    of guilty today, you will be giving up each and every one of

2    these rights, you'll be waiving these rights?

3              Do you understand that?

4              THE DEFENDANT:  Yes.

5              THE COURT:  Do you understand also that you'll be

6    waiving any possible claim that your constitutional rights may

7    have been violated and you will not have a trial?

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand that by entering a plea

11    of guilty, you will also have to give up your right not to

12    incriminate yourself because I will ask you, in a few moments,

13    questions about what you did in order to satisfy myself that

14    you are guilty as charged and you will have to admit and

15    acknowledge your guilt?

16             Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand that you can change your

19    mind right now and refuse to enter a plea of guilty?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that you do not have to

22    enter this plea if for any reason you do not want to?

23             THE DEFENDANT:  Yes.

24             THE COURT:  You understand this fully?

25             THE DEFENDANT:  Yes.

M2IsDANp

1          THE COURT:  All right.  Mr. Dane, you are charged in

2     Count One of the superseding information with drug misbranding

3     and adulteration, in violation of 21, United States Code,

4     section 331 and 333(a)(2).

5          Let me turn to the government.  Mr. Chow, would you

6     please state the elements of the offense with which Mr. Dane

7     has been charged in Count One?

8          MR. CHOW:  In order to prove the defendant guilty of

9     adulterating or misbranding drugs in interstate commerce, the

10    government would have to prove the following three elements

11    beyond a reasonable doubt:

12         First, the defendant adulterated or misbranded a drug

13    in at least one way or caused another to do the same;

14         Second, that the drug was in interstate commerce or

15    was introduced into interstate commerce;

16         Third, the defendant had intent to defraud or mislead.

17         Separately, the government would have to prove venue

18    by a preponderance of the evidence.

19         THE COURT:  All right.  Thank you.

20         Mr. Dane, do you understand that the government would

21    have to prove each and every part or element that the

22    government has just laid out with respect to Count One beyond a

23    reasonable doubt at trial if you did not plead guilty?

24         THE DEFENDANT:  Yes, I do.

25         THE COURT:  Do you understand the matters the

M2IsDANp

 1    government would have to prove if you didn't plead guilty?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  And you've had an opportunity to discuss

 4    that with counsel, correct?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Do you understand that the maximum

 7    possible term of imprisonment for the offense in Count One to

 8    which you tell me you intend to plead guilty is a term of

 9    imprisonment of three years?

10              THE DEFENDANT:  Yes.

11              THE COURT:  Do you understand that Count One can also

12    include a maximum term of supervised release after you're

13    released from prison for up to one year?

14              THE DEFENDANT:  Yes.

15              THE COURT:  In addition to these restrictions on your

16    liberty, the maximum possible punishment for Count One also

17    includes certain financial penalties.

18              Do you understand that?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Do you understand that the maximum fine

21    allowed is $10,000 or twice the gross pecuniary gain relating

22    to the offense or twice the loss to persons other than yourself

23    as a result of the offense, whichever is greater?

24              Do you understand that?

25              THE DEFENDANT:  Yes.

M2IsDANp

1    THE COURT:  Do you also understand that there is a

2    mandatory special assessment of $100 for each count in the

3    information?

4    THE DEFENDANT:  Yes.

5    THE COURT:  The superseding information also contains

6    forfeiture allegations.  As part of your sentence, if you plead

7    guilty, you will be required to forfeit to the United States

8    any and all drugs that were adulterated or misbranded as part

9    of the crime to which you're pleading guilty or a sum of money

10   representing the value of that property.

11   Do you understand that?

12   THE DEFENDANT:  Yes.

13   THE COURT:  I want to, before we proceed, give you

14   just some information to make sure you understand the

15   supervised release aspect of your potential penalty.

16   Supervised release means that you will be subject to

17   monitoring when you are released from prison.  Certain terms

18   and conditions will be imposed.  If you violate any of those

19   set terms and conditions, you could be reimprisoned without a

20   jury trial.

