```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          20 Cr. 160 (MKV)

 5   MICHAEL TANNUZZO,

 6                   Defendant.
                                           Plea
 7   ------------------------------x

 8                                          New York, N.Y.
                                            July 7, 2022
 9                                          2:10 p.m.

10   Before:

11
                       HON. MARY KAY VYSKOCIL,
12
                                            District Judge
13
                            APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  SARA MORTAZAVI
          Assistant United States Attorney
17
     DONALD T. ROLLOCK
18        Attorney for Defendant

19
     Also Present:
20   NASHAUN RICHARDS, FBI

21

22

23

24

25
```

```
 1                    (Case called)

 2              THE DEPUTY CLERK:  Good afternoon, your Honor.

 3              THE COURT:  Good afternoon, Ms. Dempsey.

 4              Please be seated, everyone.

 5              THE DEPUTY CLERK:  Starting with the government,

 6    please state your name for the record.

 7              MS. MORTAZAVI:  Good afternoon, your Honor.  Sarah

 8    Mortazavi for the government, and joining me at counsel table

 9    is FBI Special Agent Nashaun Richards.

10              THE COURT:  Good afternoon to both of you.

11              MR. ROLLOCK:  Good afternoon, your Honor, and

12    everybody.  Appearing on behalf of Mr. Tannuzzo, Donald

13    Rollock.

14              THE COURT:  Good afternoon, Mr. Rollock.

15              THE DEFENDANT:  Good afternoon, your Honor.  Michael

16    Tannuzzo.

17              Good afternoon, Mr. Tannuzzo.  So let me just tell

18    people that under the new court protocols, you're permitted to

19    remove your mask when you're adjusting the Court and then put

20    it back on when you're finished speaking.

21              Also can you adjust your bodies and that monitor so

22    that it's between the two of you so that I can see you.  That

23    works.  And then pull the microphone over in front of you,

24    Mr. Tannuzzo, so when you speak, I can hear you.

25              Good afternoon again to our court reporter.  Thank you
```

1    again for being here.

2            So we're here again for a change-of-plea hearing for

3    Mr. Tannuzzo.

4            Let me just confirm for the record, sir:  Do you speak

5    and understand English clearly?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  You do not need the services of an

8    interpreter?

9            THE DEFENDANT:  No, ma'am.

10           THE COURT:  All right.  Ms. Mortazavi, have victims

11   been identified and provided with notice as required by the

12   Crimes Victims Act.

13           MS. MORTAZAVI:  Yes, your Honor.

14           THE COURT:  All right.  So I'm informed that

15   Mr. Tannuzzo has an application to waive indictment and plead

16   guilty to a one-count superseding information numbered S13 that

17   charges him with drug adulteration and misbranding with intent

18   to defraud or mislead in violation of Title 21, U.S. Code,

19   Section 331 and 333(a)(2).

20           The government alleges that from at least in or about

21   2019 through in or about March of 2020, Mr. Tannuzzo, with the

22   intent to defraud and mislead, adulterated and misbranded drugs

23   and caused the adulteration and misbranding of drugs in

24   interstate commerce.

25           In particular, the government alleges that

1    Mr. Tannuzzo misled and deceived state and federal drug

2    regulators with respect to the distribution, purchase, and

3    receipt of various misbranded and adulterated

4    performance-enhancing drugs and the use of such misbranded and

5    adulterated drugs to improve the performance of race horses

6    which were under Mr. Tannuzzo's care and custody and under the

7    care and custody of others.  That superseding information

8    contains a forfeiture allegation.

9         Is that consistent, Mr. Rollock, with your

10   understanding of what we're doing today?

11        MR. ROLLOCK:  In sum and substance, yes.

12        THE COURT:  What does that mean, "In sum and

13   substance"?

14        MR. ROLLOCK:  As the way the Court just outlined it, I

15   don't have a disagreement with that.  The way you outlined it,

16   for the record, I don't have a disagreement with it.

17        THE COURT:  The plea agreement that was provided to

18   the Court this afternoon is now signed by both parties.

19        Is that identical to what was previously provided in

20   unsigned form?

21        MS. MORTAZAVI:  Yes.

22        MR. ROLLOCK:  Yes, Judge Honor.

23        MS. MORTAZAVI:  The only difference is the defendant's

24   and defense counsel's signatures.

25        THE COURT:  All right.  That will be entered in the

1      record as Government Exhibit 1.

2              I've also been provided with a copy of a signed

3      document waiving Mr. Tannuzzo's right to be prosecuted by

4      indictment.

5              Do you have a copy of that, Mr. Rollock, or do I have

6      the only copy?

7              MR. ROLLOCK:  I do.

8              THE COURT:  You do have a copy?

9              MR. ROLLOCK:  I do.

10             THE COURT:  All right.  Would you please show that to

11     your client.

12             All right.  So, Mr. Tannuzzo, your counsel is showing

13     you the waiver of indictment form which has been handed up to

14     the Court and which I will mark as Court Exhibit 1.

15             Does your signature appear on that form?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Before you signed the form, did you

18     discuss it with your lawyer?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Did he explain it to you?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Do you understand that you're under no

23     obligation to waive indictment?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Do you understand that if you do not waive

1    indictment and the government wants to prosecute you, it would

2    have to present the case to a grand jury which may or may not

3    indict you?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  All right.  Two things:  Please take your

6    mask off when you're speaking to me because it's very muffled.

7              THE DEFENDANT:  I'm sorry.

8              THE COURT:  And speak into the microphone.

9              THE DEFENDANT:  Okay.

10             THE COURT:  Do you understand that by waiving

11    indictment, you are giving up your right to have the case

12    presented to a grand jury?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  And do you understand what a grand jury

15    is?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Did you have a full opportunity to discuss

18    that with Mr. Rollock?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  Do you understand that a grand

21    jury is a body made up of 23 people of whom 16 must be present

22    in order to conduct business and that you could not be charged

23    unless 12 of those people voted for indictment based on a

24    finding of probable cause?

25             THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.  Does either counsel know of

2     any reason that I shouldn't find the defendant has knowingly

3     and voluntarily waived his right to be indicted by a grand

4     jury?

5          Ms. Mortazavi?

6          MS. MORTAZAVI:  No, your Honor.

7          THE COURT:  Mr. Rollock?

8          MR. ROLLOCK:  No, Judge.

9          THE COURT:  I do find that Mr. Tannuzzo has

10    voluntarily and knowingly waived his right to be indicted by a

11    grand jury, and I authorize the filing of the information S13

12    in this case.

13         All right.  Mr. Tannuzzo, before we move forward for

14    me to discuss with you your plea, there are a number of

15    questions that I must ask you, and you need to be under oath

16    while I ask you those questions in order to ensure that your

17    plea is a valid plea.

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Pull the microphone over so you don't have

20    to keep ducking over it.  That's better.

21         THE DEFENDANT:  Okay.

22         THE COURT:  So, Mr. Tannuzzo, I may cover points more

23    than once, and I may ask you things that were covered in

24    documents or other agreements that you have signed.  If I do

25    so, it is because it's very important that you understand

1    what's happening here this afternoon.

2          So if you do not understand something that I ask you

3    or if you need to have something clarified, please tell me

4    that.  I'll reword the question, or you can have an opportunity

5    to speak to Mr. Rollock at any point in time if you need to do

6    so.

7          Do you understand?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  All right.  And you'll let me know if you

10   need to speak with your lawyer.

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  Or if you need for me to clarify

13   something.

