MC5ZZCHAP-TC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                        20 Cr. 160 (MKV)

 5   ALEXANDER CHAN,

 6

 7            Defendant.

 8                                      Plea
     ------------------------------x

 9
                                        New York, N.Y.
10                                      December 5, 2022
                                        2:30 p.m.
11

12   Before:

13
                     HON. MARY KAY VYSKOCIL,
14
                                        District Judge
15
                          APPEARANCES
16
     DAMIAN WILLIAMS
17        United States Attorney for the
          Southern District of New York
18   BY:  SARAH MORTAZAVI
          Assistant United States Attorney
19
     DAVID E. PATTON
20        Federal Defenders of New York, Inc.
          Attorney for the Defendant
21   BY:  NEIL P. KELLY

22

23

24

25
```

MC5ZZCHAP-TC

```
1                (Case called)

2                THE COURT:  Good afternoon, Ms. Mortazavi, and to

3     Dr. Chan and to the members of his family.  It's important that

4     you're here, and I appreciate your being here today.

5                Good afternoon to our court reporter.  Thank you for

6     being here.

7                So as you heard, I am Judge Vyskocil.  I have been

8     presiding over this case since it was first filed.  We are here

9     today for a change of plea hearing for Dr. Chan.

10               Let me please confirm with you, sir, you do not need

11    the services of an interpreter, do you?

12               THE DEFENDANT:  No, I do not.

13               THE COURT:  Okay.  Do you speak and understand English

14    clearly?

15               THE DEFENDANT:  Yes, I do.

16               All right.  Ms. Mortazavi, have you taken care of

17    whatever notice to victims?

18               MS. MORTAZAVI:  Yes, your honor.

19               THE COURT:  By way of background about this case, in

20    November of 2020, the grand jury returned a superseding

21    indictment number S6 charging Dr. Chan in Count Three with a

22    conspiracy to adulterate, misbrand drugs, with the intent to

23    defraud or mislead, and in Count Four with mail and wire fraud

24    conspiracy.

25               I am informed that Dr. Chan now has an application to
```

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | waive indictment and to plead guilty to a one-count superseding              |
| 2  | information numbered S15.  That information charges him with a                |
| 3  | substantive drug adulteration and misbranding offense with the               |
| 4  | intent to defraud and mislead, in violation of Title 21, United              |
| 5  | States Code, Sections 331 and 333(a)(2).  Specifically, that                 |
| 6  | superseding information alleges that from at least in or about               |
| 7  | December of 2016 through at least in or about March of 2020,                 |
| 8  | Dr. Chan, with the intent to defraud and mislead, adulterated                |
| 9  | and misbranded drugs and caused the adulteration and                         |
| 10 | misbranding of drugs in interstate commerce.                                 |
| 11 | In particular, the government alleges that Dr. Chan                          |
| 12 | distributed adulterated and misbranded drugs shipped in                      |
| 13 | interstate commerce which were administered to thoroughbred                  |
| 14 | racehorses under the care of Empire Veterinary Group, and that              |
| 15 | he took steps to avoid detection of that scheme by regulators                |
| 16 | and others.  That superseding information also contains a                    |
| 17 | forfeiture allegation.                                                       |
| 18 | Is that correct from the defendant's point of view?                          |
| 19 | MR. KELLY:  Yes, your Honor.                                                 |
| 20 | THE COURT:  All right.  So in advance of today's                            |
| 21 | change of plea hearing, I have received from Ms. Mortazavi a                |
| 22 | waiver of indictment that appears to be signed.  It's not                    |
| 23 | dated, though.  I also have a copy of a plea agreement, and                  |
| 24 | I've been provided with a proposed consent preliminary order of             |
| 25 | forfeiture.  I will enter that waiver of indictment in the                   |

1    records as Government Exhibit 1 and the plea agreement as

2    Government Exhibit 2.

3              Now, Dr. Chan, before I can accept your guilty plea, I

4    need to ask you a number of questions while you are under oath

5    in order to assure myself that you are knowingly and

6    voluntarily waiving you right to be indicted by a grand jury

7    and that your plea is, in fact, a valid and a voluntary one.

8    So I may at various points cover various topics or matters that

9    were addressed in various forms or agreements that you may have

10   signed.  If I do that, it's because it's very important that

11   you understand what is happening here today.

12             If at any point you don't understand something that I

13   am asking you or something that I say, please stop me, and I'll

14   try to rephrase it, explain it to you more clearly, or you can

15   at any point in time, if you wish to do so, speak with your

16   lawyer.

17             All right.  So would you please let me know, sir, if

18   you don't understand anything?

19             THE DEFENDANT:  I will.

20             THE COURT:  All right.  So, Ms. Dempsey, would you

21   please administer the oath to Dr. Chan.

22             THE DEPUTY CLERK:  Please stand, raise your right

23   hand.

24             (Defendant sworn)

25             THE DEPUTY CLERK:  Thank you.  Please be seated.

MC5ZZCHAP-TC

1          THE COURT:  All right.  Dr. Chan, do you understand

2    that you have now just solemnly promised to tell the truth and

3    that if you answer any of my questions falsely, your false or

4    untrue statements may be used against you later in another

5    proceeding for perjury or making false statements?

6          Do you understand that?

7          THE DEFENDANT:  I understand.

8          THE COURT:  Can you tell me, sir, how old are you?

9          THE DEFENDANT:  45.

10          THE COURT:  And how far have you gone in school?

11          THE DEFENDANT:  I have a degree in veterinary

12    medicine.

13          THE COURT:  And you've told me you do speak and

14    understand English clearly?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Are you a citizen of the United States?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Were you born here?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you now or have you recently been

21    under the care of a medical doctor or other health care

22    professional?

23          THE DEFENDANT:  No.

24          THE COURT:  Are you now or have you recently been

25    under the care of a mental health professional?

MC5ZZCHAP-TC

```
1                    THE DEFENDANT:  No.

2                    THE COURT:  Have you ever been treated or hospitalized

3     for any mental illness?

4                    THE DEFENDANT:  No.

5                    THE COURT:  Have you ever been treated or hospitalized

6     for any type of addiction, including drugs or alcohol?

7                    THE DEFENDANT:  No.

8                    THE COURT:  Have you ever been addicted to drugs or

9     alcohol?

10                   THE DEFENDANT:  No.

11                   THE COURT:  In the past 24 hours, have you taken any

12    drugs, any medicine, any pills?

13                   THE DEFENDANT:  No.

14                   THE COURT:  Have you had any alcohol to drink in the

15    past 24 hours?

