N167FISC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4           v.                          20 Cr. 160 (MKV)

5   SETH FISHMAN,

6               Defendant.
                                        Conference
7   ------------------------------x

8                                       New York, N.Y.
                                        January 6, 2023
9                                       10:15 a.m.

10  Before:

11

12                  HON. MARY KAY VYSKOCIL,

13                                      District Judge

                         APPEARANCES
14
    DAMIAN WILLIAMS
15       United States Attorney for the
         Southern District of New York
16  BY:  SARAH MORTAZAVI
         Assistant United States Attorney
17
    LAW OFFICES OF STEVEN L. KESSLER
18       Attorney for Defendant
    BY:  STEVEN L. KESSLER
19
    GREEN & WILLSTATTER
20  BY:  RICHARD WILLSTATTER

21  Also Present:
    Robert Fishman (Via telephone)
22

23

24

25

1      (Case called)

2           THE COURT:  Good morning.  All right.  I guess we need

3  to try to get the interference issue figured out before we

4  proceed.  Is the line muted on the end of people dialed in?

5           THE DEFENDANT:  Good afternoon, your Honor.

6           THE COURT DEPUTY:  All right.  I'm going to hang the

7  AT&T line up and dial back in.  Don't hang up.

8           THE COURT:  It said there were three on the line.

9           THE COURT DEPUTY:  It's not the parties.  I told them

10  not to hang up.

11           THE COURT:  I don't know who else is on this line

12  because this line is not a public access line.

13           Mr. Kessler, did you give this number out to people?

14           MR. KESSLER:  Your Honor, I did not.  I believe the

15  number was, however, given to Robert Fishman, Seth Fishman's

16  father.

17           THE COURT:  Why?

18           MR. KESSLER:  I don't know why --

19           THE COURT:  It should not have been.  This is an open

20  public proceeding.  If he wanted to be here, he could be here

21  in open court.  I gave that number as an accommodation to

22  Dr. Fishman, not for public dissemination.  Now we have two

23  other people on the line.

24           MR. KESSLER:  I don't know anything about that, your

25  Honor.  I sent it directly to Dr. Fishman.  He's the only one

1    that I communicate with.

2              THE COURT DEPUTY:  Okay.  I see the parties have

3    joined us.  Please mute that line, sir.

4              THE DEFENDANT:  Yes.

5              THE COURT DEPUTY:  Thank you.

6              THE COURT:  All right.  Ms. Dempsey, would you call

7    the case, please.

8              THE COURT DEPUTY:  Yes, your Honor.

9              (Case called)

10             THE COURT DEPUTY:  Starting with the government, state

11   your appearances for the record.

12             MS. MORTAZAVI:  Good morning, your Honor.  Sarah

13   Mortazavi for the government.

14             THE COURT:  Good morning, Ms. Mortazavi.

15             MR. KESSLER:  Good morning, your Honor.  Steven

16   Kessler for Dr. Fishman.  With me today is Richard Willstatter,

17   my cocounsel and colleague.

18             THE COURT:  All right.  Good morning to both of you,

19   Mr. Kessler and Mr. Willstatter.  We haven't met yet, sir.  So

20   good morning.

21             Have you entered an appearance on the docket?

22             MR. WILLSTATTER:  Yes, your Honor.  Good morning.

23             THE COURT:  All right.  Thank you.  And good morning

24   to our court reporter.

25             Now, first of all, who else do we have on the dial in

1    line, please?

2              THE DEFENDANT:  Your Honor, Seth Fishman.

3              THE COURT:  All right.  Good morning, Dr. Fishman.

4              THE DEFENDANT:  Good morning to you.  Thank you.

5              THE COURT:  And who else is on the line?

6              MR. FISHMAN:  Your Honor, Robert Fishman, father of

7    Seth Fishman.

8              THE COURT:  Mr. Fishman, Dr. Fishman's father, you do

9    not have a right to be on this line.  This is an open court

10   proceeding, as are all court proceedings, and if you wish to be

11   present you have a right to be in the courtroom.  This line was

12   given only to Dr. Fishman in order to accommodate his

13   attendance today, although, as I'll discuss in a moment, he

14   doesn't have a right to be present today.  It should not have

15   been disseminated to you, and it certainly shouldn't have been

16   disseminated beyond you.

17             Is there anyone else on the line?  Did either of you

18   give this number out to anyone else?  Dr. Fishman?

19             MR. FISHMAN:  No, your Honor.

20             THE COURT:  All right.  Dr. Fishman?

21             THE DEFENDANT:  Your Honor, I haven't even seen the

22   number.  I was told yesterday by the counsel that they arranged

23   it and the number was dialed by one of the people here.

