Kb5dskep

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           S5 20 Cr. 0160(MKV)

5    GREGORY SKELTON,

6              Defendant.

7    ------------------------------x

8
                                           November 5, 2020
9                                          3:30 p.m.

10
     Before:
11
                    HON. MARY KAY VYSKOCIL,
12
                                           District Judge
13

14                    APPEARANCES (via Skype)

15   AUDREY STRAUSS
          Acting United States Attorney for the
16        Southern District of New York
     BY:  SARAH MORTAZAVI
17        Assistant United States Attorney

18   CLAYMAN & ROSENBERG
          Attorneys for Defendant
19   BY:  ISABELLE A. KIRSHNER

20

21

22

23

24

25
```

Kb5dskep

1              (Video/teleconference established)

2              THE COURT:  Ms. Dempsey, would you call the calendar,

3       please?

4              THE CLERK:  Yes, your Honor.

5              We are here in the matter of 20 Criminal 160, United

6       States of America versus Gregory Skelton.

7              Counsel, starting with the government, please state

8       your name for the record.

9              MS. MORTAZAVI:  Good afternoon, your Honor.  Sarah

10      Mortazavi for the government.

11             THE COURT:  Good afternoon, Ms. Mortazavi.

12             MS. KIRSHNER:  Good afternoon, your Honor.  Isabel

13      Kirshner, of Clayman & Rosenberg, for Mr. Skelton.

14             THE COURT:  All right.  Good afternoon, Ms. Kirshner.

15             MS. KIRSHNER:  Mr. Skelton is also on the line.

16             THE COURT:  Mr. Skelton, good afternoon.

17             THE DEFENDANT:  Good afternoon, your Honor.

18             THE COURT:  All right.  And we have with us as well a

19      court reporter, Mr. Bologna.  Are you able to hear me?

20             THE REPORTER:  Yes, your Honor.

21             THE COURT:  All right.  Terrific.

22             So let me begin with an application that the Court

23      received to seal this proceeding and all filings related to it,

24      including the public docket, any notifications of any matters

25      relating TO this proceeding.

Kb5dskep

1          Does anyone wish to be heard with respect to that

2     application?

3          MS. MORTAZAVI:  The government has nothing further

4     beyond what's in the papers, your Honor.

5          THE COURT:  All right.  Thank you, Ms. Mortazavi.

6          Ms. Kirshner?

7          MS. KIRSHNER:  We would join in that application, your

8     Honor.

9          THE COURT:  All right.  The Court has carefully

10    reviewed the application and does find it appropriate, in light

11    of defendant's agreement to cooperate going forward, for this

12    proceeding to be sealed, and so I will sign the order that was

13    submitted to the Court sealing this proceeding.  All papers

14    submitted in connection with the proceeding, which I have

15    received in advance and will be discussing during this hearing,

16    and that includes the transcript, they are all ordered under

17    seal and no filings will be made on the public docket,

18    including the fact that this hearing occurred.

19          As I say, I will sign the order once we conclude

20    today's hearing, and my courtroom deputy will get copies to

21    each of you, Ms. Kirshner and Ms. Mortazavi.

22          MS. KIRSHNER:  Thank you, your Honor.

23          THE COURT:  All right.  So, Mr. Skelton, are you able

24    to speak and understand English clearly.

25          THE DEFENDANT:  Yes.

Kb5dskep

1          THE COURT:  Is English your native language?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.  I would just ask you, then, if

4     at any point you cannot hear me, sir, or you cannot understand

5     me, to please let me know.  Either speak up or raise your hand,

6     tell me to stop, and I will do that and we'll take care of

7     whatever the problem is.  All right?

8          THE DEFENDANT:  OK.

9          THE COURT:  All right.  I'm informed that the

10    defendant has an application to withdraw his plea of not

11    guilty, to waive indictment, and to enter a plea of guilty to a

12    one-count sealed information that's labeled S5 in this case, 20

13    Criminal 160.

14         Is that correct, Ms. Kirshner?

15         MS. KIRSHNER:  Yes, your Honor.

16         THE COURT:  All right.  That information that has been

17    provided to the Court charges Mr. Skelton with one count of

18    conspiracy to adulterate and/or misbrand drugs, in violation of

19    Title 18 United States Code, Section 371.

20         Is that correct, Ms. Mortazavi?

21         MS. MORTAZAVI:  That's correct, your Honor.

22         THE COURT:  All right.  And, Ms. Kirshner, that's also

23    yours and the defendant's understanding?

24         MS. KIRSHNER:  Yes, your Honor.

25         THE COURT:  All right.  So that is the reason we are

Kb5dskep

1    convened today.  Before we get to the substance of what we need

2    to take care of today, I note that we are proceeding by video

3    conference in light of the ongoing COVID-19 pandemic and the

4    related restrictions.  Under Section 15002 of the CARES Act,

5    the Coronavirus Aid Relief and Economic Securities Act, the

6    Court may only proceed with a felony plea in -- remotely by

7    video conference if the Court finds for specific reasons that

8    the plea cannot be delayed without serious harm to the

9    interests of justice.  I have before me a letter dated

10   October 30th from Andrew Adams in the Office of the United

11   States Attorney for the Southern District of New York.  I

12   believe he represents that Ms. Kirshner joins in that letter.

13           Is that correct?

14           MS. KIRSHNER:  Yes, your Honor.

15           THE COURT:  All right.  And that letter requests that

16   the proceeding move forward and not be delayed.  It sets forth

17   a number of reasons for that request.

18           Does anybody wish to be heard with respect to the

19   application?

20           MS. MORTAZAVI:  Nothing further from the government.

21           MS. KIRSHNER:  Nothing further from me, your Honor.

22           THE COURT:  All right.  Thank you.

23           So having reviewed the letter carefully, I do find

24   that there are specific reasons why today's plea cannot and

25   should not be delayed without doing serious harm to the

Kb5dskep

1    interests of justice.  Specifically, Mr. Skelton understandably

2    has an interest in having this matter resolved as promptly as

3    possible, given the dislocations and the stress of having a

4    criminal matter open against him.  The government similarly has

5    an interest in securing Mr. Skelton's cooperation, which he has

6    committed to provide pursuant to the plea agreement, and that

7    will be cooperation in connection with its investigation

8    related to this and other similar cases or matters involving

9    horse doping.  Those are both specific reasons that warrant the

10   Court moving forward.

11          In addition, there has been a resurgence of COVID-19

12   in both New York City and in surrounding states.

13          I understand that Mr. Skelton lives in Indiana, is

14   that correct, sir?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  All right.  I don't know what the COVID

17   situation is there, but in any event, in light of the

18   resurgence of COVID-19 and the concerns about travel, it's

19   unclear to the Court when the next opportunity for us to

20   convene together and conduct this proceeding in person would

21   be.  So, I do find that those are all specific reasons why

22   delaying today's proceeding further would do serious harm to

23   the interests of justice, and I will therefore grant the

24   application to proceed under Section 15002 of the CARES Act.

25   And we will sign an order to that effect and get that to the

Kb5dskep

1    parties after today's hearing as well.  That order will

2    similarly be kept filed and kept under seal until further

3    notice.

4            Next, I have two documents that were submitted to me

5    in advance of today's hearing -- a written waiver of

6    Mr. Skelton's right to be present in person in the courthouse

7    before me for today's proceeding, and a parallel consent to

8    proceed today by video conference.  I need to confirm with the

9    defendant and with you, Ms. Kirshner, that Mr. Skelton was

10   advised of his rights with respect to appearing physically at a

11   change of plea hearing, that he understood those rights, and

12   that he voluntarily gave up the right to appear in open court.

13           So, as I say, I have two signed documents, a waiver of

14   right to be present at a criminal proceeding and a consent to

15   proceed by video conference.