21   Do you understand that?

22   THE DEFENDANT:  Yes.

23   THE COURT:  Do you understand that if you're on

24   supervised release and you do not comply with any of the set

25   terms or conditions, you can be returned to prison for up to

M2IsDANp

one year, and you will be given no credit for the time you

served in prison as a result of your sentence and no credit for

any time you spent on post-release supervision prior to the

violation?

        Do you understand that?

        THE DEFENDANT:  Yes.

        THE COURT:  You should also understand there is no

parole in the federal system.  If you are sentenced to prison,

you will not be released early on parole.  There is a limited

opportunity for you to earn credit for good behavior, but you

will have to serve at least 85 percent of the time to which you

are sentenced.

        Do you understand that?

        THE DEFENDANT:  Yes.

        THE COURT:  Do you further understand that if I accept

your guilty plea and adjudge you guilty, that adjudication may

deprive you of certain valuable civil rights, such as the right

to vote, the right to hold public office, the right to serve on

a jury, and the right to possess any kind of firearm, if you

currently have or could otherwise attain such rights?

        Do you understand that?

        THE DEFENDANT:  Yes.

        THE COURT:  Now, Mr. Dane, you've told me that you are

a United States citizen, but I need to warn you that should

that turn out not to be the case, if I accept your plea and

1    adjudge you guilty, there could be adverse effects on your

2    immigration status, including further detention following

3    completion of your sentence and/or removal or deportation from

4    the United States.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you discuss your immigration status

8    and any possible consequences of your plea with your lawyer?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Under current law there are sentencing

11   guidelines that judges must consider in determining your

12   sentence.

13             Have you and Mr. Scholar spoken about the sentencing

14   guidelines?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that in addition to

17   considering the sentencing guidelines in imposing sentence,

18   I must consider various additional factors under 18, United

19   States Code, Section 3553(a)?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that the court has

22   discretion, while taking the sentencing guidelines into

23   account, to sentence you to any period of imprisonment up to

24   three years?

25             THE DEFENDANT:  Yes.

M2IsDANp

 1                THE COURT:  Do you understand that even though the

 2    plea agreement includes a stipulated or agreed sentencing

 3    guideline calculation, I cannot determine your sentence until

 4    after a presentence report has been completed by the probation

 5    department, and you and your lawyer and the government have had

 6    a chance to challenge any of the facts reported by the

 7    probation department in that presentence report?

 8                Do you understand that?

 9                THE DEFENDANT:  Yes.

10                THE COURT:  Let me talk to you about the plea

11    agreement.

12                According to the plea agreement, you have agreed that

13    the guidelines range applicable to the offense in Count One to

14    which you intend to plead guilty would be 46 to 57 months of

15    imprisonment, but because of the statutory maximum of 36 months

16    of imprisonment, the guideline sentence is 36 months of

17    imprisonment?

18                Do you understand that?

19                THE DEFENDANT:  Yes.

20                THE COURT:  You've also agreed in that plea agreement

21    that the applicable fine range for your case is 20,000 to

22    $200,000.

23                Is that consistent with your understanding?

24                THE DEFENDANT:  Yes.

25                THE COURT:  Do you understand that this stipulation

M2IsDANp

1   that you've entered into as part of your plea agreement does

2   not bind the court or the probation department as to the facts

3   on which it is based or how to apply the sentencing guidelines

4   to the facts or what will be an appropriate sentence in this

5   case?

6           Do you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you understand that I may decide to

9   impose a sentence that is different than what the guidelines

10  advise?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that if your attorney or

13  anyone else has attempted to estimate or predict what your

14  sentence will be, their estimate or prediction could be wrong?

15          THE DEFENDANT:  Yes.

16          THE COURT:  No one, not even your lawyer or the

17  government, can or should give you any assurance of what your

18  sentence will be since that sentence cannot be determined until

19  after the probation office has prepared the presentence report

20  and I have ruled on any challenges to that report and

21  determined what the appropriate sentence is under the law?