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  All right.  Ms. Dempsey, would you please

16   administer the oath.

17         (Defendant sworn)

18         THE DEPUTY CLERK:  Thank you.

19         Please spell and state your name for the record.

20         THE DEFENDANT:  Michael Tannuzzo, M-i-c-h-a-e-l

21   T-a-n-n-u-z-z-o.

22         THE DEPUTY CLERK:  Thank you.  Please be seated.

23         THE COURT:  All right.  Mr. Tannuzzo, do you

24   understand that you have now solemnly promised to tell the

25   truth and that if you answer any of my questions falsely, your

1    false or untrue answers may later be used against you in

2    another prosecution for perjury or making a false statement?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  All right.  Can you tell me, sir:  How old

5    are you?

6              THE DEFENDANT:  Fifty.

7              THE COURT:  And how far did you go in school?

8              THE DEFENDANT:  High school graduation.

9              THE COURT:  And you've told me that you do speak and

10   understand English perfectly clearly.

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  You do not need the services of an

13   interpreter?

14             THE DEFENDANT:  No, ma'am.

15             THE COURT:  Are you a citizen of the United States?

16             THE DEFENDANT:  Yes, ma'am.

17             THE COURT:  Were you born here, or were you

18   naturalized?

19             THE DEFENDANT:  I was born here.

20             THE COURT:  Where were you born?

21             THE DEFENDANT:  Brooklyn, New York.

22             THE COURT:  Are you now or have you recently been

23   under the care of a medical doctor?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Can you tell me for what and when.

```
 1              THE DEFENDANT:  My blood pressure and my heart.  I've
 2    had heart exams every six months for the last two years.
 3              THE COURT:  Is that due to a condition?
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  What condition?
 6              THE DEFENDANT:  I have -- I'm not sure of the right
 7    terminology for it.  I have -- it's a pinched valve, but they
 8    can't give me a statin until -- the valve going to my heart has
 9    a kink in it, and they can't give me a bypass until it's
10    fully -- that's why I go every six months for it.
11              THE COURT:  All right.  And when did you last go, sir?
12              THE DEFENDANT:  Five months ago.
13              THE COURT:  Does it impact your day-to-day?
14              THE DEFENDANT:  No, ma'am.
15              THE COURT:  Are you now or have you recently been
16    under the care of a mental health professional?
17              THE DEFENDANT:  No, ma'am.
18              THE COURT:  Have you ever been hospitalized or treated
19    for any mental illness?
20              THE DEFENDANT:  No, ma'am.
21              THE COURT:  Have you ever been treated or hospitalized
22    for any type of addiction to drugs or to alcohol?
23              THE DEFENDANT:  No, ma'am.
24              THE COURT:  Have you ever been addicted to drugs or
25    alcohol?
```

```
 1                    THE DEFENDANT:  No, ma'am.

 2                    THE COURT:  In the past 24 hours, have you taken any

 3   drugs, any medicine, any pills?

 4                    THE DEFENDANT:  My blood pressure pills and Advil.

 5                    THE COURT:  In the past 24 hours, have you had any

 6   alcohol to drink?

 7                    THE DEFENDANT:  No, ma'am.

 8                    THE COURT:  Is your mind clear today?

 9                    THE DEFENDANT:  Yes, ma'am.

10                    THE COURT:  Do you understand what we're doing?

11                    THE DEFENDANT:  Yes.

12                    THE COURT:  Do you have any questions or reservations?

13                    THE DEFENDANT:  Not yet, ma'am.

14                    THE COURT:  What does that mean, "Not yet"?

15                    THE DEFENDANT:  I understand right now, yes.

16                    THE COURT:  And if at any point you have any

17   reservations, any doubts, or you don't understand, you're going

18   to let me know that.  Right?

19                    THE DEFENDANT:  Yes, ma'am.

20                    THE COURT:  All right.  Are you feeling physically

21   well today?  I'm asking:  Are you healthy?

22                    THE DEFENDANT:  Today, yes.

23                    THE COURT:  Yesterday?

24                    THE DEFENDANT:  I'm healthy.

25                    THE COURT:  Is there anything about your health that
```

1    causes you pause about going forward with today's proceeding?

2              THE DEFENDANT:  I just have anxiety.  I get very

3    nervous.

4              THE COURT:  About the proceeding?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you represented by counsel?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Who is your counsel?

9              THE DEFENDANT:  Donald Rollock.

10             THE COURT:  Are you satisfied with your counsel?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Do you have any reservations whatsoever

13   about your ability to receive advice in a timely fashion or to

14   consult fully with Mr. Rollock in advance of today?

15             THE DEFENDANT:  Yes.

16             THE COURT:  You have concerns?

17             THE DEFENDANT:  No.  No, ma'am.

18             THE COURT:  You have fully consulted with him about

19   today's proceeding?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And do you understand what we're doing

22   today?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  And your mind is clear enough for you to

25   make informed judgments about what we're doing today?

 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  All right.  Do either counsel have any

 3     doubt about Mr. Tannuzzo' competence to plead at this time?

 4              MS. MORTAZAVI:  No, your Honor.

 5              THE COURT:  Mr. Rollock?

 6              MR. ROLLOCK:  None.

 7              THE COURT:  All right.  Mr. Tannuzzo, your lawyer

 8     tells me that you wish to withdraw your plea of not guilty and

 9     to enter a plea of guilty to the superseding information S13 in

10     this case.

11              Is that what you wish to do?

12              THE DEFENDANT:  Yes, ma'am.

13              THE COURT:  Have you fully discussed your case with

14     your lawyer, including the charges to which you intend to plead

15     guilty and any possible defenses to those charges?

16              THE DEFENDANT:  Yes, ma'am.

17              THE COURT:  Have you discussed the consequences of

18     entering a plea of guilty?

19              THE DEFENDANT:  Yes, ma'am.

20              THE COURT:  Are you satisfied with Mr. Rollock's

21     representation of you?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  Do you need any further time to consult

24     with him before moving forward?

25              THE DEFENDANT:  No, ma'am.

1          THE COURT:  All right.  On the basis of Mr. Tannuzzo's

2    responses to my questions and my observations of his demeanor,

3    I find that he is fully competent to enter an informed plea at

4    this time.

5          Now, Mr. Tannuzzo, before I accept your plea, I want

6    to ask you certain additional questions.  Those questions are

7    intended for me to satisfy myself that you wish to plead guilty

8    because you are in fact guilty and that you fully understand

9    your rights and the consequences of entering a plea of guilty.

10          So I'm going to begin by describing to you certain

11    rights that you have under the Constitution and the laws of the

12    United States.  You will be giving up these rights if you enter

13    a plea of guilty.

14          So please listen very carefully.  I remind you again

15    that if you do not understand something I'm saying or

16    describing, please stop me.  And either I or your lawyer,

17    Mr. Rollock, will explain it to you more fully.

18          Will you do that, sir?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Under the Constitution and laws of the

21    United States, you have the right to a speedy and public trial

22    on the charges contained in the information.

23          Do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  And do you understand you have the right

1  to plead not guilty and to continue to plead not guilty to the

2  charge against you?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that if there were a

5  trial, you would be presumed innocent and the government would

6  be required to prove you guilty by competent evidence and

7  beyond a reasonable doubt?

8          Do you understand that?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  Do you understand that you would not have

11  to prove at trial that you are innocent?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Do you understand that if there were a

14  trial, a jury made up of 12 people selected from this district

15  would have to agree unanimously in order to find you guilty?