16                   THE DEFENDANT:  No.

17                   THE COURT:  Is your mind clear today?

18                   THE DEFENDANT:  Yes.

19                   THE COURT:  Do you understand what we are doing?

20                   THE DEFENDANT:  Yes, I do.

21                   THE COURT:  All right.  Are you feeling well

22    physically?  In other words, are you healthy today?

23                   THE DEFENDANT:  Yes.

24                   THE COURT:  And are you represented by counsel?

25                   THE DEFENDANT:  Yes.
```

MC5ZZCHAP-TC

| | |
|---|---|
| 1 | THE COURT:  Who is your counsel? |
| 2 | THE DEFENDANT:  Neil Kelly. |
| 3 | THE COURT:  And are you satisfied with Mr. Kelly's |
| 4 | representation of you? |
| 5 | THE DEFENDANT:  Yes. |
| 6 | THE COURT:  Have you had ample opportunity to talk |
| 7 | with him, to confer with him, consult with him in advance of |
| 8 | today's proceeding? |
| 9 | THE DEFENDANT:  Yes. |
| 10 | THE COURT:  Do you need any more time to talk with him |
| 11 | before we move forward? |
| 12 | THE DEFENDANT:  No. |
| 13 | THE COURT:  All right.  Do either counsel have any |
| 14 | doubt as to Dr. Chan's competence to plead at this time? |
| 15 | MS. MORTAZAVI:  No, your Honor. |
| 16 | THE DEFENDANT:  No, your Honor. |
| 17 | THE COURT:  Dr. Chan, your attorney has told me that |
| 18 | you wish to withdraw your plea of not guilty and to enter a |
| 19 | plea of guilty to the superseding information in this case, |
| 20 | numbered S15. |
| 21 | Do you in fact wish to waive indictment and enter a |
| 22 | plea of guilty? |
| 23 | THE DEFENDANT:  Yes. |
| 24 | THE COURT:  Have you fully discussed your case with |
| 25 | your attorney, including the charges to which you intend to |

MC5ZZCHAP-TC

1   plead guilty, any potential defenses to those charges?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Have you discussed with him the

4   consequences of entering the plea of guilty?

5           THE DEFENDANT:  Yes.

6           THE COURT:  In other words, you have discussed the

7   potential penalties that you face and other consequences of

8   pleading guilty?

9           THE DEFENDANT:  Correct, yes.

10          THE COURT:  And you are satisfied with Mr. Kelly's

11  representation of you and your opportunity to consult with him?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  On the basis of Dr. Chan's

14  responses to my questions and my observations of his demeanor,

15  I do find that he is fully competent to waive indictment and to

16  enter an informed plea at this time.

17          Now, I've been given a form, Dr. Chan, and it's not

18  labeled but it reads:  "The above-named defendant, who is

19  accused of one count of violating Title 21, United States Code,

20  Section 331 and 333, being advised of the nature of the charges

21  and of his rights, hereby waives prosecution by indictment and

22  consents that the proceeding may be by information instead of

23  indictment."

24          Do you have that document in front of you?

25          THE DEFENDANT:  I do.

MC5ZZCHAP-TC

1          THE COURT:  All right.  And we've marked this as

2     Government Exhibit 1.  Does your signature appear on this form?

3          THE DEFENDANT:  Electronically, yes.

4          THE COURT:  Counsel, let me just ask you both, there

5     is a line that says "witness," but there is no signature there.

6     Is it --

7          MR. KELLY:  Your Honor, in my practice, the court

8     deputy or someone else often signs, but we were submitting it

9     in a timely fashion to get it to the Court, so we didn't have a

10    witness.

11         THE COURT:  Do you have an original, unsigned

12    original?

13         MS. MORTAZAVI:  I don't have an unsigned, your Honor,

14    but counsel and the defendant can put their initials next to

15    the signature.

16         THE COURT:  Yes.  I was going to say, why don't you

17    take that, Mr. Kelly.

18         Dr. Chan, if you would just sign next to where your

19    name is electronically signed, because my courtroom deputy will

20    witness you signing it, but she can't do that with an S/ for

21    your signature.

22         MR. KELLY:  Would the Court like me to date it or

23    leave it as is?

24         THE COURT:  You can date it, but you need to change

25    it, obviously.  Today is December 5.

MC5ZZCHAP-TC

```
 1              And then, Mr. Kelly, if you would just initial your

 2      signature or sign it, either way.

 3              MR. KELLY:  May I approach?

 4              THE COURT:  Sure, thank you.

 5              All right.  Dr. Chan, you've now signed this waiver of

 6      indictment form.  Have you previously discussed it with your

 7      lawyer, Mr. Kelly?

 8              THE DEFENDANT:  Yes, I have.

 9              THE COURT:  Did he explain to you what this form

10      accomplishes?

11              THE DEFENDANT:  Yes, he did.

12              THE COURT:  Do you understand that by signing this

13      form you are waiving your right to be indicted by a grand jury?

14              THE DEFENDANT:  Yes, I do.

15              THE COURT:  And you understand that you are under no

16      obligation to waive indictment?

17              THE DEFENDANT:  I understand.

18              THE COURT:  And you understand that if you do not

19      waive indictment, if the government wants to prosecute you, it

20      would have to present the case to a grand jury which may or may

21      not indict you?