24             THE COURT:  All right.

25             THE DEFENDANT:  I don't even have the number.

N167FISC

|     |                                                                                     |
| --- | ----------------------------------------------------------------------------------- |
| 1   | THE COURT: All right. So we're here today to discuss |
| 2   | the difficulty we've had in concluding proceedings in this |
| 3   | court. As you all know, Dr. Fishman was convicted back in |
| 4   | February, to be specific, on February 2 of last year, after a |
| 5   | 10-day jury trial. His sentencing was scheduled and |
| 6   | repeatedly, consistent with a pattern throughout this case, |
| 7   | Dr. Fishman asked for and was granted adjournments. I want to |
| 8   | just note for the record that the first adjournment that he got |
| 9   | at the request of his then lawyers who were his second and his |
| 10  | third lawyers in this case——we're now up to his fourth and |
| 11  | fifth lawyers in the case——but his then lawyers requested an |
| 12  | adjournment to April 7——that's at ECF No. 815——in order for him |
| 13  | to get his financial information. So however many months ago |
| 14  | that is from today, seven months, an adjournment was granted |
| 15  | for Dr. Fishman to get a handle on his finances. I granted |
| 16  | subsequent adjournment of sentencing. I denied a third request |
| 17  | to delay sentencing. And he was sentenced then on July 11 of |
| 18  | 2022. |
| 19  | Now, in advance of that sentencing, I received from |
| 20  | Ms. Mortazavi an e-mail containing the government's sentencing |
| 21  | submission, and a proposed order of forfeiture, and I believe a |
| 22  | restitution order at that time. That was copied to |
| 23  | Dr. Fishman's lawyers clearly indicating the proposed amount of |
| 24  | forfeiture. At the sentencing, I specifically asked if counsel |
| 25  | had seen the order -- the proposed preliminary order. I also |

1    asked about why it was called "preliminary."  And I asked about

2    the amounts.  And Mr. Sercarz told me that he had seen the

3    amounts, that he had the back-up data, but that he had spoken

4    that morning with Dr. Fishman, and he had some questions about

5    the addition that led to the amount that the government was

6    seeking.  And so he proposed that I set a date for a hearing,

7    if one were necessary.  And he went on to say, But I believe

8    after some further discussions with Ms. Mortazavi we can

9    resolve this without the need for a hearing.  We're just not

10   prepared to accept this number today.

11           Now, even though he had had the proposed preliminary

12   order almost a full week in advance, no notice was given to the

13   Court in advance of sentencing, as is required under the rules

14   for me to hold an evidentiary hearing.  And counsel represented

15   at the time of sentencing that he was of the view that the

16   parties could likely work out the amount of forfeiture.  So,

17   pursuant to Mr. Sercarz's proposal, I went ahead at sentencing

18   and I imposed the preliminary order of forfeiture, which was

19   incorporated into the judgment.

20           Now, we discussed this the last time Mr. Kessler and

21   Ms. Mortazavi were together by telephonic conference.  It might

22   have been on Teams.  I'm forgetting which.  In any event, we

23   had a remote proceeding, again, at the request of counsel.  As

24   we discussed at that time, the parties clearly agreed at

25   sentencing that I would enter that preliminary order of

1    forfeiture proposed by the government.  But because the defense

2    was not prepared to accept the number amount of forfeiture --

3    not forfeiture, but the number amount of forfeiture at the time

4    of sentencing, I did allow time for the parties to inform me

5    whether they could reach agreement on the amount of forfeiture

6    on the final order and I set a deadline by which, absent any

7    objection, that preliminary order would become final and that,

8    if necessary, I would hold a hearing.

9         Both sides at the time of sentencing consented and

10   agreed that we could hold a post-judgment hearing with respect

11   to the amount of forfeiture.  Then, Mr. Kessler, I understand

12   you were retained by Dr. Fishman.  And I guess originally,

13   Mr. Willstatter, you were retained in connection with the

14   appeal, but you have now also appeared in this case.  I don't

15   know whether you're substituted for Mr. Sercarz and

16   Mr. Fernich.

17        MR. WILLSTATTER:  Oh, yes, Your Honor.  They're no

18   longer in the case, your Honor.

19        THE COURT:  That's what you're telling me.  As best I

20   can tell from the docket, they have not been terminated as

21   counsel.

22        THE DEFENDANT:  Your Honor, can I set something

23   straight?

24        THE COURT:  Who is speaking?

25        THE DEFENDANT:  They are terminated.  And as far as

N167FISC

| | |
|---|---|
| 1 | what she said, it's 100 percent accurate.  But I think it also |
| 2 | suggests something that's not fair on my part. |
| 3 | THE COURT:  Dr. Fishman, you are represented here by |
| 4 | counsel.  They have a right to speak.  I need to finish what I |
| 5 | intend to say which includes that you do not even have a right |
| 6 | to be present at today's hearing, although I have accommodated |
| 7 | you.  So please don't interrupt.  And please allow your counsel |
| 8 | to represent you. |
| 9 | Now, as I said after the sentencing, Dr. Fishman |
| 10 | retained new counsel and twice Mr. Kessler asked for more time |
| 11 | to object to forfeiture beyond the date that I had originally |
| 12 | granted.  I granted one extension.  And then Mr. Kessler asked |
| 13 | for more time to file a reply brief, and I granted that. |
| 14 | That's all at ECF 904, 905, 923, 938, 939. |
| 15 | Ultimately, a motion was filed challenging the |
| 16 | propriety of forfeiture, and none of the briefing that I |
| 17 | received dealt in any substance with the correct amount of |
| 18 | forfeiture if I were to overrule the late-filed objection about |
| 19 | whether the statute provides for forfeiture, or if I were to |
| 20 | find that the defense had in fact waived that argument. |
| 21 | I then scheduled a hearing to deal with the forfeiture |
| 22 | amount, which Mr. Kessler repeating the pattern, asking several |
| 23 | times to adjourn.  I granted that request, but I directed |
| 24 | counsel to appear for a video conference.  We had that video |
| 25 | call on October 24.  At that call, Mr. Kessler made it very |

1   clear that he was consenting to the process and waiving any

2   objection based on delays in resolving this aspect of

3   Dr. Fishman's sentencing which, of course, was entirely

4   appropriate since all of those adjournments and delays had been

5   at the request of the defense.  I told people on that

6   October 24 call that I would hear argument on whether the

7   applicable statute provides for forfeiture at all, and I would

8   entertain evidence on the correct amount of any forfeiture.