16           Ms. Kirshner, would you please describe for me -- did

17   we lose Ms. Kirshner?

18           (Pause)

19           THE CLERK:  I think we did.

20           THE COURT:  Yes.  Ms. Dempsey, are you able to tell?

21           THE CLERK:  Yes.

22           MS. MORTAZAVI:  I no longer --

23           THE COURT:  Yes, I can't see her either, Ms.

24   Mortazavi, but Ms. Dempsey has the control panel so she may be

25   able to tell whether she is still on the line.

Kb5dskep

1          THE CLERK:  No, she dropped.

2          THE COURT:  All right.  So let's wait for her to

3   reconnect.

4          (Pause)

5          THE CLERK:  Yes, she's coming back.

6          MS. MORTAZAVI:  I'm back.  I'm sorry I got cut off

7   there.

8          THE COURT:  No problem, Ms. Kirshner.

9          MS. KIRSHNER:  I don't know what happened but

10   something just went boop.

11          THE COURT:  Your video is not yet back.

12          MS. KIRSHNER:  OK.  Let me --

13          THE COURT:  Ah, there you are.  Nice to see you.

14          MS. KIRSHNER:  Thank you.

15          THE COURT:  All right.  Ms. Kirshner, would you

16   please -- I think you heard me say that I have these two

17   documents, and I was about to ask you, could you please

18   describe for me how the documents were provided to the

19   defendant, who seems to have signed them, or authorized his

20   signature, and confirm for me that you explained to the

21   defendant what his rights were and that it's your sense from

22   your conversations that he understood those rights and was

23   willing voluntarily to give up the right to appear in person?

24          MS. KIRSHNER:  Yes, your Honor.  Those documents were

25   provided to me by Mr. Adams.  I forwarded them via email to

Kb5dskep

1   Mr. Skelton.  He and I spent a considerable amount of time on

2   the telephone reviewing those two documents as well as all the

3   other documents that are relevant to today's proceeding.  We

4   discussed it.  He understood it.  And there is no question in

5   my mind he understands the rights that he's waiving and prefers

6   to proceed for purposes of this discussion by video as opposed

7   to in person, and also understands he has the right to have had

8   these charges presented to a grand jury and --

9        THE COURT:  All right.  We'll get to that in minute.

10  We'll get to that separately.  I will make a record in a

11  moment, because I can't even get to that until we get past the

12  CARES Act finding.

13       MS. KIRSHNER:  OK.

14       THE COURT:  So, Ms. Kirshner, these two documents, the

15  waiver of right to be present and the consent to proceed by

16  video, appear to have your signature on them next to where your

17  name is printed.  Did you in fact sign these two documents?

18       MS. KIRSHNER:  I did, your Honor.

19       THE COURT:  All right.

20       So, Mr. Skelton, let me just ask you, did you hear

21  what your attorney explained to me about getting these

22  documents to you and discussing with you what your rights are?

23       THE DEFENDANT:  Yes, your Honor.

24       THE COURT:  And do you agree with everything she

25  represented to the Court?

Kb5dskep

| | |
|---|---|
| 1 | THE DEFENDANT:  Yes, your Honor. |
| 2 | THE COURT:  Is there anything left out or that you |
| 3 | wish to add or ask the Court? |
| 4 | THE DEFENDANT:  No, your Honor. |
| 5 | THE COURT:  All right.  These two documents have a |
| 6 | signature that purports to be yours next to where your name is |
| 7 | written in, "Gregory Skelton."  Did you in fact sign these |
| 8 | documents in those places indicated? |
| 9 | THE DEFENDANT:  Yes, your Honor. |
| 10 | THE COURT:  All right.  Did you read the documents |
| 11 | before you signed them? |
| 12 | THE DEFENDANT:  Yes, your Honor. |
| 13 | THE COURT:  Do you understand, Mr. Skelton, that you |
| 14 | do have a right to appear live before me at the courthouse? |
| 15 | THE DEFENDANT:  Yes, your Honor. |
| 16 | THE COURT:  And do you wish to waive that right? |
| 17 | THE DEFENDANT:  Yes, your Honor. |
| 18 | THE COURT:  And do you consent to proceed today with |
| 19 | your entry of a plea by video conference, as we're all |
| 20 | assembled? |
| 21 | THE DEFENDANT:  Yes, your Honor. |
| 22 | THE COURT:  All right.  I do find that Mr. Skelton |
| 23 | understands his right to appear live at the courthouse before |
| 24 | me and to be physically present for entry of a plea.  I find |
| 25 | that he has willingly and voluntarily and knowingly waived that |

Kb5dskep

1   right and he does voluntarily consent to proceed by video

2   conference.

3          So, one final matter that I want to discuss before we

4   get to the substance of the plea.  As you may know, recently

5   Rule 5 of the Federal Rules of Criminal Procedure was amended.

6   That amended rule requires me to both enter a written order and

7   to verbally, at the first time counsel for both parties are

8   physically present before me, to admonish the government and

9   remind it of its disclosure obligations.

10          I have entered a written order to that effect in the

11   main case, 20 Criminal 160.  I did that sometime last week, I

12   believe, but it is on the docket.

13          I now remind the government orally of its obligations

14   under Brady v. Maryland and its progeny to disclose to the

15   defense all information, whether admissible or not, that is

16   favorable to the defendant, material to guilt or to punishment,

17   and that is known to the government.  The government must make

18   good-faith efforts to disclose such information to the defense

19   as soon as reasonably possible after the existence of that

20   information becomes known to the government.  As part of that

21   obligation, the government must disclose information that could

22   be used to impeach the trial testimony of any government

23   witness within the meaning of Giglio v. United States and its

24   progeny, and must do so sufficiently in advance of trial in

25   order for the defendant to make effective use of that

Kb5dskep

1    information at any trial.

2         I remind you, Ms. Mortazavi, that these obligations

3    are continuing ones and they apply to information whether the

4    government credits that information or not.  I remind you

5    further that for these purposes, purposes of disclosure

6    obligations, the "government" includes any federal, state, or

7    local prosecutors, law enforcement officers, and other

8    officials who have participated in the investigation and

9    prosecution of the offense charged whether or not such

10   officials are still part of the team, and that you have an

11   affirmative obligation to seek from these sources all

12   information subject to disclosure to the defense.

13        Finally, I caution the government that if it fails to

14   comply with its disclosure obligations, any number of

15   consequences may follow, including the following:  I may order

16   production of the information and specify the terms and

17   conditions for such production.  I may grant a continuance.  I

18   may impose evidentiary sanctions.  I may impose sanctions on

19   any lawyer responsible for wrongful conduct by the government.

20   I may dismiss the charges before trial or vacate a conviction

21   after trial or after a guilty plea, and I may enter any other

22   order that is just under the circumstances.

23        Ms. Mortazavi, do you understand these obligations and

24   can you confirm on the record that you have fulfilled and will

25   continue to fulfill them in this matter?

Kb5dskep

1          MS. MORTAZAVI:  Yes, your Honor.  The government

2   understands its obligations.  It has complied with them and

3   will continue to do so.

4          THE COURT:  All right.  Thank you, Ms. Mortazavi.

5          All right.  Counsel, is this plea pursuant to an

6   agreement, Ms. Mortazavi?

7          MS. MORTAZAVI:  Yes, your Honor.  It is pursuant to a

8   cooperation agreement.

9          THE COURT:  All right.  Ms. Kirshner?

10         MS. KIRSHNER:  Yes, your Honor.

11         THE COURT:  All right.  I have in front of me a letter

12  dated October 22nd, addressed to Ms. Kirshner and Mr. Clayman,

13  on the letterhead of The United States Department of Justice,

14  the U.S. Attorney for the Southern District of New York, signed

15  by Andrew Adams in the Office of Audrey Strauss, Acting United

16  States Attorney for the Southern District of New York.  This

17  document will be entered in the record as Government Exhibit 1.

18         Mr. Skelton, do you have a copy of this letter?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.  We'll talk further about it in

21  a moment.

22         I'm also advised that Mr. Skelton has signed a waiver

23  of his right to indictment.  Is that correct, Ms. Kirshner?