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you also fully understand that even if

25  your sentence is different from what your attorney or anyone

M2IsDANp

else told you it might be or if it is different from what you
expect or hope or if you're surprised or disappointed by your
sentence, if I accept your plea today, you will be bound to
your guilty plea and you will not be allowed to withdraw your
plea of guilty?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that even if the
government does not oppose or take a position on what your
attorney will ask me to impose as your sentence, I am obligated
to impose whatever sentence I believe is appropriate under the
circumstances and the applicable law, and you will have no
right to withdraw your plea?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you may have the
right to appeal your sentence under certain circumstances, even
if your plea agreement provides that you're waiving your right
to appeal?

THE DEFENDANT:  Yes.

THE COURT:  I'm sorry?

THE DEFENDANT:  Yes.  I am sorry.

THE COURT:  Are you now serving any state or federal
sentence or are you being prosecuted anywhere for any other
crime aside from what we're discussing today?

M2IsDANp

1          THE DEFENDANT:  No.

2          THE COURT:  I have a copy of the plea agreement.  What

3    I've been given is a six-page letter on the letterhead of the

4    United States Department of Justice, the United States Attorney

5    for the Southern District of New York, dated February 10, 2022,

6    addressed to Calvin Harold scholar and signed by Andrew Adams,

7    approved by Alex Wilson.

8          Do you have a copy of that in front of you, sir?

9          THE DEFENDANT:  Yes.

10         THE COURT:  If you would turn to the last page of this

11   document.

12         Does your signature appear on this letter agreement?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Is that your signature above where your

15   name is typed on the left-hand side?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Right below where it says agreed and

18   consented to, is that right?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Did you read this agreement before you

21   signed it?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Did you discuss it with Mr. Scholar before

24   you signed it?

25         THE DEFENDANT:  Yes.

M2IsDANp

1          THE COURT:  Did Mr. Scholar explain to you all of the

2     terms and conditions of this agreement?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Did you fully understand the agreement

5     where you before you signed it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that as part of your

8     plea agreement, you have agreed to forfeit to the United States

9     $33,912, representing the value of forfeitable property that

10    you obtained as a result of the offense to which you intend to

11    plead guilty?

12         THE DEFENDANT:  Yes.

13         THE COURT:  By the way, I have been given a

14    preliminary order of forfeiture and money judgment.

15         Has that been reviewed by both parties, Mr. Chow?

16         MR. CHOW:  Yes, your Honor.

17         THE COURT:  Mr. Scholar?

18         MR. SCHOLAR:  Yes, your Honor.

19         THE COURT:  All right.  You have a copy of that, sir.

20         MR. SCHOLAR:  I do, Judge, and Mr. Dane has a copy as

21    well.

22         THE COURT:  Mr. Dane, would you look at the last page

23    of that.  It's captioned consent preliminary order of

24    forfeiture/money judgment.

25         THE DEFENDANT:  OK.

1            THE COURT:  Did you sign this document?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Is that your signature on the last page

4    above where your name is typed?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Did you discuss this document with your

7    lawyer before you signed it?

8            THE DEFENDANT:  Yes.

9            THE COURT:  And you fully understand what this

10   document says and what the consequences are of the document?

11           THE DEFENDANT:  Yes.

12           THE COURT:  All right.  Is there any reason I should

13   not enter this order as this time, Mr. Scholar?

14           MR. SCHOLAR:  No, your Honor.

15           THE COURT:  Mr. Chow?

16           MR. CHOW:  No, your Honor.

17           THE COURT:  All right.  I am signing that order and

18   dating it.  Again, this document is not dated by the defendant

19   and counsel.  Actually, it would be better if you do that and

20   hand up another copy, and I will sign it after we conclude.

21           Thank you.  Let me just sign that.

22           All right.  This order will be filed.

23           Ms. Dempsey, here you go.  It will be filed and will

24   be filed immediately upon my having signed it and filing it,

25   and it will be included in the judgment of conviction in this

M2IsDANp

case, assuming you do plead and I accept your plea of guilty.

Now, Mr. Dane, do you also understand that your plea agreement provides that you are giving up or waiving your right to appeal or to litigate or challenge your sentence under a statute 28, United States Code, Section 2255 and/or Section 2241, if I impose a sentence of imprisonment at or below the stipulated guidelines sentence of 36 months as set forth in the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you're under no obligation to waive your right to appeal or to otherwise litigate your sentence?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that your plea agreement provides that you are also waiving your right to appeal or attack your conviction on the basis that the government hasn't provided you with discovery material, exculpatory material, except information establishing factual innocence, or any material to impeach the government's witnesses against you?