16          Do you understand that?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  Do you understand that if there were a

19  trial, you would have the right to be represented by an

20  attorney at trial and at all other stages of the proceeding and

21  if you couldn't afford one, an attorney would be provided to

22  you free of cost?

23          Do you understand that?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Do you understand that if there were a

1    trial, you would have the right to see and to hear all of the

2    witnesses against you; your lawyer could cross-examine those

3    witnesses; you would have the right to have your lawyer object

4    to the government's evidence and to offer evidence on your own

5    behalf, if you so desired; you would have the right to have

6    witnesses required to come to court to testify in your defense;

7    and you would have the right to testify yourself, although you

8    would not be required to testify?

9         Do you understand that?

10         THE DEFENDANT:  Yes, ma'am.

11         THE COURT:  And do you understand that if there were a

12    trial and you decided not to testify, no adverse inference

13    could be drawn against you based on your decision not to

14    testify?

15         And by that I mean that the jury would be instructed

16    that it could not assume that you didn't testify because you

17    were hiding something or because you were guilty.

18         Do you understand that?

19         THE DEFENDANT:  Yes, ma'am.

20         THE COURT:  And do you understand that if there were a

21    trial and you were convicted, you would have the right to

22    appeal the jury's verdict?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Do you understand each and every one of

25    these rights that I've just outlined for you?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you have any questions about any of

3    these rights?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Do you understand that by entering a plea

6    of guilty, you will be giving up each and every one of these

7    rights?  You will be waiving these rights.

8          Do you understand that?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  You will also be waiving any possible

11    claim that your constitutional rights may have been violated,

12    and you will not have a trial.

13          Do you understand that?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Do you understand that by entering a plea

16    of guilty, you will also have to give up your right not to

17    incriminate yourself because in a few moments, I will ask you

18    questions about what you did in order to satisfy myself that

19    you are in fact guilty as charged and you will have to admit

20    and acknowledge your guilt.

21          Do you understand that?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you understand that you can change your

24    mind right now and refuse to enter a plea of guilty?

25          THE DEFENDANT:  Yes, ma'am.

1         THE COURT:  Do you understand that you do not have to

2    enter this plea if for any reason you do not wish to do so?

3         THE DEFENDANT:  No, ma'am.

4         THE COURT:  You don't understand that?

5         THE DEFENDANT:  Can you repeat it, please.

6         THE COURT:  Do you understand that you do not have to

7    enter this plea if, for any reason, you do not wish to do so?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  Do you wish to proceed, sir?

10        THE DEFENDANT:  Yes, ma'am.

11        THE COURT:  And you wish to enter a plea of guilty?

12        THE DEFENDANT:  Yes, ma'am.

13        THE COURT:  All right.  Have you received,

14   Mr. Tannuzzo, a copy of the superseding information in this

15   case?

16        THE DEFENDANT:  Yes, ma'am.

17        THE COURT:  All right.  Mr. Rollock, would you put

18   that in front of Mr. Tannuzzo.

19        MR. ROLLOCK:  It's in front of him.

20        THE COURT:  I'm sorry?

21        MR. ROLLOCK:  It's in front of him.

22        THE COURT:  Mr. Tannuzzo, have you read this

23   superseding information?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Did you discuss the superseding

1    information with your lawyer?

2            THE DEFENDANT:  Yes.

3            THE COURT:  I can read the superseding information out

4    loud now in open court if you wish me to do so, or you can

5    waive public reading.

6            Do you need me to read it aloud?

7            THE DEFENDANT:  No, ma'am.

8            THE COURT:  Do you waive public reading?

9            THE DEFENDANT:  Yes, ma'am.

10           THE COURT:  All right.  You're charged, sir, in Count

11   One of the superseding information with drug adulteration and

12   misbranding in violation of Title 21, U.S. Code, Section 331

13   and 333(a)(2).

14           Do you understand that?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  And I'm told that pursuant to the plea

17   agreement, which I have now been given a copy of, the

18   government will accept a guilty plea to the charge in Count One

19   of that superseding information.

20           Is that your understanding?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  All right.  Ms. Mortazavi, would you

23   please state the elements of the offense with which

24   Mr. Tannuzzo is charged in Count One of the superseding

25   information and to which he tells me he intends to plead

1    guilty.

2         MS. MORTAZAVI:  Certainly, your Honor.  If this case

3    were to proceed to trial, the government would have to prove

4    beyond a reasonable doubt the following elements:

5         First, that the defendant adulterated or misbranded a

6    drug in at least one way or caused another to adulterate or

7    misbrand a drug; second, that the drug was in interstate

8    commerce or had been introduced into interstate commerce; and

9    third, that the defendant had the intent to defraud or mislead.

10        And finally, the government would have to prove venue

11   by a preponderance of the evidence.

12        THE COURT:  All right.  Thank you.

13        Mr. Tannuzzo, do you understand that the government

14   would have to prove each and every part or element of the

15   offense with which you're charged as just laid out by

16   Ms. Mortazavi with respect to Count One beyond a reasonable

17   doubt at trial if you did not plead guilty?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  Do you understand the matters the

20   government would have to prove if you didn't plead guilty?

21        (Defendant and counsel conferred)

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  All right.  Sir, I want to talk to you for

24   a few moments about the potential penalty for the offense to

25   which you tell me you intend to plead guilty.

1          Do you understand that the maximum possible term of

2     imprisonment for the offense in Count One to which you tell me

3     you intend to plead guilty is a term of imprisonment of up to

4     three years?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  And do you understand that Count One can

7     also include a maximum term of supervised release, after you

8     are released from any term of imprisonment, for up to one year?

9          THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  In addition to these restrictions on your

11     liberty, the maximum possible punishment for Count One also

12     includes certain financial penalties.

13          Do you understand that?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Do you understand that the maximum fine

16     allowed is $10,000 or twice the gross pecuniary gain relating

17     to the offense or twice the loss to persons other than yourself

18     as a result of offense, whichever is greater?

19          Do you understand that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  And do you understand that the Court also

22     must impose a mandatory special assessment of $100 per count?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Do you understand that as part of your

25     plea agreement, you have agreed to forfeit to the United States

1    a sum of money representing proceeds traceable to the

2    commission of the offense in Count One to which you intend to

3    plead guilty?

4              Do you understand that?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  All right.  We'll talk in more detail

7    about your plea agreement later, but it's the Court's

8    understanding that you have agreed to forfeit $15,893.

9              Is that your understanding?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  All right.  I've been provided with a copy

12   of a signed consent preliminary order of forfeiture and money

13   judgment.

14             Do you have a copy of that there, Mr. Rollock?

15             MR. ROLLOCK:  I do, Judge.

16             THE COURT:  All right.  Would you please show that to

17   Mr. Tannuzzo.

18             MR. ROLLOCK:  Mr. Tannuzzo, did you review this

19   document with your lawyer?

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  Did he discuss it with you and explain it

22   to you fully?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Do you understand the impact of this

25   order?

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  All right.  This is an order that will be

 3    entered on consent of the parties.

 4              Do you in fact consent to entry of this order and

 5    money judgment against you?

 6              THE DEFENDANT:  Yes, ma'am.

 7              THE COURT:  Did you sign this document on the last

 8    page?

 9              THE DEFENDANT:  Yes, ma'am.

10              THE COURT:  All right.  Mr. Rollock, does the

11    defendant consent to this order that's been submitted to me?