22              THE DEFENDANT:  Yes.

23              THE COURT:  And you understand that by waiving

24      indictment you're giving up your right to have the case

25      presented to a grand jury?
```

MC5ZZCHAP-TC

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand what a grand jury is?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  Have you discussed with your lawyer that

5    the grand jury is body made up of 23 individuals of whom 16

6    must be present in order to conduct business and that you could

7    not be charged unless 12 of those present voted for indictment

8    based on a finding of probable cause?

9          THE DEFENDANT:  Yes.

10          THE COURT:  You understand that?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  All right.  Does either counsel know of

13   any reason that I shouldn't find that Dr. Chan has knowingly

14   and voluntary waived his right to be indicted by a grand jury?

15          MS. MORTAZAVI:  No, you Honor.

16          MR. KELLY:  No, your Honor?

17          THE COURT:  Thank you.

18          All right.  I do find that Mr. Chan has knowingly and

19   voluntarily waived his right to be indicted by a grand jury,

20   and I authorize the filing of the information in this case.

21          Will you take care of that, Ms. Mortazavi?

22          MS. MORTAZAVI:  Typically, the court has been filing

23   these, your Honor.  I will coordinate with Ms. Dempsey.

24          THE COURT:  All right.  That would be great.  Thank

25   you very much.

MC5ZZCHAP-TC

1      Dr. Chan, before I accept any plea from you, I need to

2  ask you certain additional questions.  My questions are

3  intended to satisfy me that you wish to plead guilty because

4  you are in fact guilty and that you fully understand your

5  rights and the consequences of entering the plea of guilty.  So

6  I want to begin by describing to you certain rights that you

7  have under the Constitution and the laws of the United States.

8  You will be giving up these rights if you enter a plea of

9  guilty.

10      So please listen very carefully.  And I remind you

11  again, if you don't understand something that I am saying or

12  describing, please stop me, and I or Mr. Kelly will explain it

13  to you more fully.

14      Will you do that, please?

15      THE DEFENDANT:  I will.

16      THE COURT:  All right.  Thank you.

17      Under the Constitution and laws of the United States,

18  you have a right to a speedy and a public trial by a jury on

19  charges against you which are contained in the information.

20      Do you understand that?

21      THE DEFENDANT:  I do.

22      THE COURT:  Do you understand that you have the right

23  to plead not guilty and to continue to plead not guilty to the

24  charges against you?

25      THE DEFENDANT:  I do.

MC5ZZCHAP-TC

1              THE COURT:  Do you understand that if there were a

2    trial, you would be presumed innocent, and the government would

3    be required to prove you guilty by competent evidence and

4    beyond a reasonable doubt?

5              Do you understand that?

6              THE DEFENDANT:  I understand.

7              THE COURT:  Do you understand that you would not have

8    to prove at trial that you are innocent?

9              THE DEFENDANT:  I understand.

10             THE COURT:  Do you understand that if there were a

11   trial, a jury made up of 12 people selected from this district,

12   the Southern District of New York, would have to agree

13   unanimously in order to find you guilty?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Do you understand that if there were a

16   trial, you would have a right to be represented by an attorney

17   at trial and at all other stages of the proceedings, and if you

18   couldn't afford one, an attorney would be provided to you free

19   of cost?

20             Do you understand that?

21             THE DEFENDANT:  I do.

22             THE COURT:  Do you understand that if there were a

23   trial, you would have the right to see and to hear all of the

24   witnesses against you, and your attorney could cross-examine

25   them.  You would you have the right to have your lawyer object

1    to the government's evidence and to offer evidence on your

2    behalf if you so desired.  You would have the right to have

3    witnesses required to come to court to testify on your behalf,

4    and you would have the right to testify yourself, but you would

5    not be required to do so.

6              Do you understand all of that?

7              THE DEFENDANT:  I do.

8              THE COURT:  And do you understand that if there were a

9    trial and you decided not to testify, no adverse inference

10   could be drawn against you based on your decision not to

11   testify?  And by that I mean that the jury would be instructed

12   that it could not assume that you weren't testifying because

13   you were guilty or because you had something to hide.

14             Do you understand that?

15             THE DEFENDANT:  I do.

16             THE COURT:  And do you understand that if you were

17   convicted at trial, would you have the right to appeal from

18   that verdict?

19             THE DEFENDANT:  Yes, I understand.

20             THE COURT:  Do you understand each and every one of

21   these rights?

22             THE DEFENDANT:  Yes, I do.

23             THE COURT:  Do you have any questions about your

24   rights?

25             THE DEFENDANT:  No, I do not.

MC5ZZCHAP-TC

1        THE COURT:  And do you understand that by entering a

2    plea of guilty today, you will be giving up each and every one

3    of these rights; that you will be waiving these rights?  Do you

4    understand that?

5        THE DEFENDANT:  Yes, I do.

6        THE COURT:  And do you understand that you would be

7    waiving any possible claim that your constitutional rights may

8    have violated and you will not have a trial?  Do you understand

9    that?

10        THE DEFENDANT:  Yes.

11        THE COURT:  All right.  Do you understand that by

12    entering a plea of guilty, you will also have to give up the

13    right not to incriminate yourself because in a few moments, if

14    we proceed with your entering of a plea, I will ask you to tell

15    me in your own words what it is that you did that makes you

16    guilty in order to satisfy myself that you are guilty as

17    charged and you have to admit and acknowledge your guilt.

18        Do you understand that?

19        THE DEFENDANT:  I do.

20        THE COURT:  Do you understand that you can change your

21    mind right now and refuse to enter a plea of guilty?

22        THE DEFENDANT:  Yes.

23        THE COURT:  You understand that you do not have to

24    enter this plea if for any reason you do not wish to do so.

25        You understand that fully?

MC5ZZCHAP-TC

1          THE DEFENDANT:  I do.

2          THE COURT:  Dr. Chan, a few moments ago I asked you --

3    or I mentioned to you the superseding information in this case.

4    Do you have you a copy of that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.  Have you read the superseding

7    information?

8          THE DEFENDANT:  Yes, I have.

9          THE COURT:  Did your attorney discuss the information

10   and the charges it contains with you?

11         THE DEFENDANT:  Yes, he did.