9           I scheduled that hearing for November 11.  Mr. Kessler

10  told me that Dr. Fishman intended to testify at that hearing

11  but was reluctant to travel.  I instructed Mr. Kessler to

12  confer with Dr. Fishman about whether he wished to appear in

13  person at the hearing that was going to be held and to let me

14  know by October 28.  I have a letter dated October 28 from

15  Mr. Kessler at ECF 954, but he didn't answer the question that

16  I asked.  Instead, he essentially asked me whether I would

17  direct the Bureau of Prisons to bring Dr. Fishman to New York

18  for the hearing by plane, and that is obviously not something

19  they've the power to do.  So I, again, adjourned the forfeiture

20  hearing to accommodate the defense.

21          I finally received a letter on November 4 from

22  Mr. Kessler telling me that Dr. Fishman is resigned to appear

23  by video conference.  The letter goes on to say, Of course such

24  an appearance would require him to have access all facilitates

25  necessary for him to review and testify to exhibits submitted

N167FISC

1    by the parties, and he expressed a hope, as I have, that the

2    government would assist in making such arrangements.

3           Now, I then set the hearing for December 1.  And once

4    again, I heard from Mr. Kessler that the hearing could not go

5    forward, telling me that this time the Bureau of Prisons has

6    not provided Dr. Fishman with all of the relevant documents.

7    And those communications are at 971, 979 and 980 of the docket.

8    There was a great deal of back-and-forth between counsel for

9    Dr. Fishman, the government, me, the Bureau of Prisons.  It

10   seemed the issues were resolved, and the documents were sent in

11   hard copy, as I understood it, to Dr. Fishman, but I did honor

12   the requests by the defense for a very long adjournment to give

13   Mr. Kessler time to review all the documents with Dr. Fishman.

14   And I adjourned that hearing from December 1 to today.  And

15   again, the defense advised the Court at the 11th hour that it

16   would not be ready.

17          The government filed an opposition.  I think I

18   received that letter on the Friday afternoon before Christmas.

19   I, notwithstanding the government's opposition, granted the

20   defense request to adjourn, and I directed the parties to

21   appear today for a status conference to discuss the process

22   going forward, not to hold a hearing.

23          So I then yesterday, again, on the eve of a proceeding

24   here, not directly from you, Mr. Kessler, but from

25   Ms. Mortazavi, that you contacted her to raise an issue that

1   Dr. Fishman will not waive his right to be present today.  Why

2   you didn't file something on the docket or reach out to my

3   courtroom deputy is beyond me.

4           But in any event, it is crystal clear that Dr. Fishman

5   does not have a right to be present today.  This is a status

6   conference normally held among the Court and counsel to -- and

7   I am now quoting -- "determine the status of the prosecution

8   and the steps necessary for its completion."  And that is from

9   *McKethan v. Mantello*, a Second Circuit case from 2008, which

10  makes it abundantly clear that under Second Circuit precedent

11  and Rule 43, Dr. Fishman has no Constitutional or statutory

12  right to be present today.  So I'm not troubled by the fact

13  that he doesn't waive his right.  Nevertheless, I have

14  accommodated his request and made available the dial-in number

15  which, in my view, has now been abused by that number being

16  shared beyond Dr. Fishman.  Somehow somebody other than

17  Dr. Fishman got that number.

18          Going forward, there will not be further delays here.

19          Now, I have one question for you, Ms. Mortazavi,

20  before I turn to what we're going to do going forward.  I

21  noticed in something that you filed that you are now talking

22  about a forfeiture amount in the $15,000,000 range, whereas the

23  preliminary order you had given me was 13 million something.

24  Is that increase in the number based on newly discovered

25  evidence or is it based on evidence that was previously

N167FISC

1     provided to the defense?

2              MS. MORTAZAVI:  Your Honor, we notified the Court to

3     the number I believe in a letter prior to the originally

4     scheduled December 1 hearing and then reiterated it in our

5     latest letter.  It is based on a reanalysis of documents

6     already produced in discovery.  And so these are not new

7     records.  In any event, all the supporting records have been --

8     were made available to counsel in mid-November.

9              THE COURT:  All right.

10             MS. MORTAZAVI:  And I will say, your Honor, the

11     parties have discussed trying to reach some sort of an

12     agreement short of a hearing on the number here.