24         MS. KIRSHNER:  Yes, your Honor.

25         THE COURT:  All right.  Do you have a copy of that

Kb5dskep

1    document, Ms. Kirshner?

2            MS. KIRSHNER:  Yes.

3            THE COURT:  I want to direct your attention to the

4    fourth line of the document.

5            MS. KIRSHNER:  OK.

6            THE COURT:  It reads that "The above named

7    defendant" -- and let me just skip down -- "hereby waives in

8    open court prosecution by indictment."  I propose to strike the

9    words "in open court" since we are not in open court.

10           Is that acceptable?

11           MS. KIRSHNER:  Yes, your Honor.

12           THE COURT:  All right.  Ms. Mortazavi, any objection?

13           MS. MORTAZAVI:  No objection, your Honor.

14           THE COURT:  All right.  I will make that edit on the

15   Court's copy of the document, which I will then mark as Court

16   Exhibit 1 and we'll return to talk about the substance of this

17   in a few moments.

18           Ms. Mortazavi, can you confirm what actions the

19   government has taken with respect to notification of victims,

20   bearing in mind, of course, that today's proceeding is sealed?

21           MS. MORTAZAVI:  Your Honor, the victims are aware of

22   this case.  The government has been in touch with them.  And as

23   your Honor notes, this proceeding is sealed so no victims were

24   notified, but they will be notified prior to sentencing.

25           THE COURT:  All right.  Thank you.

Kb5dskep

1          Mr. Skelton, before I accept your Waiver of Indictment
2    and discuss with you your desire to enter a plea of guilty,
3    there are a number of questions that I need to ask you, and you
4    need to be under oath when I ask you those questions.  The
5    purpose of the first round of questions is to ensure that your
6    Waiver of Indictment and your desire to enter a plea of guilty
7    is in fact valid.  In the discussion I'm going to have with
8    you, I may cover points more than one time, and I may also ask
9    you questions about things that are specifically covered in
10   some of the written forms and documents and agreements that you
11   may have seen and you may have signed.  If I do that, it may
12   seem repetitive to you, but it is very important that you
13   understand what we're about to do today.
14          In that regard, I just remind you, if you don't
15   understand something that I ask you, please say so and I can
16   reword the question, or if you need to, you can speak to be
17   Ms. Kirshner.  We'll make arrangements for the two of you to
18   speak in private.  Do you understand that?
19          THE DEFENDANT:  Yes, your Honor.
20          THE COURT:  And you will let me know if you do not
21   understand or if you need to consult with counsel, correct?
22          THE DEFENDANT:  Yes, your Honor.
23          THE COURT:  All right.  Ms. Dempsey, would you please
24   swear Mr. Skelton?
25          THE CLERK:  Mr. Skelton, please raise your right hand.

Kb5dskep

1                You do solemnly swear that the testimony you shall

2        give this Court in this issue now on trial shall be the truth,

3        the whole truth, and nothing but the truth, so help you God?

4                THE DEFENDANT:  Yes, I do.

5                THE CLERK:  Thank you.

6                THE COURT:  Thank you.

7                Mr. Skelton, do you understand that you have just

8        solemnly promised to tell the truth?

9                THE DEFENDANT:  Yes, your Honor.

10               THE COURT:  And do you understand that if you answer

11       any of my questions falsely, your false or untrue answers may

12       later be used against you in another prosecution for perjury or

13       for making a false statement?

14               THE DEFENDANT:  Yes, your Honor.

15               THE COURT:  Do you understand?

16               THE DEFENDANT:  Yes, your Honor.

17               THE COURT:  All right.  Mr. Skelton, can you tell me,

18       please, how old are you?

19               THE DEFENDANT:  I'm 47 years old.

20               THE COURT:  All right.  And how far have you gone in

21       school?

22               THE DEFENDANT:  I received a doctorate in veterinary

23       medicine from Louisiana State University.

24               THE COURT:  And you are a veterinarian?

25               THE DEFENDANT:  Yes, I am.

Kb5dskep

1              THE COURT:  All right.  And we have already

2   established you do speak and understand English perfectly well?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Are you a United States citizen, sir?

5              THE DEFENDANT:  Yes, I am.

6              THE COURT:  Are you now or have you recently been

7   under the care of a medical doctor?

8              THE DEFENDANT:  I have a medical doctor, yes.

9              THE COURT:  All right.  But are you being treated for

10  any current conditions?

11             THE DEFENDANT:  Yes, I'm being treated for different

12  conditions.

13             THE COURT:  Bearing in mind that today's proceeding is

14  sealed and I am not trying to invade your privacy, can you

15  outline for me, in just general terms, what conditions you're

16  being treated for?

17             THE DEFENDANT:  I'm being treated for morbid obesity,

18  hypertension, diabetes, atrial fibrillation, and panic

19  disorder.

20             THE COURT:  All right.  Are you now or have you ever

21  been treated by a psychiatrist?

22             THE DEFENDANT:  I currently see a psychologist.  I

23  have had -- excuse me.  I currently visit with a psychologist

24  weekly.  We do it telehealth because of the virus.

25             THE COURT:  A psychologist?

Kb5dskep

1          THE DEFENDANT:  Yes.  I have seen a psychiatrist in

2     the past.  I last had an appointment with one in June.

3          THE COURT:  All right.  Let me ask you, sir, does

4     either your panic condition or whatever it is that you are

5     consulting with a psychologist and that you have consulted with

6     a psychiatrist about in any way impact your ability to

7     understand what we're doing today and to freely move forward

8     with what we are about to do in terms of your entering a plea?

9          THE DEFENDANT:  I am perfectly aware of everything

10    that's been said.  It would not interfere with anything that I

11    have to do today at all, your Honor.

12         THE COURT:  All right.  Ms. Kirshner, you have

13    discussed these issues with your client and are comfortable

14    that he is competent to proceed today?

15         MS. KIRSHNER:  I've discussed them at length, your

16    Honor.  I am absolutely comfortable that he is capable of

17    proceeding today.

18         THE COURT:  All right.  Any objection, Ms. Mortazavi?

19         MS. MORTAZAVI:  No objection, your Honor.

20         THE COURT:  All right.  Mr. Skelton, have you been

21    treated or hospitalized for any mental illness?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  All right.  And have you been treated or

24    hospitalized for any drug abuse, including abuse of alcohol?

25         THE DEFENDANT:  No, your Honor.

Kb5dskep

1          THE COURT:  In the past 24 hours, have you taken any

2     drugs, medicine, pills, or had any alcohol to drink?

3          THE DEFENDANT:  Yes, I have taken medicine, your

4     Honor.

5          THE COURT:  All right.  And are they -- is the

6     medicine that you've taken in connection with the conditions

7     that you outlined for me?

8          THE DEFENDANT:  Everything is prescribed, your Honor.

9          THE COURT:  All right.  Is your mind clear today,

10    Mr. Skelton?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you feel comfortable and competent

13    to proceed today?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Physically, are you well today?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  All right.  Do you understand what you're

18    about to do and why we are convened?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Are you represented by counsel,

21    Mr. Skelton?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And who is your counsel?

24         THE DEFENDANT:  Isabelle Kirshner, your Honor.

25         THE COURT:  And are you satisfied with counsel's

Kb5dskep

1    representation of you?

2              THE DEFENDANT:  Completely, your Honor.

3              THE COURT:  Does counsel have any doubt as to

4    defendant's competence to waive indictment and to plead guilty

5    at this time Ms. Kirshner?

6              MS. KIRSHNER:  No, your Honor.

7              THE COURT:  All right.  Ms. Mortazavi?

8              MS. MORTAZAVI:  No.

9              THE COURT:  As I said, Mr. Skelton, your attorney has

10   advised me that you want to waive indictment and enter a plea