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that you're under no obligation to waive those rights?

THE DEFENDANT:  Yes.

M2IsDANp

1          THE COURT:  Do you understand that your agreement

2     provides that you will not move for a downward departure under

3     the sentencing guidelines or seek any adjustment under the

4     guidelines that is not described in the plea agreement, but

5     that you may make arguments for a lower sentence under the

6     general sentencing statute that is known as Section 3553(a),

7     which contains the factors that I am obligated to consider in

8     imposing sentence?

9          Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that you're under no

12     obligation to enter into any such agreement?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that your plea agreement

15     provides that you are waiving any challenge to your guilty

16     plea, your conviction, or your sentence based upon any

17     immigration consequences of your plea regardless of any advice

18     that you may have received regarding such immigration

19     consequences?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do you understand that you're under no

22     obligation to make this waiver?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Does this agreement, the plea agreement

25     that we just talked about, reflect accurately your complete and

M2IsDANp

```
 1    total understanding of the entire agreement between the
 2    government, you, and your lawyer?
 3                THE DEFENDANT:  Yes.
 4                THE COURT:  Is everything you understand about your
 5    plea and your sentence up to this point covered in this
 6    agreement?
 7                THE DEFENDANT:  Yes.
 8                THE COURT:  Has anything been left out?
 9                THE DEFENDANT:  No.
10                THE COURT:  Apart from what is contained in the plea
11    agreement, have any promises been made to you in order to get
12    you to plead guilty?
13                THE DEFENDANT:  No.
14                THE COURT:  Have been threatened or coerced in any way
15    in order to get you to plead guilty?
16                THE DEFENDANT:  No.
17                THE COURT:  Knowing all that we have just discussed,
18    do you still wish to plead guilty pursuant to the plea
19    agreement?
20                THE DEFENDANT:  Yes.
21                THE COURT:  All right.  Mr. Scholar, do you know of
22    any valid reason why your client would prevail at trial or why
23    he should not be permitted to plead guilty today?
24                MR. SCHOLAR:  No, your Honor.
25                THE COURT:  All right.  Mr. Dane, at this point I need
```

1  for you to tell me in your own words what it is that you did

2  that makes you guilty of the crime to which you are entering a

3  plea.  I need you to tell me what you did, when you did it,

4  where you did it, with whom you did it.

5          (Counsel confers with defendant)

6          THE DEFENDANT:  OK.  From about 2017 through March of

7  2020, in the Southern District of New York, I ordered drugs

8  which were used to improve the performance of my race horses

9  under my custody and my care.  I paid for and received those

10  drugs in interstate commerce, and the drugs that I received

11  were misbranded and/or adulterated.  I did not disclose the

12  purchase, the receipt, possession, or use of the misbranded or

13  adulterated drugs to any appropriate horse racing commission or

14  other governing body.  When I did these things, I knew that

15  they were wrong and illegal.

16          THE COURT:  When you say you ordered drugs that were

17  adulterated or misbranded, what do you mean?

18          THE DEFENDANT:  I ordered things from a veterinarian

19  that I really didn't know what was in the bottle.

20          THE COURT:  Were those drugs labeled appropriately in

21  accordance with FDA guidelines?

22          THE DEFENDANT:  No, they were not.

23          THE COURT:  You knew that what you were doing was

24  wrong and illegal?

25          THE DEFENDANT:  Yes.

M2IsDANp

1            THE COURT:  And you gave these drugs to horses under

2     your care and custody and training?

3            THE DEFENDANT:  Yes.

4            THE COURT:  And did you do that for the purposes of

5     enhancing their performance?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And did you know that the drugs were

8     adulterated in ways that would make them undetectable to both

9     horse racing officials and other government regulators,

10    including the FDA potentially?

11           THE DEFENDANT:  Yes.

12           THE COURT:  And you've told me you knew that what you

13    were doing was wrong?