12              MR. ROLLOCK:  Yes, Judge.

13              THE COURT:  And the government consents?

14              MS. MORTAZAVI:  Yes, your Honor.

15              THE COURT:  All right.  If I accept Mr. Tannuzzo's

16    plea of guilty, I will sign the consent preliminary order of

17    forfeiture and money judgment at the conclusion of today's

18    proceedings.

19              Did you wish time to consult, sir?

20              MR. ROLLOCK:  No, Judge.  I was just explaining what

21    you were saying.

22              THE COURT:  It's fine for you to talk.  Go ahead.

23              MR. ROLLOCK:  No.  Thank you.

24              THE COURT:  So, Mr. Tannuzzo, do you understand that

25    the forfeiture amount set forth in this order will not reduce
```

1    any fine or restitution or cost of imprisonment or any other

2    penalty that the Court might impose?

3                THE DEFENDANT:  Yes, ma'am.

4                THE COURT:  All right.  I now want to give you some

5    information about the supervised release aspect of your

6    potential penalty to be sure you understand that.  Supervised

7    release means that you will be subject to monitoring when you

8    are released from any term of imprisonment, and certain terms

9    and conditions will be imposed on you for that specified period

10   of time.  If you violate any of those set terms and conditions,

11   you can be reimprisoned without a jury trial.

12               If you are on supervised release and you do not comply

13   with any of the set terms or conditions, you can be returned to

14   prison for up to one year, and you will be given no credit for

15   the time you served in prison as a result of your sentence, and

16   you will get no credit for any time spent on post-release

17   supervision prior to the violation.

18               Do you understand that?

19               THE DEFENDANT:  Yes, ma'am.

20               THE COURT:  You should also understand, sir, that

21   there is no parole in the federal system.  If you are sentenced

22   to prison, you will not be released early on parole.  There is

23   a limited opportunity to earn credit for good behavior, but you

24   would have to serve at least 85 percent of the time to which

25   you are sentenced.  There may be also opportunities for some

1   reduction in your sentence under the First Step Act.

2           Do you understand that?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  Do you understand further that if I accept

5   your guilty plea and adjudge you guilty, that adjudication may

6   deprive you of certain valuable civil rights, including the

7   right to vote, the right to hold public office; the right to

8   serve on a jury; and the right to possess any kind of firearm,

9   if you currently have or could otherwise attain such rights?

10          Do you understand that?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  All right.  You've told me, sir, that you

13  are a United States citizen.  I accept your representation.

14  But should that for any reason not be truthful, do you

15  understand that as a result of a plea of guilty, if I accept

16  that plea and adjudge you guilty, there could be adverse

17  effects on your immigration status, including further detention

18  following completion of your sentence and/or removal or

19  deportation from the United States?

20          Did you discuss your immigration status and any

21  potential consequences to your immigration status in connection

22  with your plea today?

23          THE DEFENDANT:  I never discussed it, your Honor.

24          THE COURT:  You didn't discuss it with Mr. Rollock?

25          THE DEFENDANT:  No, your Honor.

```
 1            THE COURT:  All right.  Mr. Rollock, I'd like you to

 2   discuss this with Mr. Tannuzzo right now just to make sure he

 3   fully understands what I am talking about.

 4            (Defendant and counsel conferred)

 5            THE DEFENDANT:  Okay, ma'am.

 6            THE COURT:  All right.  Mr. Tannuzzo, did you tell

 7   Mr. Rollock before today that you are a United States citizen?

 8            THE DEFENDANT:  Yes, ma'am.

 9            THE COURT:  And have you now had the opportunity to

10   consult with Mr. Rollock about your immigration status and any

11   potential consequences of your plea on your immigration status?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  All right.  Under current law, there are

14   sentencing guidelines that a judge must consider in determining

15   your sentence.

16            Did Mr. Rollock talk to you about the sentencing

17   guidelines?

18            THE DEFENDANT:  Yes, ma'am.

19            THE COURT:  Do you understand that in addition to

20   considering the sentencing guidelines, in imposing sentence, I

21   must consider certain additional factors that are laid out in a

22   statute at 18 U.S. Code, Section 3553(a)?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Do you understand that I have discretion,