12         THE COURT:  Okay.  I can read that superseding

13   information out loud here in open court if you want me to do

14   so.  Do you need me to read it aloud or do you waive the

15   reading?

16         THE DEFENDANT:  I waive the reading.

17         THE COURT:  All right.  You're charged, Dr. Chan, in

18   Count One of the superseding information with drug adulteration

19   and misbranding, in violation of Title 21, United States Code,

20   Sections 331 and 333(a)(2).

21         Do you understand that?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Pursuant to the plea agreement, I'm

24   advised that the government will accept a guilty plea to the

25   charge in Count One of the superseding information.

MC5ZZCHAP-TC

1          Is that your understanding?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  Ms. Mortazavi, then would you

4   please outline for the record the elements of the offense

5   charged in Count One of the superseding information.

6          MS. MORTAZAVI:  Certainly, your Honor.

7          If the government were to proceed to trial on Count

8   One of the superseding information, we would have to prove the

9   following elements beyond a reasonable doubt:

10          First, that the defendant adulterated or misbranded a

11   drug in at least one way or caused the same;

12          Second, that that drug moved in interstate commerce;

13   and

14          Third, that the defendant had the intent to defraud or

15   mislead.

16          And the government would have to prove venue by a

17   preponderance of the evidence.

18          THE COURT:  All right.  Thank you.

19          Dr. Chan, do you understand that the government would

20   have to prove each and every part, or element, of the offense

21   as just laid out by Ms. Mortazavi with respect to Count One

22   beyond a reasonable doubt at trial if you did not plead guilty?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Do you understand the matters that the

25   government would have to prove if you did not plead guilty?

MC5ZZCHAP-TC

1          THE DEFENDANT:  I understand.

2          THE COURT:  And do you in fact wish to plead guilty?

3          THE DEFENDANT:  Yes, I do.

4          THE COURT:  All right.  Let's talk for a few moments,

5   then, before we turn to accepting your plea.  Let's talk about

6   the potential penalties for the offense to which you tell me

7   you wish to plead guilty.

8          Do you understand that the maximum possible term of

9   imprisonment for the offense in Count One to which you tell me

10  you intend to plead guilty is a term of imprisonment up to

11  three years?

12         THE DEFENDANT:  Yes.

13         THE COURT:  Do you understand that Count One can also

14  include a maximum term of supervised release after you're

15  released from prison of up to one year?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that in addition to

18  these restrictions on your liberty, the maximum possible

19  punishment for Count One also includes certain financial

20  penalties?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  Do you understand the maximum fine allowed

23  is $10,000 or twice the gross pecuniary gain to you relating to

24  the offense or twice the loss to persons other than yourself as

25  a result of the offense, whichever is greater?

MC5ZZCHAP-TC

1           Do you understand that?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand that I must also impose

4   a $100 special assessment which is mandatory per count?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Do you understand that as part of your

7   plea agreement, you have agreed to forfeit to the United States

8   a sum of money representing proceeds traceable to the

9   commission of the offense in Count One to which you are

10  pleading guilty?

11          THE DEFENDANT:  Yes.

12          THE COURT:  All right.  Now, the parties have

13  submitted to me a proposed preliminary order of forfeiture.

14          Is it correct that that is on consent?

15          MS. MORTAZAVI:  Yes, your Honor.

16          MR. KELLY:  Yes, your Honor?

17          THE COURT:  And that provides for forfeiture of

18  $311,760.

19          Is that accurate?

20          MS. MORTAZAVI:  That's correct, your Honor.

21          MR. KELLY:  Yes, your Honor.

22          THE COURT:  All right.  Do you understand, Dr. Chan,

23  that you are agreeing to entering of forfeiture in the amount

24  of $311,760 and to entry of a money judgment against you in

25  that amount?

MC5ZZCHAP-TC

1          THE DEFENDANT:  Yes.

2          THE COURT:  Ms. Mortazavi, I have a question about

3    that proposed forfeiture order which we'll get to in a few

4    moments.  I want to finish talking to the defendant, but I need

5    to circle back to that.

6          Dr. Chan, I want to make sure that you understand that

7    any forfeiture money judgment that is entered against you will

8    not reduce the amount of any fine, restitution, cost of

9    imprisonment or other penalty that the Court may impose.

10          Do you understand that?

11          THE DEFENDANT:  I do.

12          Ms. Mortazavi, is the government seeking restitution?

13          MS. MORTAZAVI:  No, your Honor.  Restitution is not

14    attached to this count.

15          THE COURT:  All right.  Thank you.

16          So I want to talk to you about the supervised release

17    aspect of your potential penalty to be sure you understand that

18    aspect of the penalties.

19          So supervised release means that you would be subject

20    to monitoring when you are released from any term of

21    imprisonment.  During that period of supervision, certain terms

22    and conditions would be imposed, and if you violate any of

23    those set terms and conditions, you can be reimprisoned without

24    a jury trial.

25          Do you understand that?

MC5ZZCHAP-TC

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  If you are on supervised release and you

3   do not comply with any of the set terms and conditions

4   specifically, you can be returned to prison for up to one year,

5   and you will receive no credit for the time you served in

6   prison as a result of your sentence or the time that you spent

7   on supervised release prior to any violation.

8          Do you understand that?

9          THE DEFENDANT:  Yes, I do.

10          THE COURT:  You should also understand that there is

11   no parole in the federal system.  If you are sentenced to

12   prison, you will not be released early on parole.  There is a

13   limited opportunity to earn credit for good behavior, but you

14   will have to serve 85 percent of the time to which you are

15   sentenced.  There might or there might not be opportunities to

16   earn credit under the recently enacted First Step Act.

17          Do you understand that?

18          THE DEFENDANT:  I do.

19          THE COURT:  Have you had a full opportunity to discuss

20   all of that with Mr. Kelly?

21          THE DEFENDANT:  I have.

22          THE COURT:  You further understand that if I accept

23   your guilty plea and adjudge you guilty, that adjudication may

24   deprive you of certain valuable civil rights, including the

25   right to vote, the right to hold public office, the right to

MC5ZZCHAP-TC