13             THE COURT:  Where are we at?

14             MS. MORTAZAVI:  The government has suggested that if

15     defense counsel were willing to accept the originally proposed

16     number in the preliminary consent order of forfeiture that the

17     government would not press the higher number in order to

18     expedite these proceedings.  Defense counsel has, I believe,

19     rejected that overture.  And the government has, again, made

20     certain proposals.  There are discounts that the defense

21     believes are appropriate to --

22             THE COURT:  All right.  I don't need to hear the

23     back-and-forth, because that is really in the nature of

24     negotiations about a potential disposition.  And if I'm going

25     to be presiding over the needed evidentiary hearing, I don't

N167FISC

1    want to know the back-and-forth.

2        MS. MORTAZAVI:  Certainly, your Honor.  In which case,

3    there is no agreement between the parties.

4        THE COURT:  Okay.  Anything you want to say,

5    Mr. Kessler, on that subject about whether there is a prospect

6    for resolving this or whether we're going forward with an

7    evidentiary hearing?

8        MR. KESSLER:  Yes, your Honor.

9        Ms. Mortazavi is correct as far as she spoke.  It is

10   important to note that——and I will not get into the detail——but

11   even as your Honor indicated at the Zoom conference -- or Teams

12   conference --

13       THE COURT:  Yes, whatever it was.

14       MR. KESSLER:  -- that we had in October, your Honor

15   was cognizant and asked the government questions regarding

16   syringes, needles, things of that nature that were not carved

17   out.

18       THE COURT:  Physical items that were seized, in other

19   words?

20       MR. KESSLER:  Items that constituted the income of

21   Dr. Fishman and Equestology and that would be reflected in --

22   calculated all the additions of the deposits into the bank

23   account but were not carved out by the government to reduce

24   that figure.

25       THE COURT:  Right.

1          MR. KESSLER:  So there are categories that

2   Ms. Mortazavi and I and Mr. Willstatter have been discussing to

3   carve out from the figure that the government has remained

4   steadfast on to see if we could reduce the figure to something

5   that is agreeable to the parties.  That being said, that does

6   not change our belief.  That was detailed, and I will not do

7   this now --

8          THE COURT:  No.  We'll have a hearing on it.

9          MR. KESSLER:  -- the objections as far as the

10  lawfulness of the forfeiture.  But we have been discussing the

11  possibility of reducing all of this, yes.

12         THE COURT:  All right.  So the reason I'm asking these

13  preliminary questions that go to the amount, not the

14  entitlement of forfeiture, is because if you are able to reach

15  on agreement on the amount then we don't need an evidentiary

16  hearing, correct?

17         MR. KESSLER:  That is correct, your Honor.

18         THE COURT:  All right.  Correct, Ms. Mortazavi?

19         MS. MORTAZAVI:  I agree with that, your Honor.

20         THE COURT:  You can both stay seated.  Just pull your

21  microphones down so that you're picked up.

22         And we would then be proceeding with oral argument,

23  correct?

24         MS. MORTAZAVI:  That is correct.

25         MR. KESSLER:  That's correct.

1          THE COURT:  All right.  Look, I am not going to put

2     this off indefinitely while you continue to try to talk.  I

3     encourage you to keep talking, but Mr. Sercarz told me back in

4     July that there were going to be communications.  And as I say,

5     we're now six months later, I can't leave this adrift

6     indefinitely, and I won't.  So we're going to set a firm date

7     for an evidentiary hearing on the amount of forfeiture in the

8     unfortunate event you can't resolve the amount.  That date will

9     be also the date for oral argument on entitlement to

10     forfeiture, *et al*. and the waiver question.

11          All right.  Now, the problem we have is you have now

12     told me, Mr. Kessler, in your latest letter asking to adjourn

13     today's evidentiary hearing, that the facility in Miami where

14     Dr. Fishman is incarcerated does not have video access.

15          Is that accurate?

16          MR. KESSLER:  It is.

17          And, your Honor, when we were down in Miami, as you

18     know, we have really -- despite your categorization earlier, we

19     have jumped through hoops to attempt to make this work.  I, for

20     one --

21          THE COURT:  I think the government has as well.

22          MR. KESSLER:  I am not talking about the government.

23     I'm talking about our --

24          THE COURT:  Okay.  I don't want to debate with you.

25          MR. KESSLER:  No.  I'm --

1              THE COURT:  Go ahead.

2              MR. KESSLER:  I don't mean this to be a debate.  I'm

3       saying it for a reason.  So we put our health at risk so that

4       we could --

5              THE COURT:  You said all that in your letter,

6       Mr. Kessler.

7              MR. KESSLER:  I understand, your Honor.  Yes, so we

8       could have this hearing.

9              There is nothing about dragging this hearing on that

10      benefits me, and certainly not my client.  So we want this done

11      as quickly as possible as well.

12             THE COURT:  The evidence suggests otherwise.

13             MR. KESSLER:  I don't think so, your Honor, because

14      the letters --

15             THE COURT:  You can think what you want, Mr. Kessler,

16      but let's talk about going forward.

17             MR. KESSLER:  So going forward --

18             THE COURT:  I'm not going to debate the past with you.

19      The record is what it is.

20             MR. KESSLER:  It is.  And we will do the hearing, if

21      necessary, of course, as long as we are able to review the

22      documents beforehand with your client.

23             THE COURT:  You don't get to give me conditions, sir.

24      If there needs to be an evidentiary hearing, you need to do

25      whatever is required to prepare your client.