11   of guilty to an information.  Is that in fact your wish?

12             THE DEFENDANT:  Yes, it is, your Honor.

13             THE COURT:  All right.  Have you fully discussed your

14   case with your attorney?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  Including both the charges to which you

17   are intending to plead guilty and any possible defenses to

18   those charges?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And you have discussed the consequences of

21   entering a plea of guilty?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Are you satisfied with your consultation

24   with your lawyer with respect to these issues?  Have all of

25   your questions been answered, and are you prepared to proceed?

Kb5dskep

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  On the basis of Mr. Skelton's

3    responses to my questions and my observation of his demeanor, I

4    do find that he's fully competent to waive indictment and to

5    enter an informed plea to the charge in the information at this

6    time.

7          Mr. Skelton, before I accept the plea from you, I want

8    to ask you certain questions intended to satisfy me that you do

9    in fact understand the proceeding that we're conducting, that

10   you wish to plead guilty because you are in fact guilty, and

11   that you fully understand what your rights are and what the

12   consequences of a guilty plea would be.  All right?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  So, first I want to just advise you of

15   certain rights that you have under the Constitution and the

16   laws of the United States.  You will be giving up these rights

17   if you enter a plea of guilty.  So, please listen carefully.

18   If you don't understand something that I'm saying, or that I'm

19   describing to you, then I'm going to instruct you, please stop

20   me and either I or your attorney will explain it to you more

21   fully.  Will you do that?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  All right.  So, first, sir, under the

24   Constitution and the laws of the United States, you have a

25   right to a speedy and a public trial by jury on the charges

Kb5dskep

against you which are contained in the information.  Do you

understand that?

> THE DEFENDANT:  Yes, your Honor.

> THE COURT:  Do you understand that you have the right

to plead not guilty and to continue to plead not guilty?

> THE DEFENDANT:  Yes, your Honor.

> THE COURT:  If there were a trial, you would be

presumed innocent, and the government would have to prove you

guilty by competent evidence and beyond a reasonable doubt.

You would not have to prove that you are innocent at trial.

> Do you understand that?

> THE DEFENDANT:  Yes, your Honor.

> THE COURT:  And if there were a trial, a jury made up

of twelve people selected from the Southern District of New

York would have to agree unanimously in order to find you

guilty.  Do you understand that?

> THE DEFENDANT:  Yes, your Honor.

> THE COURT:  Do you understand that if there were a

trial, at all stages leading up to the trial and throughout the

trial, you would have a right to an attorney, and if you

couldn't afford one, an attorney would be provided to you free

of cost at trial and at every other stage of the proceedings?

Do you understand that?

> THE DEFENDANT:  Yes, your Honor.

> THE COURT:  Do you understand that if there were a

1    trial, you would have the right to see and to hear all of the

2    witnesses against you, and your lawyer could cross-examine

3    those witnesses; you would have the right to have your attorney

4    object to the government's evidence and to offer evidence on

5    your behalf, if you so desired; you would have the right to

6    have witnesses required to come to court and to testify in your

7    defense; and you would have the right to testify yourself, but

8    you would not be required to testify?  Do you understand that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  Do you understand that if there were a

11   trial and you decided not to testify, no adverse inference

12   could be drawn against you based on your decision not to

13   testify?  Do you understand that?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Do you understand that by that I mean the

16   jury could not assume because you didn't testify that you were

17   hiding something or that it meant that you were guilty?  Do you

18   understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And do you know that if you were convicted

21   at trial, you would have the right to appeal the jury's

22   verdict?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you, Mr. Skelton, understand each and

25   every one of these rights?

Kb5dskep

1          THE DEFENDANT:  Yes, every one of them.

2          THE COURT:  Do you have any questions about them?

3          THE DEFENDANT:  No, I don't, your Honor.

4          THE COURT:  All right.  Do you understand that by

5     entering a plea of guilty today, you'll be giving up each of

6     these rights, you'll be waiving them?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you also understand that you'll be

9     waiving any possible claim that your constitutional rights may

10    have been violated and you will have no trial?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that by entering a plea

13    of guilty, you will also have to give up your constitutional

14    right not to incriminate yourself, because I'm going to ask you

15    in a few minutes some questions about what you did in order to

16    satisfy myself that you are guilty as charged and that you will

17    have to admit and acknowledge your guilt?  Do you understand

18    that?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that you can change your

21    mind right now and refuse to enter a plea of guilty?  You do

22    not have to plead if you do not want to for any reason.  Do you

23    understand that?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you still wish to plead guilty?

Kb5dskep

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Sir, the document that

3    contains the charges to which I'm told you wish to plead guilty

4    is labeled an information.  Give me one moment, please.

5          (Pause)

6          OK.  This document has been issued by the United

7    States Attorney for the Southern District of New York.  You

8    have a constitutional right to be charged by an indictment

9    rather than an information, and an indictment is a charge

10   issued from a grand jury.  Do you understand that?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  I also have before me, as we've talked

13   about a few minutes ago, a document labeled "Waiver of

14   Indictment," and we have marked that as Court's Exhibit 1.  It

15   appears to have been signed by you and by your lawyer.

16         Is that your signature on the document, Mr. Skelton?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And you did in fact sign this document?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  All right.  Before you signed it, did you

21   read the document?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  Did you review it with your lawyer and ask

24   any questions that you may have?

25         THE DEFENDANT:  Yes, your Honor.

Kb5dskep

1          THE COURT:  Ms. Kirshner, that is your signature on

2     the Waiver of Indictment, Court Exhibit 1?

3          MS. KIRSHNER:  Yes.

4          THE COURT:  All right.  Thank you, Ms. Kirshner.

5          Mr. Skelton, do you understand that if you don't waive

6     indictment, if the government wants to prosecute you on the

7     facts and the charges in the information, it would have to

8     present that case to a grand jury, which might or might not

9     indict you on the charge?  Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And you understand you are under no

12     obligation to waive indictment, correct?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  You realize that by signing this Waiver of

15     Indictment you are giving up your right to have your case

16     presented to a grand jury?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  Do you understand what a grand jury is,

19     Mr. Skelton?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand a grand jury consists of

22     23 people of whom at least 16 must be present in order to

23     conduct business and that you cannot be charged unless at least

24     12 of those conducting business vote for an indictment?  Do you

25     understand that?

Kb5dskep

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Did anyone make any threats or promises to

3    you to get you to waive indictment in this matter?

4          THE DEFENDANT:  No, your Honor.