14           THE DEFENDANT:  Yes.

15           THE COURT:  And you knew that it was illegal?

16           THE DEFENDANT:  Yes.

17           THE COURT:  All right.  Mr. Chow, is there anything

18    further that the government wishes by way of factual matters

19    that I should address with Mr. Dane in connection with his plea

20    allocution?

21           MR. CHOW:  No.  I assume at a later point the court

22    may ask the government what it would be prepared to prove at

23    trial?

24           THE COURT:  Yes, in a moment.

25           MR. CHOW:  Sure.  Not a problem.  Just wanted to make

M2IsDANp

1    sure that wasn't left out.

2              Nothing further.

3              THE COURT:  Anything further, Mr. Scholar, that you

4    believe I should discuss with Mr. Dane in connection with his

5    plea allocution?

6              MR. SCHOLAR:  No, your Honor.  Thank you.

7              THE COURT:  All right.  Thank you.

8              All right.  Mr. Chow, you are up.  Would you please

9    summarize before I accept a plea from Mr. Dane, the evidence

10   that you would present at trial against him if he were not to

11   enter a plea.

12             MR. CHOW:  Yes, your Honor.

13             If this case were to proceed to trial, the government

14   would offer evidence reflecting that Mr. Dane purchased drugs

15   from Seth Fishman and Lisa Giannelli not approved by the FDA,

16   they were not properly labeled, they were not distributed with

17   valid prescriptions or any prescriptions at all.

18             The government would also introduce evidence of a

19   controlled purchase of a powerful analgesic from Mr. Dane that

20   Mr. Dane claimed to have acquired from Mr. Fishman through

21   contacts at the Mount Hope Training Center in Orange County.

22             On February 10, 2018, and March 3, 2018, blood samples

23   were taken from a horse trained by Mr. Dane, and they tested

24   positive for the same powerful analgesic.  The government would

25   offer evidence of a recorded call where Mr. Dane admitted that

M2IsDANp

the horse had received "the peptide, the pain shot, estrogen

and a bleeder shot." On Title III wire intercepts, Mr. Dane was

caught ordering "ten green/eight bleeder/one pain" from

Ms. Giannelli.  Toll records would indicate a pattern of

communication with Ms. Giannelli consistent with ordering

medications from Mr. Fishman's operation.  And witness

testimony would corroborate that Ms. Giannelli made regular

deliveries to Mr. Dane's barn.

            THE COURT:  Where was that barn located?

            MR. CHOW:  It was located in Orange County.

            THE COURT:  In the Southern District of New York?

            MR. CHOW:  Correct.

            Ms. Giannelli and Mr. Fishman were also intercepted

talking about how they needed to check with Mr. Dane to see

whether new customers were trustworthy.

            The government would also introduce records of races

in which Mr. Dane entered horses, records of those races, and

records reflecting his occupation and licensure as a race horse

trainer.

            THE COURT:  Have you completed your response?

            MR. CHOW:  Yes, your Honor.

            THE COURT:  All right.  Thank you.

            Mr. Dane, are you thoroughbred or a standard bred

horse trainer?

            THE DEFENDANT:  Standard bred.

M2IsDANp

1           THE COURT:  Standard bred.

2           And your barn is in Orange County, New York?

3           THE DEFENDANT:  Yes.

4           THE COURT:  All right.  Now that we've talked about

5    your plea agreement, Mr. Dane, and the possible penalties of

6    the crime to which you're pleading guilty, we can turn at this

7    point to entry of a plea.

8           Are you prepared to proceed?

9           THE DEFENDANT:  Yes.

10          THE COURT:  All right.  How do you plead, sir, to

11   Count One of the superseding information charging you with drug

12   misbranding and adulteration with intent to defraud or mislead?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  Are you pleading guilty voluntarily?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you pleading guilty of your own

17   free will?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Has anyone in any way threatened you,

20   coerced you, made a promise to you in order to induce you or

21   force you to plead guilty?

22          THE DEFENDANT:  No.

23          THE COURT:  Mr. Scholar, are there any other questions

24   that you believe I should ask Mr. Dane in connection with his

25   plea?