25   while taking the guidelines into account, to sentence you to
```

1   any period of imprisonment up to three years?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  Do you understand that even though the

4   plea agreement includes a stipulated or agreed sentencing

5   guideline calculation, I cannot determine what your sentence

6   will be until after a presentence report has been completed by

7   the probation department and you and Mr. Rollock and the

8   government and its lawyers have had a chance to review that

9   report, to challenge any facts reported by the probation

10  office, and you eventually would have the opportunity to

11  address the Court directly?

12          Do you understand that?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Give me one moment.

15          (Pause)

16          THE COURT:  All right.  According to the plea

17  agreement -- let me just say for the record I have a June 21,

18  2022, letter on the letterhead of the United States DoJ, the

19  United States Attorney's Office for the Southern District of

20  New York, a six-page letter addressed to Donald Rollock In re

21  United States v. Michael Tannuzzo, S13, case number 20 Cr. 160

22  (MKV).  And this is what I'm referring to as the plea

23  agreement.

24          Do you understand that, Mr. Tannuzzo?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.  According to this document,

2    you've agreed that the guidelines range appropriate to the

3    offense in Count One to which you intend to plead guilty is 30

4    to 36 months of incarceration and the applicable fine range for

5    your case is $10,000 to $100,000.

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  All right.  Now, do you understand that

8    that stipulation or agreement does not bind the Court or the

9    probation department as to the facts on which it is based, how

10   to apply the guidelines to the facts, or what will be an

11   appropriate sentence in your case?

12          Do you understand that?

13          THE DEFENDANT:  Yes, ma'am.

14          THE COURT:  Do you understand that I may decide to

15   impose a sentence that is outside the guidelines range?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  Do you understand that if your lawyer or

18   anyone else has attempted to estimate or predict for you what

19   your sentence will be, their estimate or prediction could well

20   be wrong?

21          THE DEFENDANT:  Yes, ma'am.

22          THE COURT:  Do you understand that no one, not even

23   your lawyer or the government or its lawyers, can or should

24   give you any assurance of what your sentence will be since that

25   sentence cannot be determined until after the probation office

1    report is completed, I've ruled on any challenges to the

2    report, and I've determined what an appropriate sentence is?

3            Do you understand that?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  Do you also understand that even if your

6    sentence is different from what your lawyer or anyone else told

7    you it might be or if it's different from what you expect or

8    you might hope it to be or if you're surprised or disappointed

9    by your sentence, if I accept your plea of guilty today, you

10   will be bound to that plea and you will not be allowed to

11   withdraw your plea at the time of sentencing or at any time

12   after today?

13           Do you understand that?

14           THE DEFENDANT:  Yes, ma'am.

15           THE COURT:  Do you understand that even if the

16   government doesn't oppose or take a position on what your

17   lawyer will ask me to impose as your sentence, I'm obligated to

18   impose whatever sentence I believe is appropriate under the

19   circumstances and the applicable law and you will have no right

20   to withdraw your plea of guilty after today?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  Do you understand that you may have the

23   right to appeal your sentence under certain circumstances, even

24   if your plea agreement provides that you're waiving your right

25   to appeal?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Are you now serving any other sentence,

3    state or federal?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Are you being prosecuted for any crimes

6    other than those alleged in the superseding information?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  All right.  Now, as I said, I've been

9    given a copy of this plea agreement.

10          Can you put that back in front of Mr. Tannuzzo.

11          Sir, did you sign this document?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Is that your signature on page 6 above

14    where your name is typed?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  Did you read this agreement before you

17    signed it?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  Did you discuss it with Mr. Rollock?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  Did he explain to you fully all of the

22    terms and conditions of the agreement?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Did you understand the agreement before

25    you signed it?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Do you have any questions, as you sit here

3   today, about the agreement?

4          THE DEFENDANT:  No, ma'am.

5          THE COURT:  Do you need any time to talk to

6   Mr. Rollock further about the agreement?

7          THE DEFENDANT:  No, ma'am.

8          THE COURT:  All right.  Do you understand that that

9   plea agreement provides that you're giving up or waiving your

10  right to appeal or to litigate or challenge your sentence under

11  28 U.S. Code, Section 2255 and/or 2241, if I sentence you

12  within or below the guidelines range set forth in this plea

13  agreement?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  Do you understand that you're under no

16  obligation to waive your right to appeal or otherwise litigate

17  your sentence?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  Do you understand that your plea agreement

20  further provides that you're waiving any right to appeal or

21  attack your conviction on the basis that the government hasn't

22  provided you with discovery material; exculpatory material,

23  except information establishing factual innocence; or any

24  material to impeach any government witness against you?

25         THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  And do you understand you're under no

2    obligation to waive those rights?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  Do you understand that the agreement

5    provides that you will not move for a downward departure under

6    the sentencing guidelines or seek any adjustment under the

7    guidelines that's not described in the plea agreement but that

8    you may make arguments for a lower sentence under the general

9    sentencing statute known as Section 3553(a) that I talked to

10   you about earlier?

11         Do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  Do you understand you're under no

14   obligation to enter into any such agreement?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Do you understand that as part of the plea

17   agreement, you have agreed not to appeal any forfeiture penalty

18   that is less than or equal to $15,893 and that the government

19   has, as we've talked about, submitted for me to sign, if I

20   accept your guilty plea, a proposed consent preliminary order

21   of forfeiture which includes entry of a money judgment in the

22   amount of $15,893 against you?

23         THE DEFENDANT:  Yes, ma'am.

24         THE COURT:  Do you understand that you're not

25   obligated to enter into any such agreement or to consent to the

1    proposed forfeiture order?

2             THE DEFENDANT:  Yes, ma'am.

3             THE COURT:  Do you understand that your plea agreement

4    further provides that you're waiving any challenges to your

5    guilty plea, your conviction, or your sentence based on any

6    immigration consequences of your plea, regardless of any advice

7    you may have received about your immigration status or

8    consequences?

9             THE DEFENDANT:  Yes, ma'am.

10            THE COURT:  And do you understand that you're under no

11   obligation to make this waiver?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  All right.  Does this agreement that we've

14   been talking about reflect accurately your complete and total

15   understanding of the entire agreement between you and your

16   lawyer and the government and its lawyers?

17            THE DEFENDANT:  Yes, ma'am.

18            THE COURT:  Is everything that you understand about

19   your plea and about your sentence up to this point covered in

20   this agreement?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  Is anything left out?

23            THE DEFENDANT:  No, ma'am.

24            THE COURT:  Apart from what's contained in this plea

25   agreement, have any promises been made to you in order to get

1      to you plead guilty?

2                THE DEFENDANT:  No, ma'am.

3                THE COURT:  Have you been threatened in any way in

4      order to get you to plead guilty?

5                THE DEFENDANT:  No, ma'am.

6                THE COURT:  Has anyone made any promises, or given you

7      any form of inducement to get you to plead guilty?

8                THE DEFENDANT:  No, ma'am.

9                THE COURT:  Are you doing so of your own free will?

10               THE DEFENDANT:  Yes, ma'am.

11               THE COURT:  Knowing everything that we've just talked

12     about up to this point, do you still wish to plead guilty

13     pursuant to the plea agreement?

14               THE DEFENDANT:  Yes, ma'am.

15               THE COURT:  All right.  Mr. Rollock, do you know of

16     any valid reason why Mr. Tannuzzo would prevail at trial?  Or

17     do you know of any reason why he should not be permitted to

18     plead guilty?

19               MR. ROLLOCK:  No.

20               THE COURT:  All right.  Mr. Tannuzzo, you can put your

21     mask back on, Mr. Rollock.

22               I'm going to speak to you, Mr. Tannuzzo, now.

23               I told you a few minutes ago that you would have to

24     give up your right not to incriminate yourself and to tell me

25     what it is you did that makes you guilty of the offense as

1    charged.

2                Are you prepared to do this?

3                THE DEFENDANT:  Yes, ma'am.

4                THE COURT:  All right.  Can you tell me then, in your

5    own words, what it is that you did that makes you guilty of the

6    crime to which you're entering a plea of guilty.  I need to

7    know what you did, when you did it, with whom you did it, where

8    you did it, and why you did it.

9                THE DEFENDANT:  I met a gentleman in Monmouth Park in

10   August, and he was talking to m.

11               THE COURT:  August of when?

12               THE DEFENDANT:  2019.

13               THE COURT:  Okay.

14               THE DEFENDANT:  And he kept talking to me about -- the

15   first time I met him, he supposedly reads bloods on sick horses

16   and tells us how to fix them, and that's how I met him.  And

17   then he tried to sell me this stuff that was illegal a couple

18   of times, and I didn't get involved with him.

19               And then a friend of mine, another trainer, saw me

20   talking to him.  And he asked me can I hook them two up, and

21   that's what I did.

22               THE COURT:  Can you hook your friend, the trainer, up

23   with the man who was trying to sell you stuff?

24               THE DEFENDANT:  Yeah.

25               THE COURT:  All right.  What's the "stuff"?

1           THE DEFENDANT:  Ma'am, I've never used it.  I just

2    know the name of it that they use.

3           THE COURT:  What's the name of it?

4           THE DEFENDANT:  It's called monkey.

5           THE COURT:  And they use it what?

6           THE DEFENDANT:  I don't know how they use it.  I just

7    know that's what it's called and that it's an injectable, and I

8    bought it from this gentleman, Ross Cohen, to give to another

9    gentleman, another trainer.

10           THE COURT:  So let me ask you a couple more questions

11    about what you've just said.

12           You said you met a man in Monmouth Park in August of

13    2019.

14           Is that Ross Cohen?

15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  And then another friend of yours who was a

17    trainer asked you?

18           THE DEFENDANT:  To put them two together.

19           THE COURT:  All right.  Who is the "them two"?

20           THE DEFENDANT:  Ross Cohen and another trainer.

21           THE COURT:  Who is the trainer?

22           THE DEFENDANT:  Jose Delgado.

23           THE COURT:  And did you put the two men together?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Okay.  What else do you want to tell me

1    about what you did that makes you guilty of the offense to

2    which you tell me you intend to plead guilty?

3            THE DEFENDANT:  That's basically what I did.  That's

4    all I know.

5            (Defendant and counsel conferred)

6            THE DEFENDANT:  Basically what I did was -- Jorge

7    Navarro asked me to pick up a package at his house and bring it

8    to the barn, and I did that.

9            THE COURT:  When?  When did that happen?

10            THE DEFENDANT:  That happened in May 19 or 20 of 2019.

11            THE COURT:  And you did pick up a package?

12            THE DEFENDANT:  Yes, ma'am.  It was on a stoop.  I

13    picked it up, and I brought it to his barn and gave it to one

14    of his employees.

15            THE COURT:  And who was the package from?

16            THE DEFENDANT:  It was from and to himself, I think,

17    Mr. Navarro.

18            THE COURT:  What was the package?

19            THE DEFENDANT:  I don't know what was inside it.  I

20    did not open it at that time.  I just brought it to the barn.

21            THE COURT:  Why did you understand that the trainer

22    friend of yours, Jose Delgado, wanted to be put in touch with

23    Mr. Cohen?

24            THE DEFENDANT:  Because of what Mr. Cohen was selling.

25            THE COURT:  What was he selling?