```
1    serve on a jury, and the right to possess any kind of a firearm
2    if you currently have or could otherwise attain such rights.
3              Do you understand that?
4              THE DEFENDANT:  I do.
5              THE COURT:  Now, sir, you told me you are a United
6    States citizen, but in the interest of caution, I need you to
7    be sure you understand that if it turns out that you are not a
8    United States citizen and I accept your guilty plea and adjudge
9    you guilty, there could be adverse effects on your immigration
10   status.
11             Have you discussed your immigration status and any
12   potential consequences of entering a guilty plea with your
13   lawyer?
14             THE DEFENDANT:  Yes, I have.
15             THE COURT:  All right.  Next, under the current law,
16   there are certain sentencing guidelines that I am obligated to
17   consider in determining your sentence.
18             Have you spoken to Mr. Kelly about the sentencing
19   guidelines?
20             THE DEFENDANT:  Yes, I have.
21             THE COURT:  Do you understand that in addition to
22   considering those sentencing guidelines in imposing the
23   sentence, I must also consider various additional factors that
24   are set forth in the statute at 18 United States Code, Section
25   3553?
```

MC5ZZCHAP-TC

1              THE DEFENDANT:  Yes, I understand.

2              THE COURT:  And you've discussed those factors with

3    Mr. Kelly?

4              THE DEFENDANT:  I have.

5              THE COURT:  Do you understand that I have discretion

6    while taking the guidelines into account to sentence you to any

7    period of imprisonment up to three years?

8              THE DEFENDANT:  I do.

9              THE COURT:  And do you understand that even though the

10   plea agreement includes a stipulated or agreed-upon sentencing

11   guidelines calculation, I cannot determine what your sentence

12   will be until after a presentence report has been prepared by

13   the probation department and you and the government and each of

14   your lawyers have an opportunity to review that report and to

15   challenge any of the facts reported by the probation office?

16             Do you understand that process?

17             THE DEFENDANT:  I do.

18             THE COURT:  Right now, according to the plea

19   agreement, you have agreed that the sentencing guideline -- the

20   guideline sentence appropriate to the offense in Count One to

21   which you are pleading guilty is 36 months of incarceration.

22             Is that consistent with your understanding?

23             THE DEFENDANT:  It is.

24             THE COURT:  You also agreed in that plea agreement

25   that the applicable fine range for this case is 25,000 up to

MC5ZZCHAP-TC

1    250,000.

2              Is that in fact consistent with your understanding?

3              THE DEFENDANT:  It is.

4              THE COURT:  Do you understand that this stipulation

5    between you and the government does not bind the Court or the

6    probation department as to the facts on which it is based, how

7    to apply the guidelines to the facts, or what an appropriate

8    sentence will be in your case?

9              Do you understand that?

10             THE DEFENDANT:  I do.

11             THE COURT:  Do you understand that I may decide to

12   impose a sentence that is outside the guidelines range?

13             THE DEFENDANT:  Yes.

14             THE COURT:  I should just say for the record, I

15   neglected to do it earlier, but what I have been referring to

16   as the plea agreement is a letter on the letterhead of the

17   United States Department of Justice dated November 28, 2022,

18   addressed to Neil Kelly, in the case United States against

19   Alexander Chan.  It's a six-page letter signed by Ms. Mortazavi

20   on behalf of Damian Williams, United States Attorney.

21             Do you understand, sir, that if your lawyer or anyone

22   else has attempted to estimate or predict for you what your

23   sentence would be, that estimate or prediction could well be

24   wrong?

25             THE DEFENDANT:  Yes.

1          THE COURT:  And you understand that no one, not your

2    attorney, nor the government attorney, can or should give you

3    any assurance as to what your sentence would be since that

4    sentence cannot be determined until after the probation office

5    report is completed and I have ruled on any challenges to the

6    report and I have to determine under the law what the

7    appropriate sentence is.

8          Do you understand that?

9          THE DEFENDANT:  I do.

10          THE COURT:  Do you understand that even if your

11    sentence is different from what your attorney or anyone else

12    told you it might be or if it's different from what you expect

13    or you might have hoped, or you are surprised or disappointed

14    by your sentence, if I accept your plea of guilty today, you

15    will be bound to that plea and will not be allowed to withdraw

16    your plea of guilty after today?

17          Do you understand that?

18          THE DEFENDANT:  I understand.

19          THE COURT:  Do you understand that even if the

20    government does not oppose or take a position on whatever your

21    lawyer will ask me to impose as your sentence, I am obligated

22    to impose whatever sentence I believe is appropriate under the

23    circumstances and the applicable to law, and once I accept the

24    plea of guilty, you will not be entitled to withdraw that plea?

25          Do you understand that?

MC5ZZCHAP-TC

1          THE DEFENDANT:  I do.

2          THE COURT:  Do you understand that you may have a

3    right to appeal your sentence under certain circumstances, even

4    if your plea agreement provides that you are waiving your right

5    to appeal?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Are you now serving any state or federal

8    sentence?

9          THE DEFENDANT:  No.

10          THE COURT:  Are you being prosecuted or investigated

11    for any other crime other than those we were discussing today?

12          THE DEFENDANT:  No.

13          THE COURT:  All right.  So let's turn, then, to the

14    plea agreement itself, that six-page letter agreement that I

15    referenced earlier.  Do you have a copy of that, sir?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  Did you sign this plea agreement?

18          THE DEFENDANT:  Yes, electronically.

19          THE COURT:  What does NPK mean?

20          MR. KELLY:  Those are my initials, you Honor.

21          THE COURT:  Oh, I'm sorry.

22          MR. KELLY:  I electronically signed on behalf of

23    Dr. Chan.

24          THE COURT:  And did you, in fact, Dr. Chan, authorize

25    Mr. Kelly to sign on your behalf?

MC5ZZCHAP-TC

1          THE DEFENDANT:  Yes, I did.

2          THE COURT:  Did you discuss it with Mr. Kelly before

3     you authorized him to sign on your behalf?

4          THE DEFENDANT:  Yes, we did.

5          THE COURT:  And did Mr. Kelly explain to you all of

6     the terms and conditions of this plea agreement?

7          THE DEFENDANT:  He did.

8          THE COURT:  Did you fully understand the agreement

9     before you authorized your lawyer to sign on your behalf?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you have any questions about the

12     agreement?

13          THE DEFENDANT:  No.

14          THE COURT:  You fully understand what you're committed

15     to by having authorized your lawyer to sign this on your

16     behalf?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that your plea agreement

19     provides that you are giving up, or waiving, your right to

20     appeal or to litigate or challenge your sentence under Title

21     28, United States Code, Section 2255 and/or 2241 if I sentence

22     you within or below the guidelines sentence set forth in that

23     plea agreement?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And do you understand you are under no

MC5ZZCHAP-TC

1    obligation to waive your right to appeal or otherwise litigate

2    your sentence?

3                  THE DEFENDANT:  Yes.

4                  THE COURT:  Do you understand that the plea agreement

5    provides that you are waiving your right to appeal or to attack

6    your conviction on the basis that the government has not

7    provided you with discovery material, exculpatory material,

8    except information establishing factual innocence, or any

9    material to impeach the government's witnesses against you?

10                  THE DEFENDANT:  Yes, I understand.

11                  THE COURT:  And do you understand you are under no

12    obligation to waive those rights?

13                  THE DEFENDANT:  Yes.

14                  THE COURT:  Do you understand that your agreement

15    provides that you will not move for a downward departure under

16    the sentencing guidelines or seek any adjustment under the

17    guidelines that's not described in this plea agreement, but

18    that you may make arguments for a lower sentence under the

19    general sentencing statute contained in those factors that I

20    talked to you about earlier contained in Section 3553(a)?

21                  THE DEFENDANT:  Yes.

22                  THE COURT:  Do you understand you are under no