N167FISC

1          The other point I was about to make, because I don't

2     want to hear anymore speeches, if you're telling me there is

3     not video capability, it is not feasible to do this evidentiary

4     hearing remotely.  And I intend to enter an order that

5     Dr. Fishman, if he wishes to be present -- unless he waives his

6     right to be present, which he may or may not have, frankly.

7     But if he intends to testify, he needs to be here in person.  I

8     cannot and will not conduct the hearing by phone.  Dr. Fishman,

9     if he intends to be a witness, is someone whose demeanor I need

10    to see, whose credibility I need to assess if I'm being asked

11    to rule on an evidentiary issue, which is what you're asking me

12    to do.  So I'm going to issue an order today that

13    Dr. Fishman -- unless you tell me he's not going to testify and

14    that he waives in writing his right to be present which, as I

15    say, he may or may not have because the relevant rules, Rule

16    35, I believe -- let me just pull them so I don't misstate

17    anything.

18         If we are talking about subsequently located property

19    under Rule 32.2, I can hold a hearing to adjust the amount of

20    forfeiture, and he does not have a right to be present.  And

21    under Rule 35.  It is also clear under Rule 43 that he doesn't

22    have a right to be present.  Having said that, if he wants to

23    be present, he can be present and I will enter an order to

24    facilitate that, but that order will require that the Bureau of

25    Prisons produce him in New York.

1          In addition, I'm not going to adjourn it again, so

2    don't ask for further adjournments.  Mr. Kessler, if necessary,

3    you need to go to Miami, and you need to spend a significant

4    amount of time in Miami.  You can stay as long as it takes.

5    But your client asked to be housed in Miami.  He hired lawyers

6    who are located in New York.  I am considering -- and I've done

7    all that I can to accommodate the logistical issues, but enough

8    is enough and this hearing needs to go forward.  So I'm setting

9    the hearing for March 2.

10         MR. WILLSTATTER:  Your Honor, I will not be here on

11   March 2.

12         THE COURT:  Why not?

13         MR. WILLSTATTER:  Because I'm -- I'm a member of the

14   board of directors of the National Association of Criminal

15   Defense Lawyers, and we have a meeting in New Orleans that

16   week.

17         THE COURT:  You have to skip it, or Mr. Kessler can

18   proceed.  I am not adjourning it any further.  March 2 is the

19   date for the hearing.  Now, you can let me know.  I'm going to

20   enter an order today that the Bureau of Prisons produce him in

21   New York on March 2 at 10 a.m. for the hearing.  If he wishes

22   to waive presence, he can do that in writing because I don't

23   want issues constantly keep creeping up after the fact.  So I

24   want a written waiver if he's waiving his right to be present

25   and to testify.  Otherwise, as I say, I'm going to enter an

1    order today that he been produced by the Bureau of Prisons in

2    New York.

3        MS. MORTAZAVI:  Your Honor, I'll facilitate passing

4    that along to the BOP.

5        THE COURT:  Okay.  Now, excuse me, is there something

6    you want to say on the record?

7        MR. WILLSTATTER:  I'm sorry, your Honor.

8        The government was going to make some representations

9    about what happened, what we discovered during this last two

10    weeks, and so we wanted to make sure that that was on the

11    record here.

12        THE COURT:  So "she" being Ms. Mortazavi, not "she"

13    being the judge?

14        MR. WILLSTATTER:  Yes, your Honor.

15        I was saying to Mr. Kessler that Ms. Mortazavi, the

16    government lawyer, was -- the plan was that she would tell the

17    Court what has happened because it affects the record.

18        THE COURT:  You mean beyond what's recited in

19    Mr. Kessler's letter?

20        MR. WILLSTATTER:  Yes, your Honor, since that time.

21        THE COURT:  All right.

22        MR. WILLSTATTER:  There's been some developments.

23        THE COURT:  Okay.  Ms. Mortazavi, do you know what

24    counsel is referring to and is there something you wish to put

25    on the record?

N167FISC

1          MS. MORTAZAVI:  I don't know specifically what counsel

2     is referring to, your Honor, but I'm happy to discuss the

3     points that we had mentioned bringing up if the Court should

4     have questions on it since the defense would like me to put it

5     on the record.

6          The government sent three shipments of materials to

7     the defendant and was informed that all three of them were

8     delivered to him by the mail room by December 6 at the latest,

9     which is what we put in our letter.

10          THE COURT:  Let my just interrupt you.  I'm sorry to

11     do that, but you told me at the time of sentencing, and I

12     believe even subsequently, that you had previously provided

13     these materials to Mr. Sercarz and/or Mr. Fernich or

14     Mr. Feldman, all of whom represented Dr. Fishman at various

15     points in time.

16          Is that accurate?

17          MS. MORTAZAVI:  That's accurate, your Honor.

18          And I have gone through my e-mails to double check

19     this point.  Mr. Sercarz and I not only exchanged e-mails on

20     this, but we also had a phone call over the weekend prior to

21     sentencing on the forfeiture numbers and the materials the

22     government provided.

23          Now, as the Court explicated in the record here, it

24     was unclear whether new counsel was contesting the forfeiture

25     number or the theory of forfeiture.