5          THE COURT:  Have you seen a copy of the information?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Did you read it?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Have you discussed it with your attorney?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you understand the charges against

12    you -- the charge against you that's outlined in the

13    information?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  All right.  Mr. Skelton, I can read this

16    information aloud to you now and into the record, if you would

17    like me to, or you can waive formal reading of the information.

18    Would you like me to read the information to you or do you

19    waive its public reading?

20          THE DEFENDANT:  I'll waive the public reading.

21          THE COURT:  All right.  I do find the Waiver of

22    Indictment by Mr. Skelton was voluntary and knowing.  It is

23    accepted and I will so order that Waiver of Indictment.

24          Mr. Skelton, do you understand that Count One of the

25    Information charges you with participating in a conspiracy to

Kb5dskep

1    adulterate and misbrand drugs, in violation of Title 18 United

2    States Code Section 371?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  All right.  Ms. Mortazavi, would you

5    please on behalf of the government outline the elements of the

6    charge against Mr. Skelton?

7            MS. MORTAZAVI:  Certainly, your Honor.

8            In order to prove a violation of Count One, which

9    charges the defendant with a violation of Title 18 United

10   States Code Section 371, the government would be required to

11   prove the following beyond a reasonable doubt:  First, that

12   there was an unlawful agreement to commit an offense; second,

13   that the defendant knowingly became a member of the conspiracy

14   or the unlawful agreement; and, third, that some member of the

15   conspiracy took some overt act in furtherance of the

16   conspiracy.

17           Here, there were three objects of the conspiracy and

18   I'll review each one.

19           The first was to introduce or cause another to

20   introduce into interstate commerce misbranded or adulterated

21   drugs, in violation of Title 21 United States Code Sections

22   331(a) and 333(a)(2), with the intent to fraud or mislead.

23           The elements of that offense are, first, that the

24   defendant or a conspirator introduced or delivered for

25   introduction into interstate commerce a drug, or caused someone

Kb5dskep

1    else to do the same; second, that at the time of introduction,

2    the drug was misbranded in at least one way or adulterated;

3    and, third, that the defendant had the intention to defraud or

4    mislead.

5         The second object of the offense was to misbrand or

6    adulterate a drug in interstate commerce with the intent to

7    defraud or mislead, in violation of Title 21 United States Code

8    Sections 331(b) and 333(a)(2).

9         The elements of that offense are, first, that there

10   was a drug in interstate commerce; second, that the defendant

11   or a conspirator did some act that resulted in the misbranding

12   or adulteration of that drug; and, third, that the defendant

13   had the intent to defraud or mislead.

14        And the final object of the conspiracy was to receive,

15   or to cause another to receive, in interstate commerce

16   misbranded or adulterated drugs, and then to deliver or proffer

17   delivery of those drugs with the intent to defraud or mislead,

18   in violation of Title 21 United States Code Sections 331(c) and

19   333(a)(2).

20        The elements of that offense are, first, that the

21   defendant or a conspirator received a drug in interstate

22   commerce; second, that at the time of delivery the drug was

23   adulterated or misbranded in some way; third, that the

24   defendant or a conspirator delivered or proffered delivery or

25   caused delivery of the drug for pay or otherwise; and, fourth,

Kb5dskep

1    that the defendant had the intent to defraud or mislead.

2              And, finally, the government would have to prove by a

3    preponderance of the evidence that venue is proper in the

4    Southern District of New York.

5              THE COURT:  All right.  Do you understand,

6    Mr. Skelton, that the government would have to prove each and

7    every part, or element, as just outlined by Ms. Mortazavi

8    beyond a reasonable doubt at a trial if you did not plead

9    guilty?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  And do you understand that if you plead

12   guilty, the maximum possible penalty for the crime to which you

13   are telling me you want to plead guilty as charged in Count One

14   is five years of imprisonment?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And do you understand that there are also

17   financial consequences, including a maximum fine, the greatest

18   of $250,000, twice the gross pecuniary gain derived from the

19   offense or twice the gross pecuniary loss to a person other

20   than you as a result of that offense?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  And do you understand, as well, that the

23   offense carries a maximum term of three years of supervised

24   release after any term of imprisonment?

25             THE DEFENDANT:  Yes, your Honor.

Kb5dskep

1          THE COURT:  And do you understand, as well, that there

2     is a special assessment of $100 on each count in the

3     indictment?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Mr. Skelton, with respect to all of the

6     charges in the information, do you understand the matters that

7     the government would have to prove if you did not plead guilty?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Do you have any questions?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  All right.  I now want to give you some

12     information and verify that you understand the supervised

13     release aspect of the potential penalty.

14          "Supervised release" means that you will be subject to

15     monitoring when you are released from prison.  Terms and

16     conditions will be imposed, and if you violate any of the set

17     terms and conditions, you can be reimprisoned without a jury

18     trial.  Do you understand that, sir?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  And do you understand, as well, that if

21     you are on supervised release and you don't comply with any of

22     the set terms or conditions, you can be returned to prison for

23     the remainder of the term of supervised release and you will

24     not be given credit for the time you may have served in prison

25     as a result of your sentence and no credit will be given for

Kb5dskep

1  any time spent on post-supervised release.

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Do you understand, further, that if I

5  accept your plea of guilty and adjudge you guilty, that

6  adjudication may deprive you of certain valuable civil rights

7  such as the right to vote, the right to hold public office, the

8  right to serve on a jury, and the right to possess any kind of

9  firearm, if you currently have or could have obtained such

10  rights?  Do you understand that?

11            THE DEFENDANT:  Yes, your Honor.

12            THE COURT:  All right.  You've told me, sir, that you

13  are a United States citizen and I accept your representation,

14  but do you understand that should it turn out you are not a

15  United States citizen and I accept your plea of guilty, there

16  could be immigration consequences from pleading guilty?

17            THE DEFENDANT:  I understand.  I am a U.S. citizen.

18            THE COURT:  All right.  For the record, though, the

19  consequences should that turn out not to be the case include

20  that you could be removed from the United States, you could be

21  denied citizenship or denied admission to the United States in

22  the future.

23            Let me ask you, Mr. Skelton, do you understand that?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  And did you discuss your immigration

Kb5dskep

1   situation with Ms. Kirshner?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And do you have any questions in that

4   regard?

5          THE DEFENDANT:  None whatsoever, your Honor.

6          THE COURT:  All right.  Do you understand, sir, that

7   there are -- in connection with sentencing, that there are

8   certain guidelines, the sentencing guidelines, that the Court

9   must consider in determining what is an appropriate sentence?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And have you discussed with your attorney

12   the Sentencing Guidelines?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Do you understand that in determining your

15   sentence, I am obligated to calculate the applicable sentencing