M2IsDANp

1                MR. SCHOLAR:  No, your Honor thank you?

2                THE COURT:  All right.  Mr. Chow, are there any other

3     questions that you believe I should ask Mr. Dane in connection

4     with his plea?

5                MR. CHOW:  No, your Honor.

6                THE COURT:  All right.  Mr. Dane, would you please

7     stand.

8                Mr. Dane, you have acknowledged that you are in fact

9     guilty as charged in Count One of the superseding information.

10    Because I am satisfied that you know your rights, including

11    your right to go to trial, and you are waiving those rights

12    voluntarily, and that you're aware of the consequences of your

13    plea, including the sentence that may be imposed, I find that

14    your plea is entered knowingly and voluntarily and is supported

15    by an independent basis in fact containing each of the

16    essential elements of the offense.

17                For those reasons, I accept your guilty plea and I

18    enter a judgment of guilty on Count One of the superseding

19    information charging you with drug adulteration and misbranding

20    with the intent to defraud or mislead.

21                You may be seated, sir.

22                All right.  Mr. Dane, now that you have been convicted

23    of the count to which you pled guilty, let me describe to you

24    what happens at this point going forward.  The next step in the

25    process is that the probation office will prepare a presentence

report to assist me in determining the appropriate sentence.
In order for them to prepare that report, you will be
interviewed by the probation office.  It is very important that
the information you give to the probation officer be truthful
and it be accurate.  That report that they are going to prepare
is very important in my decision as to what your sentence
should be.  You and your lawyer, as well as the government,
will have an opportunity to examine that report, to challenge
it, to comment on it.  You will also have the right to speak
directly to the court on your own behalf prior to imposition of
sentence.

          I assume, Mr. Scholar, that you wish to be present for
any interview of Mr. Dane by the probation office?

          MR. SCHOLAR:  Yes, I do.  Thank you, your Honor.

          THE COURT:  I will enter an order.  I am ordering then
that no interview take place unless counsel is present.

          But, Mr. Scholar, I would ask you please to reach out
to the probation office as soon as an officer is assigned in
order to arrange for the interview of Mr. Dane.

          MR. SCHOLAR:  I will, Judge.

          THE COURT:  All right.  I also remind the government,
if you would please, within 14 days provide to probation the
statement of facts with respect to Mr. Dane.

          MR. CHOW:  Yes, your Honor.

          THE COURT:  All right.  In order to allow the

M2IsDANp

1    probation office sufficient time to interview and prepare the

2    report and thereafter, I explained, Mr. Dane, that both your

3    lawyer and the government have an opportunity to make a

4    submission to the court both commenting on the presentence

5    report, but also laying out their position as to what an

6    appropriate sentence would be.  In order to allow appropriate

7    time for that, I am going to set sentencing down for the end of

8    June.

9              Ms. Dempsey, does the 21st of June work?

10             I know that's not the date suggested.  Does the 21st

11   work?

12             THE DEPUTY CLERK:  Yes.

13             THE COURT:  June 21, 11:00 a.m.

14             THE DEPUTY CLERK:  11:00 a.m.

15             THE COURT:  At 11 a.m., we will have sentencing.

16             I just remind counsel of the importance, please give

17   any comments or objections to the probation office.  Courtesy

18   copies should be provided to chambers.  Defense submissions are

19   due two weeks before the sentencing date.  The government's

20   submission is due one week before the sentencing date.

21             Before we conclude, Mr. Dane, I just remind you of the

22   importance that you be truthful with the probation office.

23   Failure to do so, be truthful with them or with the court,

24   could have an adverse effect on your sentence and, frankly, it

25   could subject you to prosecution separately for perjury.

M2IsDANp

1            I also reserve the right to deny you the two-level

2     reduction in your sentencing calculation for acceptance of

3     responsibility if you do not fully cooperate with the probation

4     officer in connection with your presentence report.

5            Is there any further at this time, Mr. Chow?

6            MR. CHOW:  Not from the government.

7            THE COURT:  Mr. Scholar?

8            MR. SCHOLAR:  No, your Honor.  Thank you.

9            THE COURT:  Thank you.

10           Then I thank you very much, Ms. Franko, for being

11    here, and we are adjourned.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25