```
 1                THE DEFENDANT:  This illegal substance.

 2                THE COURT:  What do you mean when you say "illegal

 3      substance"?

 4                THE DEFENDANT:  Well, I basically didn't know what it

 5      was.  It was just a man that gave it, and it didn't have no

 6      label on it or nothing.

 7                THE COURT:  What did you understand the purpose of the

 8      substance to be?

 9                THE DEFENDANT:  I really didn't have -- basically a

10      blood builder I guess.

11                THE COURT:  A "blood builder"?  Is that what you said?

12                THE DEFENDANT:  Yes.

13                THE COURT:  What's a blood builder?

14                THE DEFENDANT:  It gives the horses an advantage.

15                THE COURT:  Are blood builders legal?

16                THE DEFENDANT:  Some of them are, the ones that are

17      approved.  This didn't have a label on it or nothing.  It was

18      just on hearsay from Ross Cohen.

19                THE COURT:  Did you understand this to be an

20      unapproved drug?

21                THE DEFENDANT:  Yes, ma'am.

22                THE COURT:  When you say yes to that, approved by

23      whom?

24                THE DEFENDANT:  Excuse me, ma'am?  Approved by whom?

25                THE COURT:  Yes.  You said it was illegal.  Tell me
```

```
 1    what you know about that.

 2            THE DEFENDANT:  What I know about it is just through

 3    constant people talking about it and through the case that it

 4    was illegal and that --

 5            THE COURT:  What case?  You said, "people talking

 6    about it through the case."

 7            Do you mean this case?

 8            THE DEFENDANT:  Yeah.

 9            THE COURT:  But at the time that you were doing what

10    you were doing, did you know that what you were doing was

11    wrong?

12            THE DEFENDANT:  Yes, ma'am.

13            THE COURT:  Did you know it was illegal?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Tell me what was illegal about what was

16    happening.

17            THE DEFENDANT:  Well, you couldn't buy it in a store.

18    It was something this guy was selling that was supposed to be

19    an enhancement to help horses win.

20            THE COURT:  What's wrong with that?

21            THE DEFENDANT:  It's terrible.  I made a bad choice.

22            THE COURT:  Give me one moment, please.

23            (Pause)

24            MS. MORTAZAVI:  Your Honor, to the extent it's

25    helpful, I can proffer some facts as to the interstate element.
```

 1            THE COURT:  We'll get to that after we get past these

 2   elements.

 3            Why don't you do that in the meantime while I'm

 4   looking for the statute.

 5            MS. MORTAZAVI:  Certainly, your Honor.  Focusing on

 6   the defendant's description of his connection between Ross

 7   Cohen and Jose Delgado, I can proffer that the drugs at issue

 8   were manufactured outside the United States and were

 9   shipped into the United States -- I'm sorry -- were

10   manufactured outside of the state of New York and shipped into

11   the state of New York passing through the Southern District of

12   New York.

13            THE COURT:  Do you stipulate to that, Mr. Rollock?

14            MR. ROLLOCK:  I do.

15            (Defendant and counsel conferred)

16            THE COURT:  The concern I have is the following:  So

17   far what Mr. Tannuzzo has told me does not include that he

18   misbranded or adulterated or caused the adulteration or

19   misbranding of any drug.

20            He simply said, I picked up a package, not even

21   knowing what it contained, for Jorge Navarro and, separately,

22   that he put two people in touch with each other for the

23   purposes of the sale of what was a misbranded drug in that it

24   had no label on it.  So in that sense, it was an adulterated or

25   misbranded drug.

1          MS. MORTAZAVI:  Your Honor, may I have a moment with

2    defense counsel?

3          THE COURT:  Please.

4          (Counsel conferred)

5          THE COURT:  Just let me say one more thing.  Frankly,

6    it seems to me that what Mr. Tannuzzo has allocuted to is more

7    in the nature of a conspiracy than in the nature of the

8    underlying offense itself, and yet the plea that you're asking

9    me to accept is to the underlying offense and not to a

10   conspiracy.

11         THE DEFENDANT:  I thought it was to a conspiracy, your

12   Honor.

13         THE COURT:  He thought he was pleading to a conspiracy

14   charge he just said.

15         (Counsel conferred)

16         MR. ROLLOCK:  Judge, can I have a moment, please?

17         THE COURT:  Yes.  Please.

18         (Defendant and counsel conferred)

19         THE COURT:  Sir, do you need to recess today?

20         MR. ROLLOCK:  No.  Just one second, Judge.

21         THE COURT:  No.  I'm speaking to Mr. Tannuzzo, please.

22         THE DEFENDANT:  I'm okay, Judge.

23         THE COURT:  All right.  Thank you.

24         (Defendant and counsel conferred)

25         THE COURT:  We're going to take a short recess for you

1    to continue conferring, and if you would please let Ms. Dempsey

2    know when you're ready.

3              (Recess)

4              THE COURT:  Please be seated.

5              All right.  Mr. Tannuzzo, is there anything further

6    you wish to tell me?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  All right.

9              THE DEFENDANT:  On the behalf of -- on the Ross Cohen

10   thing, I purchased it.

11             THE COURT:  Tell me what you mean by that.

12             You purchased what?

13             THE DEFENDANT:  I ordered it from him, and he sent it

14   to me.

15             THE COURT:  Let's slow down.

16             You ordered what?

17             THE DEFENDANT:  The unlabeled medication.

18             THE COURT:  And you ordered it from whom?

19             THE DEFENDANT:  Ross Cohen.

20             THE COURT:  So you ordered some unlabeled drugs.

21             THE DEFENDANT:  Yes.

22             THE COURT:  From Ross Cohen.  Correct?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  What was the substance you ordered?

25             THE DEFENDANT:  I just know by the name he wrote down

```
 1   was monkey.

 2            THE COURT:  And this is the substance you told me

 3   before that had no label on it?

 4            THE DEFENDANT:  Yes, ma'am.

 5            THE COURT:  And that it was, you understood, a blood

 6   builder?

 7            THE DEFENDANT:  Yes, ma'am.

 8            THE COURT:  And that you understood the purpose of it

 9   was to enhance the performance of race horses?

10            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  And did you have any understanding about

12   why it was unlabeled?

13            (Defendant and counsel conferred)

14            THE DEFENDANT:  To deceive.

15            THE COURT:  Whom?

16            THE DEFENDANT:  The regulators, the public.

17            THE COURT:  Tell me what you mean by that.

18            (Defendant and counsel conferred)

19            THE DEFENDANT:  There are rules in racing where you're

20   not supposed to not give nothing unlabeled to horses or buy

21   unlabeled stuff because there's a lot of compounding companies

22   out there that compound stuff, and it's not illegal.