23    obligation to enter into such an agreement?

24                  THE DEFENDANT:  I understand.

25                  THE COURT:  Do you understand that as a part of your

MC5ZZCHAP-TC

1    plea agreement, you have agreed not to appeal any forfeiture

2    penalty that is less than or equal to $311,760?

3                THE DEFENDANT:  Yes.

4                THE COURT:  All right.  Do you understand that as I

5    just discussed with you earlier, the government has submitted

6    for me to sign if I accept your guilty plea today, a proposed

7    consent preliminary order of forfeiture in that amount?

8                THE DEFENDANT:  Yes.

9                THE COURT:  Do you have you a copy of that there,

10   Mr. Kelly?

11               MR. KELLY:  Yes, your Honor.

12               THE COURT:  Have you reviewed that proposed order with

13   your lawyer, Dr. Chan?

14               THE DEFENDANT:  Yes, I have.

15               THE COURT:  Do you understand that you were not

16   obligated to enter into any such agreement or consent to the

17   proposed forfeiture order?

18               THE DEFENDANT:  Yes.

19               THE COURT:  Do you understand that your plea agreement

20   provides that you are waiving any challenge to your guilty

21   plea, your conviction, or your sentence based on any

22   immigration consequences of your plea, regardless of any advice

23   that you may have received?

24               THE DEFENDANT:  Yes, I understand.

25               THE COURT:  Do you understand that you are under no

1    obligation to make this waiver?

2            THE DEFENDANT:  Yes.

3            THE COURT:  All right.  Let me pause for a moment.

4    Ms. Mortazavi, I want to talk to you and to you, Mr. Kelly,

5    about this proposed forfeiture order.  Let me just find the

6    relevant provision that I have.

7            So the forfeiture order states that Dr. Chan and

8    Dr. Kristian Rhein are jointly and severally liable.  And then

9    it talks about that Dr. Rhein could pay it off or Dr. Chan

10   could satisfy his obligation by paying $50,000 within five

11   years of his release from prison.  It was my understanding,

12   based on prior proceedings, that forfeiture obligations are not

13   joint and several.

14           MS. MORTAZAVI:  Your Honor, because in this case

15   codefendant Kristian Rhein is the employer of this codefendant,

16   they both had control over the drugs that are at issue here.

17   So I think joint and several liability still survives pursuant

18   to the Supreme Court's decision in *United States v. Honeycutt*.

19           THE COURT:  That is the case I'm referring to.

20           MS. MORTAZAVI:  Right.  And because of

21   Kristian Rhein's dominance over Dr. Alexander Chan because he

22   was his employer, anything that came into the possession of the

23   Empire Veterinary Group can be imputed to Dr. Kristian Rhein.

24           THE COURT:  You want to be heard on that?

25           MR. KELLY:  No, your Honor.  I have the same

MC5ZZCHAP-TC

1    understanding as the government of the case law.

2           THE COURT:  I guess I didn't realize you, Dr. Chan,

3    worked for Dr. Rhein.

4           THE DEFENDANT:  Yes, I was an employee.

5           THE COURT:  Dr. Kristian Rhein was the owner of this

6    veterinary group?

7           MS. MORTAZAVI:  That's correct, your Honor.

8           THE COURT:  All right.  If that's the position of both

9    parties, I will, once we conclude, sign that preliminary order

10   of forfeiture, then.

11          MR. KELLY:  Unless your Honor was about to do it, I

12   think you have alluded to the specific payment provision in

13   paragraph 2 on page 3, but to the extent the Court wants to

14   allocute Dr. Chan on the specific payment provisions here, the

15   $50,000 that the Court mentioned within five years of release

16   would satisfy his obligation under the proposed order.

17          THE COURT:  But you've reviewed this with your client,

18   right?

19          MR. KELLY:  Yes, your Honor.  The Court had gone

20   through it quickly.  I just wanted to make sure that was on the

21   record as well.

22          THE COURT:  That's fine, but this is an order on

23   consent.

24          Dr. Chan, let me ask you, is that your, again,

25   electronic signature on the last page of this proposed order?

MC5ZZCHAP-TC

1              THE DEFENDANT:  Yes.

2              THE COURT:  And did you authorize Mr. Kelly to sign

3    this on your behalf?

4              THE DEFENDANT:  Yes, I did.

5              THE COURT:  Did you review or did Mr. Kelly review the

6    consent preliminary order of forfeiture and money judgment with

7    you prior to your authorizing him to sign it on your behalf?

8              THE DEFENDANT:  Yes, I did.

9              THE COURT:  Do you understand the terms and conditions

10   of the order?

11             THE DEFENDANT:  Yes, Miss.

12             THE COURT:  Do you consent to them?

13             THE DEFENDANT:  I do.

14             THE COURT:  The money judgment will be $311,760?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that you are jointly and

17   severally joined with Kristian Rhein?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And that there is a payment schedule in

20   this proposed order?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Are you aware that the Court has

23   previously imposed a forfeiture money judgment against

24   Dr. Rhein in the amount of $1,021,800?

25             THE DEFENDANT:  I was made aware, yes.

MC5ZZCHAP-TC

1          THE COURT:  Well, did you read this order?  It says it

2     in the order.

3          THE DEFENDANT:  Yes.

4          THE COURT:  So you were made aware of that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And do you understand, based on what's

7     represented here, that Dr. Rhein has paid $671,600 in

8     satisfaction of the money judgment against him?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Are you saying by this order, counsel,

11     that Dr. Chan is potentially liable for the remaining amount of

12     the Rhein judgment?

13          MS. MORTAZAVI:  No, your Honor.  He would only be

14     liable for the $311,760 if payment is not made as enumerated in

15     paragraph 2.

16          THE COURT:  So what do you mean when you say he is

17     jointly and severally liable with Dr. Rhein?

18          MS. MORTAZAVI:  Well, if Dr. Rhein were not to fulfill

19     all of his obligations under the money judgment and to that

20     consent preliminary order of forfeiture and if Dr. Chan were

21     not to satisfy that $50,000 payment requirement within five

22     years, then the two of them would be jointly and severally

23     liable, and the government could proceed against assets of

24     either defendant to satisfy the remainder.

25          THE COURT:  Of either judgment?

MC5ZZCHAP-TC

1          MS. MORTAZAVI:  Of either judgment up to $311,760,

2     because that is the amount that they are jointly and severally

3     liable for.

4          THE COURT:  They are jointly and severally liable only

5     for the $311,760?

6          MS. MORTAZAVI:  Forgive my Math, but whatever the

7     difference is between that and the $350,000 would be

8     Dr. Rhein's responsibility only.

9          THE COURT:  Is that consistent with your

10    understanding, Mr. Kelly?

11         MR. KELLY:  Yes, your Honor.

12         THE COURT:  Dr. Chan, do you understand the colloquy I

13    just had with counsel?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And is that consistent with your

16    understanding?

17         THE DEFENDANT:  That is consistent with my

18    understanding.

19         THE COURT:  Do you have any questions about what your

20    obligations will be?

21         THE DEFENDANT:  No.

22         THE COURT:  And you understand that if you pay the

23    $50,000 within five years of your release from prison, that

24    will satisfy your obligations, correct?

25         THE DEFENDANT:  That is my understanding, yes.

1          THE COURT:  Okay.  All right.  I will sign this, and

2     it will become part of the judgment in this case at the time of

3     sentencing.

4          Turning back, Dr. Chan, to your plea agreement that we

5     were looking at earlier.  Does that letter agreement, the plea

6     agreement, reflect accurately your complete and total

7     understanding of the entire agreement between the government,

8     you, and the respective attorneys?

9          THE DEFENDANT:  Yes, it does.

10          THE COURT:  Is everything you understand about your

11     plea and about your sentence up to this point covered in that

12     agreement?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Has anything that you believe you've

15     agreed to been left out?

16          THE DEFENDANT:  No.

17          THE COURT:  Apart from what's contained in this plea

18     agreement, have any promises been made to you in order to get

19     you to plead guilty?

20          THE DEFENDANT:  No.

21          THE COURT:  Has anyone threatened you in any way to

22     get you to plead guilty?

23          THE DEFENDANT:  No.

24          THE COURT:  Now, with all that we've just discussed,

25     do you still wish to plead guilty pursuant to this plea

MC5ZZCHAP-TC