N167FISC

1          THE COURT:  New counsel or Mr. Sercarz?

2          MS. MORTAZAVI:  New counsel.

3          THE COURT:  Oh, yes.

4          MS. MORTAZAVI:  To that point, because counsel did not

5    reach out to me on those underlying documents or the forfeiture

6    number, the government didn't initiate those discussions,

7    assuming that there was some continuity between counsel.  Once

8    it became clear that that was in dispute, the government then

9    made a more crisp set of records and provided those to the

10   defense and in hard copy to Dr. Fishman because we were told

11   that those materials could only be sent in hard copy.  And

12   again, we were told that they were delivered to him by at the

13   latest December 6.

14          The defense contests the notion that the defendant

15   received those materials on that date.  He apparently received

16   a stack of hard copy materials on December 16.  The government

17   believes that those materials are the papers that the

18   government had sent in its prior shipments.  And the way to

19   tell that is by looking through the documents, checking the

20   first page to see if they've been stamped as 3500 materials or

21   with government exhibit stamps.  I don't know if that process

22   has yet occurred, but there is a way to verify whether those

23   papers given on December 16 are the papers the government sent.

24   There is some dispute, in short, as to whether the defendant

25   has the hard copy materials at all.

N167FISC

```
 1              THE COURT:  All right.  I'm sorry.  Let me interrupt
 2    you again.  But Mr. Kessler and Mr. Willstatter have the same
 3    documents that you sent to Dr. Fishman?
 4              MS. MORTAZAVI:  They have electronic versions of all
 5    those documents.
 6              THE COURT:  Is that correct, Mr. Kessler?
 7              MR. KESSLER:  I believe so.
 8              THE COURT:  Okay.  Thank you.
 9              MS. MORTAZAVI:  Now, the defense has also separately
10    sent two DVDs of materials containing the government's exhibits
11    and some of the defenses proposed exhibits to the defendant.
12    As I understand it——and I'm just relaying information that the
13    defense counsel has told me——one did have DVD can be opened the
14    second DVD cannot.  And they are currently in the process of
15    troubleshooting to determine whether there is an issue with the
16    second DVD that can be resolved or if they need to send a
17    replacement disc.
18              Finally, and I'm not sure if they wish me to put this
19    on the record as well, but the parties are discussing the
20    possibility of the government putting in an affidavit in lieu
21    of live testimony for the government witness, again, to try to
22    streamline these proceedings as much as possible.
23              THE COURT:  Okay.  Have you discussed whether
24    Dr. Fishman can proffer whatever evidence he wishes to proffer
25    by affidavit?
```

1          MS. MORTAZAVI:  I have proposed it.  I don't know if

2     the defense has reached a position.

3          THE COURT:  Okay.  Well, obviously, I mean, you have a

4     right to have that be reciprocal if that's something you wish

5     to avail yourselves of.

6          All right.  Is that what you wish to have put on the

7     record, sir?

8          MR. WILLSTATTER:  Yes, your Honor.

9          THE COURT:  All right.

10          MR. KESSLER:  There is one thing that I'm not sure

11     Ms. Mortazavi meant to combine, but there are documents --

12          THE COURT:  Mr. Kessler, I'm sorry.  Can you just move

13     over -- you're behind the screen, so I can't see you.

14          That's good.  Thank you.

15          MR. KESSLER:  There are documents that she has

16     provided to me and I believe to my client that are not

17     documents that were provided to previous counsel.  So

18     those—and correct me if I'm wrong—were marked with the letter

19     F, as if forfeiture, that were specific for this particular

20     hearing that were not part of the trial exhibits or anything

21     presented at the trial.  The materials that --

22          THE COURT:  I'm sorry.  Let me just interrupt you for

23     clarity.  3500 materials were not all trial exhibits either,

24     correct?

25          MR. KESSLER:  That is correct, your Honor.

1           THE COURT:  Okay.  So are you saying these are

2    materials that are separate and apart from even the 3500

3    materials you were given?

4           MR. KESSLER:  That is my understanding, yes, your

5    Honor.  So they are separate from -- there were several sets.

6    Again, this is what we've been told.  We have an open line of

7    communication.  We have been talking extensively in trying to

8    get these issues -- I mean, we can disagree on the substance of

9    the hearing, but at least get the procedural piece taken care

10   of.  Clearly, it is not the fault of either party that

11   Dr. Fishman has not been given access to these documents.  The

12   DVDs that we sent down for him were sent down December 7 that

13   were first given to him yesterday.

14          THE COURT:  And if they can't be opened, there might

15   be something wrong with the DVD.  I don't know.

16          MR. KESSLER:  I understand, your Honor.  But it wasn't

17   for a month that we knew it couldn't be open.  It's not that

18   we --

19          THE COURT:  I understand that.  I understand what

20   you're saying.  But as I made clear on the record, Mr. Kessler,

21   if need be, you need to go to Miami, get a hotel room, and go

22   back repeatedly to meet with Dr. Fishman to be prepared for

23   hearing on March 2 if we're having an evidentiary hearing.

24          MR. KESSLER:  So in response, your Honor, I did.  And

25   when I went down, I had given a solid two-plus weeks from the

1      time the documents were sent until the time we went down, put

2      aside the chicken pox and COVID outbreaks, but we got inside.