16   guideline range and to consider that range, possible departures

17   under the Sentencing Guidelines, and other factors relevant to

18   sentencing that are set forth in a statute, 18 United States

19   Code Section 3553(a)?  Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Typically, in looking to fashion a

22   sentence, the factors under Section 3553(a) that I consider

23   include the following:  The nature and circumstances of the

24   offense that you are pleading guilty to; your personal history

25   and characteristics; the need for the sentence to reflect the

Kb5dskep

1   seriousness of the offense, to promote respect for the law, and

2   to provide a just punishment for the offense; to afford

3   adequate deterrence to criminal conduct; to protect the public

4   from further crimes; to provide you with any needed

5   educational, vocational training, medical care or other

6   corrective treatment in the most effective manner. I also, as

7   I said before, consider the sentencing guidelines issued by the

8   Sentencing Commission and the applicable range in this

9   particular case as well as the available policy statements

10  issued by the Sentencing Commission. I take into account the

11  need to avoid unwarranted disparities in sentences among

12  similarly-situated defendants, and the need to provide

13  restitution to any victims of the crime with which you are

14  charged.

15          Do you understand, Mr. Skelton, that I will consider

16  all of these factors in fashioning a sentence for you based

17  upon a plea of guilty, should it be accepted?

18          THE DEFENDANT: Yes, your Honor.

19          THE COURT: And do you understand that if your

20  attorney or anyone else has tried to estimate or predict for

21  you what your sentence will be, that estimate or prediction

22  could be wrong? You understand that?

23          THE DEFENDANT: Yes, your Honor.

24          THE COURT: And you also understand that even if the

25  sentence is different from what your attorney or anyone else

Kb5dskep

told you it might be, or if it's different from what you expect

or what you hope, if you enter a plea of guilty, you will be

bound by that plea and you will not be able to withdraw your

plea at the time of sentencing?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And do you understand that if you're

disappointed or you're surprised by any sentence that I impose,

you are still bound by your guilty plea and will not be allowed

to withdraw the plea at that point?  Do you understand that?

THE DEFENDANT:  Yes, your Honor, I do.

THE COURT:  All right.  And do you understand that

your sentence will be determined solely by the Court?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And you understand that I cannot determine

what an appropriate sentence is on the facts of this case until

after the Probation Department prepares a presentence report to

the Court?  Do you understand that process?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Do you understand that the Court has

discretion, while taking into account the specific provisions

and policy statements in the guidelines and the considerations

that I just outlined for you that are contained in Section

3553, to sentence you in this case to any number of years of

imprisonment between zero and the statutory maximum of five

years?  Do you understand that?

Kb5dskep

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Mr. Skelton, can you tell me,

3    are you now serving any state or federal sentence, or are you

4    being prosecuted for any crime other than the one contained in

5    the information?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  Do you understand that the plea agreement

8    that you signed provides that you will make restitution in an

9    amount to be determined by the Court?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Do you understand that the information

12    also includes a forfeiture allegation to which you have

13    consented in the plea agreement you signed by in which the

14    government asserts that you are required to forfeit to the

15    United States a sum of money representing the value of property

16    you obtained as a result of the offense to which you wish to

17    plead guilty?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Do you understand that any forfeiture will

20    not be treated as satisfaction of any fine or restitution, cost

21    of imprisonment, or any other penalty that the Court may impose

22    upon you?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  All right.  Mr. Skelton, I have a copy of

25    the plea agreement -- the cooperation agreement that you signed

Kb5dskep

1    on October 29th of this year.

2            Did you in fact sign this letter that's dated

3    October 22nd and addressed to Ms. Kirshner and Mr. Clayman?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  All right.  And that is your signature

6    that appears under the caption "Agreed and Consented to" and

7    above where your name is typed?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  All right.  Ms. Kirshner, you, as well,

10   have received and signed this agreement?

11           MS. KIRSHNER:  Yes, your Honor.

12           THE COURT:  All right.  Mr. Skelton, did you read this

13   agreement before you signed it?

14           THE DEFENDANT:  Yes, your Honor.

15           THE COURT:  Did you discuss it with your attorney?

16           THE DEFENDANT:  Yes, your Honor.

17           THE COURT:  Did you have the opportunity to ask any

18   questions that you might have of your attorney?

19           THE DEFENDANT:  Yes, your Honor.

20           THE COURT:  And you fully understood the agreement

21   before you signed it?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  Does the agreement accurately reflect your

24   complete and total understanding of the entire agreement

25   between the government, you, and your lawyer?

Kb5dskep

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Is everything you understand about your

3    plea, your obligation to cooperate, and your potential sentence

4    covered in that agreement?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Is anything left out that you believe

7    you've agreed to?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  And is anything left out that you believe

10   the government has committed to?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  All right.  Has anyone made any promises

13   to you, other than what's set forth in the letter agreement, or

14   threatened you or forced you to plead guilty or to enter into

15   that cooperation agreement?

16         THE DEFENDANT:  No, your Honor.

17         THE COURT:  Do you understand that even if the

18   government does not oppose or take any position on what your

19   attorney will ask me to impose as a sentence, I'm obligated to

20   impose the sentence that I believe is appropriate under the

21   circumstances and under the applicable law, and that at that

22   point you will not be able to withdraw a plea of guilty, if I

23   accept it?

24         THE DEFENDANT:  Yes, your Honor.

25         THE COURT:  Do you understand that the agreement

Kb5dskep

1    provides that you must cooperate fully with the Office of the

2    United States Attorney, the Federal Bureau of Investigation,

3    and any other law enforcement agency designated by the Office

4    of the United States Attorney?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  And do you understand that the agreement

7    specifies that if you do cooperate fully with the

8    understandings -- if you do comply fully, I'm sorry, with the

9    understandings in the agreement and if you do in fact cooperate

10   with the government, the United States Attorney will not

11   prosecute you for any actions related to your participation in

12   conspiracies to misbrand and adulterate performance-enhancing

13   drugs for use on racehorses beyond what we're talking about

14   today?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  And do you understand that the actions you

17   took in that regard remain, nevertheless conduct -- relevant

18   conduct -- that the Court can consider in connection with

19   sentencing?

20            THE DEFENDANT:  Yes, your Honor.

21            THE COURT:  Do you understand that the United States

22   Attorney cannot and does not agree not to prosecute you for any

23   criminal tax violations you may have committed?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Do you further understand that the

Kb5dskep

1     agreement doesn't bind any federal, state or local prosecuting

2     authorities other than the United States Attorney for the

3     Southern District of New York?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that the agreement