23            THE COURT:  It's not illegal, or it's not legal?

24            THE DEFENDANT:  It's not legal.  I'm sorry, ma'am.

25            I knew the stuff wasn't -- I shouldn't have gotten
```

1    involved in.

2           THE COURT:  And you knew it was illegal?

3           THE DEFENDANT:  Yes, ma'am.

4           THE COURT:  All right.  Now let's go on with the story

5    that you were telling me.

6           You purchased it from Ross Cohen?

7           THE DEFENDANT:  Yes, ma'am.

8           THE COURT:  Monkey?

9           THE DEFENDANT:  Yes, ma'am.

10          THE COURT:  A blood builder?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  Intended to be given to horses to enhance

13   their performance?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  And you knew it was unlabeled?

16          THE DEFENDANT:  Yes.

17          THE COURT:  And you knew it was unlabeled so that you

18   could deceive or mislead drug regulators and racing regulators?

19          THE DEFENDANT:  Yes, ma'am.

20          THE COURT:  Okay.  And what did you do with the

21   substance that you bought?

22          THE DEFENDANT:  I gave it to somebody.

23          THE COURT:  Who did you give it to?

24          THE DEFENDANT:  Another trainer.

25          THE COURT:  And is that the Jose Delgado that you've

1    mentioned to me earlier?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  All right.  You told me earlier that you

4    were asked to put the two of them in touch with each other and

5    introduce them.

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  Did you do more than just introduce the

8    two of them then?

9            THE DEFENDANT:  After I did it the first time, got it

10   from Ross, then I put them -- I gave each other their phone

11   numbers, and I wasn't involved no more.

12           THE COURT:  You said, "After I did it the first time"

13   what?

14           THE DEFENDANT:  I gave them their phone numbers and

15   let them talk amongst each other.

16           THE COURT:  Yes, but you said another word, "After I

17   did it the first time" --

18           THE DEFENDANT:  After I didn't get involved.  I gave

19   them --

20           THE COURT:  No.  That's the later step.  You said

21   something, "After I did it the first time" --

22           THE DEFENDANT:  After I bought it the first time.

23           THE COURT:  So you bought it the first time.  Okay.

24           MS. MORTAZAVI:  Your Honor, if I may give the

25   government's --

1           THE COURT:  Give me two seconds.

2           MS. MORTAZAVI:  Certainly.

3           THE COURT:  And this drug that you bought from

4  Mr. Cohen, do you know where it was made, manufactured, came

5  from?

6           THE DEFENDANT:  No, ma'am.

7           THE COURT:  You bought it from him at the track?

8           THE DEFENDANT:  He sent it to me.

9           THE COURT:  How did he send it to you?

10          THE DEFENDANT:  He mailed it.

11          THE COURT:  From where to where?

12          THE DEFENDANT:  He mailed it -- I guess he lives in

13  Jersey.  So it came from Jersey to my place in Jersey.

14          THE COURT:  It went to your home in New Jersey?

15          THE DEFENDANT:  Yes, ma'am.

16          THE COURT:  And he lives in New Jersey?

17          THE DEFENDANT:  Yes, ma'am.

18          THE COURT:  You said "I guess."

19          THE DEFENDANT:  I know he lives in New Jersey, yes.

20          THE COURT:  With respect to interstate commerce, is

21  there anything counsel wants to offer?

22          MS. MORTAZAVI:  I proffered earlier, your Honor -- and

23  I will repeat --

24          THE COURT:  Is that with this drug or the Navarro

25  drug?

1            MS. MORTAZAVI:  That's with respect to this drug,

2     monkey.  It was manufactured in Indiana and shipped into

3     ultimately New York and the Southern District of New York on

4     various occasions.

5            The fact that the defendant cannot recall precisely

6     where it was shipped I think is irrelevant because I understand

7     that he accepted the government's proffer that it did pass

8     through the Southern District of New York.

9            THE COURT:  And it eventually made its way to Ross

10    Cohen in New Jersey?

11           MS. MORTAZAVI:  I'm not entirely sure that this

12    defendant is certain of where Mr. Cohen lives.

13           THE COURT:  That's true.  He said, "I guess."

14           MS. MORTAZAVI:  But I will proffer that monkey moved

15    into the Southern District of New York.

16           THE COURT:  Mr. Rollock, you stipulated to that

17    earlier?

18           MR. ROLLOCK:  Yes, Judge.  To be clear, I've looked at

19    the discovery in this case, the voluminous amount of discovery

20    in this case, and I have no reasons to contest that the monkey

21    that's at issue here did not pass through the Southern District

22    of New York.

23           THE COURT:  That's venue.

24           What about interstate commerce?  I'm asking

25    Mr. Rollock because Ms. Mortazavi laid out or proffered facts

1    that it came from Indiana and eventually passed through the

2    Southern District of New York and somehow Mr. Tannuzzo got it

3    in New Jersey.  So that takes care of -- you've said venue in

4    New York.

5            But what about interstate commerce?  Do you stipulate

6    to both?

7            MR. ROLLOCK:  I do.

8            THE COURT:  All right.  Mr. Tannuzzo, at the time that

9    you made this purchase for Jose Delgado of monkey, did you know

10   that what you were doing was wrong?

11           THE DEFENDANT:  Yes, ma'am.

12           THE COURT:  Did you know that it was illegal?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  Did you do it with the intent to mislead

15   or deceive drug regulators?

16           THE DEFENDANT:  No, ma'am.

17           THE COURT:  No?

18           MR. ROLLOCK:  One second, Judge.

19           (Defendant and counsel conferred)

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  Tell me why you're changing what you're

22   telling me.

23           THE DEFENDANT:  I'm a little nervous, ma'am.

24           THE COURT:  All right.  You told me earlier that you

25   understood that this monkey that you were receiving was