1    agreement?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  All right.  Mr. Kelly, do you know of any

4    valid reason why your client would prevail at trial or why your

5    client should not be permitted to plead guilty?

6              MR. KELLY:  No, your Honor.

7              THE COURT:  Dr. Chan, we've reached a point in the

8    proceedings where I need for you to tell me in your own words

9    what you did that makes you guilty of the crime charged in

10   Count One of the superseding information to which you tell me

11   you intend to plead guilty.

12             Tell me what you did, with whom you did it, where you

13   did it, when you did it.

14             THE DEFENDANT:  From August 2018 through March 2020,

15   in the Southern District of New York and elsewhere, I

16   distributed misbranded drugs that were shipped in interstate

17   commerce with the intent to mislead and avoid detection by

18   regulators and racing officials.  Specifically at the direction

19   of Kristian Rhein, I mislabeled and distributed mislabeled

20   clenbuterol for administration to thoroughbred racehorse under

21   the care of Empire Veterinary Group.

22             I knew what I did was wrong and against the law, and I

23   am very sorry for my actions.

24             THE COURT:  Is clenbuterol the only misbranded and

25   adulterated drugs you distributed?

MC5ZZCHAP-TC

1          MR. KELLY:  Your Honor, that's the basis of our plea

2    agreement with the government, the clenbuterol-related conduct.

3          THE COURT:  OK.  Let me just ask you, when you say you

4    distributed it, did you administer it to any horses under your

5    care?

6          THE DEFENDANT:  Clenbuterol is an oral substance.

7          THE COURT:  I know what it is.

8          THE DEFENDANT:  No, I did not personally administer

9    any.

10          THE COURT:  You said that you did this with the intent

11    to avoid detection, is that correct?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Did you take steps to avoid detection?

14          MR. KELLY:  May we have a moment, your Honor?

15          THE COURT:  Yes.

16          (Counsel conferred with the defendant)

17          THE DEFENDANT:  Yes, the labeling was incorrect.

18          THE COURT:  Anything else?

19          THE DEFENDANT:  No.  Could you repeat?

20          THE COURT:  Yes.  Did you take any other steps to

21    avoid detection of the distribution of adulterated or

22    misbranded drugs?

23          THE DEFENDANT:  I failed to report to the relevant

24    regulators the use of clenbuterol as required.

25          THE COURT:  Did you report the use to the trainers of

MC5ZZCHAP-TC

1    these horses and the owners?

2            THE DEFENDANT:  Yes.  The clenbuterol was submitted or

3    given to the trainers or the trainer's assistants.  They are

4    the agents for the owners.

5            THE COURT:  Did you bill the owners directly or the

6    trainers for your veterinary services?

7            THE DEFENDANT:  I did not do any billing in my

8    practice.

9            THE COURT:  It was all done by the practice or other

10   people other than you?

11           THE DEFENDANT:  Correct.

12           THE COURT:  All right.  At the time -- and you said

13   you did at least some of this in the Southern District of New

14   York?

15           MR. KELLY:  I think the government will be able to

16   make a proffer on this, your Honor.

17           THE COURT:  I do believe he said in the Southern

18   District of New York and elsewhere.

19           MS. MORTAZAVI:  Yes, your Honor.  The government can

20   proffer and I believe the defendant is willing to accept that

21   the drug at issue is manufactured outside New York State and

22   traveled through the Southern District of New York to reach the

23   veterinary practice in the Eastern District of New York.

24           THE COURT:  Do you agree with that, Dr. Chan?

25           THE DEFENDANT:  Yes, I do.

MC5ZZCHAP-TC

1          THE COURT:  All right. Thank you.

2          At the time you did all what you just described to me,

3    did you know that what you were doing was wrong?

4          THE DEFENDANT:  Yes, I did.

5          THE COURT:  Did you know that it was illegal?

6          THE DEFENDANT:  Yes, I did.

7          THE COURT:  Does the government wish any further

8    factual matter to be addressed with Dr. Chan in connection with

9    his allocution?

10          MS. MORTAZAVI:  No, your Honor.  I think the

11    government's proffer on that should be sufficient.

12          THE COURT:  All right.  Would you then, Ms. Mortazavi,

13    outline the evidence that you would offer against Dr. Chan if

14    the case were to go to trial.

15          MS. MORTAZAVI:  Certainly, your Honor.

16          If the case were to go to trial, the government would

17    present proof of a number of items, including recorded calls

18    between the defendant and his coconspirators discussing the use

19    of adulterated and misbranded drugs, including clenbuterol,

20    without valid prescription.  And I would note that clenbuterol

21    is a prescription drug.

22          We would supply proof of false veterinary bills that

23    were created by the veterinary practice and sent to the owners

24    which were also sent to the defendant concealing charges for

25    adulterated and misbranded drugs.

MC5ZZCHAP-TC

1          We would also offer lay and expert testimony that the

2     drugs involved in this case required prescriptions, were not

3     given or administered with valid prescriptions, and were

4     distributed to others for their own administration.  Those

5     others not being veterinarians.

6          We would also supply proof that the adulterated and

7     misbranded drugs at issue were manufactured outside of New York

8     State and traveled through the Southern District of New York.

9          THE COURT:  All right.  Just to be clear, Mr. Kelly,

10    you stipulate to that latter point that the drugs were -- I

11    don't remember if I asked you, I know I asked Dr. Chan, but you

12    stipulate that the drugs were manufactured outside of New York,

13    traveled through the Southern District of New York to the

14    Eastern District.  That's where the veterinary practice was

15    located?

16         MS. MORTAZAVI:  That's correct, your Honor.

17         THE COURT:  All right.  Ms. Mortazavi, is there an

18    adequate factual basis to support a plea of guilty to Count One

19    of the superseding information?

20         MS. MORTAZAVI:  Yes, your Honor.

21         THE COURT:  Mr. Kelly, is there an adequate factual

22    basis to support a plea of guilty to Count One of the

23    superseding information?

24         MR. KELLY:  Yes, your Honor.

25         THE COURT:  Are there any further questions you

MC5ZZCHAP-TC

1  believe I should explore with your client in connection with

2  his allocution?

3          MR. KELLY:  No, your Honor.

4          THE COURT:  All right.  Dr. Chan, now that we've

5  discussed your plea agreement and the possible penalties of the

6  crime to which you're pleading guilty, we can turn to entry of

7  a plea.

8          Are you prepared to proceed?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Would you please stand.

11          How do you plead, sir, to Count One of the superseding

12  information S15?

13          THE DEFENDANT:  Guilty.

14          THE COURT:  Are you pleading guilty because you are in

15  fact guilty?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Are you pleading guilty voluntarily?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you doing so of your own free will?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Have you been pressured or coerced in any

22  way to get you to plead guilty?

23          THE DEFENDANT:  No.

24          THE COURT:  All right.  Are there any other questions,

25  Mr. Kelly, that you believe I should ask Dr. Chan in connection

MC5ZZCHAP-TC

1   with this plea?

2           MR. KELLY:  No, your Honor.

3           THE COURT:  All right.  Ms. Mortazavi?

4           MS. MORTAZAVI:  No, your Honor.

5           THE COURT:  Dr. Chan, you've acknowledged that you are

6   in fact guilty as charged in Count One of the superseding

7   information.  Because I am satisfied that you know your rights,

8   including your right to go to trial, and that you are waiving

9   them voluntarily and that you are aware of consequences of your

10  plea, including the sentence that may be imposed, I find that

11  your plea is entered knowingly and voluntarily and is supported

12  by an independent basis in fact containing each of the

13  essential element of the offense.

14          I therefore accept your guilty plea, and I enter a

15  judgment of guilty of Count One of the superseding information,

16  drug adulteration and misbranding with the intent to defraud,

17  in violation of Title 21, United States Code, Section 331 and

18  333(a)(2).

19          You may be seated, sir.

20          Before we adjourn, Dr. Chan, I want to talk to you

21  about the process going forward.  The next step, as I had

22  mentioned earlier, is that the probation office needs to

23  prepare the presentence report that will assist me in

24  determining what the appropriate sentence is in this case.

25          In order to prepare that report, the probation office

MC5ZZCHAP-TC