3      And Dr. Fishman was not given -- had not seen -- it's not that

4      he wasn't allowed to have them when he and I were sitting

5      across from one another.  He hadn't even seen the documents

6      that had been sent out.

7               We have communicated, as my letter indicated, up

8      through the warden.  And we got permission from the warden to

9      do things that, apparently, aren't permitted to be done down

10     there.  So we have been doing this.  And yes, I'm happy to fly

11     down to Miami again to make this happen, but I cannot bring in

12     DVDs for Dr. Fishman to be looking at with me if he is not

13     given them by the facility and given access to them.  So my

14     ability which, I'm sorry, I have done absolutely everything we

15     can possibly do to get it done goes only so far.

16              We've been trying to get through road blocks.

17     Ms. Mortazavi has been wonderful in communicating with the

18     facility as well as we have.  We talked about a court order,

19     but that probably won't have any affect.  I'm sorry.  This is

20     nothing personal to you, your Honor, but the Bureau of Prisons

21     does its own thing and really --

22              THE COURT:  Correct.

23              MR. KESSLER:  -- doesn't respond to anybody else.  We

24     have been fortunate in making good connections with individuals

25     down there.  They like me, for whatever reason, so they've been

1    willing to take the extra step when I call down, but this is

2    not something that we have taken lightly.  And we have done

3    absolutely everything to do other than get myself a cell down

4    there and sit down with him and make sure that we can go over

5    this in time for the hearing.  So I will continue to do that

6    and, if need be, I will fly down there again and make sure that

7    we can access the materials in time for the hearing.

8         THE COURT:  Okay.  So we're -- I'm sorry.  Go ahead.

9    I didn't mean to cut you off.

10        MR. KESSLER:  One last piece, though.

11        As far as the hearing itself——and again I would like

12   Mr. Willstatter to be there March 2.  He has had this on his

13   calendar for quite some time.  If the Court can play with that

14   date, it would be greatly appreciated.  Even the following week

15   I think would be fine.  But we have discussed with

16   Ms. Mortazavi the possibility of the government's witness

17   submitting an affidavit.  That is in part conditioned on

18   whether there's an agreement of including in that affidavit, in

19   that declaration what it is that the government's witness has

20   not done as well.

21        THE COURT:  I don't know what that means.

22        MR. KESSLER:  Well, it's similar to what we discussed

23   earlier, your Honor, for example, the methodology that the

24   witness used in coming to his number.  But in going through

25   that methodology, and I am making this up.  In going through

1    that methodology, he took out a list of the bank deposits,

2    added the bank deposits, and that was the final figure, and did

3    not look at what those bank deposits represented, whether it

4    was a purchase for gauze or for needles or for something else,

5    but just did the basic calculation.

6           THE COURT:  All right.  I mean, all of that you'll get

7    at the hearing.

8           MR. KESSLER:  Yes.

9           THE COURT:  All right.

10          MR. KESSLER:  But that is one of the items as far as

11   the affidavit is concerned.

12          And as far as Dr. Fishman is concerned, I am quite

13   certain that Dr. Fishman will want to testify.  When we leave

14   here today, however, I will contact him—that has been another

15   issue—but I will ask him if he can't get a legal line -- and

16   he's on the line now.  So, Dr. Fishman, if you can't get a

17   legal line when I am back in the office, please call me from

18   the pay phone and we can have a few-minute conversation

19   regarding what Judge Vyskocil is asking here.

20          THE COURT:  All right.  Let me ask you one thing.

21   March 6, does that accommodate your issue?

22          MR. WILLSTATTER:  I'm returning that day from

23   New Orleans, your Honor.

24          THE COURT:  All right.  There's no reason you can't

25   return Sunday night, is there?

N167FISC

1              MR. WILLSTATTER:  Well, I already have the tickets.

2              THE COURT:  Look, there's just so much play I have in

3     my calendar.  I'm willing to accommodate you by moving it to

4     the 6th, but that's honestly the best I can do.  I have a trial

5     beginning the next morning.

6              MR. KESSLER:  I am available on the 6th, your Honor.

7              THE COURT:  And you're available on the 2nd.

8              MR. KESSLER:  I am.  The 6th works better, but yes, I

9     am available on the 2nd, if necessary.

10             THE COURT:  Are you available on the 6th,

11    Ms. Mortazavi?

12             MS. MORTAZAVI:  I'm available both dates, your Honor.

13             THE COURT:  All right.  You can let me know.  Well, if

14    the 6th works better for you, why don't we say the 6th instead

15    of the 2nd.  And counsel, you know, that's as much as I can do.

16    You can look into changing your tickets.  You can -- but

17    Dr. Fishman is well represented by Mr. Kessler in any event.

18             All right.  Is there anything else we should talk

19    about before we adjourn then?

20             MS. MORTAZAVI:  Your Honor, if I may, only because it

21    was brought up, I'd like to clarify the government's exhibits.

22             They consist of materials that we already produced in

23    discovery.  Those that we marked as trial exhibits, but of

24    course, include those that we didn't mark as trial exhibits and

25    then materials that our witness prepared in preparation for the

1    hearing, which of course --

2              THE COURT:  Like summary exhibits, you mean?

3              MS. MORTAZAVI:  Correct.

4              THE COURT:  Which I think you referenced when we spoke

5    on October 24.