6     provides that if the United States Attorney determines that you

7     have provided substantial assistance in an investigation or a

8     prosecution and if you have fully complied with the other

9     understandings in that agreement, the United States Attorney

10     will file a motion before me, pursuant to Section 5K1.1 of the

11     Sentencing Guidelines, asking that the Court sentence you in

12     light of the factors set forth in that statute which bear on

13     your cooperation?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  And do you understand that the factors the

16     Court may consider under Section 5K1.1 include the following?

17     The significance and usefulness of any assistance you give,

18     taking into account the government's evaluation of the

19     assistance that you render; the truthfulness, completeness and

20     reliability of any information or testimony you provide; the

21     nature and extent of your assistance; any injury suffered or

22     danger or risk of injury to you or your family as a result of

23     your cooperation; and the timeliness of your assistance.  Do

24     you understand, those are all factors that are relevant to a

25     motion that the government might make to me in connection with

Kb5dskep

1    your sentencing?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  Do you understand that even if the United

4    States Attorney files such a motion, the sentence to be imposed

5    remains solely within the discretion of the Court?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  Do you understand that you will not be

8    entitled to withdraw a plea of guilty even if the Court denies

9    a motion under Section 5K1.1?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  And do you understand that if the United

12    States Attorney determines that you have not provided

13    substantial assistance in an investigation or prosecution, or

14    that you violated any other undertaking in the agreement, the

15    United States Attorney is not obligated in that circumstance to

16    file a motion under Section 5K1.1 of the Sentencing Guidelines?

17            THE DEFENDANT:  Yes, your Honor.

18            THE COURT:  And do you understand that in that

19    circumstance you will not be entitled to withdraw a plea of

20    guilty?

21            THE DEFENDANT:  Yes, your Honor.

22            THE COURT:  And do you further understand that your

23    agreement provides that if you commit any further crime, or if

24    it's determined that you gave false, incomplete or misleading

25    testimony or information, or have otherwise violated any other

Kb5dskep

provision of this agreement, you will be subject to prosecution
for any federal violations the United States Attorney has
knowledge of, including perjury and obstruction of justice?  Do
you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  And do you understand that your agreement
provides that if you commit any further crime, or if it's
determined that you gave false, incomplete or misleading
testimony or information, or have otherwise violated any
provision of the cooperation agreement, all statements that you
make to the United States Attorney, to any law enforcement
agents, and any testimony that you may give before a grand jury
or any other tribunal will be admissible in evidence against
you in any criminal proceeding?  Do you understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  And do you understand that your agreement
also provides that you may not argue that such statement should
be suppressed, and that you are waiving your right to claim
that any such statements should be suppressed?  Do you
understand that?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  All right.  Do you have any questions for
the Court, Mr. Skelton?

        THE DEFENDANT:  No, your Honor.

        THE COURT:  Do you need to consult with your attorney

Kb5dskep

1    for any reason at this point?

2            THE DEFENDANT:  No, your Honor.

3            THE COURT:  Do you still wish to plead guilty pursuant

4    to the plea agreement?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  All right.  I do find that Mr. Skelton

7    fully understands his obligations under the plea agreement and

8    that he has entered into it freely and voluntarily, and the

9    Court will therefore accept the plea agreement.

10           Ms. Kirshner, do you know of any valid reason why your

11   client would prevail at trial, or do you know of any reason why

12   your client should not be permitted to plead guilty?

13           MS. KIRSHNER:  I do not, your Honor.

14           THE COURT:  Mr. Skelton, can you please tell me now in

15   your own words what you did that makes you guilty of the crimes

16   to which you are entering a plea of guilty?  I want you to tell

17   me in your own words what you did, when you did it, with whom

18   you did it.

19           THE DEFENDANT:  Your Honor, I prepared -- is it OK if

20   I work off of notes, is that correct?

21           THE COURT:  Yes.  That is fine, sir.

22           These are your own words, right?

23           THE DEFENDANT:  Oh, yes.  Yes.

24           MS. KIRSHNER:  Your Honor, I obviously assisted him in

25   the preparation of his statement.

Kb5dskep

1          THE COURT:  Yes, of course.  Go ahead.

2          THE DEFENDANT:  Between 2016 and 2020, in the Southern

3    District of New York and elsewhere, I conspired with others to

4    distribute misbranded drugs during that time.  I worked closely

5    with a distributor in Pine Bush, New York, and I would send

6    substances from Indiana to him.  I was aware that some of these

7    drugs were supplied to horses that raced in Goshen and Yonkers,

8    New York.

9          One of the drugs that I distributed to horse trainers

10   was referred to as a blood builder.  A blood builder would help

11   to enhance a horse's racing performance by increasing the

12   number and quality of red blood cells in the bloodstream.  This

13   increased the oxygen-carrying capacity and therefore increased

14   endurance and performance in the animal.

15         This product was produced by mixing substances that I

16   purchased from a compounding pharmacy in Pennsylvania.  I put

17   my own label on the product which did not identify the

18   ingredients but rather contained dosage instructions, and sold

19   them to trainers of racehorses and others in New York and

20   elsewhere.  These products cannot be purchased without a

21   prescription, although they were provided to my customers

22   without a prescription.  In violation of the rules of -- I'm

23   sorry.  They were provided to my customers without a

24   prescription in violation of the rules of local racing

25   authorities.

Kb5dskep

1          Part of the reason that this was done was to conceal

2     the actual ingredients that made up the blood builder so that

3     no others -- no other veterinarians could create and sell the

4     substances that I had created.

5          THE COURT:  Were they also -- so they were misbranded,

6     correct, clearly, right?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And did you misbrand them not just so that

9     no one could copy it but also so that no one could detect what

10    actually was in the substance that you were giving to people to

11    administer to horses?

12         THE DEFENDANT:  They were -- the label was put on

13    there just -- the ingredients were not put on the bottles.

14    They were mislabeled in that aspect because I didn't want other

15    people to be able to create the same things.

16         THE COURT:  In what respect did you defraud or mislead

17    someone?

18         THE DEFENDANT:  Well, by not putting the ingredients

19    on there like a proper prescription.

20         THE COURT:  Did you know that the actions you were

21    taking were wrong?

22         THE DEFENDANT:  Yes.

23         THE COURT:  And did you know that they were

24    potentially illegal?

25         THE DEFENDANT:  I -- yes, I knew they were potentially

Kb5dskep

1    illegal.

2         THE COURT:  Did you take those actions to mislead

3    racing authorities?

4         THE DEFENDANT:  My intent was solely to sell to

5    trainers to help their horses perform better.

6         THE COURT:  But you understood that the trainers were

7    trying to help their horses perform better?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Correct?

10        THE DEFENDANT:  Correct.

11        THE COURT:  And you understood that the rules of

12   racing prohibited the use of some of these substances, correct?

13        THE DEFENDANT:  Yes.

14        THE COURT:  And did you receive money for the

15   compounds that you supplied?

16        THE DEFENDANT:  Yes.

17        THE COURT:  All right.  Ms. Mortazavi, does the