```
 1   unlabeled to deceive the drug regulators and the horse
 2   regulators.  Correct?
 3            THE DEFENDANT:  Correct, ma'am.
 4            THE COURT:  And to deceive and defraud the racing
 5   public.
 6            THE DEFENDANT:  Correct.
 7            THE COURT:  That is in fact true and accurate?
 8            THE DEFENDANT:  Yes, ma'am.
 9            THE COURT:  And that was your intent at the time you
10   made this purchase?
11            THE DEFENDANT:  Yes, ma'am.
12            THE COURT:  Is there any further factual matter that
13   the government wishes me to address in connection with
14   Mr. Tannuzzo's allocution?
15            MS. MORTAZAVI:  No, your Honor.
16            THE COURT:  All right.  Would you please,
17   Ms. Mortazavi, summarize the government's evidence that would
18   be offered if this case were to go to trial.
19            MS. MORTAZAVI:  Certainly.  If this case were to
20   proceed to trial, the evidence would consist of the following:
21   Wire excerpts of the defendant discussing obtaining and
22   transferring performance-enhancing drugs, methods for doping
23   horses --
24            THE COURT:  Go slowly, please.
25            MS. MORTAZAVI:  I apologize to the court reporter.
```

1     -- methods for doping horses, the effects of certain

2     performance-enhancing drugs on horses, and the need to avoid

3     getting caught.

4          They would also include text messages retrieved from

5     the defendant's cell phone in which he requested the

6     performance-enhancing drugs be shipped to him, including the

7     blood builder monkey; records reflecting the races in which the

8     defendant entered horses, as well as the purse winnings of

9     those races and his occupation and licensure as a trainer; and

10    lay and law enforcement testimony regarding the drugs the

11    defendant discussed on intercepted calls, including drugs that

12    were not approved by the FDA, were mislabeled, were distributed

13    without a valid prescription, and that were promoted, intended

14    to enhance the performance of race horses.

15          THE COURT:  Mr. Tannuzzo, did you understand at the

16    time you were making these purchases and was it your intent to

17    avoid being caught?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you understand these drugs were going

20    to be used to dope race horses?

21          THE DEFENDANT:  Yes.

22          THE COURT:  All right.  Ms. Mortazavi, is there, in

23    the government's view, an adequate factual basis to support a

24    plea of guilty to the charge in Count One of the superseding

25    information?

1      MS. MORTAZAVI:  Yes, your Honor.

2      THE COURT:  Mr. Rollock, in your view, is there an

3  adequate factual basis to support a plea of guilty by

4  Mr. Tannuzzo to the charge in Count One of the superseding

5  information?

6      MR. ROLLOCK:  I agree.

7      THE COURT:  You believe there is an adequate factual

8  basis?

9      MR. ROLLOCK:  I do.

10      THE COURT:  All right.  Now, Mr. Tannuzzo, now that

11  we've talked about your plea agreement and possible

12  consequences of the crime to which you tell me you intend to

13  plead guilty, we can turn to entry of a plea.

14      Can you tell me, sir:  How do you plead to Count One

15  of the superseding information?

16      THE DEFENDANT:  Guilty.

17      THE COURT:  Are you pleading guilty because you are

18  guilty?

19      THE DEFENDANT:  Yes, ma'am.

20      THE COURT:  Are you pleading guilty voluntarily?

21      THE DEFENDANT:  Yes, ma'am.

22      THE COURT:  Are you doing so of your own free will?

23      THE DEFENDANT:  Yes, ma'am.

24      THE COURT:  Mr. Rollock, are there any other questions

25  that you believe I should ask Mr. Tannuzzo in connection with

1    his plea?

2           MR. ROLLOCK:  No, Judge.  You've been very thorough.

3    Thank you.

4           THE COURT:  All right.  Ms. Mortazavi, are there any

5    other questions you believe that I should ask Mr. Tannuzzo in

6    connection with his plea?

7           MS. MORTAZAVI:  No, your Honor.

8           THE COURT:  All right.  Mr. Tannuzzo, would you please

9    stand.

10          Sir, you have acknowledged that you are in fact guilty

11   as charged in Count One of the superseding information.

12   Because I am satisfied that you know your rights, including

13   your right to go to trial; and you are waiving your rights

14   voluntarily and that you're aware of the consequences of your

15   plea, including the sentence that may be imposed, I find that

16   your plea is entered knowingly and voluntarily and is supported

17   by an independent basis in fact containing each of the

18   essential elements of the offense.

19          I therefore accept your guilty plea, and I enter a

20   judgment of guilty of Count One of the superseding information,

21   drug adulteration and misbranding with intent to defraud, in

22   violation of 21 U.S. Code, Section 331 and 333(a)(2).

23          You may be seated, sir.

24          And at this point, having accepted Mr. Tannuzzo's plea

25   of guilty and adjudicated him guilty, I will sign the consent

1    order of forfeiture that the parties submitted.  Once I sign

2    this, this will be entered on the docket.

3              And as I told you, Mr. Tannuzzo, this order contains a

4    money judgment against you in the amount set forth, $15,893.

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  All right.  And I'm going to hand that to

7    Ms. Dempsey, who will file it on the docket.

8              Now, Mr. Tannuzzo has been out on bond.

9              Is there any objection to his continuing to remain on

10   release pending sentencing?

11             MS. MORTAZAVI:  No, your Honor.

12             THE COURT:  All right.  Mr. Tannuzzo, the same

13   conditions that are in place with respect to your release up to

14   this point will remain in place, and you need to comply with

15   all of the terms and conditions of your release.

16             Do you understand that, sir?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  All right.  Let me tell you the process

19   from this point going forward, Mr. Tannuzzo.  The next step I

20   mentioned to you when we were speaking is that the probation

21   department needs to prepare a presentence report that will

22   assist me in determining what your sentence should be.

23             In order to prepare that report, the probation

24   department needs to interview you.  It's very important that

25   that information that you give to the probation officer be

truthful and that it be accurate.  As I said, that report is

very important to me in determining what your sentence will be.

            Once a draft report is prepared, you and your lawyer

and the government and its lawyer will have an opportunity to

review that draft.  You'll have the right to examine the

report; to make any comments on it; and to file any objections

through your lawyer to the draft report, if probation doesn't

accept any comments that you make to the initial draft.

            Before sentencing, as I said before, you will have the

opportunity -- you're not obligated to, but you will have the

opportunity -- and the right to address me directly before I

impose sentence.

            I assume, Mr. Rollock, that you wish to be present at

any interview with Mr. Tannuzzo.

            MR. ROLLOCK:  Yes.

            THE COURT:  All right.  So I order at this point that

no interview take place unless counsel is present.

            Mr. Rollock, I'd ask you to please reach out to

probation and arrange for Mr. Tannuzzo to be interviewed within

the next two weeks by the probation department so that they can

begin preparation of the presentence report.

            MR. ROLLOCK:  Okay.

            THE COURT:  Ms. Mortazavi, I remind you to please

provide a statement of facts to probation within those same two

weeks, 14 days.

 1              MS. MORTAZAVI:  Yes, your Honor.

 2              THE COURT:  All right.  Thank you.

 3              Now, Counsel, I remind you, please, once you receive

 4    the draft report, please give timely comments and any

 5    objections to the probation office.  The Court does receive a

 6    courtesy copy of course of the presentence report.

 7              Once that report is final, defense submissions are due

 8    two weeks before sentencing, and any submission by the

 9    government is due one week before the sentencing date.

10              The Court proposes November 3 for sentencing.

11              Does that work?

12              MR. ROLLOCK:  Judge, could we go a little further out?

13    Because I have already scheduled like two and possibly three

14    more trials before that date.

15              THE COURT:  The problem, Mr. Rollock, is that I do

16    have a pretty full trial schedule because of all the delays as

17    a result of COVID.

18              (Discussion off the record)

19              THE COURT:  Okay.  The afternoon of Monday,

20    November 21.

21              MR. ROLLOCK:  Sure.  What time, your Honor?

22              MS. MORTAZAVI:  I'm available then.

23              THE COURT:  Why don't we say 2:00 p.m.

24              MR. ROLLOCK:  Sure.

25              THE COURT:  On November 21.  And, as I say, two weeks

1    before that, which would be November 7, any defense submission

2    with respect to sentencing is due.  One week before that,

3    November 14, the government's submission is due.

4         All right.  So, Mr. Tannuzzo, I just remind you again

5    how important it is that you be truthful with the probation

6    office when you sit down for your interview with them.  Failure

7    to be truthful with probation or with this Court could have an

8    effect on your sentence.  It could also subject you separately

9    to prosecution.

10        Specifically I'm telling you that in your stipulated

11   sentencing guidelines range, you were given reductions in the

12   calculation levels by reason of acceptance of responsibility

13   and there is an offer for a further one-level reduction.

14        If you do not cooperate fully or you're not truthful

15   with the probation office, I reserve the right to deny you

16   those reductions when I do my sentencing calculation.

17        You understand, sir.  Right?

18        THE DEFENDANT:  Yes, ma'am.

19        THE COURT:  All right.  Then I'd just ask the parties

20   to please order a copy of the transcript of today's proceeding

21   and provide a copy of it to chambers.  I do carefully review,

22   in particular, the allocution of the defendant in connection

23   with preparing for sentencing.  So please make sure you get a

24   copy of that transcript to chambers.

25        Is there anything further from either side?

1              MS. MORTAZAVI:  Not from the government.  Thank you.

2              THE COURT:  All right.  Thank you.

3              MR. ROLLOCK:  Judge, to you and your staff, I thank

4    you for your courtesy and time.

5              THE COURT:  Thank you very much, and especially to our

6    court reporter.

7              I appreciate very much your patience.  We stand

8    adjourned, everyone.

9              (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25