```
 1    needs to interview you.  It's very important that the

 2    information you give to the probation officer be truthful and

 3    it be accurate.  As I said, that report is very important to me

 4    in determining what your sentence will be.

 5            Once the report is prepared, you and your lawyer, also

 6    the government and its lawyer will have the opportunity to

 7    examine that report.  You can challenge it, comment on it,

 8    object to anything contained factually within that report.

 9    Before I sentence you, you will have the opportunity to address

10    me directly if you wish to do so.

11            All right.  Is there any reason why I shouldn't direct

12    a presentence report to be prepared?

13            MS. MORTAZAVI:  No, your Honor.

14            MR. KELLY:  No, your Honor.

15            THE COURT:  Mr. Kelly, I presume you would wish to be

16    present at any interview of Dr. Chan?

17            MR. KELLY:  Yes, your Honor.

18            THE COURT:  Would you please arrange, then, for an

19    interview of Dr. Chan within the next two weeks.

20            And I order that no interview be conducted unless

21    Mr. Kelly is present with Dr. Chan.

22            Ms. Mortazavi, you will give a statement of fact to

23    probation within that 14-day time period, please.

24            MS. MORTAZAVI:  Yes, your Honor.

25            THE COURT:  Counsel, it's obviously very important
```

1   that once you receive that presentence report in draft form

2   that you give timely comments or objections to the probation

3   office.  Courtesy copies will be provided to chambers.  Once

4   the presentence report is finalized, that will be filed on the

5   docket as well.

6           Any submissions by the defendant are due two weeks

7   prior to sentencing.  The government submission is due one week

8   prior to sentencing.

9           Let me just take a look at proposed dates.  April 13,

10  does that present any problem for anyone?

11          MS. MORTAZAVI:  No issues with the government, you

12  Honor.

13          MR. KELLY:  Your Honor, that works for the defense.

14          THE COURT:  2:00 p.m. on April 13.

15          Dr. Chan, I just remind you again that it's critically

16  important that you be truthful and cooperative with the

17  probation officer.  Any failure to be truthful with probation

18  or the Court can have an adverse effect on your sentencing.  It

19  could subject you to a separate prosecution for perjury if

20  that, in fact, is the case.  But specifically, I am going to

21  reserve the right to deny you the two-level reduction in the

22  calculation of your sentencing guideline offense level that you

23  and the government have stipulated to for acceptance of

24  responsibility if you do not cooperate fully with the probation

25  office.

MC5ZZCHAP-TC

1          Do you understand, sir?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Ms. Dempsey, do you have the consent order

4     of forfeiture?  Do you have a clean copy for the Court's

5     signature?

6          MS. MORTAZAVI:  Your Honor, I have a copy here.  I

7     handwrote the date.  If the Court wants me to submit a new

8     copy, I can do that.

9          THE COURT:  Ms. Dempsey has the order.  I will sign

10    it.  We will docket it.

11         Everybody is on notice.  I assume there are no issues

12    with respect to the order for forfeiture amount since this

13    order is on consent, Mr. Kelly?

14         MR. KELLY:  That's correct.

15         THE COURT:  If there are any issues, you need to speak

16    to each other and provide the Court with notice in advance of

17    sentencing so that if we need to have any hearings with regards

18    to the forfeiture amount or any other financial penalties, I

19    can schedule that in advance of the sentencing.  Understood?

20         MS. MORTAZAVI:  (Nods head.)

21         THE COURT:  I will just ask that the parties please

22    order a copy of today's transcript.  I do go back and read the

23    plea hearing transcript as I prepare for any sentencing.

24         Is there anything that we should discuss today?

25         MS. MORTAZAVI:  Not from the government.

MC5ZZCHAP-TC

1              MR. KELLY:  No, your Honor.

2              THE COURT:  Thank you very much.

3              And I thank the court reporter for being here this

4    afternoon.

5              And we will stand adjourned, then.

6              (Adjourned)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25