6              MS. MORTAZAVI:  That's correct, your Honor.

7              THE COURT:  And are those the F documents?

8              MS. MORTAZAVI:  The F denotes things that were not

9    marked as trial exhibits but would include things that were

10   produced in discovery or that the witness has created in

11   preparation for the hearing.  So I just want to be clear that

12   there weren't materials that were withheld from prior counsel.

13             THE COURT:  All right.  In any event, I mean, all of

14   this is a record not for me, but for whatever purposes you all

15   want it down the road.

16             Is there anything else that we need to talk about

17   today?

18             MS. MORTAZAVI:  Not from the government, thank you.

19             THE COURT:  Mr. Kessler?

20             MR. KESSLER:  No, your Honor.  Unless you wish for me

21   to respond to anything you've previously said.

22             THE COURT:  No.  I'm going to -- so just to sum up,

23   we're going to move forward with this evidentiary hearing on

24   the forfeiture amount and entitlement to forfeiture, *et al.* on

25   March 6.  If you tell me before then that Dr. Fishman does not

N167FISC

1   intend to testify or that he's going to testify by affidavit

2   and that he waives his right to be present, then it will just

3   be oral argument.  But otherwise, it will be an evidentiary

4   hearing on March 6.  And today, in connection with the order

5   setting that hearing, I'm going to issue an order to the Bureau

6   of Prisons that he be produced in this courtroom on March 6 at

7   10 a.m.

8            MR. KESSLER:  May I ask you to wait until I've had the

9   opportunity to speak to Dr. Fishman before issuing that order?

10  So if I can --

11           THE COURT:  Why?  What difference does it make?

12           MR. KESSLER:  The difference appears to be, your

13  Honor, that once the order is received by BOP -- and please, I

14  am not an expert in the intricacies in the Bureau of Prisons.

15           THE COURT:  Okay.  We're just talking.

16           MR. KESSLER:  But it appears that once the order is

17  received and the wheels are set in motion, Dr. Fishman will

18  then be removed from the facility.

19           THE COURT:  I understand.  Okay.

20           MR. KESSLER:  It is a six- to eight-week process for

21  them to remove --

22           THE COURT:  Look, last time you told me four to six

23  weeks.  Now you're telling me six to eight weeks.  I pushed the

24  date out from what I had intended precisely because of your

25  representations made last time that he needed four to six

1    weeks.  Then he waived his right to be present.  I get the

2    logistical problems.  They're not your fault.  They're not

3    Dr. Fishman's fault.  But I will give you time to try to talk

4    to Dr. Fishman, but --

5            MR. KESSLER:  If you can wait until—today is

6    Friday—so Monday, your Honor.

7            THE COURT:  All right.  Monday.  I'm issuing the order

8    today, setting the hearing on Monday.  I'm going to issue the

9    order to the Bureau of Prisons.  All right?  That gives you

10   time to talk to Dr. Fishman.  And you can let me know if that

11   order is unnecessary either because he's prepared to testify by

12   affidavit or he doesn't need to testify and he waives his right

13   to the extent he has a right to be present at the hearing if

14   he's not going to testify.

15           Now, I am -- this is a final warning.  I am not

16   adjourning this again.  We are going forward on March 6.  If

17   there is any objection to that or requests by the defense to

18   delay again, it will be denied.  And it will be deemed by this

19   Court as a waiver of any objection.

20           Am I clear?

21           MR. KESSLER:  Understood, your Honor.

22           MS. MORTAZAVI:  Yes, your Honor.

23           THE COURT:  All right.  Is there anything else then

24   that we can accomplish today?

25           MS. MORTAZAVI:  Not from the government.

N167FISC

1          MR. KESSLER:  So just to clarify on my part, your

2    Honor, you will not hear from me unless Dr. Fishman waives his

3    right to be present.

4          THE COURT:  To the extent he has a right, yes.

5          MR. KESSLER:  Do you want a letter from me?

6          THE COURT:  Why don't you give me a letter either way

7    by 4 p.m. on Monday so that I can issue an order before the end

8    of the day if --

9          MR. KESSLER:  And I am clear that if Dr. Fishman does

10   not wish to be physically present then, as you indicated

11   earlier, he will not be able to testify.

12         THE COURT:  Correct.  Because I need to assess his

13   demeanor and his credibility.

14         MR. KESSLER:  Okay.

15         THE COURT:  I mean, an evidentiary hearing, we can't

16   do it by telephone, it just does not work.  And I don't even

17   think the Federal Rules allow for, but I haven't studied that

18   in that much detail.

19         MR. KESSLER:  I don't know if I agree with the

20   conclusion, your Honor, but I understand your position.  So I

21   will get a letter to you, add to my list of letters on the

22   docket, and that will be for 4 o'clock on Monday.

23         THE COURT:  Okay.  All right.  Thank you all very

24   much.  Thank you very much to our court reporter.  And I would

25   ask the parties to please order a copy of the transcript of

N167FISC

1    today's proceeding and make it available to the Court.

2                   All right.  Thank you.

3                   (Adjourned)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25