18   government wish any other factual matters to be addressed in

19   connection with the defendant's allocution?

20        MS. MORTAZAVI:  Just one point of clarification, your

21   Honor, with respect to the timing of the conspiracy.  As

22   reflected in the information, at least some of this conduct

23   extended as far back as 2012, and I was hoping the Court could

24   question Mr. Skelton on the initiation of at least some of the

25   conduct that he's described.

Kb5dskep

1          THE COURT:  All right.  Mr. Skelton, you said in your

2   statement to me between 2016 and 2020.  Can you tell me, when

3   did this conduct actually begin?

4          THE DEFENDANT:  I was specifically speaking about the

5   blood builder that I discussed the product here in the

6   allocution, but I had made a relationship prior to that and

7   sold medicine on trips that I made in New York starting in

8   2012.

9          THE COURT:  Including medicines which were either

10  adulterated or misbranded?

11         THE DEFENDANT:  Yes.

12         THE COURT:  OK.  Anything else, Ms. Mortazavi?

13         MS. MORTAZAVI:  Nothing further, your Honor.  Thank

14  you.

15         THE COURT:  All right.  Mr. Skelton, you said that you

16  sent these to trainers, I believe you said, to administer to

17  horses that were going to race at Goshen or Yonkers, is that

18  right?

19         THE DEFENDANT:  Among other tracks, yes.

20         THE COURT:  Were the horses all involved in harness

21  racing?

22         THE DEFENDANT:  The majority of them were.  Some were

23  involved in thoroughbred racing.

24         THE COURT:  As well?

25         THE DEFENDANT:  Yes.

Kb5dskep

1          THE COURT:  So those would not be at Goshen or at
2   Yonkers, correct?
3          THE DEFENDANT:  No.  That's why I said "elsewhere,"
4   yes.
5          THE COURT:  Elsewhere in the Southern District of New
6   York, like Aqueduct or Belmont?
7          THE DEFENDANT:  Yes, there were some that raced at
8   Belmont and Aqueduct, yes.
9          THE COURT:  Anything else, Ms. Kirshner, that I ought
10  to inquire?
11         MS. KIRSHNER:  No, your Honor, but, for the record,
12  neither Belmont not Aqueduct are in the Southern District of
13  New York.
14         THE COURT:  That's true.
15         MS. MORTAZAVI:  That's why I had him say Yonkers and
16  Goshen.
17         THE COURT:  Yes, you are right about that.  That is
18  true.  Thank you.  You are correct.  They are in the Eastern
19  District, that is true.  I left off Saratoga.
20         MS. MORTAZAVI:  That is also not in the Southern
21  District of New York.
22         THE DEFENDANT:  I'm really impressed with your
23  knowledge of thoroughbred racetracks.
24         THE COURT:  Mr. Skelton.
25         THE DEFENDANT:  I said I was impressed with your

Kb5dskep

1    knowledge of the thoroughbred racetracks, that's awesome.

2              THE COURT:  All right.  Anything else, Ms. Mortazavi,

3    that you wish for me to inquire?

4              MS. MORTAZAVI:  Nothing further, your Honor.

5              THE COURT:  All right.  Would you please summarize the

6    evidence that the government has against this defendant?

7              MS. MORTAZAVI:  Certainly, your Honor.

8              The government's proof consists of various pieces of

9    evidence, including wiretap recordings of phone calls between

10   Mr. Skelton and various other trainers, including various other

11   trainers and third parties discussing Mr. Skelton and his

12   products, recorded messages by a confidential source reflecting

13   controlled purchases as well as physical evidence of those

14   controlled purchases, electronically stored data from seized

15   electronic devices such as text messages, testimony of lay and

16   law enforcement witness, call detail records, historical cell

17   site location information, and race entries.

18             THE COURT:  All right.  Ms. Kirshner, this information

19   has been provided to you consistent with the government's

20   disclosure obligations?

21             MS. KIRSHNER:  It has, your Honor.

22             THE COURT:  All right.  Is there anything further from

23   either counsel at this time?

24             MS. MORTAZAVI:  Nothing from the government.

25             MS. KIRSHNER:  Nothing from me, your Honor.

Kb5dskep

1          THE COURT:  All right.  Mr. Skelton, how do you wish

2     to plead at this time to Count One of the Information,

3     participation in a conspiracy to misbrand or adulterate drugs?

4          THE DEFENDANT:  Guilty, your Honor.

5          THE COURT:  And are you pleading guilty because you

6     are in fact guilty?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Are you pleading guilty voluntarily?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Of your own free will, sir?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you understand that if I accept

13    your guilty plea and adjudge you guilty, you will be bound by

14    the terms of the plea agreement that we've been discussing,

15    including those that I have summarized and specifically

16    discussed with you and any terms that I did not specifically

17    discuss with you today but that are contained in that

18    agreement?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Are there any other questions,

21    Ms. Kirshner, that you believe I should ask Mr. Skelton in

22    connection with his plea?

23         MS. KIRSHNER:  No, your Honor.

24         THE COURT:  Anything, Ms. Mortazavi?

25         MS. MORTAZAVI:  No, your Honor.

Kb5dskep

1          THE COURT:  All right.  Mr. Skelton, you have

2     acknowledged that you are guilty as charged in the information.

3     I do find that you know your rights and that you are waiving

4     them voluntarily.  Because your plea is entered knowingly and

5     voluntarily and I find is supported by an independent basis in

6     fact containing each of the essential elements of the offense,

7     I accept your plea of guilty and I adjudge you guilty of the

8     offense charged in Count One of the Information to which you

9     have pleaded guilty.

10          Ms. Mortazavi, I assume, given the cooperation

11     obligations, that the government is requesting the Court to

12     hold sentencing in abeyance pending the defendant's

13     cooperation?

14          MS. MORTAZAVI:  That's correct, your Honor, and we

15     would ask for deadlines of six months from today's date wherein

16     the government will submit a letter with a status update on

17     whether we can proceed to sentencing or whether we should

18     continue to hold it in abeyance.

19          THE COURT:  All right.  Is that acceptable,

20     Ms. Kirshner?

21          MS. KIRSHNER:  Yes, your Honor.

22          THE COURT:  All right.  Ms. Dempsey, do we have a date

23     that we can propose?

24          THE CLERK:  Your Honor, we could propose May the 5th.

25          THE COURT:  Is that acceptable, Ms. Kirshner?

Kb5dskep

1          MS. KIRSHNER:  That's fine, your Honor.

2          THE COURT:  Ms. Mortazavi?

3          MS. MORTAZAVI:  Yes, your Honor.

4          THE COURT:  All right.  So on or before May 5th, the

5    Court will receive in letter form a status report indicating

6    whether cooperation is continuing or whether we should convene

7    to set a sentencing date and talk about the schedule for

8    meeting with Probation in preparation of a presentence report.

9          Are there any applications with respect to the

10   conditions of bail?

11         MS. MORTAZAVI:  No, your Honor.

12         MS. KIRSHNER:  No, your Honor.

13         MS. MORTAZAVI:  None from the government.

14         THE COURT:  Sorry.  Ms. Kirshner?

15         MS. KIRSHNER:  I'm sorry.  No, your Honor.

16         THE COURT:  That's all right.

17         MS. KIRSHNER:  There is a little lag in what I hear.

18         THE COURT:  No problem.

19         Is there any other matter that the parties would like

20   to discuss with the Court at this time?

21         MS. MORTAZAVI:  Nothing from the government.  Thank

22   you.

23         MS. KIRSHNER:  Nothing from us, your Honor.

24         THE COURT:  All right.  Anything from you,

25   Mr. Skelton?

Kb5dskep

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  All right.  Thank you, sir.

3          All right.  Then we are adjourned.  I thank our court

4    reporter for being with us.

5          I presume the parties will take care of having a copy

6    of that transcript made part of the record, which we will keep

7    under seal.

8          MS. MORTAZAVI:  Yes, your Honor.  Have a nice evening.

9          THE COURT:  Have a good rest of the day.

10          MS. KIRSHNER:  Thank you, your Honor.

11          THE DEFENDANT:  Thank you, your Honor.

12          (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25